1   LAW OFFICES OF DALE K. GALIPO
    Dale K. Galipo, Esq. (SBN 144074)
2   dalekgalipo@yahoo.com
    Renee V. Masongsong, Esq. (SBN 281819)
3   rvalentine@galipolaw.com
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, CA 91367
    Tel:   (818) 347-3333
5   Fax:   (818) 347-4118

6   RODNEY S. DIGGS, Esq. (SBN 274459)
    Email: RDiggs@imwlaw.com
7   IVIE McNEILL WYATT PURCELL & DIGGS
    444 South Flower Street, Suite 3200
8   Los Angeles, California 90071
    Telephone:   (213) 489-0028
9   Facsimile:   (213) 489-0552

10  Attorneys for Plaintiff, Ashlyn Petit

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14   ASHLYN PETIT, as successor-in-          Case No. 2:23-cv-00789-ODW (PVCx)
     interest to JERMAINE PETIT, deceased,
15                                           Assigned to:
16                Plaintiff,                 Hon. District Judge Otis D. Wright, II
                                             Hon. Magistrate Judge Pedro V. Castillo
17        vs.
                                             **MEMORANDUM OF POINTS AND**
18                                           **AUTHORITIES IN SUPPORT OF**
                                             **PLAINTIFF'S OPPOSITION TO**
19   CITY OF LOS ANGELES, DARYL              **DEFENDANTS' MOTION FOR**
     GLOVER, JR.; BRETT HAYHOE,              **SUMMARY JUDGMENT**
20
                  Defendants.                [*Filed concurrently with Plaintiff's*
21                                           *Responsive Separate Statement;*
                                             *Declaration of Renee V. Masongsong*
22                                           *and Exhibits thereto; and Declaration*
                                             *of Richard Bryce*]
23
                                             Date:      December 22, 2025
24                                           Time:      1:30 p.m.
                                             Place:     Ctrm. 5D
25

26

27

28

1

# **<u>TABLE OF CONTENTS</u>**

2

3  I.    INTRODUCTION ...........................................................................................1

4  II.   FACTS ...........................................................................................................3

5  III.  ARGUMENT .................................................................................................5

6      A.    THE SHOOTING WAS EXCESSIVE AND UNREASONABLE........5

7      B.    THE OFFICERS ARE NOT ENTITLED TO QUALIFIED

8          IMMUNITY ...................................................................................12

9      C.    DENIAL OF MEDICAL CARE.......................................................16

10     D.    STATE LAW CLAIMS ...................................................................17

11 IV.   PUNITIVE DAMAGES................................................................................20

12 V.    CONCLUSION .............................................................................................21

13 L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ..............................................22

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

2

Cases

3   *A. K. H by & through Landeros v. City of Tustin,*
        837 F.3d 1005 (9th Cir. 2016).........................................................16
4   *Blankenhorn v. City of Orange,*
        485 F.3d 463 (9th Cir. 2007).........................................................19
5
    *Bryan v. MacPherson,*
6       630 F.3d 805 (9th Cir. 2010).....................................................10, 11
7   *C.V. v. City of Anaheim,*
        823 F.3d 1252 (9th Cir. 2016).......................................................14
8
    *Calonge v. City of San Jose,*
9       104 F.4th 39 (9th Cir. 2024)...................................................2, 7, 13
10  *Chew v. Gates,*
        27 F.3d 1432 (9th Cir. 1994)...........................................................7
11  *Cole v. Fair Oaks Fire Protection Dist.,*
        43 Cal.3d 148 (1987).....................................................................18
12
    *Coles v. Eagle,*
13      704 F.3d 624 (9th Cir. 2012).........................................................12
14  *Collender v. City of Brea,*
        605 F. App'x 624 (9th Cir. 2015)..................................................15
15  *Conway v. County of Tuolumne,*
        231 Cal. App. 4th 1005 (2014).....................................................19
16
    *Cornell v. City and County of San Francisco*
17      17 Cal. App. 5th 766 (2017).........................................................18
18  *Cruz v. City of Anaheim,*
        765 F.3d 1076 (9th Cir. 2014).........................................................8
19  *Curnow v. Ridgecrest Police,*
        952 F.2d 321 (9th Cir. 1991).........................................................14
20
    *Dang v. Cross,*
21      422 F.3d 800 (9th Cir. 2005).........................................................20
22  *Deorle v. Rutherford,*
        272 F.3d 1272 (9th Cir. 2001).........................................................7
23  *Diaz v. Cnty. of Ventura,*
        512 F. Supp. 3d 1030 (C.D. Cal. 2021)...........................................6
24
    *Drummond v. City of Anaheim,*
25      343 F.3d 1052 (9th Cir. 2003).......................................................16
26  *Ellins v. City of Sierra Madre,*
        710 F.3d 1049 (9th Cir. 2013).......................................................12
27  *Espinosa v. City & Cnty. of San Francisco,*
        598 F.3d 528 (9th Cir. 2010).........................................................15

28

*Estate of Aguirre v. County of Riverside*,
    29 F.4th 624 (9th Cir. 2022)...................................................................11

*Estate of Hernandez v. City of Los Angeles*,
    139 F.4th 790 (9th Cir. 2025)................................................................16

*Estate of Lopez v. Gelhaus*,
    871, F.3d 998 (9th Cir. 2017)...........................................................2, 14

*Estate of Strickland v. Nevada Cnty.*,
    69 F.4th 614 (9th Cir. 2023)..................................................................10

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013)............................................................2, 13

*Gonzalez v. City of Anaheim*,
    747 F.3d 789 (9th Cir. 2014)..................................................................11

