LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

Rodney S. Diggs, Esq. (SBN 274459)
rdiggs@imwlaw.com
IVIE MCNEILL WYATT PURCELL & DIGGS,
A Professional Law Corporation
444 S. Flower Street, Suite 3200
Los Angeles, CA 90071
Tel:   (213) 489-0028
Fax;   (213) 489-0552

Attorneys for Plaintiff, Ashlyn Petit

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as successor-in-interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; DARYL GLOVER, JR.; BRETT HAYHOE,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW-PVC<br><br>Assigned to:<br>Hon. District Judge Otis D. Wright, II<br>Hon. Magistrate Judge Pedro V. Castillo<br><br>**PLAINTIFF'S EVIDENTIARY OBJECTIONS**<br><br>[*Filed concurrently with Plaintiff's Memorandum of Points and Authorities; Plaintiff's Responsive Separate Statement; Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Richard Bryce*]<br><br>Date:   December 22, 2025<br>Time:  1:30 p.m.<br>Place:  Ctrm. 5D |

**TO THE HONORABLE COURT AND DEFENDANTS, CITY OF LOS ANGELES, BRETT HAYHOE AND DARYL GLOVER JR. THROUGH THEIR ATTORNEYS OF RECORD:**

Pursuant to Local Rule 56-2 and the Court's Scheduling and Case Management Order (Dkt. 73), Plaintiff Ashlyn Petit hereby respectfully submits this Objections to Evidence.

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| 1. At approximately 7:22 p.m. on July 18, 2022, the Los Angeles Police Department ("LAPD") dispatch received a 911 call from Witness Tod Tramel, who reported that a dark-skinned black male with dreadlocks pulled out a black handgun after Tramel told him to leave the area. Mr. Tramel further described that the subject was wearing black pants and a green long-sleeved shirt and informed dispatch that his address, where the interaction occurred, was 4135 Edgehill Drive in Los Angeles.<br><br>Ex. "A," CAD at p. 1;<br>Ex. "B," Tramel Call at 00:00-02:28;<br>Ex. "C," - Tramel Depo. at 23:11-26:4. | Relevance (FRE 401, 402); Hearsay (801, 802). Officers Glover and Hayhoe did not hear the 911 calls. Accordingly, the 911 calls themselves, as opposed to what the officers heard from dispatch, constitutes information unknown to the officers at the time of the shooting in violation of *Graham v. Connor*, 490 U.S. 386, 397 (1989). Additionally, the 911 calls are hearsay statements. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| 2. About a few minutes later, dispatch received a call from Witness Hanna Mark, who reported concerns about a man walking around her neighborhood and burning items in the middle of the street. She reported the man's location as 41st and Edgehill, one block from Audubon Middle School. Ms. Mark described him as a tall, thin black man with dreads and said he had a few items in his hands.<br><br>Ex. "A," CAD at p. 2;<br>Ex. "D," Mark Call 1 at 0:10-1:15;<br>Ex. "E," Mark Depo. at 8:13-25, 10:1-9. | Relevance (FRE 401, 402); Hearsay (801, 802). Officers Glover and Hayhoe did not hear the 911 calls. Accordingly, the 911 calls themselves, as opposed to what the officers heard from dispatch, constitutes information unknown to the officers at the time of the shooting in violation of *Graham v. Connor*, 490 U.S. 386, 397 (1989). Additionally, the 911 calls themselves are hearsay statements. |
| 3. The dispatcher asked whether the man was wearing a long-sleeved shirt, and when Ms. Mark confirmed that he was, the dispatcher informed her that someone else called 911 earlier about the same person. The dispatcher said first caller reported that the man had a gun and asked Ms. Mark if she saw the man holding a gun. She said at first she thought she saw a gun in his hand but now could not see him well enough to confirm.<br><br>Ex. "D," Mark Call 1 at 1:16-2:22;<br>Ex. "E," Mark Depo. at 13:21-16:3. | Relevance (FRE 401, 402); Hearsay (801, 802). Officers Glover and Hayhoe did not hear the 911 calls. Accordingly, the 911 calls themselves, as opposed to what the officers heard from dispatch, constitutes information unknown to the officers at the time of the shooting in violation of *Graham v. Connor*, 490 U.S. 386, 397 (1989) and *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014). Additionally, the 911 calls are hearsay statements. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| 4. Dispatch broadcasted a call over the radio to LAPD's Southwest Station for an Assault with a Deadly Weapon ("ADW") suspect described as a transient male black with dreadlocks wearing black pants and green long-sleeved shirt. The call also stated that the subject threatened a reporting party with a black handgun. Dispatch later relayed the information from Mark's call reporting that the ADW suspect was walking on 41st Street towards Audubon Middle School and that it was unknown if he had a handgun but he was holding a stick and lighting trash on fire.<br><br>Ex. "F," Glover Depo. at 20:1-21:21; Ex. "G," Hayhoe Depo. at 14:13-15:6; Ex. "H," Dispatch at 2:20-2:55, 5:12-24, 6:04-40; Ex. "I," Martinez Depo. at 37:17-38:8; Glover Decl. at ¶ 4-5. | |
| 5. At approximately 7:27 p.m., Officers E. Gonzales and D. Gonzalez arrived in the area and began looking for Petit. About five minutes later, Witness Hanna Mark flagged down Officer Gonzales in his patrol vehicle. Ms. Mark confirmed that she had called 911 earlier and reiterated that she thought she may have seen the man with a gun but was not sure.<br><br>Ex. "E," Mark Depo. at 25:23-28:4; Ex. "J," Gonzales BWC at 0:00-0:34. | |

| Defendants' Allegedly Uncontroverted Facts & Evidence | Plaintiff's Evidentiary Objections |
|---|---|
| 6. Ms. Mark called 911 again and reported that the man was walking on Degnan Boulevard, north of Martin Luther King Blvd, to update them about Petit's location. Ms. Mark reiterated that he may have been holding a small gun in his right hand.<br><br>Ex. "E," Mark Depo. at 20:25-22:22;<br><br>Ex. "K," Mark Call 2 at 0:00-2:24. | Relevance (FRE 401, 402); Hearsay (801, 802).<br><br>Officers Glover and Hayhoe did not hear the 911 calls. Accordingly, the 911 calls themselves, as opposed to what the officers heard from dispatch, constitutes information unknown to the officers at the time of the shooting in violation of *Graham v. Connor*, 490 U.S. 386, 397 (1989) and *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014). Additionally, the 911 calls are hearsay statements. |
| 7. Shortly thereafter, Sergeant Brett Hayhoe, Officer Daryl Glover, Jr., and Officer Nelson Martinez responded to the scene to assist with locating the suspect. Sgt. Hayhoe eventually found a man matching the description, later identified as Jermaine Petit, walking south on Degnan Boulevard north of Martin Luther King Boulevard. Sgt. Hayhoe continued driving on Martin Luther King Boulevard and observed Officers Glover and Martinez approaching in their patrol vehicles. Sgt. Hayhoe parked his patrol car and alerted Officers Glover and Martinez of Petit's location.<br><br>Ex. "A," CAD at p. 2;<br>Ex. "G," Hayhoe Depo. at 15:15-16:16;<br>Ex. "H," Dispatch at 13:17-13:44; | |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| Ex. "I," Martinez Depo. at 39:4-12, 44:3-22. | |
| 8.  Officers Glover and Martinez drove in the direction of Petit, who was walking west on Martin Luther King Boulevard towards Bronson Avenue.<br><br>Ex. "F," Glover Depo. at 22:25-24:6. | |
| 9.  At approximately 7:33 p.m., Officer Martinez exited his patrol vehicle and approached Petit with his gun drawn in the low-ready and commanded him to "come here." Petit ignored him and continued walking westbound. Officer Martinez followed and ordered Petit multiple times to get his hands out of his pockets because he perceived that Petit was repeatedly moving his right hand near his waistband and in and out of his pocket.<br><br>Ex. "F," Glover Depo. at 25:10-11;<br><br>Ex. "I," Martinez Depo. at 42:20-43:8, 49:16-53:5, 74:10-11, 75:10-12;<br><br>Ex. "L," Martinez BWC at 1:40-2:01. | |
| 10. While Officer Martinez was attempting to engage Petit, Officer Glover did not see anything in Petit's hands. However, Officer Glover observed that Petit did not appear to be complying with Officer Martinez's commands, so Officer Glover repositioned his vehicle in | |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| an attempt to block Petit's path and order him against a fence to initiate a detention and investigation into his possible involvement in the calls for service.<br><br>Ex. "F," Glover Depo. at 24:22-26:15; Ex. "G," Martinez BWC at 1:50-1:57; Ex. "M," Glover BWC at 1:46-1:55; Glover Decl. at ¶ 7. | |
| 11. Officer Glover parked, exited his vehicle, and approached Petit with his gun drawn and ordered Petit to get up against the wall. Officer Glover then noticed that Petit held a black object in his hand. He asked Petit what was in his hand. Petit mumbled, "Come and get it. Come and get it." However, Officer Glover could not understand what Petit said.<br><br>Ex. "F," Glover Depo. at 26:16-29:14; Ex. "I," Martinez BWC at 1:57-2:06; Ex. "M," Glover BWC at 1:41-2:06. | Relevance (FRE 401, 402). Glover did not hear what Petit said at the time, such that this statement constitutes information unknown to Glover at the time of the shooting in violation of *Graham v. Connor*, 490 U.S. 386, 397 (1989) and *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014). |
| 12. Petit continued walking while turning his body to face Officer Glover, pointing the object in his right hand in Officer Glover's direction.<br><br>Ex. "F," Glover Depo. at 36:1-24, 49:11-17; Ex. "L," Martinez BWC at 2:04-2:13. | |
| 13. Officer Glover perceived that the object resembled a black handgun and repeated his command for Petit | Compound. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| to identify what was in his hand. However, Petit continued walking. Officer Glover did not take cover because there were no immediate objects near him that he believed could be used as cover.<br><br>Ex. "F," Glover Depo. at 49:4-7, 61:6-14;<br>Ex. "M," Glover BWC at 2:03-2:07. | |
| 14. Officer Martinez saw a black object in Petit's right hand and was unsure of whether it was a gun. He questioned himself aloud about whether it was a gun.<br>Ex. "I," Martinez Depo. at 52:5-54:20. | |
| 15. Although Officer Martinez stated that the object was not a gun, Officer Glover still perceived that the object could be a handgun, based on his training and experience and inability to confirm. Officer Glover attempted to clarify with Officer Martinez why he thought the object might not be a gun. Sgt. Hayhoe did not hear Officer Martinez's statement.<br><br>Ex. "F," Glover Depo. at 31:4-32:4, 40:19-41:16; Ex. "G," Hayhoe Depo. at 36:15-21; Glover Decl. at ¶ 8. | Compound. |
| 16. In his experience as a peace officer, Officer Glover has made numerous arrests of persons armed with guns, including unconventional or "street" guns, including in the area where we were responding to | Relevance (FRE 401, 402). |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| the call for service. These unconventional firearms are sometimes made from different materials and sometimes do not completely resemble traditional firearms. Once such firearm that he has observed during an arrest was made out of a cell phone but was fully functional and capable of firing bullets.<br><br>Glover Decl. at ¶ 8. | |
| 17.  Officer Glover perceived that Petit could pose a threat of harm to bystanders in the area, particularly because he had yet to determine whether Petit was armed. He and Officer Martinez followed after Petit to detain him, whom Officer Glover believed was attempting to evade the officers.<br><br>Glover Decl. at ¶ 9. | Compound.<br><br>Misstates the relevant standards on the use of deadly force.<br><br>An imminent harm is *not merely a fear of future harm,* no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances must be instantly confronted and addressed.<br>Declaration of Richard Bryce at ¶ 3c. |
| 18. Also concerned about the safety of those in the residential area, Sgt. Hayhoe began driving alongside Petit at a slow speed, with the overhead lights of his marked black and white police vehicle activated, intending to block his path of travel to prevent him from fleeing from the officers. Children were playing just on the other side of the street of where officers were attempting to detain Petit. | Misstates the relevant standards on the use of deadly force.<br><br>An imminent harm is *not merely a fear of future harm,* no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances must be instantly confronted and addressed.<br>Declaration of Richard Bryce at ¶ 3c. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| Ex. "G," Hayhoe Depo. at 23:10-17, 24:11-25:24, 41:7-10; Ex. "M," Glover BWC at 2:05-2:14; Ex. "N," Hayhoe BWC at 1:16-1:25; Ex. "O," Ring Video at 0:00-0:45; Hayhoe Decl. at ¶¶ 5-6. | |
| 19.  Sgt. Hayhoe was very familiar with the area and concluded Petit posed a potential threat of harm to others because: (1) Petit was on a busy street in a residential area; (2) there was a school on the opposite side of the street of where Petit was traveling; and (3) there was a large shopping mall two blocks north in the direction Petit was fleeing. Sgt. Hayhoe believed that the incident could escalate if Petit were to travel to the shopping mall or school, especially since the call for service reported that Petit brandished a gun at one of the 911 callers.<br><br>Ex. "G," Hayhoe Depo. at 39:21-41:10; Hayhoe Decl. at ¶ 6. | Misstates the relevant standards on the use of deadly force.<br><br>A potential threat is not enough. An imminent harm is *not merely a fear of future harm,* no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances must be instantly confronted and addressed. Declaration of Richard Bryce at ¶ 3c. |
| 20.  Prior to driving his vehicle alongside Petit, Sgt. Hayhoe looked but could not see anything in Petit's hands. It was Sgt. Hayhoe's belief that Petit was resisting the officers' efforts to detain him.<br><br>Ex. "G," Hayhoe Depo. at 18:18-24, 22:22-23, 25:16-24, 27:1-17, 33:12-15. | |
| 21.  After Sgt. Hayhoe's patrol vehicle appeared near Petit, Petit began | Compound. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| moving more quickly. Officer Glover and Martinez continued to pursue him on foot. Officer Martinez yelled at Petit to "drop it!" Ex. "G," Hayhoe Depo. at 33:20-23, 49:24-25; Ex. "L," Martinez BWC at 2:13-2:16; Ex. "M," Glover BWC at 2:05-2:14; Ex. "O," Ring Video at 0:45-0:50. | |
| 22.  As Sgt. Hayhoe got closer, he observed that Petit's hands were near his waistband/midsection area and that Petit was intermittently turning towards him (Sgt. Hayhoe). He then observed Petit turn to face him in what he perceived to be a shooting stance. Although he had yet to see an object in Petit's hands, Sgt. Hayhoe perceived that Petit might be armed based on his body positioning and issued multiple commands for Petit to "drop it" through the open passenger side window. Ex. "G," Hayhoe Depo. at 29:13-20, 35:3-18; Ex. I," Martinez Depo. at 59:8-22; Ex. "M," Glover BWC at 2:15-2:17; Ex. "N," Hayhoe BWC at 1:25-1:36; Ex. "O," Ring Video at 0:50-1:06. | Compound. |
| 23.  Shortly thereafter, Sgt. Hayhoe saw a dark-colored object, including what appeared to be the barrel of a handgun, in Petit's hand. He concluded that Petit was pointing a | Compound. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| semiautomatic handgun at him in a shooting position. Sgt. Hayhoe gave Petit multiple commands to drop the item. Perceiving that Petit was getting ready to shoot at him, Sgt. Hayhoe discharged his duty weapon at Petit.<br><br>Ex. "G," Hayhoe Depo. at 50:19-51:11; Ex. "M," Glover BWC at 2:15-2:17; Ex, "N," Hayhoe BWC at 1:25-1:36; Ex. "O," Ring Video at 0:50-1:06; Hayhoe Decl. at ¶ 6. | |
| 24.  After the first shot, Sgt. Hayhoe observed that Petit was still holding the object, which he believed to be a handgun and perceived that Petit still had the ability to shoot at him.<br><br>Ex. "G," Hayhoe Depo. at 43:10-13; Hayhoe Decl. at ¶ 6. | |
| 25.  After seeing Petit turn his body in the direction of the patrol vehicle and hearing the shots fired, Officer Glover perceived that Petit and the officer inside the patrol vehicle exchanged fire. This furthered Officer Glover's suspicion that the object Petit was holding in his hand was a handgun. Perceiving that Petit might try to fire at the officer in the vehicle again, Officer Glover fired his duty weapon once at Petit.<br><br>Ex. "F," Glover Depo. at 37:22-38:14, 42:10-14, 54:10-56:5; Ex. "M," Glover BWC at 2:13-2:16; Ex. "O," Ring | Compound. |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| Video at 0:50-1:06; Glover Decl. at ¶ 10. | |
| 26.  As Officers Glover and Martinez approached Petit, Petit began moving his left arm. They ordered Petit to stop moving and to "stop reaching for it." Officer Glover still perceived that the object Petit was holding, and now on the ground next to him, was a firearm. Sgt. Hayhoe, who could not see the object he believed was a gun, instructed the officers to take cover. Sgt. Hayhoe asked if anyone could see the gun.<br><br>Ex. "F," Glover Depo. at 38:25-39:2, 59:21-60:24, 63:3-4; Ex. "G," Hayhoe Depo. at 55:5-25; Ex. "I," Martinez BWC at 2:26-2:42; Ex. "M," Glover BWC at 2:16-2:38. | Compound. |
| 27.  Officer Glover and Sgt. Hayhoe still perceived that the item was a gun even after they saw the object when they approached Petit. The officers only learned that the object was not a gun during the department's subsequent investigation.<br><br>Ex. "G," Hayhoe Depo. at 57:1-12; Glover Decl. at ¶ 11. | |
| 28. At approximately 7:37 p.m., Officer Martinez radioed "shots fired." To safely approach Petit, | |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| unsure of whether he had any other weapons on his person or whether he would reach for the object they still perceived to be a firearm, the officers developed a tactical plan to approach him and take him into custody.<br><br>Ex. "A," CAD at p. 3; Ex. "H," Dispatch at 13:56-14:22; Ex. "L," Martinez BWC at 2:42-4:52; Ex. "M," Glover BWC at 3:27-4:59; Ex. "N," Hayhoe BWC at 1:50-3:17; Glover Decl. at ¶ 10; Hayhoe Decl. at ¶ 7. | |
| 29. Once backup arrived, officers approached Petit with a ballistic shield. Officer Glover instructed another officer on scene to get a trauma kit. Officer Anthony Gomez began to administer chest compressions to Petit.<br><br>Ex. "H," Dispatch at 15:08-15:19; Ex. "I," Martinez BWC at 4:52-6:38; Ex. "M," Glover BWC at 4:59-6:05; Ex. "N," Hayhoe BWC at 3:17-5:56. | |
| 30. At approximately 7:38 p.m., Officer Martinez, who was standing next to Officer Glover, radioed for a rescue ambulance. Los Angeles Fire Department ("LAFD") firefighters and paramedics responded to the scene and transported Petit to the hospital.<br><br>Ex. "A," CAD at p. 3, 12; Ex. H," Dispatch at 17:35-17:50. | |

| DEFENDANTS' ALLEGEDLY UNCONTROVERTED FACTS & EVIDENCE | PLAINTIFF'S EVIDENTIARY OBJECTIONS |
|---|---|
| 31. As a result of the incident, the Los Angeles City Attorney's Office filed the following criminal charges against Petit: two counts each for violation of Penal Code section 417.4 (brandishing an imitation firearm in a threatening manner) and Penal Code section 148(a)(1) (resisting arrest).<br><br>RJN. | Relevance (FRE 401, 402)—this constitutes information unknown to the officers at the time of the shooting. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014). Additionally, the criminal case documents constitute hearsay. (FRE 801, 802). |

DATED: November 21, 2025          LAW OFFICES OF DALE K. GALIPO

By: _____
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff, Ashlyn Petit

Dated: November 21, 2025          IVIE MCNEILL WYATT
PURCELL & DIGGS

By: _____*/s/ Rodney S. Diggs*_____
Rodney S. Diggs
Attorney for Plaintiff