RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE y WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile:  (213) 489-0552

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:  (818) 347-3333
Fax:  (818) 347-4118

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLYN PETIT, as successor-in-interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br><br>Assigned to:<br>Hon. District Judge Otis D. Wright, II<br>Hon. Magistrate Judge Pedro V. Castillo<br><br>**DECLARATION OF PLAINTIFF'S POLICE PRACTICES EXPERT RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Plaintiff's Memorandum of Points and Authorities; Declaration of Renee V. Masongsong and Exhibits thereto; Plaintiff's Responsive Separate Statement*]<br><br>Date:  December 22, 2025<br>Time:  1:30 p.m.<br>Place:  Ctrm. 5D |

-1-
DECLARATION OF RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# DECLARATION OF RICHARD BRYCE

I, Richard Bryce, declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including the type and degree of force, if any, appropriate under different circumstances. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so. My opinions are based in part on my training, professional experience and education. My qualifications to review this case are set forth in detail in my curriculum vitae, which is attached hereto as "Exhibit 1."

2. Before reaching my opinions in this case, I reviewed the pertinent case materials, including but not limited to the following: (1) Los Angeles Police Department ("LAPD") Force Investigation Division ("FID") Report, including scene photographs; FID statement of Daryl Glover, Jr.; FID statement of Nelson Martinez; FID statement of Brett Hayhoe; witness statements; summary report of 911 call; (2) Audio-recorded interviews; (3) Deposition transcripts of Daryl Glover, Jr., Brett Hayhoe, and Nelson Martinez; (4) Body-worn camera videos of Daryl Glover, Jr., Brett Hayhoe, and Nelson Martinez; (5) Radio call recordings.

3. Basic police training and Peace Officer Standards and Training ("POST") provides the following standards with respect to the use of deadly force.

   a. A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person. *See California Penal Code Section 835a.*

   b. A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and

apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. *California Penal Code Section 835a(e)(2).*

   c. Deadly force can only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. Subjective fear alone does not justify the use of deadly force.

   d. Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force.

   e. Police officers are trained that the decision to use deadly force must be guided by the reverence for human life.

   f. Pursuant to basic police training and standards, an officer must justify every shot he or she fires.

   g. Basic police training teaches that an overreaction in using deadly force is excessive force.

   h. Police officers are trained that deadly force should only be used when no reasonable alternative measures are available.

   i. Police officers are trained to give a verbal warning before using deadly force, where feasible.

4. Additionally, police officers are trained that shooting from a moving vehicle is highly discouraged. Sergeant Hayhoe unnecessarily shot Mr. Petit from a moving vehicle, which is contrary to basic police training and tactics. The LAPD has a policy on this, which states as follows:

-3-
DECLARATION OF RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

>Firearms shall not be discharged from a moving vehicle, except in exigent circumstances and consistent with the policy regarding the use of deadly force. The driver of a vehicle should not draw their weapon while operating a moving vehicle; the drawing of a weapon while operating a moving vehicle is unsafe for both officers and the community. If an officer determines that it is necessary to draw their firearm while operating a vehicle, it should be to address an imminent threat and conform to the Department's policy on drawing and exhibiting firearms.

LAPD Manual, Vol. No. 1., Section 556.10. There was no imminent threat when Sergeant Hayhoe drew his firearm and no imminent threat when he discharged his firearm.

5. Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for the officers to shoot at Mr. Petit for fleeing or walking away from the officers and disobeying verbal commands. Prior to shooting Mr. Petit, the officers had no information Mr. Petit injured or killed anyone. Mr. Petit did not have a gun or other weapon, Mr. Petit posed no immediate threat of death or serious bodily injury necessitating the use of deadly force, and the officers did not give Mr. Petit a verbal warning that deadly force would be used.

6. The officers failed to consider reasonable alternative measures to shooting. Less-lethal options were available, including taking cover and waiting for backup. Police officers are trained to take cover, create distance, and yell out, "gun" if they see what they believe to be a firearm in a suspect's hand. If the officers believed that Mr. Petit had a gun, then they should have taken cover, which was available by the police vehicles' ballistic door panels. If Glover believed that he saw a gun, then that would have been important information to communicate to Sgt. Hayhoe. Well trained officers in the position of Hayhoe and Glover also would have requested back up officers and an air unit to assist. Rather than taking cover and calling for backup, Officer Glover pursued Mr. Petit on foot. The officers also had less-lethal tools available, including a Taser, police baton, and pepper spray.

7. A reasonable officer in the positions of Hayhoe and Glover would not have believed that the object Mr. Petit had was a gun or looked like a gun. Glover in particular observed the object in Mr. Petit's hand for a period of time, and he was advised by Officer Nelson Martinez that the object was not a gun. Based on Officer Martinez's statement, "It's not a gun, bro," on the video, Officer Martinez did not think the object was a gun. Officer Martinez did not find it necessary to use deadly force after he determined that the object in Mr. Petit's hand was not a firearm. Police officers are trained to distinguish guns from other objects. Notably, the officers did not shoot Mr. Petit during the initial contact when Mr. Petit showed them the object in his hand, and it would not have been appropriate for the officers to shoot Mr. Petit at that time.

8. When Sgt. Hayhoe fired his two shots, a reasonable officer in the position of Officer Glover would have known that both shots were coming from the patrol vehicle. Officer Glover stated that he believed that Mr. Petit had fired one of the two shots, but he did not see any muzzle flash coming from Mr. Petit, and he could not see the object when he heard Sgt. Hayhoe's two shots. Officers are trained to fire shots in pairs ("double tap"). Based on basic police training and firearms training, a reasonable officer in the position of Officer Glover would have recognized that both shots were discharged from the same firearm. Officer Glover stated in his initial interview that he observed Mr. Petit go down after he heard the two shots. Officer Glover's shot appears to be a reactionary shot or case of contagious fire, where one officer firing their weapon triggers another officer to do the same.

9. From the standpoint of police practices, including basic police training, POST standards, both Sgt. Hayhoe's and Officer Glover's uses of deadly force were improper, inappropriate, excessive and unreasonable, including for the following reasons:

a. <u>No Immediate Defense of Life Situation</u>.  Police officers are trained that they can only use deadly force in an Immediate Defense of Life Situation, in other words, when there is an immediate or imminent threat of death or serious bodily injury.  A fear of future harm is not enough.  There was no immediate defense of life situation when Sgt. Hayhoe fired his shots and no immediate defense of life situation when Officer Glover fired his shot.

b. <u>No crime in progress</u>. From the time that the officers arrived on scene until the time of the shooting, the officers had ample time to observe the object, de-escalate the situation, and give appropriate commands and warnings.  There was no rush, as there was no crime in progress.

c. <u>No crime involving the infliction of serious injury or death.</u>  The officers were not not responding to a crime involving the infliction of death or serious bodily injury.

d. <u>Cannot shoot for fleeing or walking away</u>. The officers could not justify shooting Mr. Petit for fleeing or for walking away and disobeying verbal commands. The officers had no information that Mr. Petit had killed or injured anyone prior to the shooting.

e. <u>Indications of mental illness.</u> A reasonable and well-trained police officer in the position of Sergeant Hayhoe and Officer Glover. would have initially determined that Mr. Petit was mentally ill or experiencing a mental health crisis.

f. <u>Subjective fear is insufficient</u>.  Basic police training requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." Mr. Petit posed no immediate threat of death or serious bodily injury at the time that any of the shots were fired.

DECLARATION OF RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    g. <u>Unarmed</u>.  Mr. Petit did not have a firearm or other weapon during this incident. Prior to any shots being fired, Officer Nelson Martinez stated to Officer Glover, "It's not a gun, bro." The officers had time to reassess any potential threat after Officer Martinez stated that the object was not a gun. It was later determined that the object Mr. Petit had a was a vehicle trunk latch or lock actuator. Officer Glover did not see the object in Mr. Petit's hands when Officer Glover fired his shot.

    h. <u>Gun in hand not enough</u>. Basic police training teaches that police officers cannot shoot a subject merely for seeing a gun or what they believe to be a gun in the subject's hand—there must be additional factors to justify the use of deadly force.

    i. <u>No verbal threats</u>.  Mr. Petit never verbally threatened to harm any of the officers.

    j. <u>Reasonable alternative measures available</u>.  Officers are trained that they can only use deadly force in a "last resort" situation.  The officers had other reasonable measures available, including taking cover, using a Taser if necessary, waiting for backup, giving further commands, and setting up a perimeter for later apprehension.

    k. <u>No reverence for human life</u>.  Police officers are trained that they must show a reverence for human life.

    l. <u>Police officers are responsible for justifying every shot</u>.  Police officers are trained that they must justify every shot they fire.

    m. <u>Overreaction</u>. The officers overreacted when they shot Mr. Petit, and an overreaction in using deadly force is considered excessive force.

    n. Additionally, with respect to Officer Glover's shot:

        i. <u>Shots fired when Mr. Petit was falling to or on the ground</u>. Officer Glover fired his shot after Mr. Petit was struck by one of

-7-
DECLARATION OF RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sergeant Hayhoe's shots. The body-worn camera videos indicate that when Officer Gover fired his shot, Mr. Petit was falling to the ground or already on the ground.

  ii. <u>Shot fired to the back</u>. When Officer Glover fired, he was aiming toward Mr. Petit's back.

  iii. <u>Contagious fire</u>. Officer Glover's shot appears to be a reactionary shot or case of contagious fire. Contagious fire in using deadly force can be considered a use of excessive force. A reasonably well-trained officer in the position of Officer Glover should have known that Mr. Petit was not the one firing shots and should have known that the two shots (Hayhoe's shots) came from the same firearm, including because officers are trained to fire in pairs. Officer Glover did not see any muzzle flash coming from Mr. Petit, and he could not see the object when he heard Sgt. Hayhoe's two shots.

 j. Additionally, with respect to Sergeant Hayhoe's shots:

  i. <u>Violation of basic police training.</u> Sergeant Hayhoe violated basic police training and standards when he fired from a moving vehicle.

I declare under penalty of perjury that the foregoing is true and correct, and that this was executed this 21st day of November, 2025 at Mapleton, Utah.

_/s/ Richard Bryce_
Richard Bryce

-8-
DECLARATION OF RICHARD BRYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT