# EXHIBIT 6

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ASHLYN PETIT, as successor-in- )
     interest to JERMAINE PETIT,    )
 5   deceased,                      )
                                    )
 6          Plaintiff,              )
                                    )
 7   v.                             )
                                    )
 8                                  )
     CITY OF LOS ANGELES, a         ) Case No.
 9   municipal entity; OFFICER DARYL) 2:23-cv-00789-CJC(PVCx)
     GLOVER, JR.; SERGEANT BRETT    )
10   HAYHOE; and DOES 1 through     )
     10, inclusive,                 )
11                                  )
            Defendants.             )
12   _____)

13

14

15            VIDEOTAPED DEPOSITION OF:

16            OFFICER NELSON MARTINEZ,

17            THURSDAY, AUGUST 28, 2025

18

19

20

21

22

23

24

25   Reported Stenographically By:
```

```
 1   APPEARANCES (ALL APPEARING REMOTELY VIA ZOOM):

 2

 3

 4          For Plaintiff:

 5              IVIE MCNEILL WYATT PURCELL & DIGGS
                BY: Rodney S. Diggs,
 6                  ATTORNEY AT LAW
                444 South Flower Street
 7              Suite 3200
                Los Angeles, California 90071
 8              (213) 489-0028

 9

10

11          For Plaintiff:

12              LAW OFFICES OF DALE K. GALIPO
                BY: Renee V. Masongsong,
13                  ATTORNEY AT LAW
                21800 Burbank Boulevard
14              Suite 310
                Woodland Hills, California 91367
15              (818) 347-3333

16

17

18

19

20

21

22

23

24

25
```

```
1    APPEARANCES (ALL APPEARING REMOTELY VIA ZOOM):

2

3

4            For Defendants City of Los Angeles:

5                OFFICE OF THE COUNTY COUNSEL
                 BY: Caroline Castillo
6                    ATTORNEY AT LAW
                 BY: Christian R. Bojorquez,
7                    ATTORNEY AT LAW
                 200 North Main Street
8                6th Floor City Hall East
                 Los Angeles, California 90012
9                (213) 978-7023

10

11

12           For Defendants BRETT HAYHOE and
             DARYL GLOVER, Jr.:
13
                 CARPENTER ROTHANS & DUMONT, LLP
14               BY: Kimberly Sarmiento,
                     ATTORNEY AT LAW
15               500 South Grand Avenue
                 19th Floor
16               Los Angeles, California 90071
                 (213) 228-0400
17

18

19

20

21

22

23

24   Also present: Karen Torres-Corona, Videographer, LAPD
     Detective Andy Chang, Sergeant Brett Hayhoe and law
25   clerk, Aria Beizai
```

1  constant thing that he was doing.
2     Q.   All right.  During any of these movements that
3  Mr. Petit had with his right hand, did you ever see
4  anything in his right hand?
5     A.   Prior -- sorry, after the initial contact,
6  after giving him commands after trying to gain his
7  compliance to try to render the scene safe so we can
8  actually conduct somewhat of a pat-down to confirm that
9  he's not armed and not a danger to the community, after
10 that, he walked away from me.  He was refusing to
11 listen to commands.  He walked away from me, continuing
12 the movement, at which point, he did produce a black
13 object in his right hand.
14    Q.   Okay.  And did that black object in his right
15 hand appear to be a gun to you?
16    A.   In the initial stage when he actually pulled
17 it out, I was unsure at the moment.  I couldn't see it
18 that well.  And then when he reached up and pointed it
19 at us, I was confused.  I didn't know what I saw.
20 It -- at the moment, it -- I questioned myself whether
21 it was a gun or not.
22    Q.   Okay.  How long did you continuously observe
23 Mr. Petit putting his hand in and out of his pocket?
24    A.   I can't give an estimate of a time.  As I said
25 before, it was just a continuous motion that he kept

1  doing.  Putting in -- and also putting that same object
2  back into his waistband, back out, back into his
3  pocket, back out, continuously doing both things, but
4  he continuously did it until I didn't have no longer
5  any view of the front side of his body.
6      Q.   Okay.  Do you recall during your interview
7  with the investigators you told them that you looked
8  closer at the object in Mr. Petit's hand and determined
9  it wasn't a gun?
10          Do you recall that statement?
11     A.   I remember giving that statement, but in a
12 sense, after reviewing the body-worn video and his
13 continuous movement, there was not enough time for me
14 to determine and actually say that and then have other
15 officers bring their guard down and possibly put us in
16 another situation because we still haven't determined
17 if he's armed or not.
18     Q.   So are you saying the statement that you made
19 to the investigators was inaccurate?
20          MR. BOJORQUEZ:  Misstates the witness's
21 testimony.  I think you're reading just a portion of
22 it, Counsel.
23          MR. DIGGS:  Q.  You may answer.
24     A.   As I said, at the moment, it's what I saw,
25 what I remember from the incident.  I'm not saying that

```
 1   it's -- it's something that isn't true of what my
 2   statement was.  I did state that.  But it's -- it's --
 3   it's the whole in the situation moment where I kept
 4   seeing the movement.  The movement was fast.  But at
 5   that time, I didn't know what I was looking at.  I
 6   wasn't sure if it was a gun or not.
 7        Q.   Okay.  It's accurate that you said, "That's
 8   not a gun, bro," correct?
 9        A.   The moment of the incident, that is -- yeah,
10   that is something that I asked a question myself.
11        Q.   I'm sorry.  Can you repeat that?
12        A.   Yes, that is something that I had stated and I
13   also questioned.  In a sense, I said it to myself
14   trying to see if that is what I'm seeing at the moment.
15        Q.   All right.  You used the term "bro."  You were
16   talking to Officer Glover, correct?
17        A.   I was talking to myself and Officer Glover in
18   a sense of trying to see is -- like, am I seeing what
19   I'm seeing?  I'm giving my -- I'm questioning what I'm
20   seeing at the moment when I saw the object.
21        Q.   Okay.  And you recall Officer Glover, when he
22   heard you say, "That's not a gun, bro," he responded,
23   "What do you mean it's not a gun?  What is it?"
24        A.   Yeah, like I said --
25             MR. BOJORQUEZ:  Again -- one second.
```

1    Objection.  I think it lacks foundation, calls
2 for speculation as to Glover and whatever response he
3 gave, what he was responding to.  That's Officer
4 Glover.  But go ahead.
5    THE WITNESS:  And that -- that's what I was
6 going to say too.  What he saw at the moment, what his
7 perspective was, I can't speak for.  It's what I
8 questioned myself in that moment.  What I questioned,
9 what I stated, the "bro" was for me.  The "bro" was for
10 everything going around.  It was a questionable moment.
11    Q.   Okay.  When you said, "That's not a gun, bro,"
12 did you hear Officer Glover, after you said that, "What
13 do you mean it's not a gun?  What is it?"
14    MR. BOJORQUEZ:  Objection; vague and ambiguous
15 as to time.  As you sit here now after reviewing video,
16 or at the time of the incident?
17    MR. DIGGS:  Q.  At the time of the incident.
18    A.   At the time of the incident, I honestly -- I
19 didn't hear him ask that question.
20    Q.   Did you fire your gun at any time on that day?
21    A.   That day, no.
22    Q.   Did you -- I'm sorry.  Scratch that.
23      Did you request additional resources, such as
24 backup, when you encountered officer -- I'm sorry, when
25 you encountered Mr. Petit prior to the shooting?

1     Q.    Okay.  Did you ever yell to any of your
2  partners that you saw a gun?
3     A.    During the incident, I never mentioned to any
4  of the officers that I saw a gun.
5     Q.    Did you ever have any discussion prior to the
6  shooting but while both you and Officer Glover were out
7  of the vehicle, any conversation about whether or not
8  Mr. Petit actually had a gun in his hand?  Did you have
9  any sort of dialogue with Officer Glover?
10    A.    With the comments of the radio call, we're --
11 there's no -- officers, especially patrol officers,
12 don't question the -- the -- they don't -- they don't
13 question if a suspect is armed or not.
14           Until a suspect is deemed safe, and what --
15 we'll say in handcuffs, that way it's not a danger to
16 themselves, to us, or to others, we can't have a
17 discussion in regards to whether someone is armed or
18 not.
19           Even during the incident, while the incident
20 was going, he kept -- he kept -- Mr. Petit kept doing
21 motions and movements that simulated a firearm.  He --
22 when he pointed it at us, he simulated the metal object
23 that I saw as a firearm -- a firearm towards us.
24           So we can't assume or have discussions in
25 regards to if someone is armed or not.

1          MR. BOJORQUEZ:  Sure.

2          COURT REPORTER:  Yes.

3          VIDEOGRAPHER:  We're off the record at
4   12:01 p.m.

5          (Recess taken from 12:01 p.m. to 12:12
6   p.m.)

7          VIDEOGRAPHER:  Back on the record at
8   12:12 p.m.

9          MR. DIGGS:  Q.  All right.  Thank you.  Back
10  on the record.

11         Officer Martinez, prior to giving your
12  statements during the interview on July 19, 2022, you
13  had an opportunity to watch your body-worn camera,
14  correct?

15     A.  Yes.

16     Q.  And you saw your body-worn camera before
17  giving your statement?

18     A.  Yes.

19     Q.  And did you see Officer Glover's body-worn
20  camera before giving your statement?

21     A.  No.

22     Q.  No?  Okay.  And you agree that nowhere in
23  your -- your interview and your statement did you ever
24  tell the investigators that Mr. Petit pointed an object
25  at you?

1  A.  Yeah, I'm aware of that.
2  Q.  Okay.  And you're also aware that during your
3  interview with the investigators, at no time did you
4  ever mention suicide by cop, correct?
5  A.  Yes, I'm aware of that.
6  Q.  Okay.  All right.  So I'm going to mark the
7  video as Exhibit 1.
8      All right.  Can you see my screen?
9  A.  Yes.
10     (Exhibit 1 was marked for
11     identification.)
12     MR. DIGGS:  Q.  Okay.  I'm going to skip to --
13 I believe you get out of the vehicle at about two
14 minutes, 11 seconds, but let me just get there real
15 quick.  One second.  I've got to turn the volume on.
16     (Audio played.)
17     Give me a second.  Oh, okay.  I'm sorry.  Let
18 me do a different way.  I'm sorry.  Madam Clerk, just
19 give me one second.  I thought I had it up, but it's
20 not -- it's not picking up the right video.  One
21 second.  Nothing's happening.
22     All right.  Give me -- we can go off the
23 record.  I see what's happening now to -- how our
24 system is.  I have to do something else, so give me one
25 minute and then I'm going get Petit up this other way.

```
1                        CERTIFICATE

2                             OF

3                 CERTIFIED SHORTHAND REPORTER

4                        *    *    *    *

5

6         The undersigned Certified Shorthand Reporter

7  of the State of California does hereby certify:

8         That the foregoing Proceeding was taken before

9  me at the time and place therein set forth,

10        That the testimony and all objections made at

11 the time of the Proceeding were recorded

12 stenographically by me and were thereafter transcribed,

13 said transcript being a true and correct copy of the

14 proceedings thereof.

15        In witness whereof, I have subscribed my name,

16 this date:    September 12, 2025.

17
         _____
18       ANGELICA R. GUTIERREZ, CSR No. 13292

19

20

21

22

23

24

25
```