**STEVEN J. ROTHANS – State Bar No. 106579**
**KIMBERLY SARMIENTO – State Bar No. 345641**
**CARPENTER, ROTHANS & DUMONT, LLP**
**500 S. Grand Avenue, 19th Floor**
**Los Angeles, CA  90071**
**(213) 228-0400 / (213) 228-0401 [Fax]**
**srothans@crdlaw.com** / **ksarmiento@crdlaw.com**

Attorneys for Defendants, Sergeant Brett Hayhoe
and Officer Daryl Glover, Jr., public employees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as Successor-In-Interest to JERMAINE PETIT, deceased, | ) Case No. 2:23-cv-00789-ODW (PVCx) |
| | ) |
| Plaintiff, | ) **DEFENDANTS' SERGEANT BRETT HAYHOE AND OFFICER DARYL GLOVER, JR.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUGDMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | ) |
| CITY OF LOS ANGELES, a municipal entity; OFFICER DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE; and DOES 1 through 10, inclusive, | ) |
| | ) |
| Defendants. | ) Date: December 22, 2025 |
| | ) Time: 1:30 p.m. |
| | ) Courtroom: 5D |
| | ) |
| | ) |

COMES NOW Defendants, Sgt. Brett Hayhoe and Officer Daryl Glover, Jr., public employees, and hereby submit the following memorandum of points and authorities in reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the alternative, Summary Adjudication.

///

///

- 1 -

1   DATED:  December 5, 2025          CARPENTER, ROTHANS & DUMONT LLP

2

3                                                              /s/  Kimberly Sarmiento
                                              By:   _____

4                                                    Steven J. Rothans
                                                     Kimberly Sarmiento
5                                                    Attorneys for Defendants,
                                                     Sergeant Brett Hayhoe and Officer Daryl
6                                                    Glover, Jr., public employees

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

REPLY BRIEF

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................1

II.  STATEMENT OF LAW ......................................................................2

     A.   Plaintiff has not demonstrated that a triable issue of fact exists to deny
          summary judgment on her excessive force claim....................................2

     1.   Petit was suspected of committing a serious felony............................4

     2.   Petit posed an imminent threat of great bodily injury and/or death when
          he pointed the dark-colored metallic object at the officers, posturing as
          if it was a gun.......................................................................................5

     3.   Petit resisted the officers by attempting to evade arrest by flight at the
          time of the shooting. ..........................................................................7

     4.   The Ninth Circuit's ruling in Strickland is directly applicable here
          .............................................................................................................8

     5.   The officers provided adequate warning, even if such warnings were
          not feasible...........................................................................................9

     6.   The evidence does not support a finding that the officers knew or
          should have known that Petit had a mental illness..............................10

     B.   The officer defendants are entitled to qualified immunity....................11

     C.   Plaintiff's denial of medical care claim fails because the officers acted
          timely to summon reasonable medical care .........................................15

     D.   Plaintiff's state law Claims fail for the same reason Plaintiff's section
          1983 claim fails ..................................................................................16

E.    Plaintiff's state tort claims are barred by California Government Code immunity..............................................................................16

F.    The Opposition fails to demonstrate that the officers acted with the requisite conduct to maintain a request for punitive damages. .............16

III. CONCLUSION ...................................................................................16

TABLE OF CONTENTS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

<u>Blanford v. Sacramento Cnty.</u>,
  406 F.3d 1110 (9th Cir. 2005) ...............................................................9, 11

<u>Calonge v. City of San Jose</u>,
  104 F.4th 39 (9th Cir. 2024) ...................................................................12

<u>Chew v. Gates</u>,
  27 F.3d  (1994)..........................................................................................5

<u>Collender v. City of Brea</u>,
  605 Fed.Appx. 624 (9th Cir. 2015)........................................................12

<u>Crosby v. Monroe Cnty.</u>,
  394 F.3d 1328 (11th Cir. 2004) ............................................................2, 5

<u>Cruz v. City of Anaheim</u>,
  765 F.3d 1076 (9th Cir. 2014) ..............................................................6, 7

<u>Curnrow by and through Curnrow v. Ridgecrest Police</u>,
  952 F.2d 321  (9th Cir. 1991)..................................................................12

<u>Diaz v. Cnty. of Ventura</u>,
  512 F.Supp.3d 1030 (C.D. Cal. 2010) ..............................................2, 3, 6

<u>Drummond ex rel. Drummond v. City of Anaheim</u>,
  343 F.3d 1052 (9th Cir. 2003) .................................................................14

<u>Espinosa v. City and County of San Francisco</u>,
  598 F.3d 528 (9th Cir. 2010)...................................................................12

<u>Est. of Cornejo ex rel. Solis v. City of Los Angeles</u>,
  618 F.App'x 917 (9th Cir. 2015) ............................................................15

<u>Estate of Lopez by and through Lopez v. Gelhaus</u>,
  871 F.3d 998 (9th Cir. 2017)............................................................12, 16

<u>Estate of Strickland v. Nevada Cnty.</u>,
  69 F.4th 614 (9th Cir. 2023) ...........................................................8, 9, 15

<u>George v. Morris</u>,
  736 F.3d 829 (9th Cir. 2013)...................................................................13

<u>Graham</u>,
  490 U.S....................................................................................................12

<u>Hammerwood Avenue, L.P. v. Thermo Electron Corporation</u>,
  2006 WL 8449932 (N.D. Cal. 2006) ........................................................1

<u>Harris v. Livers</u>,
  2021 WL 1669585 (N.D. Ind., 2021)......................................................14

<u>Harris v. Roderick</u>,
  126 F.3d 1189 (9th Cir. 1997) .................................................................12

- 1 -
TABLE OF AUTHORITIES

Hulstedt v. City of Scottsdale,
    884 F.Supp.2d 972 (D. Az. 2012)...................................................................9
Longoria v. Pinal County,
    873 F.3d 699 (9th Cir. 2017)......................................................................14
Lowry v. City of San Diego,
    848 F.3d 1248 (9th Cir. 2017) .....................................................................5
Michigan v. Bryant,
    562 U.S. 344 (2011).................................................................................15
Miller v. Clark Cnty.,
    340 F.3d 959 (9th Cir. 2003).......................................................................8
People v. Young,
    146 Cal.App.3d 729 (1983)..........................................................................4
Conway v. County of Tuolumne,
    231 CalApp.4th  (2014)..............................................................................16
Ridgeway v. City of Woolwich Tp. Police Dept.,
    924 F.Supp. 653 (D. N.J. 1996) ..............................................................9, 10
S.R. Nehad v. Browder,
    929 F.3d 1125 (9th Cir. 2019) .....................................................................4
Scott v. Edinburg,
    346 F.3d 752 (7th Cir. 2003).....................................................................14
Scott v. Harris,
    550 U.S. 372 (2007)..............................................................................6, 11
Smith v. Wade,
    461 U.S. 30 (1983).................................................................................16
Tatum v. City and Cnty. of San Francisco,
    441 F.3d 1090 (9th Cir. 2006).....................................................................15
Torres v. City of Madera,
    648 F.3d 1119 (9th Cir. 2011) .....................................................................9
Vos v. City of Newport Beach,
    892 F.3d 1024 (9th Cir. 2018) ...............................................................10, 13
Waid v. County of Lyon,
    87 F.4th 383 (9th Cir. 2023).......................................................................7

Statutes

Cal. Pen. Code § 245 ...................................................................................4
Cal. Pen. Code § 417 ...................................................................................5

- 2 -
TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's Opposition to Defendants' Motion for Summary Judgment rests on shaky foundation, serving only to emphasize the lack of meritorious arguments that can be made on Plaintiff's behalf to deny summary judgment.

First, Plaintiff relies on a declaration from their retained expert, Richard Bryce, despite that federal courts in California have long held, "expert opinions based upon speculation, conjecture, or unsupported theory do not create a triable issue of material fact." Hammerwood Avenue, L.P. v. Thermo Electron Corporation, 2006 WL 8449932 at *7 (N.D. Cal. 2006).

More to the substance of Plaintiff's argument, she argues that "[t]he fact that the object Petit had at the time of the shooting was not a gun" is information that should be factored into the Court's assessment of the reasonableness of the shooting because "the officers observed the object on scene prior to the shooting." Pls. Opp. at p. 1.  Plaintiff's characterization of the officers' observations of the object—which Petit held as a gun, brandished as a gun, and by all accounts, wanted others to think it was a gun—makes it seem as though the officers had the opportunity to thoroughly inspect the object.  Not so.  The uncontroverted evidence shows that Officer Glover was unsure of whether the dark-colored object was a gun and was attempting to discern whether it was, in fact, a gun.  However, when he heard the shots fired, it reasonably led him to believe Petit exchanged fire with Sgt. Hayhoe, thereby solidifying his belief that the object was a gun.  As for Sgt. Hayhoe, he never had any doubt that the object was a gun, especially when he observed Petit hold it while assuming a shooting stance.

Plaintiff attempts to argue that the officers' beliefs are unreasonable because Petit "showed them the object for several seconds."  Pls. Opp. at p. 1.  Nonsense. The body worn camera footage indisputably demonstrates that Petit did not *show* the object to the officers—he *brandished* the object at the officers, holding it so

- 1 -

1   that it appeared as if it had a barrel and a stock.  Plaintiff's characterization that

2   Petit was merely showing this object to the officers, as if he was offering it for

3   inspection, is nothing more than a self-serving euphemism clearly contradicted by

4   the evidence.

5       Because Plaintiff's Opposition is largely predicated on asking the Court to

6   play Monday morning quarterback and analyze the reasonableness of the officers'

7   actions from a perspective of 20/20 hindsight—in contradiction of well-settled

8   precedent—Plaintiff has failed to demonstrate that a triable issue of fact exists to

9   deny summary judgment.  "In making an excessive force inquiry, [courts] are not

10  to review the matter as judges from the comfort and safety of [their] chambers,: nit

11  rather, view the "situation from the eyes of the office on the scene who is

12  hampered by incomplete information and forced to make a split-second decision

13  between action and inaction in circumstances where inaction could prove fatal."

14  <u>Crosby v. Monroe Cnty.</u>, 394 F.3d 1328, 1333 (11th Cir. 2004).

15      Thus, Defendants respectfully request that the Court grant the motion in its

16  entirety.

17  **II.   STATEMENT OF LAW**

18      **A.   Plaintiff has not demonstrated that a triable issue of fact exists to**

19          **deny summary judgment on her excessive force claim.**

20      The Opposition conveniently mischaracterizes the evidence and focuses on a

21  number of red herrings to argue that the various factors considered by the Court

22  weigh in favor of a finding that the shooting was unreasonable.  Plaintiff cites <u>Diaz</u>

23  <u>v. Cnty. of Ventura</u>, 512 F.Supp.3d 1030 (C.D. Cal. 2010) for the proposition that

24  if an officer's use of force is based on a mistake of fact, summary judgment should

25  be denied.  However, <u>Diaz</u> is distinguishable here for a multitude of reasons.

26      Beginning with the factual differences, in <u>Diaz</u>, a CHP officer executed a

27  traffic stop after being advised that the decedent had "a history of 'psych

28  concerns.'"  <u>Id.</u> at 1036.  After crashing the vehicle, the decedent remained

- 2 -

REPLY BRIEF

positioned behind his vehicle and engaged in a standoff with officers.  Id.  A police helicopter captured the decedent's movements on camera and relayed to the officers on the ground that it was unclear whether he had a gun, although the officers were never provided with any initial information about the possibility that decedent had a gun.  Id. at 1037.

Further, the shooting officer knew that the decedent did not have anything in his left hand, and throughout the standoff, the decedent raised his left hand in response to orders to raise his hands.  Id.  Officers deployed a less lethal weapon, which knocked decedent flat on his back onto the ground, and officers began approaching him.  Id.  When the decedent came into view, the shooting officer, who was approximately 20-30 feet away and taking cover behind a patrol vehicle, testified that he yelled "knife!" and "gun!" after seeing a gun in the decedent's left hand.  Id. at 1037-38.  However, two other officers on scene testified that they saw an object in the decedent's hand but did not think it was a knife.  Id. at 1038.  Moreover, although the shooting officer testified that the decedent charged in his direction, the other two officers stated that the decedent did not charge or lunge.  Id.  The decedent was shot seven times.  Id. at 1040.

Moving to the court's analysis, the court noted that although several dash cams and one body camera captured portions of the incident, "the key moments just before and as [the decedent] [was] shot" were not within view on the footage.  Id. at 1039.  Accordingly, the discrepancies in the shooting officer's testimony and that of his colleagues became critical at summary judgment because there was no video footage to corroborate either version of events.  Noting all the differences in the testimony of the shooting officer and the other officers on scene, the court concluded that a "reasonable trier of fact could conclude that either [the shooting officer] never actually perceived a gun, or that his mistake in perceiving a gun was unreasonable."  Id. at 1042.

No significant discrepancies exist here.  First, Officer Martinez and Officer

- 3 -

REPLY BRIEF

Glover's body cams captured the shooting incident itself, as well as the moments leading up to it. Moreover, all three officers testified that they observed Petit making furtive movements with his hands around his waistband area and pointed a dark-colored metallic object in their directions. Although Sgt. Hayhoe and Officer Glover observed Petit from different angles, they both testified that they believed the object in Petit's hand was a handgun, based on the way he was holding the object and the shooting position he assumed while holding it. Both Sgt. Hayhoe and Officer Glover also had prior experience with street guns in the area, wherein they knew that firearms in that may not always resemble traditional guns.

Therefore, the officers' mistake of fact was reasonable under the totality of these circumstances.

### 1. Petit was suspected of committing a serious felony.

Contrary to the Opposition, Petit *did*, in fact, commit a serious offense. Dispatch broadcasted a call for Assault with a Deadly Weapon ("ADW"), and relayed that the reporting party (Todd Tramel) stated Petit had a gun.

The Ninth Circuit has articulated two slightly different standards for assessing the seriousness of an offense. Under the first standard, courts should find that "a particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." S.R. Nehad v. Browder, 929 F.3d 1125, 1136 (9th Cir. 2019). Under California law, ADW is a felony and an "extremely serious offense." Cal. Pen. Code § 245; People v. Young, 146 Cal.App.3d 729, 734 (1983). Although Plaintiff attempts to muddy the waters by referring to Hanna Mark's uncertainty about whether Petit had a gun, this does not somehow invalidate the simple fact that the officers were responding to a serious offense that Petit was suspected of committing.

Plaintiff's attempts to suggest that Petit was no longer engaged in a serious offense when the officers arrived is not supported by the evidence. When the

REPLY BRIEF

officers observed Petit, he was still brandishing the object that appeared to be a firearm.  As the video footage shows, Petit pointed the object in the direction of the officers while holding the object as if it was a gun, which is in itself, a serious crime.  See Cal. Pen. Code § 417.  When a suspect is engaged in a "dangerous" offense that "can end in confrontation leading to violence," the seriousness of the offense factor supports the use of force.  Lowry v. City of San Diego, 848 F.3d 1248, 1257 (9th Cir. 2017).  As any call for service that involves a potentially armed person is dangerous and that could lead to a violent confrontation, this factor supports the reasonableness of the officers' use of force.

Plaintiff next contends that Petit's actions are somehow mitigated by the fact that three officers responded to the call for service, citing Chew v. Gates, 27 F.3d 1436 (1994) for support.  However, the situation in Chew is factually distinct here. In Chew, the plaintiff hid in a scrapyard and a police perimeter was established. Id. at 1436.  In other words, the situation was static, and accordingly, the officers were not dealing with rapidly changing circumstances.  That is not the case here. As shown by the body worn camera footage, from the time the officers spotted Petit and attempted to contact him, the situation was rapidly evolving such that **the entire interaction was over in approximately 30 seconds.**

Thus, Petit *was* engaged in a serious offense, indicating the shooting was reasonable.

### 2. Petit posed an imminent threat of great bodily injury and/or death when he pointed the dark-colored metallic object at the officers, posturing as if it was a gun.

The record supports a finding that Petit posed an imminent threat of great bodily injury and/or death.  The video footage belies the Opposition's attempts to cast doubt on the facts.  Plaintiff cannot defeat a motion for summary judgment by pointing to after-the-fact observations.  At the time of the incident, as shown through the dispatch calls and video footage, there was a reasonable belief that

1  Petit was armed and, by all accounts, wanted the officers to believe he was armed.

2  Petit brandished the object as though it were a gun before the officers arrived, he

3  held it in the low ready position as though it were a handgun, and he pointed the

4  object at Officers Glover and Martinez.  The video footage also shows Petit

5  running away from the officers while potentially armed.  The video footage makes

6  the record clear, despite Plaintiff's repeated attempts to skew the facts as

7  demonstrated therein.  As the Supreme Court instructed in <u>Scott v. Harris</u>, 550

8  U.S. 372 (2007): "When opposing parties tell two different stories, one of which is

9  blatantly contradicted by the record, so that no reasonable jury could believe it, a

10  court should not adopt that version of the facts for purposes of ruling on a motion

11  for summary judgment." <u>Id.</u> at 380.

12      Plaintiff's reliance on <u>Cruz v. City of Anaheim</u>, 765 F.3d 1076 (9th Cir.

13  2014) undermines, rather than supports, his position for multiple reasons.  First,

14  the sole question in <u>Cruz</u> was about the credibility of the evidence: "Could any

15  reasonable jury find it more likely than not that Cruz *didn't* reach for his [gun]."

16  <u>Id.</u> at 1079.  The "only evidence" that the <u>Cruz</u> court relied on in granting

17  summary judgment (and the only evidence that the Ninth Circuit found raised a

18  genuine issue of material fact) was the testimony of the officers.  <u>Id.</u> at 1079.

19  Because a jury could reasonably conclude that the officers' testimony was

20  unreliable, as with <u>Diaz</u>, *supra*, the Ninth Circuit reversed the grant of summary

21  judgment.  <u>Id.</u> at 1080.  Unlike <u>Cruz</u>, here, the Court can look to the uncontradicted

22  video footage to determine what happened.  Indeed, the video footage *supports* the

23  Defendant officers' testimony, rather than contradict the testimony like in <u>Cruz</u>.

24      Accordingly, the evidentiary question raised in <u>Cruz</u> is substantially

25  different than the question raised here, where there is video footage that shows the

26  entire event from multiple angles.  In fact, the <u>Cruz</u> court was unequivocal that had

27  Cruz, who the officers believed was armed though he was ultimately unarmed, had

28  reached for his gun, the officers would have been justified in shooting Cruz.  <u>Id.</u> at

- 6 -

1078.  Here, the officers reasonably believed that Petit was armed as he was brandishing an object that looked like a firearm.  Under the same logic in <u>Cruz</u>, the officers' use of force here was justified.

Finally, the <u>Cruz</u> court affirmed summary judgment as to an officer who fired because he reasonably perceived that the shots could have been coming from another officer, Cruz, or both.  <u>Id.</u> at 1079, n.2.  That is precisely the case with Officer Glover, who perceived that the shots fired was Petit shooting at Sgt. Hayhoe, and Sgt. Hayhoe returning fire.

Thus, the video footage indisputably shows that the officers held a reasonable belief that Petit posed an imminent threat of great bodily injury or death.  To the extent that Plaintiff suggests Officer Glover's single shot was unreasonable because Petit was already on the ground, the immediacy of the events belies that explanation.  <u>See</u> <u>Waid v. County of Lyon</u>, 87 F.4th 383, 390 (9th Cir. 2023) (finding that the officers acted reasonably because the decedent was "upright and moving when he was shot [and] [a]lthough he may have started to fall before the officers stopped shooting, the shots were fired sequentially, and [decedent] did not fully fall to the ground until after the shooting stopped").

### 3. Petit resisted the officers by attempting to evade arrest by flight at the time of the shooting.

Notwithstanding Plaintiff's mischaracterizations of Petit's actions, the video footage shows Petit blatantly ignoring the officers' commands and then running away from them in a residential area, while potentially armed.  First, although the Opposition phrases this as "attempting to avoid contact" with the officers, which is wholly speculative since Plaintiff can cite no evidence as to Petit's state of mind.  Opp. 10.  More importantly, the officers were familiar with the residential area and concerned for the potential threat of harm that Petit might pose to innocent bystanders in the area if he continued fleeing, furthering their need to detain him.  In that vein, the Ninth Circuit has held that the government's interest in

apprehending criminal suspects is "even stronger when the criminal is…suspected of a felony, which is by definition a crime deemed serious by the state."  <u>Miller v. Clark Cnty.</u>, 340 F.3d 959, 964 (9th Cir. 2003).  Therefore, it is clear that this factor weighs in favor of a finding that the officers acted reasonably under the Fourth Amendment.

### 4. The Ninth Circuit's ruling in <u>Strickland</u> is directly applicable here.

Faced with the undeniable truth that the Ninth Circuit's holding in <u>Strickland</u> is instructive here, Plaintiff makes an unavailing attempt by way of a one-paragraph argument to distinguish the facts of <u>Strickland</u> here.  Contrary to Plaintiff's self-serving contention that "<u>Strickland</u> is Inapposite," <u>Strickland</u> is on all fours here.  In both <u>Strickland</u> and here, dispatch received calls of a potentially armed person in a residential area.  <u>Estate of Strickland v. Nevada Cnty.</u>, 69 F.4th 614, 618 (9th Cir. 2023).  In <u>Strickland</u> and here, the officers discharged their firearms based on the real-time perception that the suspect was armed with a real gun.  <u>Id.</u>  Although Plaintiff focuses on Officer's comment expressing confusion or doubt about whether the object was a gun, this does not invalidate the reasonableness of Sgt. Hayhoe's and Officer Glover's belief that the dark-colored metallic object that appeared to have a barrel and stock *was* a gun. Officer Glover and Sgt. Hayhoe observed the object from different vantage points than Officer Martinez, only had seconds to view the object, and again, observed Petit holding the object as if it was a gun.  This is especially true where the officers had prior experience with "street guns" that did not always resemble traditional firearms, which they knew had been found in the same area where they encountered Petit.

Plaintiff's suggestion that a reasonable jury could find that Petit's object was not a firearm is simply belied by the record.  Opp. 10.  As the Ninth Circuit recognized, "[w]hen an officer's 'use of force is based on a mistake of fact, we ask whether a reasonable officer would have or *should* have accurately perceived that

1   fact.'" Strickland, 69 F.4th at 621 (quoting Torres v. City of Madera, 648 F.3d

2   1119, 1124 (9th Cir. 2011).  Here, Officer Glover and Sergeant Hayhoe's

3   perception was reasonable for the same reasons it was reasonable in Strickland: the

4   call for service was for an armed person, the uncertainty of whether the object was

5   a firearm, and the immediacy of a possible threat.  Strickland, 69 F.4th at 622-623

6   (noting that "**misplaced trust in this circumstance could be fatal for the**

7   **officers" and that the officers "were not required to 'delay their fire' until**

8   **they learned" whether the suspect was armed**).

9       Even if Petit, as the Opposition contends, merely showed the object to the

10  officers, the officers still could have been "reasonably justified in not taking [the]

11  assurances at face value." Strickland, 69 F.4th at 622.  Taking the facts set forth

12  above together, no reasonable jury could conclude that the officers' perception at

13  the scene was unreasonable.

14      **5.  The officers provided adequate warning, even if such warnings**

15          **were not feasible.**

16      As a preliminary matter, "[a]n officer may shoot a person armed with a

17  deadly weapon without warning when such a warning is not feasible…" Hulstedt

18  v. City of Scottsdale, 884 F.Supp.2d 972, 1005 (D. Az. 2012).  Moreover,

19  particularly in rapidly evolving circumstances, courts do not require the warning

20  that deadly force will be used to be so specific.  See Ridgeway v. City of

21  Woolwich Tp. Police Dept., 924 F.Supp. 653, 659-60 (D. N.J. 1996).  To that end,

22  the Ninth Circuit has found warnings for a suspect to drop a potential weapon,

23  coupled with the suspect's refusal to comply with such commands, to be sufficient

24  warning prior to a shooting.  See Blanford v. Sacramento Cnty., 406 F.3d 1110,

25  1116 (9th Cir. 2005) (noting that because of the plaintiff's refusal to comply with

26  commands to drop his weapon the deputies reasonably concluded "that the

27  situation could not be resolved by talking" and that the plaintiff posed an imminent

28  threat of harm).  This is also the case where it is clear to the officers that the

1  suspect is aware that police are pursuing him and attempting to flee.  <u>Ridgeway</u>,

2  924 F.Supp. at 659-660 (finding that because the suspect knew officers were

3  pursuing him, and he gave the officers no indication "he would submit to police

4  authority upon the issuance of a verbal warning," the officer "could have

5  reasonably concluded that the issuance of a warning would cause the plaintiff to

6  turn and use his weapon in a manner that would threaten the officer or others").

7       Here, again, the entirety of this incident, from the time the officers observed

8  and attempted to contact Petit to the end of the shooting was approximately 30

9  seconds.  Given the rapidity with which these events unfolded, it was arguably not

10  feasible for the officers to issue warnings.  Nevertheless, they did issue warnings

11  by way of multiple commands (from multiple officers) to drop the object.  Both

12  Sgt. Hayhoe and Officer Martinez made multiple commands for Petit to "drop it,"

13  which were undeniably ignored by Petit.

14       For these reasons, this factor weighs in favor of finding that the officers

15  acted reasonably under the circumstances.

16      **6.  The evidence does not support a finding that the officers knew or**

17          **should have known that Petit had a mental illness.**

18       Plaintiff's attempt to frame this issue as a mental health crisis is not

19  supported by the record.  The Opposition's citation to <u>Vos v. City of Newport</u>

20  <u>Beach</u>, 892 F.3d 1024 (9th Cir. 2018) does nothing to help their attempt to use the

21  after-acquired information about Petit's mental illness to invalidate the

22  reasonableness of the officers' actions.  In <u>Vos</u>, it was "undisputed" that Vos was

23  "mentally unstable," as six other officers at the scene recognized the situation as a

24  mental health crisis.  <u>Id.</u> at 1034.

25       Here, however, no comparable evidence exists.  Indeed, no caller relayed

26  information to dispatch about a possible mental illness and no such information

27  was relayed from dispatch to the responding officers.  With how quickly the event

28  unfolded, the officers had no opportunity to assess the possibility that Petit had a

REPLY BRIEF

mental illness.  More importantly, Petit did not demonstrate an inability to comply

with commands, but instead a *refusal* to comply with commands.  He brandished

the object, pointed it at the officers, and then ran away from the officers when they

attempted to get closer to him.  No reasonable jury could conclude that this

conduct was anything other than willful disobedience and an attempt to appear

armed.  The Opposition argues that because the officers perceived that he may

have been homeless and that sometimes homeless people suffer from mental

illness should have made them aware that Petit was mentally ill.  Such argument is

wholly presumptive—and reflective of Plaintiff's utter lack of substantive

argument on this point.

Ultimately, regardless of whether he appeared to be suffering from a mental

health crisis, it did not negate the potential threat he posed to others in the area

given his actions up until that point.  Blanford, 406 F.3d at 1117-18 (ruling that the

use of deadly force against a mentally disturbed individual armed with a sword

was reasonable).

These factors clearly weigh in favor of a finding that the officers' use of

force was well-within the confines of the Fourth Amendment.

**B. The officer defendants are entitled to qualified immunity.**

As set forth above, the officers did not violate Petit's constitutional rights.

Moreover, there was no clearly established law that would have placed the officers

on notice that their conduct was unlawful under the totality of the circumstances.

First, Plaintiff cannot manufacture a triable issue of fact by willfully

ignoring the record.  As discussed above in Scott, when video footage exists that

depicts the incident exactly as it unfolded, a Court must adopt that during summary

judgment.  Scott, 550 U.S. at 380.  Plaintiff is attempting to create factual issues by

bringing to bear events that were learned, considered, or argued by Plaintiff *after*

*the incident had already occurred.*  This stands in direct contradiction of solid and

well-established precedent that "[t]he 'reasonableness' of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

The litany of cases cited by Plaintiff does not change that fact. All of the cases present distinct and distinguishable factual scenarios and are inapposite to the facts of the subject incident. See, e.g., Calonge v. City of San Jose, 104 F.4th 39, 42 (9th Cir. 2024) (the suspect did not have the firearm in his hand at all during the interaction); Curnrow by and through Curnrow v. Ridgecrest Police, 952 F.2d 321, 325  (9th Cir. 1991) (finding that officers' first shot was unreasonable because the suspect was not facing the officers); Harris v. Roderick, 126 F.3d 1189,  1201-202 (9th Cir. 1997) (holding that the FBI's policies and procedures that justified this shot were unconstitutional because they expanded beyond the scope of reasonable force authorized by Graham v. Connor); Espinosa v. City and County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010) (finding that the use of force was unreasonable when the police killed the victim of a crime, rather than the suspect of the crime); Collender v. City of Brea, 605 Fed.Appx. 624, 629 (9th Cir. 2015) (ruling that the factual dispute revolves around conduct that occurred before video footage of the incident began).

Plaintiff's reliance on Estate of Lopez by and through Lopez v. Gelhaus, 871 F.3d 998 (9th Cir. 2017) is similarly unconvincing because of the clear factual differences that are relevant for the totality of the circumstances analysis.  In Lopez, the individual who saw the decedent carrying the gun did not call the police, the officers at the scene did not have any dispatch calls or radio traffic advising of an armed individual, and one of the officers at the scene was unfamiliar with the area.  Id. at 1001-1002.  Critically, the shooting deputy himself testified that the decedent was not acting in a threatening manner and that the key factual dispute was about whether the decedent had turned towards the deputy.  Id. at 1021.  By contrast, here, dispatch received two calls regarding Petit, both indicated that Petit was potentially armed, dispatch advised of an ADW over the radio, and

REPLY BRIEF

1    Officer Glover and Sgt. Hayhoe were intimately familiar with the area, having

2    worked patrol for a considerable time.  Moreover, the body worn camera footage

3    makes clear that Petit was facing Officer Glover during the entire interaction.

4          The law is clear that reasonable force is authorized when an officer

5    perceives a threat.  For example, in <u>George v. Morris</u>, 736 F.3d 829 (9th Cir.

6    2013), the Ninth Circuit specifically recognized that "the Fourth Amendment [does

7    not] always require[] officers to delay their fire until a suspect turns his weapon on

8    them.  If the person is armed – or reasonably suspected of being armed – a furtive

9    movement, harrowing gesture, or serious verbal threat might create an immediate

10   threat." <u>Id.</u> at 838.  That is precisely the situation here.  Petit held the object the

11   officers, and the reporting parties, reasonably believed was a firearm displayed in

12   his hand.  Petit pointed the object in the officers' direction before he continued his

13   attempt to flee.  The officers perceived Petit to be a threat.  Taken together, the

14   officers' conduct was reasonable under the Fourth Amendment.

15         As set forth above, <u>Vos</u> is inapposite here because there are no facts to

16   support that the officers perceived Petit was suffering a mental health crisis at the

17   time force was used.  To the extent that Plaintiff relies on <u>Vos</u> to suggest that it

18   puts officers on notice of unconstitutional conduct, the proposition must be narrow.

19   <u>Vos</u> specifically contemplated a circumstance where the individual was barricaded

20   in a store and the officers had plenty of time to investigate.  <u>Vos</u>, 892 F.3d at 1029.

21   Furthermore, much of the legal analysis in <u>Vos</u> focused on the amount of force

22   appropriate *when the officers know that an individual is going through a mental*

23   *health crisis*.  <u>Id.</u> at 1034.  At most, <u>Vos</u> can support a proposition that when the

24   officers know that an individual is going through a mental health crisis, the officers

25   should make efforts to use less intrusive methods before resorting to deadly force.

26   <u>Id.</u> at 1034, n.9.  However, even if such proposition were true, it would not be

27   applicable here because, again, none of the officers knew or had reason to believe

28   that Petit was suffering from a mental health crisis.

- 13 -

Plaintiff's citation to <u>Longoria v. Pinal County</u>, 873 F.3d 699 (9th Cir. 2017) is unpersuasive because the court's finding was predicated on the litany of factual inconsistencies between the officers' account of the events.  <u>Id.</u> at 708.  Whereas here, the officers have consistently described the same threat they observed: Petit armed with what appeared to be a gun and brandishing it.  Further, on the specific issue of the video footage, the Ninth Circuit highlighted that the officers' perception in <u>Longoria</u> was based on a single frozen frame, which is not how the officers would have perceived the events unfolding at the scene.  <u>Id.</u> at 707-708. In contrast, the body worn camera footage here depicts the threat Petit posed as a continuous stream, not based on single still shots, similar to how the officers would have perceived the events as they unfolded.  Because the reasonableness analysis turns on the officers' perception at the time of the incident, the body worn camera footage here is dispositive, establishing that Petit did pose a threat to the officer defendants.

Finally, the alleged violation of police training is irrelevant for the purposes of determining qualified immunity.  "**Policy violations do not amount to constitutional violations**."  <u>Harris v. Livers</u>, 2021 WL 1669585 at *2 (N.D. Ind., 2021) (emphasis added).  The law is clear in this regard: "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, *not* violations of state laws or, in this case, departmental regulations and police practices."  <u>Scott v. Edinburg</u>, 346 F.3d 752, 760 (7th Cir. 2003) (emphasis added).  Plaintiff's reliance on <u>Drummond ex rel. Drummond v. City of Anaheim</u>, 343 F.3d 1052 (9th Cir. 2003) does not change this simple fact.  In <u>Drummond</u>, the officers there leaned on the suspect's neck while he was "complaint, prone, and handcuffed."  <u>Id.</u> at 1060.  Moreover, the court ruled that the training policy was "not dispositive" as to the reasonableness of the use of force.  <u>Id.</u> at 1059.

More to the point, when no underlying constitutional violation is established, qualified immunity applies.  As discussed above, the question of

whether the use of force was reasonable focuses on the officers' perception at the time of the shooting.  Since the officers reasonably perceived Petit to be a threat, their conduct was objectively reasonable.  Further, Plaintiff has failed to offer any case that suggests the officers would have been on notice that their *specific* conduct was unreasonable.  Plaintiff's laundry list of cases includes many which were considered as part of plaintiff's argument against qualified immunity and rejected by the <u>Strickland</u> court.  <u>See</u> <u>Strickland</u>, 69 F.4th at 622-23.  Because all of Plaintiff's cases are distinguishable here, the Opposition fails to demonstrate a clearly established right that Petit had, under the totality of the circumstances, which was violated by the officers' conduct.

Thus, the officer defendants are entitled to qualified immunity.

## C. Plaintiff's denial of medical care claim fails because the officers acted timely to summon reasonable medical care.

As raised in the underlying motion, the Fourth Amendment requires only that "police officers ***seek*** the necessary medical attention for a detainee when he or she has been injured while being apprehended…" <u>Est. of Cornejo ex rel. Solis v. City of Los Angeles</u>, 618 F.App'x 917, 920 (9th Cir. 2015); <u>Tatum v. City and Cnty. of San Francisco</u>, 441 F.3d 1090, 1099 (9th Cir. 2006) (emphasis added).

Here, the officers immediately summoned medical care once it was safe to do so and after establishing a plan to safely approach Petit.  To the extent that Plaintiff suggests that there was an unreasonable delay in summoning medical care, Plaintiff does not cite any case law that supports this finding.  Indeed, medical care must be summoned only after the threat to the first responders and the public has adequately been neutralized.  <u>Michigan v. Bryant</u>, 562 U.S. 344, 363 (2011).  The Supreme Court has expressly rejected the Plaintiff's narrow view that the police or first responders may immediately approach the victim in any circumstance.  <u>Id.</u>

Thus, Plaintiff's denial of medical care claim fails.

**D. Plaintiff's state law Claims fail for the same reason Plaintiff's section 1983 claim fails.**

As discussed in the Motion for Summary Judgment, the analysis for battery, negligence, and intentional infliction of emotional distress turns on much of the same analysis for above.  As more fully set forth above, because the officer defendants' use of force was objectively reasonable and the officers used that force to protect themselves and the public, these state law claims must be dismissed.

**E. Plaintiff's state tort claims are barred by California Government Code immunity.**

Plaintiff's reading of <u>Conway v. County of Tuolumne</u>, 231 CalApp.4th 231 (2014) relies on the untenable finding that the officers' use of force here was unreasonable.  Opp. 19.  However, as the <u>Conway</u> court held, Section 820.2 "does not contain a reasonableness requirement," and liability for "split-second decisions" made pursuant to safety concerns could conceivably hamstring officers with unpleasant results.  <u>Id.</u> at 1020-21.  Therefore, Plaintiff's state tort claims fail because the officer defendants are entitled to immunity under Section 820.2.

**F. The Opposition fails to demonstrate that the officers acted with the requisite conduct to maintain a request for punitive damages.**

Contrary to Plaintiff's suggestion, the standard for punitive damages in a civil rights action is "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  As discussed in the moving papers, there is no evidence suggesting that the officer defendants meet this standard.

**V. <u>CONCLUSION</u>**

In light of the foregoing, Defendants, Sergeant Brett Hayhoe and Officer Daryl Glover, Jr., respectfully request that this Court grant summary judgment, or in the alternative, summary adjudication as to each and every issue as discussed

1   above.

2

3   DATED:  December 5, 2025        CARPENTER, ROTHANS & DUMONT LLP

4
                                              /s/  Kimberly Sarmiento
5                               By:   _____
6                                     Steven J. Rothans
                                      Kimberly Sarmiento
7                                     Attorneys for Defendants,
                                      Sergeant Brett Hayhoe and Officer Daryl
8                                     Glover, Jr., public employees

9

10

11              **<u>CERTIFICATE OF COMPLIANCE</u>**

12          The undersigned, counsel of record for Defendants, Sergeant Brett Hayhoe

13   and Officer Daryl Glover, Jr., certifies that this brief contains 5,456 words, which

14   complies with the word limit pursuant to Local Rule 11-6.1

15

16   DATED:  December 5, 2025        CARPENTER, ROTHANS & DUMONT LLP

17
                                              /s/  Kimberly Sarmiento
18                              By:   _____
19                                    Steven J. Rothans
                                      Kimberly Sarmiento
20                                    Attorneys for Defendants,
                                      Sergeant Brett Hayhoe and Officer Daryl
21                                    Glover, Jr., public employees

22

23

24

25

26

27

28

REPLY BRIEF