## DECLARATION OF DETECTIVE III BRIAN HUN

I, BRIAN HUN, declare that I am employed as a police officer by the Los Angeles Police Department ("Department"). I currently hold the rank of Detective III in the Risk Management Legal Affairs Division, Civil Litigation Section ("Civil Litigation"). My business address is 6th Floor City Hall East, 200 North Main Street, Los Angeles, California. I have personal knowledge of the principal matters set forth below, with the exception of matters to which I attest on information and belief, and if called upon as a witness, I could and would competently testify to the following:

1. I, BRIAN HUN, declare that I currently hold the rank of Detective III and am assigned as a supervisor in the Risk Management and Legal Affairs Division Civil Litigation Section of the Los Angeles Police Department. Under the policy manual of the Los Angeles Police Department one of the duties of the Legal Affairs Division Civil Litigation Section is to determine the confidentiality of requested documents and to respond to discovery requested on behalf of the Department.

2. *Affirmation that the agency collected and/or generated the material in dispute and has maintained its confidentiality.*

3. My current responsibilities as a Supervisor in Civil Litigation require that I have a thorough knowledge of the policies and procedures followed by the Department. I am therefore authorized and qualified to state Department policies regarding documents produced and maintained by the various divisions and entities contained within the Department. I was asked to review the documents requested by the Plaintiff by Counsel for the City of Los Angeles in the case of *Jermaine Petit v. City of Los Angeles*, et al, Case No. 2:23-cv-00789 CJC (PVCx). I have reviewed most of the requested Documents and I am familiar with those that were reviewed. As for other documents, I am familiar with their type and character and can accurately attest to the manner that they are handled and the nature of their

*DECLARATION OF DETECTIVE III BRIAN HUN* - 1

**EXHIBIT 1**

contents. I am familiar with the investigation process. Force Investigation Division of the Department (hereinafter "FID") conducts an investigation of any incident that was considered a categorical use of force (ex. use of deadly force, OIS, significant injury requiring hospitalization due to force used, or any incident where an individual may die while in custody). In this matter, FID did conduct the investigation since it was deemed to be a categorical use of force. I am also aware of the policies and practices concerning Complaint Investigations/Internal Affairs Investigations.

4. The Department conducts internal administrative investigations (hereinafter "FID investigations") on many Department issues not limited to uses of force (hereinafter "UOF"), but also investigations following citizen complaints and after a claim or lawsuit is initiated. The Department also initiates its own personnel investigations. The Department maintains a personnel file on its officers. California state law states that police personnel files are confidential and not subject to disclosure absent a court order. The Department expects the contents of the personnel files to remain confidential. The police officers expect that such personal information contained within their personnel file will remain confidential and not subject to disclosure. The end result of an FID investigation/Personnel Investigation could lead to discipline being imposed on an officer.

5. Personnel investigations and FID investigations are reviewed by appropriate command officers in the Department. This review has several purposes: (1) to determine whether the involved officers violated any Department policies or procedures; (2) to determine whether administrative discipline and/or retraining of the involved officers is necessary; (3) to ascertain if police policies and procedures in such areas as supervision, training, tactics, policies, etc. should be modified. In sum, Personnel Complaint/FID Investigations are an essential aid to providing critical

*DECLARATION OF DETECTIVE III BRIAN HUN* - 2

**EXHIBIT 1**

evaluation of Department officers and policies, and to determine the most effective way to serve the citizens of Los Angeles.

6. At various times the Use of Force investigations have been undertaken by different Divisions of the LAPD including Force Investigation Division (FID), Critical Incident Investigation Division (CIID), Robbery Homicide Division (RHD) and even Internal Affairs.

7. When a categorical use of force occurs, essentially separate investigations are commenced. One is an administrative investigation, which is aimed at analyzing the tactics used during the incident and compliance with LAPD's policies and procedures. The end result of this administrative investigation is to determine if the actions or omissions of the officers complied with the above areas and if not should they be referred out for training and/or subject to discipline, including a Board of Rights which could lead to termination. This investigation is considered official information for the department and is maintained in confidence.

8. Concurrent with the administrative investigation, but as a separate investigation, there is a criminal investigation into the matter. The criminal investigation is referred to the proper prosecutorial agency who determines if the officers, suspects, both or neither are subject to criminal prosecution. The detectives assigned to conduct the criminal investigation are many times different than the ones assigned to the administrative investigation.  The detectives conducting the criminal investigation against the Officer are not privy to compelled statements of the involved officers or any information obtained from the compelled statements.

9. The FID's administrative investigation contains compelled statements from the involved officers. These statements are deemed confidential by California statute and Federal case law.  See Penal Code §832.7; *Sanchez v. Santa Ana Police Department,* 936 F. 2d 1027, 1033-34 (9th Cir. 1990).  The information obtained from the compelled statements can and has been used to initiate disciplinary action

*DECLARATION OF DETECTIVE III BRIAN HUN* - 3
**EXHIBIT  1**

against officers, as well as evidence in disciplinary proceedings where the officer's conduct was considered to be contrary to Department policy. The investigation into a Use of force and the final reports of the investigation, which include the FID summary, the Chief's letter of Transmittal, the Use of Force Review Board's findings and the analysis of the Office of the Inspector General contains information obtained from the compelled statements, an officer's personnel package, his/her training history and an analysis of other complaints or conduct. Such information is provided by the investigator to aid the reviewing administrator or administrative body so that a proper and fair recommendation concerning discipline, retraining or other action can be made.  The information provided may contain references to events, happenings or occurrences that took place outside of the 5-year period for which a police department must maintain complaints pursuant to state law. LAPD maintains its records for a greater period of time for consideration on administrative issues such as discipline and promotions. Personnel complaints, training records, use of force reports, analysis of disciplinary history and internal affairs reports are maintained as confidential reports inside the individual officer's personnel package.

    10.    The FID investigation serves as more than a mere documentation of what occurred.  The thoroughness of the report is necessary to adequately inform those who will be participating in the review process.  This review includes a Use of Force Review Board, which evaluates the officers' actions, and the effect of current practices, policies, and tactics.  The investigation also contains information derived from compelled statements, so that each person involved in the review process may have a clearer understanding of what transpired.  While a compelled statement is not a "personnel" record, to turn it over would defy the purpose of Miranda and Lybarger.  Moreover, these compelled statements are many times used as the source documents for underlying complaint investigations regarding these categorical incidents.

11. The intended purpose of conducting the administrative investigation is in an effort to improve the police department as a whole and the actions of individual officers. This analysis is aimed at enhancing training, critiquing equipment, tactics, policies and to determine if the incident could have been handled better, thereby increasing officer and citizen safety. On every incident, the Department can learn on how to improve based upon the benefit of 20-20 hindsight. Nevertheless, each incident is reviewed based upon the totality of the circumstances and attempts to second-guess officers is not appropriate in the evaluation, but appropriate for trying to learn on how to continuously improve. The reports of the OIG even comment on the investigation into the incident and may provide comments concerning how to improve the investigation. These are all efforts as part of the Department's effort to conduct thorough, complete and comprehensive investigations. If such information is disclosed, it could possibly interfere with the ability to engage in meaningful and open communications.

12. During the compelled walk-through on the night of incident, photographs are often taken to depict the officer's location. Despite the fact that obtaining exact officer locations, or even approximations for that matter, are almost impossible due to the rapidly evolving and deadly confrontations that officers are forced to face, without thorough documentation, it is not possible to conduct a comprehensive review of the incident. For example, it would hamper the investigation if officers' become aware that any photos taken as a result of their compelled statements are discoverable. Unfortunately, this would run the risk that officers may be less candid when providing statements due to these being used against them in a subsequent lawsuit. Unfortunately, officers are not provided the same protections that civilians enjoy. While they are entitled to legal representation, they are forced to provide statements, despite the fact that such statements may not be in their best interests. This is not to say they will be untruthful; however, they will

be inclined to provide only the minimally required information. This, in turn, will not give the Department the best information by which to evaluate the incident. As a result, policy, tactics, and practices will suffer, as decisions will be made based upon incomplete information.

13. As to Complaint Investigations, it is important to note that some, if not all, officers have some complaint investigations that have not been completed and on that basis, they are strictly protected and accessible only to those individuals responsible for investigating those complaints. Under the City Charter Section 1070(c)(6), the administrative investigation may be tolled during the period civil litigation is pending. Moreover, complaint investigations that have not been completed must be protected as the investigation may be adversely affected by any dissemination of its contents or investigative tactics. For example, in the event there were independent witnesses and/or other alternative available evidence, then the autonomy of these individuals and/or evidence is of primary concern to the Department. Divulging any information from an ongoing complaint investigation would jeopardize the integrity of the investigation, and ultimately has the potential of affecting the final outcome of the investigation. If litigants were to obtain statements of others prior to giving their own statement, there is the potential that hearing another's version of the incident may cause them to tailor their testimony to conform to the views of another rather than giving their own view of the incident.

14. As part of the FID investigation a report may be generated which may praise, criticize and/or recommend changes concerning how the incident was handled or how they should be handled. Moreover, the FID Investigation can also be considered a personnel document when it used as a source document and relied upon by the Department during a personnel complaint investigation. Administrative aspects of his/her actions are evaluated, which would have no bearing on the actual UOF incident. (For example, whether the officers' showed themselves

at the scene of the UOF incident, did they separate from each other, fail to possess proper gear or equipment during the incident.) This could be the 'deficiency' identified, which is important to the Department as an officer safety issue, but has nothing to do with the arrestee or the underlying categorical use of force.

15. The FID reports/use of force reports and Complaint Investigations are subject to the official information privilege. This information is also kept confidential and not disclosed. The LAPD seeks to up hold the protections of this privilege and does not routinely disclose this information without a court's review of the privilege and an order, including an appropriate protective order from a court being issued. This order comes after the court has reviewed the documents and determined the relevancy and assessed the privacy concerns of the parties involved.

16. To turn over any of our administrative reports would cause the Department to re-evaluate the method by which we communicate, and likely result in less retrievable analysis and documentation, and serve to delay the process. Additionally, the reports serve a historical purpose. When policies and practices are developed, these reports may be used to support or refute a recommended change.

*17. The identification of the privacy and/or governmental interests that would be threatened by disclosure.*

18. Unfettered release of this confidential information has the potential for untold negative results, ultimately creating a harmful effect on the Department, as well as the officers and their families. For starters, disclosure of this type of information would have a harmful effect on the personnel and privacy interest of individual officers, as well as those individuals who brought the complaints, if any, against the officers. The basis of obtaining confidential compelled statements would be undermined by disclosure of such information. The officers would be put in a position of either giving a statement which could be used against them civilly or not cooperating and facing departmental sanctions for insubordination.

19. In addressing the complaint/FID investigations, the officers' statements in these investigations are not voluntary, but rather compelled. It is important to note that the officers are forced to give these statements, because to refuse to do so would almost certainly result in termination from their employment from the Los Angeles Police Department for insubordination pursuant to the *Lybarger* admonition. In direct contrast, the complainants, as well as any witnesses, are not compelled to give statements, but rather have the freedom to voluntarily decide whether or not they want to give a statement. This appears to be inherently unfair and prejudicial to the officers. Specifically, it affords the Plaintiff an unfair advantage of refusing to give a statement, but allows them access to statements that can later be used against the officers at trial. The end result is entirely inconsistent with the fundamental principles of fairness and justice. According to the City Attorney's Office, it is not as if a plaintiff is prevented from obtaining the officers pre-trial testimony concerning an incident, because they have the ability, and the right, to propound a variety of discovery, including, but not limited to, taking the officers' depositions and propounding interrogatories and admissions.

20. Finally, persons interviewed by Internal Affairs and/or complaint investigators, as well as FID Investigators, are advised that their statements are being taken for the confidential use of the Department. These individuals' right to privacy will also be greatly affected because they are under the impression that their statements will remain confidential. Interestingly, experience has revealed that there are many witnesses who are reluctant to give statements, but eventually decide to do so after being informed that these statements will remain confidential. Many non-party witnesses to alleged misconduct have expressed their concerns about possible retaliation if their identity is exposed. Many witnesses express their desire to remain anonymous. Personnel complaint/FID investigations are a useful and necessary tool for the Department to utilize in monitoring its officers. Without some type of

*DECLARATION OF DETECTIVE III BRIAN HUN* - 8
**EXHIBIT 1**

protection from the public, the valuable, candid and beneficial information obtained from the personnel complaint/FID investigations would be adversely affected.

21. In terms of societal interests and governmental interests, it would inhibit the Department's ability to meaningfully engage in critical self-analysis. It is not unusual that statements made to investigators are against the self-interest of the witnesses interviewed, often even the penal interests of those involved. The officers and citizens provide these statements with the expectation that they will only be used for Department administrative purposes only. This expectation allows for a more trusted and open environment in which the officers are more candid in their statements. This ability to be forthcoming proves very useful to both the Department and society as a whole.

22. Moreover, in addressing Plaintiff's request for personnel investigations, many complaint investigations include embarrassing facts, such as uncertainty under the stress of the situation. At a minimum, disclosure of all personnel complaint investigations and personnel records would cause needless intrusion of privacy rights, as stated above, and would have a negative effect on our Department's effort to conduct these important investigations. Additionally, because a civilian has the right to invoke his or her right against self-incrimination, under the Fifth Amendment to the United States Constitution, that invocation will be honored, and no statement will be obtained from that person (and, therefore, there will be no statement to disclose to the other parties to the action).

23. Based upon the foregoing, it is quite possible that officers, who would otherwise be more open and candid during these investigations, would provide statements, but not statements that would be beneficial to the self-critical analysis process. It is not to say that the officers would not be forthcoming, but rather that these statements would be curtailed because of their belief that it may be used against them in subsequent monetary civil proceedings. Ultimately, the sole purpose

*DECLARATION OF DETECTIVE III BRIAN HUN* - 9
**EXHIBIT 1**

for which these types of investigations were created, to place a check and balance on the Department's personnel and enable the citizens to have a voice, would be frustrated. In the event these investigations are provided the expected privacy and confidentiality interests, their significance and value will greatly depreciate. Unfortunately, these investigations will become an inexpensive source of pre-trial discovery for the Plaintiff, who, for the most part, is only concerned with a monetary award. To support this contention, often the initiating person refuses to participate in the internal affairs process. Thus, the initiator appears to be seeking the benefits of full administrative investigation at a time they are unwilling to provide their side of the incident.

24. It should also be understood that the personnel complaint investigation processes are distinct from the criminal investigations, as well as the civil discovery process, that often arise from the same incident. Relevant information obtained in an Internal Affairs or complaint investigation, particularly, but not limited to administrative interviews of potential or actual criminal defendants involved in a personnel complaint, is not a part of, and is not shared with detectives conducting the concurrent criminal investigation. This is done in order to avoid any intrusion into a defendant's rights under the Fifth and Sixth Amendments to the United States Constitution. As to any administrative investigation, it is the Los Angeles Police Department's position that evidence and/or materials related to these types of Investigations and/or criminal prosecutions are considered: 1) official information; and 2) that there is a necessity to preserve such evidence in the interest of Justice and to maintain the integrity of the Investigation and protect the legal rights of the involved officers. Moreover, many times while the Administrative Investigation is may be completed, the criminal investigation is still currently pending and the Los Angeles District Attorney's Office has not even completed any Investigative Review of the underlying incident which has been completed. On that basis, the

Administrative Investigative information can have an adverse effect on the criminal investigation of the involved officer and there are issues affecting the District Attorney's prosecutorial work product.  As a result, Investigations may affect the individual Defendants in this matter, as such statements and/or documents that may contain information that is attributable to compelled statements, such as placement, locations etc. could improperly be shared, provided and/or disclosed to the prosecutorial agency in violation of *Lybarger*.

25. A use of force investigation is intended to look into potential issues concerning tactics, officer safety and/or violation of department policies. The department's internal policies may be more restrictive than the mandates of the Constitution. Tactical considerations or the use of "best practices" is not a proper legal basis to support an allegation of negligence or a Constitutional violation. Thus, the investigation into allegations of violations of departmental policy, could find a violation of policy which would not mean that the Constitution or common law was violated.  However, it is common practice for plaintiff's counsel to ask questions about policy violations or tactical considerations even though they are not relevant to the matter.  Obtaining such information seems to be for no other reason than to try to embarrass the officer.  Therefore, unprotected disclosure of personnel complaint investigations, particularly without prior judicial scrutiny, could jeopardize an ongoing criminal investigation or prosecution.

26. The materials and findings of a personnel file and personnel complaint investigation are continuously maintained in protected files in order to maintain their confidentiality.  They are not routinely shown to other City Departments.  Even then, information that is not clearly relevant to the rationale governing the request is redacted to ensure the utmost regard for the privacy rights of all involved parties. The investigations are not available to the general public, except by court order.  In all instances, the Department requests an in-camera hearing to determine the

relevancy for releasing all, or part, of a given investigation, again ensuring the constitutionally protected privacy rights of those named, or otherwise identified, within the written investigation.

27. In each case involving court-ordered disclosure of information from a FID Investigation/personnel file and/or complaint sought in state or federal court, it is the Department's policy to seek a protective order limiting use of the information to the case at trial, and identifying those persons who may properly be granted access to the information. The Department also seeks the return of the documents at the end of the case and that the documents be watermarked to further be able to track the documents to whom they were ordered disclosed. Absent a protective order, it becomes unrealistic to conceive that the large numbers of attorneys, secretaries, law clerks, paralegals and witnesses involved in many cases will be able to maintain proper confidentiality of personal, private material, absent an order that clearly delineates their responsibilities. Such orders further request that said records be returned to the Department after the case has terminated, either by final judgment or otherwise. This request serves to ensure that the intrusion into the privacy and employment rights of those involved is limited to the underlying case, in which the facts are relevant.

28. Even with a carefully written protective order, the release of an entire complaint investigation, force investigation and/or personnel record without prior judicial review to determine relevancy and assess privacy concerns, ignores the constitutional protection given to individual privacy under the United States and California Constitutions, and which a third-party, such as the Department, is obligated to assert. Moreover, a protective order does not, and cannot, prevent the Plaintiff, who is adverse to, and may harbor a personal antagonism for the police, from having access to these documents. This factor, in and of itself, is problematic and may endanger the officer and his family.

29. Another important factor involves the handling of these documents by the Plaintiff's law office. What safeguards are developed and exercised to maintain the security of these documents and the information contained therein? What safeguards are provided, and most importantly, who will act as the gatekeeper of these documents? In the event these reports and/or information are inadvertently released, the City and the City Attorney's Office are vulnerable to litigation, not only by the Plaintiff, but also by their clients as well. These are questions and concerns that cannot be addressed by a protective order, even a carefully drafted one. Moreover, the City of Los Angeles has also had experiences where the information is never returned at the end of the case, and the justification is that this information must be retained because it is necessary to shield against allegations of "malpractice." In these situations, the Court has lost jurisdiction of these cases, and cannot enforce the provision requiring the return of documents.

30. *Describing that even with a specially crafted protective order, there still remains a significant risk of harm.*

31. In addition to the factors stated in the foregoing, a protective order would not prevent the Plaintiff from abusing the ability to access these documents by conducting arbitrary and pre-trial discovery fishing expeditions at the expense of the Department. Any person contemplating a lawsuit against the City of Los Angeles will initiate a complaint, not for the intended use of correcting the problem or concern, but rather the ability of having the opportunity to utilize this information for impeachment purposes against these officers and the City. Once a complaint is initiated, it is common for the complainants to thereafter refuse to provide statements. Refusing to provide statements is problematic. How is it possible for the Department to conduct a full and just investigation, if they cannot obtain a statement from the complainant? The only logical reason why this occurs is because the Plaintiffs' attorneys want to utilize these complaints as a sword to accomplish pre-trial

discovery. Alternatively, if a complete investigation cannot be accomplished due to lack of complainant cooperation, plaintiffs' counsels are likely to contend LAPD fails to investigate claims merely to clear officers of alleged wrongdoing.

32.  *Projection of harm and other alternatives for obtaining this information.*

33.  There are reasonable alternatives for obtaining this type of information through other litigation sources.  For example, there are plenty of discovery tools which exist, such as deposition testimony, possible criminal testimony, if any, police reports, interrogatories, admissions, radio communications, witnesses, if any, and sergeant logs. Additionally, rather than compelling disclosure of an entire investigation, including thoughts and analysis of the investigators and an analysis of training issues or police policy, a more limited disclosure of information, such as a list of witnesses and their contact information may provide parties with sufficient information to investigate the matter and draw their own conclusions.

34.  Prior in camera judicial review of the involved FID reports, letter of transmittal, Lybarger statements, Use of Force Review Reports and personnel complaints, etc. and issuance of an appropriate protective order makes certain that these privacy and official information privilege is not compromised beyond that degree necessary to the issues before the court.  A court's review of the categories of items requested with an eye towards allowing only the disclosure of documents that actually are similar to the issues in the case would similarly protect the officers from such a broad invasion of their privacy and expectations of confidentiality. Accordingly, on behalf of the Los Angeles Police Department and those officers whose personnel records are sought, I respectfully request these procedural protections in the instant case.

35.  ~~I am also personally familiar with the type of materials sought in these requests, including the Body-Worn Cameras and Digital In-Car Videos which are~~

*DECLARATION OF DETECTIVE III BRIAN HUN* - 14

**EXHIBIT  1**

~~attached to the officers and patrol vehicles and the rationale for seeking to withhold them from discovery.~~

***~~Affirmation that the agency collected and/or generated the material in dispute and has maintained its confidentiality.~~***

~~36. My current responsibilities as a supervisor require that I have a thorough knowledge of the policies and procedures followed by the Department. I am therefore authorized and qualified to state Department policies regarding documents and other materials (including audio and video recordings) produced and maintained by the various divisions and entities contained within the Department including, but not limited to, audio recordings, video recordings (both Digital In-Car Video and Body Worn Video), police officers' personnel files, background investigation personnel files, personnel complaints (Internal Affairs investigations), and use of force investigations.~~

~~37. The Department has policies concerning Body Worn Videos ("BWV"), including their use in the field by patrol officers. The Department conducts reviews and audits of BWVs for various purposes, including: (1) to assist in pending potential criminal investigations, (2) to determine whether any of its officers violated any Department policies or procedures; (3) to determine whether administrative discipline and/or retraining of its officers is necessary; (3) to ascertain if police policies and procedures in such areas as supervision, training, tactics, policies, etc. should be modified. In sum, BWVs are an essential aid to providing critical internal evaluation of Department police officers and policies, and to determine the most effective way to serve the citizens of Los Angeles. One of the intended purposes of the BWVs is to improve the police department as a whole and the actions of individual officers, if necessary. Thus, the videos are used to enhance training, critique equipment, evaluate tactics and policies and to determine if any~~

1  ~~given incident could have been handled better, thereby increasing both officer and citizen safety.~~

~~38.    Although the Department publicly releases portions of BWVs from some critical incidents, the Department does not as a matter of course publicly release the entirety of any one BWV. The Department generally considers BWVs to be confidential. Even access to individual BWVs is restricted and no one police officer can access another officer's BWV without authorization. BWVs often depict interactions with citizens wherein personal information of a citizen is disclosed, such as a date of birth, address, driver's license number, etc. In instances of domestic violence or other abuse type calls for service, the faces of victim(s) may be seen as well. Police responses to death investigations also may contain images of the deceased, and sometimes the deceased may not be clothed, partially or at all. BWVs also may show officers and citizens that are not directly involved with the subject incident giving rise to the police response or a later lawsuit.~~

***~~The identification of the privacy and/or governmental interests that would be threatened by disclosure~~***

~~39.    If BWVs are disclosed without a protective order, the higher the likelihood of interference with the ability of the Department to engage in meaningful and open communications with its officers and the citizens of Los Angeles. Unfettered release of this confidential information has the potential for untold negative results, ultimately creating a harmful effect on the LAPD, as well as on the officers and their families. For example, disclosure of this type of information would have a harmful effect on the personnel and privacy interest of individual officers. Therefore, unfettered release of BWVs without a protective order would violate Defendants' confidentiality and privacy rights and may chill the LAPD's ability to conduct meaningful evaluations of incidents.~~

40. ~~Disclosure of BWVs also would be put the privacy rights of ordinary citizens at risk as well and could be harmful to them in various ways. For example, BWVs containing images of minors and/or deceased persons should not be released without a protective order.~~

41. ~~In addition, witnesses to significant crimes, e.g. alleged gang crimes and/or homicides, are sometimes concerned about retaliation if their identity is exposed. Many witnesses express their desire to remain anonymous. Without some type of protection from public disclosure, the valuable, candid and beneficial information obtained from witnesses to these types of significant crimes may be adversely affected. It is not unusual that statements made to police officers are against the self-interest of the witnesses interviewed, often even the penal interests of those involved. Citizens provide these statements with the expectation that they will only be used for Department purposes only. This expectation allows for a more trusted and open environment in which the citizens are more candid in their statements. This ability to be forthcoming proves very useful to both the Department and society as a whole.~~

42. ~~Absent a protective order, it becomes unrealistic to conceive that the large numbers of attorneys, secretaries, law clerks, paralegals and witnesses involved in many cases will be able to maintain proper confidentiality of personal, private material, absent an order that clearly delineates their responsibilities. Such orders further request that said records be returned to the Department after the case has terminated, either by final judgment or otherwise. This request serves to ensure that the intrusion into the privacy and employment rights of those involved is limited to the underlying case, in which the facts are relevant.~~

43. ~~Even with a carefully written protective order, the release of an entire BWV without prior judicial review to determine relevancy and assess privacy concerns, ignores the constitutional protection given to individual privacy under the~~

*DECLARATION OF DETECTIVE III BRIAN HUN* - 17

**EXHIBIT 1**

1  ~~United States and California Constitutions, and which a third-party, such as the~~
2  ~~Department, is obligated to assert. Moreover, a protective order does not, and~~
3  ~~cannot, prevent the Plaintiff, who is adverse to, and may harbor a personal~~
4  ~~antagonism for the police, from having access to these documents. This factor, in~~
5  ~~and of itself, is problematic and may endanger officers and their families.~~

~~44.    Another important factor involves the handling of these documents by the Plaintiff's law office. What safeguards are developed and exercised to maintain the security of the BWVs and the information contained therein? What safeguards are provided, and most importantly, who will act as the gatekeeper of these materials? In the event the BWVs and/or information contained in them are inadvertently released, the City and the City Attorney's Office are vulnerable to litigation, not only by the Plaintiff, but also by their clients as well. These concerns can potentially be alleviated by a protective order.~~

*~~Projection of harm and other alternatives for obtaining this information.~~*

~~45.    There are reasonable alternatives for obtaining the type of information contained in BWVs through other litigation sources. For example, there are plenty of discovery tools which exist, such as deposition testimony, possible criminal testimony, if any, police reports, interrogatories, admissions, radio communications, cellular telephone videos, social media videos, witnesses, if any, and sergeant logs.~~

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. And that this Declaration was executed this 12th day of june, 2023, in the County and City of Los Angeles, California.

------------------------------------
BRIAN HUN, Declarant

*DECLARATION OF DETECTIVE III BRIAN HUN* - 18

**EXHIBIT 1**