# EXHIBIT B

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4    ASHLYN PETIT,                          )
                                             )
 5                      Plaintiff,           )
                                             )
 6               vs.                         )   Case No.
                                             )   2:23-cv-00789-ODW
 7    CITY OF LOS ANGELES, a                 )   (PVCx)
      municipal entity; OFFICER DARYL        )
 8    GLOVER, JR.; SERGEANT BRETT            )
      HAYHOE; and DOES 1 through 10,         )
 9    inclusive,                             )
                                             )
10                      Defendants.          )
      _____)
11

12

13

14

15                    REMOTE DEPOSITION OF

16                      BENNET OMALU, M.D.

17                 Monday, December 15, 2025

18

19

20

21

22

23    Stenographically Reported By:
      Vesna Walter, CSR, RPR, CCRR
24    CSR No. 11989
      Job No. 10179202
25
```

Page 1

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   ASHLYN PETIT,                        )
                                          )
 5                  Plaintiff,            )
                                          )
 6            vs.                         ) Case No.
                                          ) 2:23-cv-00789-ODW
 7   CITY OF LOS ANGELES, a               ) (PVCx)
     municipal entity; OFFICER DARYL      )
 8   GLOVER, JR.; SERGEANT BRETT          )
     HAYHOE; and DOES 1 through 10,       )
 9   inclusive,                           )
                                          )
10                  Defendants.           )
     _____)
11

12

13

14

15

16

17

18

19         Deposition of BENNET OMALU, M.D., taken on

20   behalf of Defendants, with all parties appearing

21   remotely, beginning at 1:10 p.m. and ending at 5:22 p.m.

22   Pacific time, on Monday, December 15, 2025, before VESNA

23   WALTER, Certified Shorthand Reporter No. 11989.

24

25
```

Case 2:23-cv-00789-ODW-PVC   Document 112-2   Filed 01/14/26   Page 4 of 14   Page ID #:1338

Bennet Omalu, M.D.                                          Ashlyn Petit vs.
                                                       City of Los Angeles

```
 1           APPEARANCES (All parties appearing remotely)

 2
     For the Plaintiff:
 3
                LAW OFFICES OF DALE K. GALIPO
 4              By:  RENEE MASONGSONG
                     ALEJANDRO MONGUIA
 5              Attorney at Law
                21800 Burbank Boulevard
 6              Suite 310
                Woodland Hills, California  91367
 7              (818) 347-3333
                Rvalentine@galipolaw.com
 8
     For Defendants SERGEANT BRETT HAYHOE and OFFICER DARYL
 9   GLOVER JR.:

10              CARPENTER, ROTHANS & DUMONT, LLP
                By:  KIMBERLY SARMIENTO
11              Attorney at Law
                500 South Grand Avenue
12              19th Floor
                Los Angeles, California  90071
13              (213) 228-0400
                Ksarmiento@crdlaw.com
14
     For Defendant CITY OF LOS ANGELES:
15
                LOS ANGELES CITY ATTORNEYS OFFICE
16              By:  CHRISTIAN R. BOJORQUEZ
                Attorney at Law
17              200 North Main Street
                6th Floor
18              Los Angeles, California 90012
                (213) 978-8100
19              Christian.bojorquez@lacity.org

20   ALSO PRESENT:

21              MARILYN ORTIZ, Aptus Zoom host

22

23

24

25
```

1            Objection.  Not reasonably calculated to lead to
2    the discovery of admissible evidence.
3            You can answer.
4            THE WITNESS:  That was qualitative evidence,
5    qualitative evidence of drugs in his system.  You cannot
6    rely on qualitative data to make a reasonable
7    determination.  You need quantitative.  So the
8    qualitative presence of drugs is of no significant
9    forensic consequence.
10   BY MS. SARMIENTO:
11        Q    So did you consider that information pertinent
12   to your review of forming or offering medical opinions in
13   this case, sir?
14        A    The medical opinions in this case are bullet
15   trajectory, pain and suffering.  Methamphetamine, the
16   mechanisms of action do not in any way involve the
17   pathophysiological mechanisms of pain and suffering.
18        Q    So is your answer --
19        A    Let me finish my answer, ma'am.
20            It is of no significant forensic consequence.
21        Q    Okay.  So it's fair to say that no, you did not
22   consider them pertinent in your opinions in this case,
23   sir?
24        A    No.
25            In differential diagnosis, you look at every

Case 2:23-cv-00789-ODW-PVC   Document 112-2   Filed 01/14/26   Page 6 of 14   Page ID #:1340

Bennet Omalu, M.D.                                           Ashlyn Petit vs.
                                                         City of Los Angeles

1  material.  You do a derivative analysis.  Every
2  information is part of the differential diagnosis.  Did
3  you give it weight?  No, because the standards of
4  practice is you don't.  It's not me, per se.  It's the
5  standards of science.
6      Q    Were you ever provided reports indicating that
7  among Mr. Petit's belongings recovered at the scene at
8  the July 18th, 2022, shooting, there were drug -- there
9  was drug paraphernalia that had methamphetamine residue?
10          MS. MASONGSONG:  Objection.  Not reasonably
11 calculated.
12          You can answer.
13          THE WITNESS:  You do not consider the presence
14 or absence of drugs on a human being who has been shot.
15 The drug has no role whatsoever in the mechanism and
16 cause of his death.
17          However, having said that, the issue here in
18 this case is not causation, cause and manner.  ==The issue==
19 ==here is bullet trajectory and pain and suffering.==
20 BY MS. SARMIENTO:
21     Q    So is it a fair statement that you did not
22 consider Mr. Petit's history of using methamphetamine as
23 a possible cause of his death?
24          MS. MASONGSONG:  Objection.
25          THE WITNESS:  That is not true.

Case 2:23-cv-00789-ODW-PVC   Document 112-2   Filed 01/14/26   Page 7 of 14   Page ID #:1341

Bennet Omalu, M.D.                                          Ashlyn Petit vs.
                                                        City of Los Angeles

1  this case.  The assignment in this case I have is
2  trajectory and pain and suffering.  My assignment is not
3  to do an analysis of the autopsy because this case is not
4  a causation case.
5      Q    Okay.  That's okay if you want to limit it to
6  what your involvement was, but I am asking questions
7  about this, Dr. Omalu.  So I appreciate you answering
8  them.
9           The question that I had is you mentioned earlier
10 exhuming a body.  You said you've done a medical
11 examination of a body that was exhumed 11 years
12 afterwards.  Do you recall that testimony?
13     A    I've done many.  I've done one eleven years, one
14 three years, one one year, and another one six months,
15 and another one one month.  I've done it all.
16     Q    Have you ever done any sort of medical
17 examination on cremated remains?
18     A    So cremated remains, the body is subjected to a
19 temperature of about 1200 degrees Fahrenheit for two
20 hours.  It is not scientifically reasonable to examine
21 cremated remains because the fire has completely
22 destroyed the organic compounds.
23          So remember -- remember, as a scientist, I have
24 to opine on things that fall within a reasonable degree
25 of medical certainty that's generally accepted.

```
 1   at the time that it was brought to the medical examiner's
 2   office, is there anything that can be done on those types
 3   of mummified remains to determine whether or not there
 4   was any sort of drugs like methamphetamine that could
 5   have played a role in that person's death?
 6        A    Well, a full autopsy would have done that.
 7   You're buttressing what I have said, that your county
 8   medical examiner -- what he did was grossly inadequate.
 9   So the answer to your question is a full autopsy, yes.
10        Q    So you think that the medical examiner in this
11   case could have done more to determine the cause and
12   manner of Mr. Petit's death; correct?
13        A    No.  I'm not saying that.  I'm just saying that
14   a full autopsy should have been done.  If I had done the
15   case, I would have done a full autopsy.
16             However, having said that, his cause of death
17   and the time he died is not part of my assignment in this
18   case.  I did not form any differential diagnosis on that.
19   The two assignments which I performed differential
20   diagnosis on were bullet trajectory and body positioning
21   and pain and suffering.
22        Q    I understand that, sir, and I appreciate you
23   explaining that.
24             You're aware that Mr. Petit's cause of death was
25   listed by the coroner -- the medical examiner as
```

```
 1   undetermined; correct?
 2        A    Yeah.  That is his opinion.  I don't know if the
 3   doctor may have had another opinion, but that's his
 4   opinion.
 5        Q    And do you think that's the opinion based on
 6   what was performed on the remains in terms of the depth
 7   or level of autopsy performed?
 8        A    Undetermined manner and cause of death, it's an
 9   index of a poor quality of work.  In this day and age --
10   this is 2025 -- we have the technological foundation to
11   perform full autopsies on skeletonized remains.  I've
12   done many skeletonized remains.  I will come up with
13   causes of death.
14             So making an undetermined -- undetermined --
15   even on an epidemiological basis, people who have
16   suffered the types of trauma Mr. Petit suffered,
17   epidemiologicalistically, are more likely to suffer
18   sudden and unexpected death as a long-term sequelae of
19   the severe trauma he suffered, because this is severe
20   bodily damage.  He had some spinal injuries, very major
21   severe trauma.
22             So based on the epidemiological facts -- the
23   epidemiological facts, the serious bodily injury he
24   suffered more likely than not would have been a
25   contributory factor to his death if you look at the
```

```
 1   general foundation, principles, if a full autopsy would
 2   have been done.
 3           And the severe bodily injury he suffered just
 4   two years prior -- if he had died ten years after his
 5   trauma, then you could say, yes, it may not have played a
 6   role.  But this was within two years.  Understand that we
 7   use in epidemiology -- if you suffer a serious bodily
 8   injury and you die within five years, that more likely
 9   than not, the serious bodily injury contributed to your
10   death.  This is why we also use the five-year cutoff.  If
11   you survive cancer and you live for five years, then I
12   will tell you, yes, you can now say you're cured of
13   cancer.
14           So the fact that he died within two years of his
15   trauma -- severe trauma, epidiemologistic -- speaking as
16   an epidemiologist, will indicate that his trauma would
17   have been at least a contributory factor to his death.
18           But the office did very sloppy, substandard
19   work.  The easiest diagnosis you can give on a case in
20   forensic pathology is undetermined.
21      Q    And you're not offering any opinions in this
22   case, again, on his cause and manner of death; right?
23      A    I thought I have repeated.  My role in this case
24   is not causation.
25      Q    I understand, sir.  Again, you may not like my
```

1   Q   Do you think how a body is dressed could be
2   something that could assist a medical examiner with
3   determining when someone passed away?
4           MS. MASONGSONG:  And I'll just object for the
5   record that this line of questioning is not relevant to
6   Dr. Omalu's opinions.
7           Dr. Omalu, you can answer the question.
8           THE WITNESS:  I didn't prepare for such
9   questions, mentally speaking.  Like, I'm not focused to
10  start answering -- to start thinking -- overburdening
11  myself to think about such examination questions as if I
12  were sitting for an academic board exam.  I cannot answer
13  it.  I'm sorry.
14  BY MS. SARMIENTO:
15   Q   Dr. Omalu, in your review of the coroner's
16  report in this case, do you recall seeing any information
17  that was noted by the investigator in terms of when his
18  family members last had contact with him?
19   A   I mean, again, I told you my differential
20  diagnosis was limited to bullet trajectory analysis and
21  pain and suffering analysis.  Such a question, I cannot
22  answer.  I did not perform any differential diagnosis on
23  such a question.
24   Q   My review is -- my question is, your review of
25  the coroner's report, did you see any information noted

```
 1   in there regarding when Mr. Petit's family members last
 2   had contact with him, yes or no?
 3        A    To make a notation means it is a variable that
 4   is part of my analysis.  So --
 5        Q    Did you --
 6        A    Let me finish.  Let my finish, ma'am.
 7             If I don't perform an analysis, there are
 8   certain pieces of information I do not notate.  So --
 9        Q    So is the answer no?
10        A    No, my answer is not no.  My answer is I cannot
11   answer that.  That's my answer.
12        Q    Okay.  So is it fair to say that you did not
13   review the information about when Mr. Petit's family
14   members last had contact with him that was noted in the
15   coroner's report?
16             MS. MASONGSONG:  And I'll just object for the
17   record to the extent that the question has no bearing on
18   Dr. Omalu's opinions in this case.
19             You can answer.
20             THE WITNESS:  It does not relate to my
21   assignment in this case, bullet trajectory and
22   positioning, pain and suffering.  So it was not a piece
23   of the information I notated, no.
24   BY MS. SARMIENTO:
25        Q    Have you personally reviewed any actual X-ray
```

```
 1   your work on this civil case.
 2        A    No.
 3        Q    Did you take any notes of any of your
 4   conversations with any of the plaintiff's lawyers?
 5        A    I don't take notes.  I don't write notes.
 6        Q    What were you told about the facts of this case
 7   during your initial conversations with the plaintiff's
 8   lawyers, after you were first contacted on this case?
 9        A    Well, they don't tell me anything.  All they
10   tell me is the assignment, that this is a bullet
11   trajectory and positioning case and also pain and
12   suffering, and then they send me the materials.  Lawyers
13   don't typically tell me, you know, about cases.  If I
14   need more information, I'm the one who reaches out to
15   them.
16        Q    Okay.  And I won't ask you again.  I know you've
17   made very clear that your work in this case was confined
18   to bullet trajectory and pain and suffering and you were
19   not retained to offer any opinions regarding cause, date,
20   or manner of death with respect to Mr. Petit.  I won't
21   make you repeat it.  I know you've said it several times
22   on the record.
23        A    Can we go off, because my daughter is calling
24   me, please.  Please.
25             MS. SARMIENTO:  Sure.
```

Case 2:23-cv-00789-ODW-PVC    Document 112-2    Filed 01/14/26    Page 14 of 14    Page ID #:1348

Bennet Omalu, M.D.                                    Ashlyn Petit vs.
                                                      City of Los Angeles

```
 1          I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby certify:
 3          That the foregoing proceedings were taken before
 4   me at the time and date herein set forth; that any
 5   witnesses in the foregoing proceedings, prior to
 6   testifying, were duly sworn; that a record of the
 7   proceedings was made by me using machine shorthand, which
 8   was thereafter transcribed under my direction; that the
 9   foregoing transcript is a true record of the testimony
10   given.
11          Further, that if the foregoing pertains to the
12   original transcript of a deposition in a federal case,
13   before completion of the proceedings, review of the
14   transcript [  ] was [ X ] was not requested.
15
16          I further certify I am neither financially
17   interested in the action nor a relative or employee of
18   any attorney or party to this action.
19          IN WITNESS WHEREOF, I have this date subscribed
20   my name.
21
22   Dated: 01/05/2026
23
24                              _____
                                     Vesna Walter
                                RPR, CCRR, CSR No. 11989
25
```