**STEVEN J. ROTHANS – State Bar No. 106579**
**KIMBERLY SARMIENTO – State Bar No. 345641**
**CARPENTER, ROTHANS & DUMONT, LLP**
**500 S. Grand Avenue, 19th Floor**
**Los Angeles, CA  90071**
**(213) 228-0400 / (213) 228-0401 [Fax]**
**srothans@crdlaw.com** / **ksarmiento@crdlaw.com**

Attorneys for Defendants, Sergeant Brett Hayhoe
and Officer Daryl Glover, Jr., public employees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as Successor-In-Interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; OFFICER DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

ATTORNEYS OF RECORD:

Defendants, City of Los Angeles, a public entity, and Sergeant Brett

Hayhoe and Officer Daryl Glover, Jr., public employees, hereby submit the

following Memorandum of Contentions of Fact and Law:

///

///

- 1 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    CLAIMS AND DEFENSES.

### A.    Plaintiff's Claims.

Based on the operative complaint and meet and confer discussions with Plaintiff's counsel, Defendants are informed and believe that the following are Plaintiff's claims in this matter:

**Claim 1:**    42 U.S.C. § 1983 claim under the Fourth Amendment for alleged unlawful and excessive use of force.

**Claim 2:**    42 U.S.C. § 1983 claim under *Monell* based on alleged unconstitutional custom, practice or policy.

**Claim 3:**    42 U.S.C. § 1983 claim under the Fourth Amendment for alleged denial of medical care.

**Claim 4:**    Alleged assault and battery based on California state law.

**Claim 5:**    Alleged negligence based on California state law.

**Claim 6:**    Alleged violation of California Civil Code 52.1 (Bane Act).

**Claim 7:**    Alleged intentional infliction of emotional distress based on California state law.

### B.    Elements For Each Claim.

**Claim 1:**  42 U.S.C. § 1983 claim under the Fourth Amendment for alleged excessive use of force.

1.    Defendants Sergeant Brett Hayhoe's and/or Officer Daryl Glover, Jr.'s acts were intentional;

2.    Defendants Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. acted under color of state law;

3.    Defendants Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. unreasonably seized Jermaine Petit's person by using excessive force against him; and

- 2 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

4.     The acts of Defendants Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. were the cause of the deprivation of Jermaine Petit's rights protected by the Constitution or laws of the United States.

*See* Ninth Circuit Manual of Model Jury Instructions 9.1, 9.2, 9.3, and 9.25.

**Claim 2:**     42 U.S.C. § 1983 claim under *Monell* based on alleged unconstitutional custom, practice or policy.

**(Unconstitutional custom, practice, or policy theory):**

1.     Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. acted under color of state law;

2.     The acts of the City of Los Angeles' employees deprived Jermaine Petit of his particular rights under the United States Constitution;

3.     The City of Los Angeles' employees acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant City of Los Angeles; and

4.     The City of Los Angeles's official policy or widespread or longstanding practice or custom caused the deprivation of Petit's rights by the City of Los Angeles; that is, the City of Los Angeles's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of Petit's rights as to be the moving force that caused the ultimate injury.

*See* Ninth Circuit Manual of Model Jury Instructions 9.5.

**Claim 3:**     42 U.S.C. § 1983 claim under the Fourth Amendment for alleged denial of medical care.

1.     Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. made an intentional decision regarding the denial of needed medical care;

2.     The denial of needed medical care put Petit at substantial risk of suffering serious harm;

- 3 -

3.      Sergeant Hayhoe and Officer Glover did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Sergeant Hayhoe's and Officer Glover's conduct obvious; and

4.      By not taking such measures, Sergeant Hayhoe and Officer Glover caused Petit's injuries.

*See* Ninth Circuit Manual of Model Jury Instructions 9.30.

**Claim 4:**      Alleged assault and battery based on California state law.

1.      That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. intentionally touched Jermaine Petit or caused Jermaine Petit to be touched;

2.      That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. used deadly force on Jermaine Petit;

3.      That Sergeant Hayhoe's and Officer Glover's use of deadly force was not necessary to defend human life;

4.      That Jermaine Petit was harmed; and

5.      That Sergeant Brett Hayhoe's and/or Officer Daryl Glover, Jr.'s use of deadly force was a substantial factor in causing Jermaine Petit's harm.

*See* California Civil Jury Instructions (CACI) – 1305B.

**Claim 5:**      Alleged negligence based on California state law.

1.      That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. used force to arrest, detain, prevent the escape of or overcome resistance by name of Jermaine Petit;

2.      That the amount of force used by Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. was unreasonable;

3.      That Jermaine Petit was harmed; and

- 4 -

4.    That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. use of unreasonable force was a substantial factor in causing Jermaine Petit's harm.

*See* California Civil Jury Instructions (CACI) – 400.

**Claim 6:**    Alleged violation of California Civil Code 52.1 (Bane Act)

1.    That Sergeant Brett Hayhoe and/or Officer Glover unreasonably acted violently against Jermaine Petit to prevent him from exercising his right to be free from excessive force and freedom of expression or to retaliate against Jermaine Petit for having exercised his right to be free from unreasonable force or freedom of expression;

2.    That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. intended to deprive Jermaine Petit of his enjoyment of the interests protected by the right to be free from unreasonable force and freedom of expression;

3.    That Jermaine Petit was harmed; and

4.    That Sergeant Brett Hayhoe's and/or Officer Daryl Glover, Jr.'s conduct was a substantial factor in causing Jermaine Petit's harm.

*See* California Civil Jury Instructions (CACI) – 3066

**Claim 7:**    Alleged intentional infliction of emotional distress based on California state law.

1. That Sergeant Brett Hayhoe's and/or Officer Daryl Glover, Jr.'s conduct was outrageous;

3. That Jermaine Petit suffered severe emotional distress; and

4. That Sergeant Brett Hayhoe's and/or Officer Daryl Glover, Jr.'s conduct was a substantial factor in causing Jermaine Petit's severe emotional distress.

*See* California Civil Jury Instructions (CACI) - 1600

**C.    Defendants' Evidence in Opposition to Each Claim.**

**Claim 1:**  42 U.S.C. § 1983 claim under the Fourth Amendment for alleged

- 5 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1 excessive use of force.

2    Evidence that will establish that Sergeant Brett Hayhoe's and Officer Daryl,

3 Glover, Jr.'s conduct was objectively reasonable (and, therefore, was not in

4 violation of Jermaine Petit's Fourth Amendment rights) includes: testimony by

5 Sergeant Hayhoe, Officer Glover, and Officer Martinez as to their observations

6 and perceptions during the events precipitating the shooting; testimony by the 911

7 callers to the LAPD call for service and the events precipitating the shooting;

8 testimony of the LAPD investigators concerning their collection and analysis of

9 the evidence pertaining to the shooting (i.e., physical evidence located at the scene

10 of the shooting and witness statements pertaining to the shooting), officers' body

11 worn camera footage and screen stills of the video footage, LAPD dispatch records

12 and recordings, photographs of the scene of the shooting and the object Jermaine

13 Petit was pointing in the officers' direction prior to and at the time of the shooting,

14 medical records pertaining to Jermaine Petit, and expert witness reports and

15 testimony.

16    ***Claim 2:***  42 U.S.C. § 1983 claim under *Monell* based on alleged

17 unconstitutional custom, practice or policy.

18    Defendants believe that the same evidence set forth above under Claim No.

19 1 supports their contention that Defendants are not liable under this claim.  In

20 addition, evidence that will establish that the City of Los Angeles / LAPD does not

21 have unconstitutional customs, practices, or policies that led to a violation of

22 Jermaine Petit's rights includes: LAPD training policies consistent with California

23 Commission on Peace Officer Standards and Training ("POST"), testimony from

24 Sergeant Brett Hayhoe and Officer Daryl Glover, Jr. regarding their training

25 requirements, training by relevant LAPD staff concerning these training policies

26 and procedures.

27    ***Claim 3:***  42 U.S.C. § 1983 claim under the Fourth Amendment for alleged

28 denial of medical care.

1  Evidence that will establish that Sergeant Brett Hayhoe and Officer Daryl,

2  Glover, Jr. timely summoned medical care includes: testimony by Sergeant

3  Hayhoe, Officer Glover, and Officer Martinez as to their observations and conduct

4  following the shooting, testimony by other responding officers as to their

5  observations and conduct following the shooting, officers' body worn camera

6  footage and screen stills of the video footage, LAPD dispatch records and

7  recordings, medical records pertaining to Jermaine Petit, and expert witness reports

8  and testimony.

9  **Claim 4:**  Alleged assault and battery based on California state law.

10  Defendants believe that the same evidence set forth above under Claim No.

11  1 supports their contention that Defendants are not liable under this claim.

12  **Claim 5:**  Alleged negligence based on California state law.

13  Defendants believe that the same evidence set forth above under Claim No.

14  1 supports their contention that Defendants are not liable under this claim.

15  **Claim 6:**  Alleged violation of California Civil Code 52.1 (Bane Act).

16  Defendants believe that the same evidence set forth above under Claim No.

17  1 supports their contention that Defendants are not liable under this claim.

18  **Claim 7:**  Alleged intentional infliction of emotional distress based on

19  California state law.

20  Defendants believe that the same evidence set forth above under Claim No.

21  1 supports their contention that Defendants are not liable under this claim.

22  **D.    Defendants' Counterclaims And Affirmative Defenses.**

23  *First Affirmative Defense:*  Qualified Immunity (federal)

24  *Second Affirmative Defense:*  Qualified Immunities (state)

25  Cal. Gov. Code, § 815.2(b):  Injuries by Employee within Scope of

26  Employment; Immunity of Employee

27  Cal. Gov. Code, § 820.2:  Discretionary Acts

28  Cal. Gov. Code, § 820.8:  Acts or Omissions of Others

- 7 -

Cal. Gov. Code § 821.6:  Immunity

*Third Affirmative Defense:*  Self-Defense/Defense of Others

*Fourth Affirmative Defense:*  Contributory / Comparative Negligence

**E.    Elements To Affirmative Defenses.**

***First Affirmative Defense:*** *Qualified Immunity*

1.    Whether Defendants' alleged conduct violated a constitutional right.

2.    If a constitutional right was violated, whether the constitutional right was "clearly established."

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

***Second Affirmative Defense:*** *Qualified Immunities (state)*

1.    Cal. Gov. Code, § 815.2(b): Injuries by Employee within Scope of Employment; Immunity of Employee.

If the employee is immune from liability, Defendant City of Los Angeles also is immune from liability.

2.    Cal. Gov. Code, § 820.2: Discretionary Acts.

An employee of Defendant City of Los Angeles was exercising the discretion vested in him/her.

3.    Cal. Gov. Code, § 820.8: Acts or Omissions of Others.

An employee of Defendant City of Los Angeles cannot be held liable for an injury caused by the act or omission of another person.

4.    Cal. Gov. Code § 821.6: Immunity.

A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

***Third Affirmative Defense:*** *Self-Defense/Defense of Others.*

1.    That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. reasonably believed that Jermaine Petit was going to harm them or others.

- 8 -

2.    That Sergeant Brett Hayhoe and/or Officer Daryl Glover, Jr. used only the amount of force that was reasonably necessary to protect themselves or others.

*See* California Civil Jury Instructions (CACI) – 1304.

***Fourth Affirmative Defense:***  Contributory Negligence by Plaintiff.

1.    That Jermaine Petit was negligent.

2.    That Jermaine Petit's negligence was a substantial factor in causing his harm.

*See* California Civil Jury Instructions (CACI) – 2904

***Fifth Defense:***  Limitation on Plaintiff's Recovery of Damages

1.    That Plaintiff Ashlyn Petit's recovery for damages for pain and suffering experienced by her father, Jermaine Petit, is limited from the date of the shooting to the date of Mr. Petit's death.

*See* California Civil Jury Instructions – 3934; Hook v. U.S., 2017 WL 2831696 at *3 (E.D. Mi. 2017); Williams v. City of Oakland, 915 F.Supp. 1074, 1079-80 (N.D. Cal. 1996).

**F.    Defendants' Evidence In Support Of Each Affirmative Defense.**

Defendants believe that the same evidence set forth above under Claim Nos. 1 through 7 above supports their affirmative defenses in this matter.

**G.    Evidentiary Issues.**

Defendants do not believe that they will have any evidentiary problems with their defenses.  However, Defendants believe Plaintiff may have evidentiary problems with her claims, as she may try to introduce hearsay, irrelevant and other inadmissible evidence to support her claims.

**H.    Issues of Law.**

**1.    Sergeant Hayhoe and Officer Glover Did Not Violate Petit's Constitutional Rights And Are Entitled To Qualified Immunity.**

- 9 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    Even assuming the Officers' conduct constituted a use of excessive force

2    (which it does not), Plaintiff's federal claims against Sergeant Hayhoe and Officer

3    Glover still fail because they are entitled to qualified immunity.

4    "The 'reasonableness' of a particular use of force must be judged from the

5    perspective of a reasonable Officer on the scene, rather than with the 20/20 vision

6    of hindsight."  Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Terry v. Ohio,

7    392 U.S. 1, 20-22 (1968)).  In addition, the consideration of "reasonableness must

8    embody allowance for the fact that police Officers are often forced to make split-

9    second judgments--in circumstances that are tense, uncertain, and rapidly

10   evolving--about the amount of force that is necessary in a particular situation."  Id.

11   at 396-397.  Police Officers are entitled to use deadly force when they have

12   "probable cause to believe that the suspect poses a threat of serious physical harm,

13   either to the Officer or to others."  Tennessee v. Garner, 471 U.S. 8, 11 (1985).  An

14   Officer may reasonably use deadly force when he confronts a suspect whose

15   actions indicate a threat to the Officer's life or the lives of others.  The courts

16   cannot ask Officers to hold fire in order to ascertain whether the suspect will, in

17   fact, injure or murder the Officer.  "[T]he Fourth Amendment does not require" a

18   police Officer to be "omniscien[t], and absolute certainty of harm need not precede

19   [an Officer's] act of self-protection."  Wilkinson v. Torres, 610 F.3d 546, 553 (9th

20   Cir. 2010).  Under these tense and rapidly evolving moments, reasonable police

21   Officers are entitled to use deadly force to stop a threat to their lives and/or the

22   lives of others.  See Graham, supra, 490 U.S. at 396-97.

23   The individual defendants are entitled to qualified immunity since they did

24   not violate Petit's right to necessary medical attention and their "conduct does not

25   violate clearly established statutory or constitutional rights of which a reasonable

26   person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

27   Qualified immunity is a judicially created doctrine that stems from the conclusion

28   that few individuals will enter public service if such service entails the risk of

- 10 -

personal liability for one's official decisions.  See Wyatt v. Cole, 504 U.S. 158, 167-68 (1992).  Qualified immunity "spare[s] a police Officer not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  It is an "an immunity from suit rather than a mere defense to liability."  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity balances "two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes."  Morales v. Fry, 873 F.3d 817, 822 (9th Cir. 2017).  Qualified immunity protects officials "who act in ways they reasonably believe to be lawful."  Garcia v. County of Merced, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly who knowingly violate the law.'"  Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).  "If the Officer's mistake as to what the law requires is reasonable . . . the Officer is entitled to the immunity defense."  Saucier, supra, at 205.  The Ninth Circuit also has held that a police Officer is entitled to qualified immunity if a reasonable Officer could have believed, even mistakenly so, that the Officer's actions were justified so long as the Officer's conclusion is objectively reasonable.  See Act Up!/Portland v. Bagley, 988 F.2d 868, 872 (9th Cir. 1993); Franklin v. Fox, 312 F.3d 423, 439 (9th Cir. 2002).

There are two prongs to the qualified immunity analysis.  The courts may exercise their discretion in deciding which prong to analyze first under the facts of the case at bar.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  The first

- 11 -

inquiry is whether, taken in the light most favorable to the non-moving party, the facts alleged show that the Officer's conduct violated a constitutional right.  See Saucier, *supra,* 533 U.S. at 201.  Where the alleged conduct does not violate a constitutional right, the Officer is entitled to qualified immunity.  *Id*.  The law is clear that an Officer may use deadly force to apprehend a suspect where the suspect poses an immediate threat to the Officer or others.  Tennessee, 471 U.S. at 11.  To succeed on a Section 1983 action against a defendant in his individual capacity, the plaintiff must present specific facts linking the individual defendant to a constitutional violation.  See Ortez v. Washington County, 88 F.3d 804, 809 (9th Cir. 1978).

Under the first prong, Sergeant Hayhoe and Officer Glover are entitled to qualified immunity because they did not violate Petit's constitutional rights by using deadly force against him.  Plaintiff cannot present any specific facts linking the Defendant Officers to a constitutional violation.

Under the second prong, the Court must determine whether the conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known."  Hope v. Pelzer, 536 U.S. 730, 739 (2002); Harlow, 457 U.S. at 818; Wood v. Ostrander, 879 F.2d 583, 591 (9th Cir. 1989).  Police Officers are presumed to be protected by qualified immunity.  Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  The plaintiff bears the burden of proving that the constitutional right allegedly violated was clearly established at the time of the alleged incident.  See Cohen v. San Bernardino Valley College, 92 F.3d 968, 973 (9th Cir. 1996).

"To overcome this presumption [of qualified immunity protection], a plaintiff must show that the Officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'"  Id. [internal citations omitted].  The standard is a demanding one.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

The contours of a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Thus, the standard is *not* whether clearly established law supported an Officer's actions, rather it is whether an Officer's conduct was *prohibited* *by* clearly established law. This line of inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition . . .," with the focus being on "whether it would be clear to a reasonable Officer that his conduct was unlawful in the situation he confronted." *Saucier, supra*, 533 U.S. at 201. The courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, *supra*, at 741. "'[C]learly established' also should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552 (2017). "Clearly established" must be particularized to the facts of the case and "in light of the pre-existing law the unlawfulness must be apparent". Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Sergeant Hayhoe and Officer Glover are entitled to qualified immunity under the second prong because it was not clearly established at the time of the incident that their conduct in regards to Petit, who posed an imminent threat of great bodily injury and/or death to the officers, was prohibited by the law.

### 2. **The Officers used reasonable force when faced with Petit's noncompliance with their lawful commands.**

Police Officers in California may use reasonable force, in self-defense or defense of others, while in the commission of their duties because unlike private citizens, they act under color of law to protect the public interest. Brosseau v. Haugen, 543 U.S. 194,197-98 (2004); Cal. Pen. Code § 835(a). Accordingly, they are permitted to use such force as is "objectively reasonable" under a totality of the circumstances. Graham, 490 U.S. at 397. Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

1    countervailing governmental interests at stake." Id. at 396.

2         "The 'reasonableness' of a particular use of force must be judged from the

3    perspective of a reasonable Officer on the scene, rather than with the 20/20 vision

4    of hindsight." Id. "[R]easonableness must embody allowance for the fact that

5    police Officers are often forced to make split-second judgments in circumstances

6    that are tense, uncertain, and rapidly evolving about the amount of force that is

7    necessary in a particular situation." Id. at 396-97. To evaluate the reasonableness

8    of an Officer's use of force, courts must pay "careful attention to the facts and

9    circumstances of a particular case, including the severity of the crime at issue,

10   whether the suspect poses an immediate threat to the safety of the Officers or

11   others, and whether [the suspect] is actively resisting arrest or attempting to evade

12   arrest by flight." Id. at 396.

13        Under state tort law, a battery is a "violation of an individual's interest in

14   freedom from intentional, unlawful, harmful or offensive unconsented contacts

15   with his or her person." Rains v. Superior Court,150 Cal.App.3d 933, 938 (1984).

16   Critically, a plaintiff bringing a battery claim against police must additionally

17   prove that they used unreasonable force; see also Edson v. City of Anaheim, 63

18   Cal.App.4th 1269, 1272-73 (1998). The rationale is that Officers are "charged

19   with acting affirmatively and using force as part of their duties[] because the right

20   to make an arrest or investigatory stop necessarily carries with it the right to use

21   some degree of physical coercion or threat thereof to effect it." Id. (quoting

22   Graham, 490 U.S. at 396) (internal quotations omitted). To prevail on a state law

23   battery claim against a police Officer, a plaintiff must establish that: (1) the Officer

24   intentionally touched plaintiff or caused plaintiff to be touched; (2) the Officer

25   used unreasonable force on the plaintiff; (3) plaintiff did not consent to the use of

26   that force; (4) plaintiff was harmed; and (5) the Officer's use of unreasonable force

27   was a substantial factor in causing plaintiff's harm. See CACI No. 1305A.

28        Here, Plaintiff's excessive force, assault, and battery claims are premised on

- 14 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

her contentions that the officers should have known that Petit was not actually armed with a gun.  However, as further outlined below, the evidence supports a finding that the officers acted reasonably under the precarious circumstances they confronted, which were caused by Petit's noncompliance and imminent threat of harm they perceived when he repeatedly brandished a replica gun in their direction.

### A. The officer defendants used objectively reasonable force.

The officers unquestionably used objectively reasonable force because Mr. Petit pointed, what the officer defendants perceived to be a pistol, at them. This is affirmed by the reliable video footage, showing Petit holding a black object in his hand as if he is holding a gun with his finger on the trigger.  Coupled with information from dispatch relaying that both 911 callers observed the subject with a gun, the officers reasonably believed that Petit was, indeed, armed.

"When an individual points his gun in [an] officer's direction, the Constitution undoubtedly entitles the officer to respond with deadly force." George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013) (citing Long v. City & Cnty. of Honolulu, 511 F.3d 901, 906 (9th Cir. 2007) (internal quotations omitted).  This is particularly true when a suspect has ignored or otherwise disobeyed an officer's command to drop the gun.  See, e.g., Krause v. County of Mohave, 846 Fed.Appx. 569, 570-71 (9th Cir. 2021) ("reject[ing] as unpersuasive Plaintiff's contention that [the officer defendant's] repeated order to drop the gun provided insufficient warning to [the decedent] or that a more fulsome warning was practicable during the short duration of this event").  More specific to the circumstances here, the Ninth Circuit has found that officers are justified in the use of deadly force when they reasonably believe that a plaintiff possessed and pointed what appeared to be a dangerous weapon at officers, regardless of whether the items was later found to be a replica gun.  Estate of Strickland v. Nevada County, 69 F.4th 614, 621 (9th Cir. 2023).  The facts of Strickland are strikingly similar to those here.

1    In <u>Strickland</u>, the court noted that "officers met a tense, uncertain, and

2  rapidly evolving circumstance" when they confronted the plaintiff, having found

3  him on a residential street carrying what they perceived to be a firearm.  <u>Id.</u>

4  Officers surrounded plaintiff and ordered him to put the gun down, but instead,

5  plaintiff pointed a replica gun at the ground.  <u>Id.</u>  Officers approached plaintiff with

6  their firearms drawn, and plaintiff dropped to his knees, continuing to hold the gun

7  and pointed it in the direction of one of the approaching officers.  <u>Id.</u>  Three

8  officers ultimately fired on him, killing plaintiff.  <u>Id.</u>

9    Critically, the court noted, "[t]he pivotal moment occurred when [plaintiff]

10  began pointing the replica gun in the officers' direction," i.e., the point at which

11  the officers had a reasonable belief that he posed a "significant threat of death or

12  serious physical injury" and that it was reasonable for them to use deadly force.

13  <u>Id.</u> at 621-22.  **As pertinent here, the court held that the outcome of this**

14  **analysis does not change "because the weapon turned out to be a replica**," as

15  the officers were called to the scene based on reports of a man with a gun and upon

16  arrival, observed him holding what appeared to them, as a legitimate firearm.  <u>Id.</u>

17  at 622 (emphasis added).  The court rejected plaintiff's argument that the officers

18  should have known the gun was not real because decedent told the officers it was a

19  BB gun and even slapped it to indicate it was plastic.  <u>Id.</u>  The court ruled that the

20  officers did not have to take decedent's assertion at face value, and were justified

21  in not doing so.  <u>Id.</u>

22    Like in <u>Strickland</u>, the officer defendants responded to a call of an assault

23  with a deadly weapon, which included information that the subject was possibly

24  armed with a gun. Unlike in <u>Strickland</u>, Petit did not tell the officers the object was

25  not a gun or otherwise fake and did not slap it to demonstrate that it was plastic.

26  Rather, upon the officers' arrival to the scene, Petit held the black object in his

27  right hand as if it was a firearm and pointed it at the officers in a stance they

28  perceived to be consistent with a shooting stance. To the extent Plaintiff argues

- 16 -

that Sgt. Hayhoe and Officer Glover knew it was not a gun because of a comment made by Officer Martinez that *he* perceived it was not a gun does not mean that the officer defendants were not reasonable in their belief.  As an initial matter, Sgt. Hayhoe did not hear Officer Martinez remarks. Moreover, Officer Glover was attempting to verify with Officer Martinez why he did not believe the object was a gun but did not get a response.

This is especially true where Officer Glover had experience making firearms arrests in the same area, including with unconventional guns that do not always completely resemble traditional firearms. When Officer Glover heard the two shots fired, he perceived that Petit and Sgt. Hayhoe exchanged gunfire—furthering his reasonable belief that Petit was, indeed, armed. Ultimately, as the Ninth Circuit reasoned in Strickland, the officer defendants were not required to take Officer Hernandez's statement at face value until they, themselves, could verify whether the object Petit was holding was a gun.

As the Ninth Circuit advised in Strickland: "**While misidentification of the replica gun adds to the tragedy of [a] situation, it does not render the officers' use of force objectively unreasonable**."  Strickland, 69 F.4th at 623.  The Ninth Circuit further reasoned that where a decedent "was carrying a toy gun that resembled a real firearm, [] [] ignored multiple commands to drop it, and [] [] pointed it at the officers during a tense confrontation…the officers were left with only an instant to act.  **They were not required to 'delay their fire' until they learned whether the gun was real**."  Id.

That is precisely the case here, and accordingly, Plaintiff's excessive force claim must be dismissed.  To the extent Plaintiff argues that Officer Glover used excessive force because Petit fell to the ground shortly after he fired his weapon, courts have recognized the delayed reaction of officers involved in shooting incidents.  See Waid v. County of Lyon, 87 F.4th 383, 390 (9th Cir. 2023) (finding that the officers acted reasonably because the decedent was "upright and moving

- 17 -

1  when he was shot [and] [a]lthough he may have started to fall before the officers

2  stopped shooting, the shots were fired sequentially, and [decedent] did not fully

3  fall to the ground until after the shooting stopped").  Officer Glover perceived that

4  Petit was still upright, and thus, potentially continued to pose a threat of harm,

5  particularly where he believed one of the shots he heard was fired by Petit at Sgt.

6  Hayhoe.

7        **3.  Plaintiff's claim for denial of medical care fail, where the**

8            **officers promptly summoned medical attention for Petit once it**

9            **was safe to do so.**

10       Although "suspects have a Fourth Amendment right to 'objectively

11  reasonable post-arrest medical care' until the end of a seizure," this requires only

12  that "police officers ***seek*** the necessary medical attention for a detainee when he or

13  she has been injured while being apprehended…" Est. of Cornejo ex rel. Solis v.

14  City of Los Angeles, 618 F.App'x 917, 920 (9th Cir. 2015); Tatum v. City & Cnty.

15  of San Francisco, 441 F.3d 1090, 1099 (9th Cir. 2006) (emphasis added).  It is

16  well-settled that an officer's duty, in the context of medical care for a pretrial

17  detainee, is limited to *summoning* medical care—not rendering it.  Waid v. Lyon

18  Cnty., 2022 WL 464304 at *6 (D. Nev. 2022) (finding that the officer defendants

19  fulfilled their duty to summon medical care even if they waited six minutes while

20  the decedent was bleeding because right after the shooting, one officer radioed that

21  shots were fired immediately, "requested scene security and any available unit, and

22  requested care flight").

23       Accordingly, "a police officer who promptly summons the necessary

24  medical assistance has acted reasonably for purposes of the Fourth Amendment,

25  even if the officer did not administer CPR." Cato v. Cnty. of San Bernardino,

26  2023 WL 5505012 at *11 (C.D. Cal. 2023) (quoting Tatum, 441 F.3d at 1099).

27  "Just as the Fourth Amendment does not require a police officer to use the least

28  intrusive method of arrest…neither does it require an officer to provide what

- 18 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  hindsight reveals to be the most effective medical care for an arrested suspected."

2  Tatum, 441 F.3d at 1098.

3      Here, the officers promptly summoned medical care for Petit immediately

4  after the shooting. The uncontroverted evidence shows that mere minutes passed

5  from the time shots were fired to the time Officer Martinez put out a call for an

6  ambulance, which was done as soon as the officers determined that Petit no longer

7  posed a potential risk of imminent harm. Thus, the officers satisfied their

8  obligations under the Fourth Amendment. Krause, 846 F.Appx. at 571 (ruling that

9  the "district court correctly granted summary judgment on Plaintiff's denial of

10  medical care claim because the officers fulfilled their due process obligation by

11  calling for medical assistance within one minute of [the decedent] being shot").

12      To the extent Plaintiff takes issue with the fact that officers did not

13  immediately administer first aid to Petit, again, failure to do so does not amount to

14  a constitutional violation.  Moreover, the officers were forming a tactical plan to

15  safely approach Petit, particularly since the object they perceived to be a gun was

16  still within Petit's reach and because Petit was still moving. For this reason, the

17  officers could not rule out the possibility that Petit could possibly re-arm himself.

18      "[T]he first duty of a police officer is to ensure the safety of the officers and

19  the public."  Saucier v. Katz, 533 U.S. 194, 194 (2001) (overruled in part on other

20  grounds).  Accordingly, courts have recognized that even where a suspect is

21  injured, officers must first address the safety concerns before the injured suspect

22  can be approached by either officers or first responders.  Cato v. County of San

23  Bernardino, 2023 WL 5505012 at *12-13 (C.D. Cal. 2023).  Indeed, "[a]n

24  assessment of whether an emergency that threatens the police and public is

25  ongoing cannot narrowly focus on whether the threat solely to the first victim has

26  been neutralized because the threat to the first responders and public may

27  continue."  Michigan v. Bryant, 562 U.S. 344, 363 (2011).

28      Once officers assembled affirmatively disarmed Petit, Officer Glover is

- 19 -

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

heard on his body camera instructing another officer on scene to grab his first aid kit so that they could begin administering life preserving measures, even with knowledge that paramedics were on their way. That said, the uncontroverted evidence firmly establishes that the officers did not deny Petit medical care and acted swiftly and promptly, while still mindful of legitimate officer-safety concerns.

### 4. **Plaintiff's *Monell* claim is unsupported by evidence.**

#### (a) **Unconstitutional customs, practices, and policies theory.**

As an initial matter, Plaintiff's claims for municipal liability fail for lack of constitutional violation.  However, even if Plaintiff could prove that Officers Jaral and De La Rosa violated Mr. Jermaine Petit's constitutional rights, to prevail on a *Monell* claim based on an alleged unlawful custom, practice or policy, Plaintiff must prove with competent, admissible evidence that the LAPD *expressly* adopted an official policy, had a longstanding or widespread custom or practice *and* that the custom, practice or policy was the moving force behind the deprivation of his constitutional rights.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 818–20 (1985); Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013).  "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."  Tuttle, 471 U.S. at 823.  The City also must act with deliberate indifference, which is a conscious choice to follow a course of action among various alternatives.  See City of Canton v. Harris, 489 U.S. 378, 384 (1989).  Mere negligence, even gross negligence, is not "deliberate indifference."  Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 769 (9th Cir. 1989).  Evidence of a single incident of unconstitutional use of force, without more, also will not suffice to establish municipal liability.  Tuttle, 471 U.S. at 823–24.  As set forth in the Model Ninth Circuit Jury Instructions, No. 9.5, "'Official policy' means a formal policy, such as a rule or regulation adopted by the defendant [name of local governing body], resulting from a deliberate choice to follow a course of

action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

There must be a directive or order attributable to a final municipal policymaker.  See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).  The mere fact that a final policymaker defers to the discretionary decision of or agrees with the opinions and recommendations of a subordinate does not turn the subordinate's decision into official policy.  City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

> "Where the controlling law places limits on [law enforcement Officers'] authority, they cannot be said to have the authority to make contrary policy. . . Such results would not conform to Monell and the cases following it. . ..  A sheriff, for example, is not the final policymaker with respect to the probable-cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy."

Pembaur, 475 U.S. at 486 (1986).

Where a subordinate executes the policy in an unreasonable manner, the plaintiff may sue that employee individually.  In such instances, the claim does not lie with the public entity itself.  Id.  As the facts show, POST sets the minimum training standards for all peace Officers in the state of California and POST has a set of Learning Domains on all the subjects that are taught to police Officers.  The LAPD's policies follow those rules and regulations established by POST.

Plaintiffs have no evidence of and cannot prove that the LAPD has an unlawful policy concerning use of force or racial discrimination.  Further, there is no evidence that any alleged unlawful policies were the moving force behind Officer Jaral's use of force and any deprivation of Plaintiff's constitutional rights.

Though liability may also attach when an employee committed a constitutional violation pursuant to a widespread practice or custom, allegations of an isolated or sporadic incident.  Praprotnik, 485 U.S. at 127; Saved Magazine v. Spokane Police Dept., 19 F.4th 1193, 1201 (9th Cir. 2021).  Model Ninth Circuit

- 21 -

Jury Instructions, No. 9.5 provides, "'Practice or custom' means any longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the defendant [name of local governing body]. [A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violator[s] [was] [were] not disciplined, reprimanded or punished]." Id. A widespread "custom or practice" must be so "persistent" that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local governmental entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted); Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (citations omitted). The plaintiff must prove the existence of such a widespread practice or policy as a matter of fact. See Trevino, 99 F.3d at 920.

Additionally, in order for the actions of a lower-level employee to give rise to a Monell claim, those actions must not only be persistent and widespread, but the official policymaker must take no corrective action. Monell v. Dep't of Soc. Svs., 436 U.S. 658 (1978); Tuttle, 471 U.S. 808; Praprotnik, 485 U.S. 112; see also Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1236 (9th Cir. 2011) (holding that "a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal Officers went unpunished").

Here, there is no evidence that the LAPD had any widespread customs or practices which led to any constitutional violations in this case. Indeed, the evidence shows that the LAPD investigates all uses of force to determine whether policy was followed by its employees, and those investigations are then presented to the LAPD's Board of Police Commission, which makes the final determination on these issues. If an employee is deemed to have violated policy, a personnel complaint can be initiated which may result in disciplinary actions. In sum, Plaintiff cannot prove that the LAPD has any unlawful customs or practices

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  applicable to this incident.  There is no competent, admissible evidence of any

2  unlawful customs or practices that led to any deprivation of Petit's constitutional

3  rights.  Further, there is no evidence that any alleged unlawful customs or practices

4  were the moving force behind the officers' use of force and any deprivation of

5  Petit's constitutional rights.

6       **5.** **Plaintiff's claim for negligence and intentional infliction of**

7         **emotional distress fail because the Officers' conduct was**

8         **reasonable under the circumstances.**

9       A negligence claim requires evidence that a breach of a duty of care was the

10  proximate or legal cause of a plaintiff's injury.  Lopez v. City of Los Angeles, 196

11  Cal.App.4th 675, 687 (2011). To determine whether an Officer committed such a

12  breach requires the court to analyze whether the use of force was objectively

13  reasonable.  Id. at 689. In this regard, police may use reasonable force to "make an

14  arrest, prevent escape over overcome resistance, and need not desist in the face of

15  resistance."  Id. (quoting Brown v. Ransweiler, 171 Cal.App.4th 516, 527 (2011)).

16       To establish a cause of action for intentional infliction of emotional distress,

17  the plaintiffs must prove: (1) the conduct of an Officer was extreme and

18  outrageous; (2) the conduct was done with the intent, or reckless disregard, of

19  causing the plaintiff's emotional distress; and (3) the plaintiff suffered severe

20  emotional injury as a result of the defendant's conduct.  See Wilkins v. Nat'l

21  Broad. Co. Inc., 71 Cal. App. 4th 1066, 1087 (1999).  A defendant's conduct is

22  only "outrageous" when it is "so extreme as to exceed all bounds of that usually

23  tolerated in a civilized community."  Hughes v. Pair, 46 Cal. 4th 1035, 1050–51

24  (2009).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or

25  other trivialities" do not suffice.  Cochran v. Cochran, 65 Cal.App.4th 488, 496

26  (1998).

27       As set forth above, the individual defendants' actions were reasonable under

28  the circumstances given Petit's conduct in brandishing a replica gun in their

- 23 -

direction multiple times, which the individual defendants perceived to be a real gun that Petit was able and ready to fire at them.

**6. Plaintiff's Bane Act claim fails where there is no evidence that the Officers acted with a specific intent to violate Plaintiff's constitutional rights.**

Claim 8 is asserted under California Civil Code section 52.1, also known as the Bane Act. This statutory provision prohibits a person from interfering or attempting to interfere "by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015).

In Cornell v. City and Cnty. of San Francisco, 17 Cal. App. 5th 766 (2017), court explained that "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." Id. at 800. Accordingly, the court held that "the egregiousness required by section 52.1 is tested by whether the circumstances indicate the arresting Officer had a specific intent to violate the arrestee's rights." Id. at 801. In so holding, *Cornell* adopted the specific intent standard established in Screws v. United States, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights. Cornell, 17 Cal. App. 5th at 802. In light of the Cornell decision, the Ninth Circuit has adopted the specific intent standard for Bane Act claims. Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018).

Here, Plaintiff does not have evidence that Sergeant Hayhoe or Officer

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Glover had a specific intent to violate Petit's constitutional rights. <u>Cornell</u>, 17 Cal.App.5th at 901-02. Because the evidence firmly establishes that the actions of the Officers were undertaken pursuant to their lawful duties as peace Officers and not for any specific intent to violate Plaintiff's civil rights, this claim also fails.

## II.    JURY TRIAL.

Defendants contend that the issues in this case are appropriate for a jury trial, and that a jury trial has been properly requested.

## III.   ATTORNEYS' FEES.

The prevailing party on the federal claims may be entitled to recover attorney's fees under 42 U.S.C. § 1988.

## IV.   ABANDONMENT OF ISSUES.

Defendants have not abandoned any of their defenses, and reserve their right to assert further defenses or abandon any defenses as Plaintiff's contentions become known.

## V.    CONCLUSION.

Defendants reserve the right to supplement those contentions as the Court's rulings, Plaintiff's contentions, and/or other evidence, become known to Defendants.

///

///

///

///

///

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

2    DATED:  January 16, 2026          CARPENTER, ROTHANS & DUMONT LLP

3                                              /s/  Kimberly Sarmiento

4                                      By:  _____

5                                      Steven J. Rothans
                                       Kimberly Sarmiento
6                                      Attorneys for Defendants,
                                       Sergeant Brett Hayhoe and Officer Daryl
7                                      Glover, Jr., public employees

8

9

10   Dated:  January 16, 2026          Respectfully submitted,

11
                                       **HYDEE FELDSTEIN SOTO**, City Attorney
12                                     **DENISE C. MILLS**, Chief Deputy City Attorney
                                       **KATHLEEN KENEALY**, Chief Asst. City Attorney
13

14                                     By:   /s/ Christian Bojorquez
15                                     CHRISTIAN BOJORQUEZ
                                       *Attorneys for Defendant*, **CITY OF LOS**
16                                     **ANGELES**

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW