# EXHIBIT G

```
 1                   UNITED STATES DISTRICT COURT
 2                  CENTRAL DISTRICT OF CALIFORNIA
 3                             --oOo--
 4

 5   ASHLYN PETIT, as successor-in
     interest to JERMAINE PETIT, deceased,
 6
                Plaintiff,
 7
     v.                                    Case No.
 8                                         2:23-cv-00789-CJC (PVCx)

 9   CITY OF LOS ANGELES, a municipal
     entity; OFFICER DARYL GLOVER, JR.;
10   SERGEANT BRETT HAYHOE;
     and DOES 1 through 10, inclusive,
11
                Defendants.
12   _____/

13

14
                STENOGRAPHIC REPORTER'S TRANSCRIPT OF
15
             REMOTE VIDEO DEPOSITION OF DARYL GLOVER, JR.
16
                      WEDNESDAY, JULY 30, 2025
17
                         **UNSEALED PORTION**
18

19   Reported Stenographically by:

20   KIMBERLY D'URSO, CSR 11372, RPR

21   Job No.  18705

22

23

24

25
```

```
 1                    APPEARANCES (Remote)

 2   FOR THE PLAINTIFFS:

 3           LAW OFFICES OF DALE K. GALIPO
             BY:  DALE K. GALIPO, ESQ.
 4                RENEE MASONGSONG, ESQ.
             21800 Burbank Boulevard, Suite 310
 5           Woodland Hills, California 91367
             818.347.3333
 6           dalekgalipo@yahoo.com
             rvalentine@galipolaw.com
 7
             IVIE MCNEILL WYATT PURCELL & DIGGS
 8           BY:  RODNEY S. DIGGS, ESQ.
             444 S. Flower Street, Suite 3200
 9           Los Angeles, CA 90071
             213.489.0028
10           rdiggs@imwlaw.com

11
     FOR THE DEFENDANTS BRETT HAYHOE and DARYL GLOVER, JR.
12
             CARPENTER ROTHANS & DUMONT, LLP
13           BY:  KIMBERLY SARMIENTO, ESQ.
             500 S. Grand Avenue, 19th Floor
14           Los Angeles, CA 90071
             213.228.0400
15           ksarmiento@crdlaw.com

16   FOR THE DEFENDANT CITY OF LOS ANGELES:

17           OFFICE OF THE CITY ATTORNEY OF LOS ANGELES
             BY:  CHRISTIAN R. BOJORQUEZ, ESQ.
18           200 N. Main Street, 6th Floor, City Hall East
             Los Angeles, CA 90012
19           christian.bojorquez@lacity.org

20   ALSO PRESENT:  Dennis Saelee, Videographer

21                  Danie Williams, paralegal

22                  Olivia Burnett, law clerk

23                       --oOo--

24

25
```

```
1     Q.   Do you recall who was driving that shift?
2     A.   Yes, sir.
3     Q.   Who was?
4     A.   I was.
5     Q.   Do you recall your shift hours at the time?
6     A.   Yes, sir.
7     Q.   What were they?
8     A.   1845 hours to 0645 hours.
9     Q.   Do you have an estimate as to approximately
10  what time the shooting occurred?
11    A.   Approximately, 7:40.
12    Q.   Was it still light outside?
13    A.   Yes, sir.
14    Q.   And where did the shooting occur?
15    A.   On King and Bronson.
16    Q.   Do you know, generally, which way King Street
17  runs?
18    A.   Yes, sir.
19    Q.   Which way?
20    A.   East and west.
21    Q.   And Bronson's a north-south street?
22    A.   Yes, sir.
23    Q.   I want to ask you about the information you had
24  regarding the call that ended up relating to the
25  shooting.
```

1      Do you recall, generally, what information you
2 had, initially?
3      A.   Yes, sir.
4      Q.   Can you please tell me?
5      A.   Yes, sir.  The information originally was that
6 it was a man with a firearm.  And then we -- we had
7 another call of a man with a stick, possibly lighting
8 something on fire.
9           In regards to the man with the call -- I'm
10 sorry -- the man with the gun, I believe it was
11 brandishing, like he pointed it at someone, or used it
12 in a threatening manner, from my recollection.
13      Q.   Okay.  Was this information you received over
14 the police radio?
15      A.   Yes, sir.
16      Q.   And you said you listened to the dispatch tape
17 recently?
18      A.   I believe last week I did.  Yes, sir.
19      Q.   And when you listened to the dispatch tape, did
20 you hear them saying he had pointed a gun at someone?
21      A.   I don't know if that was from the dispatch tape
22 or if that was from the transcript of the dispatch --
23 like the calls that go into the dispatcher.  I could be
24 getting the two mixed up, but I know that that was
25 something I believed I -- I heard.

Daryl Groves, Jr.

```
 1      Q.   Any other information you recall having related
 2   to the call, before seeing the potential suspect?
 3      A.   That's all I recall right now, sir.
 4      Q.   Did you have any information, for example, on
 5   the name of the person?
 6      A.   No, sir.
 7      Q.   Did you know whether or not the person had a
 8   criminal history?
 9      A.   No, sir.
10      Q.   Did you have any information as to whether the
11   person was under the influence of drugs or alcohol?
12      A.   No, sir.
13      Q.   Did you have any information that the person
14   specifically, had injured anyone?
15      A.   No, sir.
16      Q.   As a law enforcement officer, is part of your
17   job, as you understand it, to respond to calls and
18   information and do some type of assessment or
19   investigation when you can?
20      A.   Yes, sir, when I can.
21      Q.   Sometimes, has it been your experience that
22   information that comes in from callers is accurate, and
23   sometimes it may be inaccurate?
24      A.   Yes, sir.
25      Q.   Where was the individual that ended up getting
```

1  shot when you first saw him?
2     A.   When I first saw him, he was walking westbound
3  on King, on the north side of the street, approximately
4  one block east of Bronson.
5     Q.   And where were you when you first saw him?
6     A.   When I first seen him, I was approximately -- I
7  was on King, approximately one block west of Westside
8  Avenue.
9     Q.   How far was he from you when you first saw him?
10    A.   Approximately, 25 yards.
11    Q.   Did you pull closer to him after first seeing
12 him?
13    A.   Yeah.  We -- I pulled behind him when I first
14 seen him.
15    Q.   And you were driving; correct?
16    A.   Yes, sir.
17    Q.   Was there any discussion you recall with your
18 partner, Officer Martinez, after seeing him, but before
19 Martinez getting out of the car?
20    A.   The conversations that we had was prior to
21 our -- like, on our startup watch, when we first get the
22 car gassed up and everything:  Who's going to be
23 contact, who's going to be cover.
24         So once we observed the suspect, we pretty much
25 just went into, you know, our normal police duties at

```
 1    that time.
 2         Q.    Who did you understand was going to be the
 3    contact officer and who was going to be the cover
 4    officer?
 5         A.    Originally, Martinez was going to be the
 6    contact.
 7         Q.    Did that change at some point?
 8         A.    Yes, sir.
 9         Q.    When did it change?
10         A.    When I noticed there was no compliance.
11         Q.    Then you assumed the role of the contact?
12         A.    I'm sorry, sir.  Can you repeat it?
13         Q.    Sure.  Then did you assume the role of the
14    contact officer?
15         A.    Yes, sir.
16         Q.    And then Martinez would have taken the role of
17    the cover officer?
18         A.    Yes, sir.
19         Q.    And it's my understanding that at some point,
20    you slightly repositioned your vehicle?
21         A.    Yes, sir.
22         Q.    Did you get out initially before repositioning
23    it, if you remember?
24         A.    I recall opening the door, but once I noticed
25    the suspect had been -- like, was walking away from
```

```
 1   STATE OF CALIFORNIA)
                         ) ss:
 2   COUNTY OF BUTTE     )

 3
                I, KIMBERLY E. D'URSO, do hereby certify:
 4

 5           That the witness named in the foregoing

 6   deposition was present remotely and duly sworn to testify

 7   to the truth in the within-entitled action on the day and

 8   date and at the time and place therein specified;

 9           That the testimony of said witness was reported

10   by me in shorthand and was thereafter transcribed through

11   computer-aided transcription;

12           That the foregoing constitutes a full, true and

13   correct transcript of said deposition and of the

14   proceedings which took place;

15           Further, that if the foregoing pertains to the

16   original transcript of a deposition in a federal case,

17   before completion of the proceedings, review of the

18   transcript [ ] was [ ] was not requested.

19           That I am a certified stenographic reporter and

20   a disinterested person to the said action;

21           IN WITNESS WHEREOF, I have hereunder subscribed

22   my hand this 13th day of August, 2025.

23   _____

24   KIMBERLY D'URSO, CSR NO. 11372, RPR

25
```