**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: rdiggs@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, 32nd Floor
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:   (213) 489-0552

Attorneys for Plaintiff, JERMAINE PETIT

DALE K. GALIPO, Esq. (SBN 144074)
Email: dalegalipo@yahoo.com
RENEE V. MASONGSONG, Esq. (SBN 281819)
Email: rvalentine@galipolaw.com
**THE LAW OFFICE OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Telephone:  (818) 374-3333
Facsimile:   (818) 347-4118
Attorneys for Plaintiff, JERMAINE PETIT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as Successor-in-Interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal entity; OFFICER DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:23−cv−00789 ODW(PVCx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4**<br><br>**Final Pretrial Conference**<br>Date: 02/02/2026<br>Time: 1:30 p.m.<br>Courtrm: 5D<br><br>**Jury Trial**<br>Date: 02/17/2026<br>Time: 9:00 a.m.<br>Courtrm: 5D |

Plaintiff ASHLYN PETIT, as Successor-in-Interest to JERMAINE PETIT, deceased ("Plaintiff") will and hereby does oppose Defendants' Joint Motion in Limine No. 4. This opposition is based on the following memorandum, the records on file with the Court and any arguments that may be presented at hearing.

Dated: January 21, 2026             **IVIE McNEILL WYATT PURCELL & DIGGS**

                               By:   /s/ Rodney S. Diggs_____
                                       RODNEY S. DIGGS
                                       Attorneys for Plaintiff

Dated: January 21, 2026             **LAW OFFICES OF DALE K. GALIPO**

                               By:   /s/ Renee V. Masongsong
                                       DALE K. GALIPO
                                       RENEE V. MASONGSONG
                                       Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY

Defendants' *motion in limine* seeks to manipulate the evidentiary landscape by simultaneously introducing highly prejudicial evidence of Mr. Petit's death while preventing Plaintiff from contextualizing the extent and duration of his suffering. Specifically, Defendants seek to introduce graphic evidence about the discovery of Mr. Petit's skeletonized remains two years after the shooting, ostensibly to establish a timeframe for damages, while simultaneously precluding Plaintiff's expert Dr. Bennet Omalu from offering epidemiological opinions about the shooting's contribution to Mr. Petit's death and preventing Plaintiff from presenting evidence of her own emotional distress as successor-in-interest.

Defendants cannot have it both ways. If the Court permits Defendants to introduce evidence of Mr. Petit's death to limit damages, fundamental fairness requires that Plaintiff be permitted to present expert testimony contextualizing that death within the framework of the serious bodily injuries he sustained. Dr. Omalu's testimony regarding bullet trajectory, pain and suffering, and the epidemiological relationship between severe trauma and subsequent death within two years is highly relevant and not speculative. Dr. Omalu has expressly clarified that his assignment was not to determine cause and manner of death—that is the Medical Examiner's role—but rather to opine on pain, suffering, and the shooting's potential contribution to death based on established epidemiological principles.

Moreover, Plaintiff's standing as successor-in-interest includes the right to present evidence of the emotional context surrounding her father's suffering and death. Defendants' attempt to characterize this case as a "wrongful death" action fundamentally misrepresents Plaintiff's claims. This is a survival action seeking damages for Mr. Petit's pain and suffering from the time of the shooting until his death.

It is essential for the jury to understand that Mr. Petit endured nearly two years

3

of suffering from his gunshot injuries before his untimely death, and that his daughter witnessed this suffering. It is not, however, acceptable for Defendants to introduce prejudicial evidence of decomposed remains while simultaneously preventing Plaintiff from presenting probative evidence explaining the trajectory of Mr. Petit's decline following the shooting.

## II.   FACTS

On July 18, 2022, Defendant Officers Brett Hayhoe and Darryl Glover ("Defendant Officers") shot Jermaine Petit, striking him with gunshot wounds to his left jaw and left shoulder. Mr. Petit was transported to Cedars-Sinai Medical Center where he underwent massive transfusion protocol, emergent intubation, and chest tube placement for a left hemopneumothorax. He was hospitalized from July 18, 2022, through August 8, 2022, when he was discharged to custody at Twin Towers Correctional Facility.

Following his release from custody, Mr. Petit's family lost contact with him. His phone went dead in November 2023, and he was last known to be alive in October 2023. On August 4, 2024, family members discovered Mr. Petit deceased inside his residence at 1726 Sierra View Avenue, Lancaster, California. The Los Angeles County Medical Examiner determined the cause and manner of death to be "undetermined" due to the skeletonized condition of the remains. The Medical Examiner noted no evidence of foul play but documented the presence of old ballistic injuries from the 2022 shooting.

Plaintiff retained Dr. Bennet Omalu, a board-certified forensic pathologist with over 25 years of experience, to analyze bullet trajectory, body positioning, and pain and suffering. Dr. Omalu was not retained to opine on the cause or manner of Mr. Petit's death.

/ / /

/ / /

## III. ANALYSIS

### A. Defendants' Challenge to Dr. Omalu's Expert Testimony Should Have Been Raised as a Daubert Motion and Not as a Motion *in Limine*

Defendants improperly bring this motion *in limine* to exclude opinions by Plaintiff's expert Dr. Omalu regarding the epidemiological relationship between Mr. Petit's gunshot injuries and his subsequent death. To mount such a comprehensive challenge to expert testimony, Defendants needed to file an actual *Daubert* motion during the expert discovery phase—not wait until motions *in limine* to seek wholesale exclusion of an expert's opinions. *Daubert* motions should be distinguished from motions *in limine*. *White v. Los Angeles Cnty.*, 2021 WL 9204238, at *5 n.6 (C.D. Cal. Apr. 6, 2021); *Armas v. Costco Wholesale Corp.*, 2022 WL 17982239, at *6 (D. Nev. Nov. 30, 2022) (differentiating between Daubert motions and motions *in limine*).

The Court's scheduling order (Dkt 73) limits motions *in limine* to eight pages precisely because they address discrete evidentiary issues for trial management—not comprehensive challenges to expert methodology, qualifications, and reliability requiring full briefing with supporting declarations and deposition testimony. Expert discovery closed on October 31, 2025. Defendants deposed Dr. Omalu on December 15, 2025. If Defendants believed Dr. Omalu's opinions were inadmissible under *Daubert*, they were required to file a motion to exclude by the dispositive motion deadline. Instead, Defendants waited until the motion *in limine* phase to raise what is, in substance, a Daubert challenge dressed as a motion *in limine*. This procedural gamesmanship prejudices Plaintiff by compressing what should be full *Daubert* briefing into an eight-page limit and preventing the Court from conducting the comprehensive reliability analysis that *Daubert* challenges require. Accordingly, Defendants' motion is on the wrong procedural platform and should be denied on that basis alone.

## B. Evidence of the Fact of Death Is Admissible, But Graphic Details of the Death Scene Are Highly Prejudicial and Irrelevant

Plaintiff does not dispute that the fact of Mr. Petit's death on or about August 4, 2024, is relevant under Federal Rule of Evidence 401 to establish the temporal scope of damages. The jury is entitled to know that Mr. Petit passed away approximately two years after the shooting to determine the duration of his pain and suffering. Similarly, the Medical Examiner's determination that the cause and manner of death were "undetermined" and that there was "no evidence of foul play" is admissible to clarify that Plaintiff is not asserting this as a wrongful death case.

However, the manner and condition in which Mr. Petit's remains were discovered—skeletonized, inside a residence with no furniture, wine bottles everywhere, and in poor condition—is not relevant to any issue in this case and is substantially more prejudicial than probative under Federal Rule of Evidence 403. These graphic details have no bearing on Defendants' conduct on July 18, 2022, or on the pain and suffering Mr. Petit experienced from his gunshot injuries. The probative value of knowing Mr. Petit died in August 2024 can be established through simple testimony or stipulation. The evidentiary details of decomposition, living conditions, and alcohol containers serve only to invite improper jury speculation about Mr. Petit's lifestyle, substance use, and character—none of which are at issue in this excessive force case.

Defendants cannot introduce prejudicial evidence designed to portray Mr. Petit in a negative light while simultaneously arguing that evidence contextualizing his death within the framework of his serious injuries is inadmissible. If the Court permits any evidence of Mr. Petit's death, it should be limited to: (1) the fact that he died on or about August 4, 2024; and (2) the Medical Examiner's conclusion that the cause and manner were undetermined with no evidence of foul play. All other details regarding the condition and circumstances of discovery should be excluded as unfairly prejudicial under Rule 403.

### C. Dr. Omalu Is Highly Qualified, His Opinions Are Reliable and Relevant to This Survival Action, and His Testimony Will Assist the Jury

Dr. Bennet Omalu is board-certified by the American Board of Pathology in Anatomic Pathology, Clinical Pathology, Forensic Pathology, and Neuropathology—one of fewer than a few dozen practicing physicians in the United States holding all four certifications. He is President and Medical Director of Bennet Omalu Pathology and Clinical Professor at the University of California, Davis Department of Medical Pathology and Laboratory Medicine. Over his twenty-five-year career, Dr. Omalu has been involved in over fifteen thousand death and injury investigations, personally conducted over thirteen thousand autopsies, and examined over fifteen thousand brain tissue specimens. [Dkt 112-6, Omalu CV; Omalu Report at 1-2]. Dr. Omalu is exceptionally qualified to render opinions on bullet trajectory, body positioning, and pain and suffering resulting from gunshot wounds.

Critically, Dr. Omalu was retained solely to analyze "bullet trajectory and positioning" and "pain and suffering"—not to determine the cause or manner of Mr. Petit's death. [Dkt 112-2, Omalu Depo. at 66:14-15, 67:18-19, 78:1-4, 81:19-21, 91:19-92:23, 98:9-12]. Dr. Omalu testified unequivocally and repeatedly that his assignment was not causation analysis, which is the Medical Examiner's role. [Id. at 81:16-21, 83:21-24]. His report confirms this limited scope, concluding that Mr. Petit "continued to experience pain and suffering from his serious bodily injuries until his death" and offering an epidemiological opinion that serious bodily injury within two years "more likely than not" contributed to death based on established medical principles. [Dkt 112-6, Omalu Report at 17].

This is a survival action, not a wrongful death action. The critical distinction is that survival actions compensate for the decedent's own pain and suffering from injury until death, regardless of what ultimately caused death. Dr. Omalu's opinions are directly relevant to establishing the temporal scope and intensity of Mr. Petit's

7

suffering from the gunshot injuries—the core inquiry in a survival action. His epidemiological opinion that serious bodily injuries likely contributed to earlier death does not assert proximate causation or transform this into a wrongful death case. Rather, it provides medical context for the full extent of harm Mr. Petit endured.

Dr. Omalu based his opinions on over twenty items of evidence, including medical records from Cedars-Sinai, the Medical Examiner's autopsy report, body-worn camera footage, and ballistics evidence. [Omalu Report at 2-4]. His opinions are presented "with a reasonable degree of medical certainty" and will assist the jury in understanding the nature, severity, and duration of Mr. Petit's injuries and suffering. Accordingly, Dr. Omalu's testimony should be admitted. Defendants' motion improperly seeks to exclude relevant evidence of Mr. Petit's ongoing suffering from his gunshot injuries. Plaintiff is entitled to show that these injuries caused persistent pain, disability, and suffering that continued until his death—this is the core of a survival action. Dr. Omalu's testimony that Mr. Petit "continued to experience pain and suffering from his serious bodily injuries until his death" directly addresses the temporal scope of compensable harm. [Omalu Report at 17]. Preventing this testimony would improperly limit Plaintiff's ability to establish the full extent of damages.

Plaintiff does not claim this is a wrongful death case and will not use that terminology. However, Plaintiff is entitled to present evidence that the shooting injuries caused ongoing suffering and likely contributed to Mr. Petit's earlier death—this is proper damages evidence in a survival action, not a wrongful death claim. Wrongful death compensates family members when defendant's conduct caused death; survival actions compensate for the decedent's own pain and suffering from injury until death, regardless of ultimate cause. Dr. Omalu's epidemiological opinion that serious bodily injury within two years likely contributed to death does not assert proximate causation but provides medical context for the severity and consequences

of Mr. Petit's injuries.

The Medical Examiner's "undetermined" finding does not preclude Dr. Omalu's opinions. Dr. Omalu appropriately noted that full examination of skeletonized remains is technologically feasible, and the county autopsy was inadequate. [Dkt 112-2, Omalu Depo. at 81:6-82:25]. His epidemiological opinion is based on established medical principles that persons suffering serious bodily trauma who die within two to five years likely had that trauma contribute to death. [Id. at 82:23-83:17]. This is not speculation—it is application of accepted epidemiological methodology to provide proper context for Mr. Petit's suffering and the lasting consequences of Defendants' use of force. Accordingly, Dr. Omalu's testimony should be admitted and Defendants' motion denied.

### D. Plaintiff's Emotional Distress Evidence Is Relevant for Limited Purposes and Does Not Transform This Into a Wrongful Death Action

Plaintiff acknowledges that as successor-in-interest, Ashlyn Petit stands in her father's shoes and seeks only those damages Jermaine Petit himself could have recovered—pain, suffering, and medical expenses from the shooting until his death. Plaintiff is not pursuing independent emotional distress damages arising from the shooting itself or claiming Ashlyn suffered PTSD or anxiety from witnessing the events of July 18, 2022.

However, evidence of Ashlyn's grief over her father's death, her discovery of his remains on August 4, 2024, and her relationship with him is relevant for limited purposes: (1) providing human context for the jury regarding the decedent's family relationships; (2) establishing her standing and motivation as successor-in-interest; and (3) potentially supporting punitive damages by demonstrating the reprehensibility of Defendants' conduct and its lasting consequences. Evidence that Ashlyn discovered her father's skeletonized remains and pursued this action on his behalf humanizes the case without inviting improper damages.

This evidence will be carefully limited through jury instructions to ensure the

9

jury does not award damages for Ashlyn's suffering. Alternatively, this issue is premature for a motion in limine and should be addressed through limiting instructions if specific evidence is offered at trial.

## IV. CONCLUSION

Based on the aforementioned arguments, Defendants' Joint Motion in Limine No. 4 should be denied in its entirety, or alternatively, granted only to limit prejudicial evidence of Mr. Petit's death scene while permitting Dr. Omalu's testimony and limited evidence of Plaintiff's relationship with her father.

Dated: January 21, 2026     **IVIE McNEILL WYATT PURCELL & DIGGS**

　　　　　　　　　　　　　By:   /s/ Rodney S. Diggs
　　　　　　　　　　　　　　　　RODNEY S. DIGGS
　　　　　　　　　　　　　　　　Attorneys for Plaintiff

Dated: January 21, 2026     **LAW OFFICES OF DALE K. GALIPO**

　　　　　　　　　　　　　By:   /s/ Renee V. Masongsong
　　　　　　　　　　　　　　　　DALE K. GALIPO
　　　　　　　　　　　　　　　　RENEE V. MASONGSONG
　　　　　　　　　　　　　　　　Attorneys for Plaintiff