*Graham v. Connor*,
    490 U.S. 386 (1989) ..........................................................................1, 5

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1997)......................................................6, 7, 14

*Hayes v. Cnty. of San Diego*,
    57 Cal. 4th 622 (2013).........................................................................18

*Holloway v. City of Pasadena*,
    2:15-cv-03867-CAS-JC, 2018 WL 8799884 (C.D. Cal. Nov. 8, 2018) .........17

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009).................................................................18, 19

*Larez v. City of Los Angeles*,
    946 F.2d 630 (9th Cir. 1991)................................................................20

*Longoria v. Pinal County*,
    873 F.3d 699 (9th Cir. 2017)..........................................................12, 15

*Lowry v. City of San Diego*,
    858 F.3d 1248 (9th Cir. 2017)................................................................6

*Mattos v. Agorano*,
    661 F.3d 433 (9th Cir. 2011)..................................................................7

*McCorkle v. City of Los Angeles*,
    70 Cal. 2d 252 (1969)..........................................................................19

*Megargee v. Wittman*,
    550 F.Supp.2d 1190 (E.D. Cal. 2008)..................................................19

*Munoz v. City of Union City*,
    120 Cal. App. 4th 1077 (2004).............................................................17

*Nehad v. Browder*,
    929 F.3d 1125 (9th Cir. 2019).........................................................6, 11

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012)................................................................11

*P.C. v. City of Los Angeles,*
    No. CV 07-3413-PLA, 2012 WL 12847227 (C.D. Cal. Sept. 14, 2012)........16
*Price v. County of San Diego,*
    990 F. Supp. 1230 (S.D. Cal. 1998) ....................................................................19
*Reese v. County of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018) ...........................................................................18
*Robinson v. Solano Cnty.,*
    278 F.3d 1007 (9th Cir. 2002) ...........................................................................19
*Rosenbaum v. City of San Jose,*
    107 F.4th 919 (9th Cir. 2024) ............................................................................12
*Scott v. Harris,*
    550 U.S. 372 (2007) .............................................................................................8
*Singh v. City of Phoenix,*
    124 F.4th 746 (9th Cir. 2024) ..............................................................................6
*Smith v. Wade,*
    461 U.S. 30 (1983) .............................................................................................20
*Tabares v. City of Huntington Beach,*
    988 F.3d 1119 (9th Cir. 2021) ...........................................................................18
*Tan Lam v. City of Los Banos,*
    976 F.3d 986 (9th Cir. 2020) .............................................................................16
*Tennessee v. Garner,*
    471 U.S. 1 (1985) ...............................................................................................11
*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) .............................................................................6
*Villanueva v. California,*
    986 F.3d 1158 (9th Cir. 2021) ...........................................................................12
*Vos v. City of Newport Beach,*
    892 F.3d 1024 (9th Cir. 2018) ..............................................................6, 11, 14
*Zion v. Cnty. of Orange,*
    874 F.3d 1072 (9th Cir. 2017) ...........................................................................16

Statutes

California Government Code § 815.2....................................................................17
California Penal Code §835a .................................................................................7

Other Authorities

Judicial Counci of California Civil Jury Instruction No. 441 ..............................18
Judicial Council of California Civil Jury Instruction No. 1305B...........................17

I.    **INTRODUCTION**

This Court should deny Defendants' motion for summary judgment. Viewing the facts in the light most favorable to Plaintiff, which this Court is required to do on a motion for summary judgment, a reasonable jury could conclude that LAPD Sgt. Brett Hayhoe's two shots and LAPD Officer Daryl Glover's shot were excessive and unreasonable. As explained in the declaration of Plaintiff's police practices expert, Richard Bryce, at the time of the shots on July 18, 2022, Jermaine Petit posed no immediate threat of death or serious bodily injury to Hayhoe, Glover, or any other person. Defendants' version of the facts is not supported by the body-worn camera videos capturing the incident. Because the material facts bearing on the reasonableness of the officers' uses of force are disputed, summary judgment is precluded, and a jury must determine whether deadly force was warranted.

The fact that the object Petit had at the time of the shooting was not a gun is not after-acquired information in contradiction of *Graham v. Connor*, 490 U.S. 386 (1989), because the officers observed the object on scene prior to the shooting. When Glover and Officer Nelson Martinez first contacted Petit and asked, "what's that in your hands?" Petit showed them the object for several seconds while holding it in a downward position. After seeing the object, Martinez said, "It's not a gun, bro." Glover responded, "You said that's not a gun?" After seeing the object, the officers did not take cover, yell out, "gun!" or alert Hayhoe that they thought they saw Petit with a gun. A reasonable jury could infer that the officers did not take such actions or shoot Petit during this initial contact because the object did not look like a gun.

Petit walked away. In violation of police training that discourages shooting from a moving vehicle, Hayhoe fired two shots at Petit out the passenger window, striking Petit. Before Glover fired, he heard two shots, formed the impression that Petit had been shot, and saw Petit go down. As seen in the videos and still shots filed concurrently herewith, Glover fired one shot toward Petit's back as Petit was

going to the ground or on the ground. Neither officer gave Petit a warning that deadly force would be used prior to shooting him. Plaintiff disputes that Petit pointed the object at Hayhoe or turned toward him prior to the shots. Whether the officers' statements to the contrary are credible is a question for the jury. A reasonable jury could find that Petit made no threatening movement warranting the use of deadly force.

The officers are not entitled to qualified immunity. Viewing the facts and drawing permissible inferences therefrom in Plaintiff's favor, including assuming that the object did not look like a gun, the law was clearly established that shooting under these facts would violate Petit's constitutional right to be free from excessive force. *See, e.g.*, *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024) (law was clearly established at the time of the 2019 shooting); *Estate of Lopez v. Gelhaus*, 871, F.3d 998 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829, 832 (9th Cir. 2013). Nor are the officers immune under Cal. Gov. Code §820.2, which does not confer immunity to officers who use unreasonable force in making an arrest or perform a discretionary act negligently.

Petit survived the gunshots but suffered life-threatening injuries, and a reasonable jury could find that the shooting caused Petit severe emotional distress, supporting his claim for Intentional Infliction of Emotional Distress. Further, a reasonable jury could find that the officers acted with "reckless disregard" for Petit's constitutional right to be free from excessive force when they shot him without warning, including the shot to the back after Petit had already been struck and was going to the ground or on the ground, which satisfies the standards on Plaintiff's claim for violation of the Bane Act and supports a finding of punitive damages.

For each of these reasons and the reasons set forth below, this Court should deny Defendants' motion in full.

/ / /

## II.    FACTS

Hayhoe's and Glover's shooting of Petit occurred on a summer evening when school was not in session, and no civilians were in the immediate vicinity. (PAMF-32, 74, 88). Prior to responding, the officers had conflicting information as to whether Petit had a gun, including information that he possibly did not have a gun. (PAMF-38). They had no information that Petit had fired any shots, had injured anyone, or had a criminal history. (PAMF-34-37). Based on Hayhoe's experience in dealing with homeless individuals, he understands that some of them have mental health issues. (PAMF-42).

A reasonable officer would not have believed the object Petit had looked like a gun. (PAMF-45). The object was a vehicle trunk latch or lock actuator. (PAMF-33). Petit showed Glover and Martinez the object when they initially contacted him. (PAMF-44). Petit did not point the object at them; he held it in a downward position and walked away, appearing to attempt to avoid contact. (PAMF-46-48, 53-54). Petit did not verbally threaten the officers. (PAMF-40). After seeing the object in Petit's hand, Glover did not take cover, create distance, yell out "gun!", tell Martinez he thought he saw a gun, or alert dispatch or Hayhoe that he saw a gun. (PAMF-49-51, 62-64). If Glover thought he saw a gun, that would have been important information to communicate to Hayhoe. (PAMF-65). Police officers are trained to yell out "gun" and take cover if they see what they believe to be a gun in a suspect's hand. (PAMF-111-112).

After Glover and Martinez observed the object, Martinez said, "It's not a gun, bro." (PAMF-56). Glover heard him say that, and he generally trusts the statements of his partners. (PAMF-57-59). Police officers are trained to distinguish firearms from other objects in a person's hand. (PAMF-110). Glover later described the object as "funky" and conceded that he never identified the object as a gun with certainty. (PAMF-60-61). The officers did not shoot Petit when he showed them the object, and both police practices experts agree that it would not have been

1 appropriate to shoot him at that time, or for walking away and disobeying verbal

2 commands. (PAMF-52, 55).

3    Hayhoe admitted Petit did not turn his upper body toward him prior to firing

4 his shots, and the videos do not show Petit pointing the object at Hayhoe or turning

5 toward him. (PAMF-67-68). Defendants' police practices expert agrees that if Petit

6 did not turn toward Sgt. Hayhoe or raise or point the object toward him, then it

7 would have been inappropriate to shoot. (PAMF-70). Hayhoe fired two shots out the

8 passenger side window while his vehicle was moving. (PAMF-71-72). Hayhoe did

9 not give Petit any commands between seeing the object and firing, and he did not

10 see Petit's hands go into a pocket or his waistband before shooting. (PAMF-69, 73).

11 Police officers, including Hayhoe, are trained that shots fired from a moving vehicle

12 are highly discouraged. (PAMF-117). Per LAPD policy: Firearms shall not be

13 discharged from a moving vehicle, except in exigent circumstances and consistent

14 with the policy regarding the use of deadly force. The driver of a vehicle should not

15 draw their weapon while operating a moving vehicle; the drawing of a weapon

16 while operating a moving vehicle is unsafe for both officers and the community.

17 (PAMF-118).

18    Before Glover fired, he heard two shots, formed the impression that Petit was

19 struck by a shot, and saw Petit go down. (PAMF-80-82). He did not see any muzzle

20 flash coming from Petit, could not see the object when he heard the two shots, and

21 should have known, based on his firearms training, that the two shots were fired

22 from the same gun. (PAMF-75-76, 114-115). After hearing the two shots, Glover

23 fired one shot, aiming at center mass toward Petit's back. (PAMF-86-87). When

24 Officer Glover fired his shot, Mr. Petit was already falling to the ground or on the

25 ground. (PAMF-83-84). Contagious fire in using deadly force can be considered a

26 use of excessive force. (PAMF-116). Glover agrees that based on his training, it

27 would have been inappropriate to shoot Petit once he was on the ground. (PAMF-

28

85). After the shooting, when the object was visible on the ground, Hayhoe stated, "I can't see the gun." (PAMF-93).

Basic police training and standards instruct that deadly force should only be used on the basis of an objectively reasonable belief that the suspect poses an immediate or imminent threat of death or serious bodily injury. (PAMF-100). Police officers are trained that a threat of death or serious bodily injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. (PAMF-101); Cal. Penal Code §835a (2024). Officers are trained that deadly force should only be used when no reasonable alternative measures are available and trained to give a verbal warning prior to using deadly force, when feasible. (PAMF-103-104). Neither Hayhoe nor Glover gave Petit a verbal warning that deadly force would be used before shooting him, even though it would have been feasible to do so. (PAMF-90-91, 105). Police officers are trained that an overreaction in using deadly force is excessive force, trained to control their fear, trained to de-escalate a situation and trained to give the individual an opportunity to comply with commands when it is safe to do so. (PAMF-106-109). Police officers are trained that they cannot shoot a person merely for seeing what they believe to be a gun in the person's hand. (PAMF-113).

## III.   ARGUMENT

### A. THE SHOOTING WAS EXCESSIVE AND UNREASONABLE

Fourth Amendment claims for excessive force are judged by "whether the officers' actions [we]re 'objectionably reasonable'" given "the facts and circumstances confronting them." *Graham*, 490 U.S. at 397. Government interest factors to weigh against "nature and quality of the intrusion" include the severity of the crime, whether the suspect poses an immediate threat of death or serious bodily injury, and whether he is actively resisting or attempting to evade arrest. *Id.* at 396.

Additional factors include availability of alternative measures or tactics to handle the situation, whether proper warnings were given, and "whether the suspect has exhibited signs of mental illness." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033-34 & n.9 (9th Cir. 2018); *see Nehad v. Browder*, 929 F.3d 1125, 1137-38 (9th Cir. 2019); *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("whenever practicable, a warning must be given before deadly force is employed").

Plaintiff disputes that a reasonable officer under this set of facts would have believed that the object Petit had was a gun or resembled a gun. Although "officers are often forced to make split-second judgments," "[n]ot all errors in perception or judgment ... are reasonable," and an officer's unreasonable factual mistake can lead to a constitutional violation. *Torres v. City of Madera*, 648 F.3d 1119, 1124, 1127 (9th Cir. 2011). When an officer's use of force is based on a mistake of fact, the question of whether the mistake was reasonable is a triable factual issue. *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1042 (C.D. Cal. 2021); Ninth Cir. Jury Instruction 9.25 (2024) (listing "whether a reasonable officer would have or should have accurately perceived a mistaken fact" as a factor for the jury to consider in excessive force cases).

### 1. No Serious Crime

The "severity of the crime" factor relates to the initial crime prompting police response. *See, e.g.*, *Lowry v. City of San Diego*, 858 F.3d 1248, 1257-58 (9th Cir. 2017). "Even when a suspect has … committed a serious crime prior to an officer's arrival, … a jury could discount the severity of the suspect's purported crimes when the suspect is … not engaged in felonious conduct when the officer arrives." *Singh v. City of Phoenix*, 124 F.4th 746, 752 (9th Cir. 2024)). Prior to arriving on scene, the officers had no information that Petit had injured anyone or fired any gunshots. Contrary to Defendants' assertion that "both 911 callers observed the subject with a gun," the officers received conflicting information as to whether Petit had a firearm, including a call that Petit possibly did not have a firearm. (Def. Mot. at 6:16-18).

-6-

Petit was not engaged in any criminal conduct when the officers contacted
him. He displayed the object to Glover and Martinez when given commands, kept
the object pointed downward, made no verbal threats toward the officers, and
merely walked away from Glover and Martinez. Further, this factor is mitigated by
the fact that Petit was outnumbered by law enforcement officers when deadly force
was used. *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994).

### 2. *No Immediate Threat*

"[T]he most important *Graham* factor is whether the suspect posed an
immediate threat" of death or serious bodily injury at the time that deadly force was
employed. *Mattos v. Agorano*, 661 F.3d 433, 441 (9th Cir. 2011). A "statement by
an officer that he fears for his safety or the safety of others is not enough; there must
be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272,
1281 (9th Cir. 2001). An officer's "desire to resolve quickly a potentially dangerous
situation" does not justify deadly force, nor does the fact that a suspect possesses a
weapon or what appears to be a weapon. *Id.; Calonge*, 104 F.4th at 48 ("We have
held over and over that a suspect's possession of a gun does not itself justify deadly
force."); *Harris*, 126 F.3d at 1204 ("Law enforcement officials may not kill suspects
who do not pose an immediate threat … simply because they are armed."). Here,
Petit did not have the ability (he was unarmed), opportunity (he did not turn toward
Hayhoe or point the object at any officer), or apparent intent (he was walking away,
attempting to avoid the officers) to immediately cause death or serious bodily injury
at the time of the shots. *See* Cal. Penal Code §835a.

Defendants' version of the facts, including their assertion that Petit
"brandished [the object] at multiple officers while assuming a shooting stance" is
not supported by the body-worn camera videos capturing the incident. (Def. Mot.
1:15-16). The videos do not show Petit "holding a black object in his hand as if he is
holding a gun with his finger on the trigger." (Def. Mot. at 6:15-16). Nor does the
evidence support Defendants' contention that Petit pointed the object at "them." (*Id.*

-7-

at 6:12-13). The Court cannot credit "visible fiction" when one version of events is "blatantly contradicted by the record"; it must instead "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). In *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), the Ninth Circuit recognized that circumstantial evidence can discredit an officer's claim that they perceived a deadly threat. Officers in that case killed an unarmed man whom they claimed reached for his waistband. The *Cruz* court denied summary judgment because a jury "could [] reasonably conclude that the officers lied" about what they had perceived. *Id.* at 1080. As in *Cruz*, a jury in this case could reasonably infer from the evidence that the officers did not actually perceive Petit pointing a gun at Hayhoe and find the officers' assertions to the contrary not credible.

Contrary to Defendants' arguments, none of the officers testified that they observed anything on the object that appeared to be a trigger or that they saw Petit take a shooting stance. Neither Hayhoe nor Glover testified that Petit pointed the object at Glover or Martinez. To the contrary, Glover told investigators that Petit held the object in a downward position during the initial contact, and Martinez admitted that he never told investigators that Petit pointed the object at him. As seen on the videos, Petit showed Glover and Martinez the object when asked, "what's that in your hands?" Petit then walked away from the officers with the object visible in his hand, and a reasonable jury could find Hayhoe's statements that he did not initially see anything in Petit's hands not credible.

a. *Hayhoe's Shots*

This incident occurred on a summer evening when school was not in session. The videos show that no civilians were in the vicinity. According to Hayhoe, he pointed his firearm at Petit before he saw any object in Petit's hands. Hayhoe admitted that Petit did not turn his upper body toward him prior to Hayhoe firing his shots and that he did not see Petit's hands go into his waistband or pockets. The videos do not support Defendants' contentions that Petit pointed the object at

Hayhoe or turned toward Hayhoe. In violation of police training, Hayhoe fired two shots out the window as his vehicle was moving. LAPD policy and basic police training discourages officers from shooting from a moving vehicle.

b. *Glover's Shot*

Glover's and Martinez's response to Petit showing them the object indicates Glover knew that the object was not a firearm. Glover did not shoot Petit when he observed the object for several seconds during the initial contact, belying Defendants' contentions that Petit pointed the object at him. A reasonable jury could find that if the object resembled a gun and if Petit pointed the object at Glover, he would have shot him during the initial contact. Tellingly, Martinez never fired any shots. After Petit displayed the object, Glover was advised by Martinez that the object was not a gun when he clearly heard Martinez state, "It's not a gun, bro." Glover generally trusts the statements of his partner officers, and Glover never identified the object as a gun with any certainty. Glover described the object as "funky." After seeing the object, the officers did not take cover or create distance, call for backup, yell out "gun!", did make any radio dispatches that Petit had a gun, or communicate to Hayhoe that they saw a gun. Further, officers are trained to distinguish firearms from other objects. After the shooting, when the object was on the ground, Hayhoe said, "I can't see the gun," presumably because the object did not look like a gun.

A reasonable jury could find Glover's testimony that he perceived Petit firing at Hayhoe dubious, and find that a reasonable officer would have recognized that both shots were coming from the patrol vehicle. Glover did not see any muzzle flash coming from Petit and could not see the object in Petit's hands when Hayhoe fired. A reasonable jury could also find that Glover engaged in "contagious fire." Glover stated that before he fired, he heard two shots, formed the impression that Petit was struck by a shot, and observed Petit go down. Indeed, the video shows that Glover fired his shot when Petit was falling to the ground or already on the ground,

1  including showing Petit's body position when Glover's bullet casing is ejected. It is
2  undisputed that when Glover, he was aiming at Petit's back while Petit was moving
3  away from him.

4                     c.  *Strickland is Inapposite*

5         In *Estate of Strickland v. Nevada Cnty.*, the decedent had a replica gun that all
6  officers on scene perceived to be a gun and was "presumably intended to look like a
7  real firearm." 69 F.4th 614, 622 (9th Cir. 2023). By contrast, here, the object Petit
8  had was not a replica firearm, and Martinez did not think it was a gun. Although the
9  *Strickland* court determined that a reasonable officer should not have known that
10 Strickland's gun was a replica, a reasonable jury in the instant case could easily
11 reach the opposite conclusion. Moreover, *Strickland's* holding turned on undisputed
12 evidence that Strickland pointed the replica gun at officers. *Id*. at 618, 621-22
13 (distinguishing *Strickland* from *Estate of Lopez*, *supra*, where whether the decedent
14 pointed the gun was disputed). Here, Plaintiff disputes that Petit pointed the object
15 at officers, creating a question of fact for the jury. Further, unlike the instant case, in
16 *Strickland*, the officers deployed a Taser at Strickland and gave him a warning prior
17 to resorting to deadly force. *Id*.

18                     3.  *No Forcible Resistance*

19        The videos show that Petit was walking away from the officers and
20 attempting to avoid contact with them. The Ninth Circuit has recognized that even
21 where an individual "continually ignored" commands … his level of resistance
22 provided little support for a use of significant force. *Bryan v. MacPherson*, 630 F.3d
23 805, 830 (9th Cir. 2010). It has likewise found that an individual's erratic behavior
24 and "failure to comply" was "a far cry from actively struggling with an officer" and
25 did not support use of significant force. *Id*.

26                     4.  *No Warning*

27        "Before using deadly force," officers "must, 'where feasible,' issue a
28 warning." *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir.

-10-

2022) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) ("A rational jury may find . . . a warning was practicable and the failure to give one might weigh against reasonableness"). Neither Hayhoe nor Glover warned Petit they would shoot unless he complied. A warning was feasible, given that Petit was committing no crime when the officers contacted him, there were no civilians in the vicinity, and Petit was merely walking away with the object in his hand.

### 5. *Reasonable Alternatives Available*

Officers also must "consider what other tactics if any were available" to effect an arrest, including "less intrusive methods." *Bryan*, 630 F.3d at 831 & n.15; *see Nehad*, 929 F.3d at 1135. Here, if the officers actually perceived Petit to be armed, they could have taken cover, including behind the ballistic doors of the patrol vehicles, called for backup, and set up a perimeter. The officers also could have created distance, made further observations of the object and given Petit further commands and time to comply with commands. The officers also had less lethal tools available, including the Taser, police baton, and pepper spray, but did not attempt to use them. (PAMF-39); *See Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012).

### 6. *Indications of Mental Illness*

Where a subject displays "indications of mental illness," "the government's interest in using deadly force [i]s diminished." *Vos*, 892 F.3d at 1034. Here, the officers should have recognized that Petit was mentally ill. The officers formed the impression that Petit was transient and understood that transient individuals often have mental health issues. The officers also heard Petit mumbling incoherently and observed his inability to comply with commands. 911 caller Ms. Mark perceived Petit to be mentally ill, which is circumstantial evidence that a reasonable officer in Hayhoe's and Glover's position would have recognized that Petit could be mentally ill. (PAMF-41-42).

1    Accordingly, a reasonable jury could deem the officers' uses of deadly force
2    excessive and unreasonable.

3    **B. THE OFFICERS ARE NOT ENTITLED TO QUALIFIED**
4    **IMMUNITY**

5    The officers are not entitled to qualified immunity for three reasons.  First,
6    disputed issues of material fact preclude granting qualified immunity on summary
7    judgment. *See, e.g.*, *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir.
8    2024) ("Where factual disputes exist as to the objective reasonableness of an
9    officer's conduct, the case cannot be resolved at summary judgment on qualified
10   immunity grounds."); *Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021);
11   *Longoria v. Pinal County*, 873 F.3d 699, 710 (9th Cir. 2017) ("Where the facts are
12   disputed, their resolution and determinations of credibility 'are manifestly the
13   province of a jury.").

14   Where genuine issues of material fact exist, a court must address a claim of
15   qualified immunity by resolving all factual disputes in the non-moving party's favor.
16   *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *Coles v. Eagle*,
17   704 F.3d 624, 629 (9th Cir. 2012). Here, disputed factual issues include: whether a
18   reasonable officer would think the object looked like a gun; whether Petit pointed
19   the object at any officer; whether Petit turned toward Hayhoe with the object in his
20   hand; whether Hayhoe violated training when he fired his shots from a moving
21   vehicle; whether Glover should have recognized that Petit was not firing any shots;
22   whether Petit was going to the ground or on the ground when Glover fired his shot;
23   whether Glover's shot was a result of contagious fire; whether the officers should
24   have recognized that Petit was mentally ill; and whether it was feasible for the
25   officers to give Petit a verbal warning that deadly force would be used and/or further
26   commands and time to comply with commands. In evaluating qualified immunity,
27   this Court must assume that the object did not look like a gun and that Petit did not
28   point the object at any officer.

-12-

Second, Petit's constitutional right to be free from excessive force under this set of facts was clearly established at the time of the shooting. Indeed, qualified immunity for the use of deadly force is routinely *denied* in cases *more severe* than this, where the suspects are armed with guns and have committed violent crimes.

In *Calonge*, 911 callers reported seeing Calonge carrying a handgun near a school. 104 F.4th at 42. Officers responded and commanded Calonge to "drop it" and show his hands. *Id*. Calonge walked away from the officers. *Id*. One officer shot Calonge in the back, alleging he saw Calonge's arm "bow out" as if he were drawing the gun. *Id*. at 43. Other officers on scene did not see Calonge "do anything that suggested he was pulling his gun out of his waistband during the minute before he was shot." *Id*. The Ninth Circuit denied qualified immunity and held that at the time of the incident in 2019, the law was clearly established that "[w]hen a man is walking down the street carrying a gun in his waistband, posing no immediate threat, police officers may not shout conflicting commands at him and then kill him." *Id*. at 48. The instant case is even stronger because the parties in Calonge did not dispute that the shooting officer reasonably believed Calonge was carrying a real firearm, whereas the object Petit had was not a replica firearm.

In *George, supra*, deputies responded to a "domestic disturbance involving a firearm," and were told a man was on the back patio "with his gun." Deputies observed the man holding a gun and, according to one deputy, he "turn[ed] … and raise[d]" it and "point[ed] it directly at [him]," such that the deputy could "see[] the … black hole [of] the barrel," at which time the deputy fired. *Id*. at 833 n.4. On the plaintiff's facts, however, the man held the gun "with the barrel pointing down." *Id*. at 832. Given the dispute regarding whether George ever manipulated the gun or pointed it directly at deputies, the Ninth Circuit denied summary judgment because "a reasonable fact-finder" could find the "use of force … excessive." *Id*. at 833, 838-39.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323-25 (9th Cir. 1991), officers contacted Curnow, who was beating a woman in a home next to a rifle. Officers alleged that Curnow grabbed the rifle before the first shot was fired. *Id*. In the woman's account of the shooting, however, Curnow held the gun but "did not point the gun at the officers and apparently was not facing them when they shot him the first time." *Id*. The Ninth Circuit denied qualified immunity based on this material factual dispute. *See also C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (deadly force is not objectively reasonable even when the subject had a gun). Similarly, here, the videos call into question Hayhoe's and Glover's credibility and dispute Defendants' claims that Petit pointed the object at Hayhoe.

In *Harris*, *supra*, Harris fired shots into the woods in the direction of officers and possibly struck an officer. 126 F.3d at 1193. The next day, officers returned and shot Harris when Harris was running away with a gun. *Id*. In denying qualified immunity, the Ninth Circuit held that "*Graham*'s totality of the circumstances test does not permit the use of deadly force to kill a suspect who … makes no threatening movement of any kind, even though the suspect [is armed,] had engaged in a shoot-out with law enforcement officers on the previous day and may have been the person responsible for the death of one of the officers." *Id*. at 1203.

In *Lopez v. Gelhaus*, *supra*, a civilian observed a man, Andy, walking down the sidewalk with what appeared to be a rifle in his hand. 871 F.3d at 1101. Andy refused officers' commands to drop the gun and turned toward the officers. *Id*. The officers alleged that Andy swung the gun toward them and that Gelhaus shot Andy when the barrel of the AK-47 was coming up. The plaintiff disputed that Andy pointed the gun at officers. *Id*. at 1103. In denying qualified immunity, the Ninth Circuit found that a reasonable jury could find that there was no immediate threat even if Andy had turned toward an officer with the gun and raised it slightly. *Id*. at 1162.

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In *Vos*, *supra*, the Ninth Circuit found a plausible constitutional violation where "officers confronted a reportedly erratic individual [who] cut someone with scissors, asked officers to shoot him, simulated having a firearm, and ultimately charged at officers with something in his upraised hand." *Id.* at 1035. Although the *Vos* court determined that at the time of the shooting (2014), existing precedent had not placed the conclusion that officers acted unreasonably in those circumstances beyond debate, the *Vos* court's decision subsequently put officers on notice (as of the 2018 decision) that such conduct could result in a constitutional violation.

In *Longoria*, officers had information that the driver of a stolen vehicle was armed. 873 F.3d at 703. Longoria exited his vehicle after a car chase, acted erratically, and disobeyed commands to show his hands. *Id.* The Ninth Circuit held that "[a] jury must determine [the officer's] credibility in light of … the videos" and denied qualified immunity to the defendant officer because "a reasonable jury could … conclude that [the officer] knew or should have known that Longoria was not holding a gun and that he did not assume a "shooter's stance" and could find that [the officer's] statements to the contrary were not credible." 873 F.3d at 710-11.

In *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010), officers shot and killed an unarmed suspect who refused to show his hands. One officer testified that she shot because she saw the suspect move his right arm and believed he would shoot her. Another officer testified that he saw something black in the suspect's hands that looked like a gun. The court denied qualified immunity and found that a jury could determine that the use of deadly force was unreasonable. *Id.* at 538.

In *Collender v. City of Brea*, 605 F. App'x 624 (9th Cir. 2015), an officer shot an armed robbery suspect (Julian) who was unarmed at the time of the shooting. The officer alleged that he pointed his rifle at Julian and told him to freeze; Julian instead ran toward him and lowered his arm towards his pocket, at which point the officer shot and killed Julian without warning. *Id.* at 627. The video of the incident

-15-

was "not definitive on whether Julian's hand went into the pocket." *Id*. The court denied qualified immunity and held that "a reasonable fact-finder could conclude that the [officer's] use of force was constitutionally excessive." *Id*. at 628–29. *See also A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016).

The above cases apply to both Hayhoe's and Glover's shots. Additionally, with respect to Glover's shot, it is clearly established that after a suspect is shot, the use of subsequent force is unreasonable where the suspect poses no immediate threat. *See, e.g.*, *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) (denying summary judgment where decedent was shot while on the ground, having already been shot); *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1002 (9th Cir. 2020); *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017).

Third, it is well established that an officer's violation of police training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable"). An officer who makes a conscious decision to violate basic training guidelines should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed their decision to be lawful. *See id*.

## C. DENIAL OF MEDICAL CARE

The law is clear that peace officers have a duty not to obstruct, delay or interfere with medical care. *See P.C. v. City of Los Angeles*, No. CV 07-3413-PLA, 2012 WL 12847227, at *11 (C.D. Cal. Sept. 14, 2012). As described above, the officers knew or should have known that the object Petit had was not a firearm. After Petit was shot, he was bleeding on the ground, and the object was visible on the ground. Given that Petit was severely injured and posed no threat, officers

1  should have immediately secured the object and allowed paramedics to immediately

2  treat Petit. Glover's BWC video shows that almost three minutes passed before

3  officers handcuffed Petit after the shooting, and almost another minute passed

4  before the trauma team was requested. (Plf. Ex. 1 at 2:18, 5:10, 5:56).

5      **D. STATE LAW CLAIMS**

6      Plaintiff is entitled to a jury trial on her state law claims because a reasonable

7  jury could conclude that the officers' uses of deadly force were objectively

8  unreasonable as discussed above in connection with Plaintiff's excessive force

9  claim. *See* Section IIIA, *supra*. Qualified immunity does not apply to state law

10  claims, nor are the officers immune under any statute. The City is vicariously liable

11  on Plaintiff's state law claims. Cal. Gov. Code § 815.2(a).

12      **1.  *Battery***

13      Fourth Amendment excessive force claims and state battery claims require

14  proof of an officer's unreasonable conduct, making federal cases instructive. *Munoz*

15  *v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004); CACI 1305B ("A

16  threat of death or serious bodily injury is "imminent" when … a reasonable officer

17  … would believe [the] person has the present ability, opportunity, and apparent

18  intent to immediately cause death or serious bodily injury."). A reasonable jury

19  could find that the shots fired by Glover and Hayhoe were objectively unreasonable

20  and not necessary to defend human life as described in detail above. *See also*

21  *Holloway v. City of Pasadena*, 2:15-cv-03867-CAS-JC, 2018 WL 8799884, at *8-9

22  (C.D. Cal. Nov. 8, 2018) (denying summary judgment where whether plaintiff ever

23  turned and pointed gun toward officer was disputed).

24      **2.  *Negligence***

25      The negligence analysis is even broader. In addition to the shooting itself

26  being a negligent use of deadly force, pre-shooting tactics "are relevant

27  considerations under California law in determining whether the use of deadly force

28  gives rise to negligence liability. Such liability can arise where the tactical conduct

and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 (2013); *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021); CACI 441 (instructing the jury to consider the officers' pre-shooting tactical conduct). Here, this includes Hayhoe's decision to pull his vehicle forward before verifying whether Petit had anything in his hand, Hayhoe firing shots from a moving vehicle, Glover's failure to communicate to Hayhoe or dispatch that he thought he saw Petit with a gun, and failures to take cover, call for backup, issue a verbal warning that deadly force would be used, and give further commands and time to comply with commands.

### 3. *Bane Act*

Hayhoe's shots and Glover's shot also support Plaintiff's Bane Act claim. The Ninth Circuit in *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018), held that reckless disregard for constitutional rights demonstrates specific intent to deprive those rights. *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017), confirmed that the Bane Act does not require a separate "threat, intimidation, or coercion" beyond the constitutional violation itself. Whether the officers knew their actions were unlawful is irrelevant; reckless disregard for Petit's right to be free from excessive force is sufficient. Given the facts, including shots fired from a moving vehicle and a shot fired without warning when Petit was going to the ground or on the ground, summary judgment must be denied on this claim under any applicable standard.

### 4. *Intentional Infliction of Emotional Distress*

On Plaintiff's facts, Hayhoe's and Glover's conduct toward Petit was outrageous and "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009); *see also Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n. 7 (1987) (behavior may be considered outrageous if a defendant abuses a position of power). There is

-18-

1    no reasonable dispute that the officers "intended to inflict injury or engaged in with

2    the realization that injury will result" when they fired their shots at Petit. *Hughes*, 46

3    Cal. 4th at 1051. A reasonable jury could find that the officers' shots caused Petit

4    "emotional distress of such substantial . . . or enduring quality that no reasonable

5    person in civilized society should be expected to endure it," *Id.*; *see also*

6    *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n. 17 (9th Cir. 2007)) (reversing

7    grant of summary judgment on intentional infliction of emotional distress claim

8    premised on alleged use of excessive force where there were disputes of fact

9    regarding whether the use of force was lawful).

10        **5.  *No Immunity***

11        "[I]t has long been established that [Cal. Gov. Code §820.2] does not apply to

12    officers who use unreasonable force in making an arrest." *Blankenhorn*, 485 F.3d at

13    463 (citing *Price v. County of San Diego*, 990 F. Supp. 1230 (S.D. Cal. 1998)

14    (§820.2 does not confer immunity for discretionary acts if officer uses unreasonable

15    force) and *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002)

16    ("California denies immunity to police officers who use excessive force in arresting

17    a suspect.")). "[E]ven if a public employee's act is classified as 'discretionary,' the

18    employee is not immune if the injury to another results, not from the exercise of

19    discretion to undertake the act, 'but from his negligence in performing it after

20    having made the discretionary decision to do so.'" *Conway v. County of Tuolumne*,

21    231 Cal. App. 4th 1005 (2014) (quoting *McCorkle v. City of Los Angeles*, 70 Cal. 2d

22    252, 261 (1969)); *Megargee v. Wittman*, 550 F.Supp.2d 1190 (E.D. Cal. 2008).

23        The narrow holding of *Conway* is inapplicable to the instant case. *Conway*

24    was not an excessive force case; rather, the plaintiff complained that the tear gas

25    deployment damaged his house. In *Conway*, the issue was "whether discretionary

26    immunity applies to the selection of the means used to effectuate an arrest." *Id.* at

27    1016. The *Conway* court prefaced its analysis by stating, "discretionary immunity

28    does not apply to … using unreasonable force when making an arrest," which was

not the issue in *Conway*. *Id*. at 1015. The *Conway* court made clear that its decision was not so broad "so that every action by an officer, no matter how minor, will be subject to immunity as long as the officer states he … made a choice between two options." *Id*. at 1021. Hayhoe and Glover did not have discretion to use excessive force against Petit.

## IV.    PUNITIVE DAMAGES

Punitive damages awards are permitted on "various[] standards of negligence, recklessness, carelessness, or other culpable conduct short of actual malicious intent." *Smith v. Wade*, 461 U.S. 30, 45 (1983); *see Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (a jury may assess punitive damages under §1983 when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others"; actual intent or malice not required). "[O]ppressive conduct is [also] a proper predicate for punitive damages under §1983. … An act [] is oppressive if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability … of another person." *Dang v. Cross*, 422 F.3d 800, 809, 815 (9th Cir. 2005) (reiterating that various standards exist as separate and distinct bases for punitive damages and holding that the "district court prejudicially erred in refusing to instruct the jury that punitive damages could be awarded if it found that [the officer's] acts that caused [the plaintiff's] injuries were oppressively done."). Here, a reasonable jury could find that shooting the unarmed Petit without warning, including the shot fired to the back when Petit was going to the ground or on the ground, satisfies one or more of the various standards for awarding punitive damages, including that the shooting was oppressive and done with reckless or callous indifference to Petit's right to be free from excessive force.

/ / /

## V.    CONCLUSION

For all of the foregoing reasons, Defendants are not entitled to summary judgment or any immunity. Material facts remain in genuine dispute as to whether the officers' uses of deadly force was objectively reasonable. Because these issues must be resolved by a jury, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety.

Dated: November 21, 2025                    LAW OFFICES OF DALE K. GALIPO

                                            By:  _____*/s/ Renee V. Masongsong*_____
                                                 Dale K. Galipo
                                                 Renee V. Masongsong
                                                 Attorneys for Plaintiff


Dated: November 21, 2025                    IVIE MCNEILL WYATT
                                            PURCELL & DIGGS

                                            By:  _____*/s/ Rodney S. Diggs*_____
                                                 Rodney S. Diggs
                                                 Attorney for Plaintiff

## **L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Steffon Petit, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.2.

Dated: November 21, 2025                    LAW OFFICES OF DALE K. GALIPO

By: _____*/s/ Renee V. Masongsong*_____
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff