# EXHIBIT 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **KATHY CRAIG,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **COUNTY OF ORANGE,** *et al.*, <br><br> **Defendants.** | **Case No.: SACV 17-00491-CJC(KESx)** <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY FEES [Dkt. 271]** |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Kathy Craig and Gary Witt filed this lawsuit after Orange County Sheriff's Deputy Nicholas Petropulos fatally shot their son, Brandon Lee Witt. Following an April 2019 trial on Plaintiffs' claims for (1) excessive force under 42 U.S.C. § 1983, (2) battery, (3) negligence, and (4) violation of the Bane Act, Cal. Civ. Code § 52.1(b), the jury found in favor of Plaintiffs on all their claims and awarded Plaintiffs a total of $3.4 million in damages—$1.8 million for loss of life, $200,000 for pre-death pain and suffering, and $700,000 each for past loss of companionship and

-1-

association.  (Dkts. 189, 202.)  The Court awarded Plaintiffs $1,250,415 in attorney fees for the time spent on the trial and post-trial law and motion practice.  (Dkt. 245 [Order Granting in Substantial Part Plaintiffs' Motion for Attorneys' Fees, hereinafter "Order"].)

Defendants appealed to the Ninth Circuit, arguing that the Court "improperly awarded compensatory damages for 'the loss of life experienced by' Witt."  *Craig v. Petropulos*, 856 F. App'x 649, 649 (9th Cir. 2021).  The Ninth Circuit affirmed, explaining that it had "recently rejected [Defendants'] arguments in *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102–05 (9th Cir. 2021), when [it] upheld the jury's loss of life award and determined that California state law prohibiting such damages was 'inconsistent with [42 U.S.C.] § 1983,'" and that this case was "indistinguishable" from *Valenzuela*.  *Craig*, 856 F. App'x at 650.  Defendants' petition for panel rehearing and rehearing en banc was denied.  Defendants then appealed to the Supreme Court, but—after requesting a response to the petition—the Supreme Court denied certiorari.  *County of Orange v. Craig*, 143 S. Ct. 526 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court.  (Dkt. 271 [hereinafter "Mot."].)  Plaintiffs request a lodestar amount of $368,797.10 in attorney fees.  (Dkt. 277 [Reply] at 15.)  In opposition, Defendants argue that (1) counsel's hourly rates are excessive, and (2) much of the time spent duplicated efforts between this case and *Valenzuela*, in which many of the same lawyers are separately seeking fees.  (Dkt. 276 [hereinafter "Opp."].)  For the following reasons, Plaintiffs' motion is **GRANTED**.[1] The Court awards Plaintiffs $368,797.10 in attorney fees.

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for February 27, 2023 at 1:30 p.m. is hereby vacated and off calendar.

## II.  ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear.  Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

figure be adjusted on the basis of other considerations.").  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law.  *Morales*, 96 F.3d at 364 & n.9.

## A.    Hourly Rates

The Court first determines Plaintiffs' counsel's reasonable hourly rates.  "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008).  Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).  Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### 1.    Dale Galipo

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs, requests an hourly rate of $1,200.  (Mot. at 23.)  Mr. Galipo graduated from UCLA School of Law in 1984.  (Dkt. 232 [Declaration of Dale K. Galipo, hereinafter "Galipo Decl."] ¶ 3; Mot. at 22.)  Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades.  (*See id.* ¶ 4.)

To support his hourly rate after trial, Mr. Galipo submitted declarations from several prominent civil rights attorneys attesting to his skill and experience.  (*See* Dkt. 231 [Declarations of Thomas Beck, John Burton, Carl Douglas, John Fattahi, Paul Hoffman, and Ronald Brower].)  As the Court noted in its order granting post-trial fees, "[h]is track record backs this up."  (Order at 4.)  At that time, the Court noted that since 2015, Mr. Galipo had successfully resolved cases in settlements totaling over $70 million, and that in the two years prior, he had prevailed in fourteen jury trials, including twelve civil rights cases.  (Galipo Decl. ¶ 4.)  In 2018, he was nominated for Trial Lawyer of the Year by the Consumer Attorneys Association of Los Angeles ("CAALA"), and in 2019, he was elected to the American College of Trial Lawyers and the Inner Circle of Advocates.  (*Id.* ¶¶ 15, 17, 20.)

After trial, the Court found that $1,000 was a reasonable hourly rate for Mr. Galipo.  The Court explained that with thirty-five years of experience, this rate was consistent with the prevailing rate in the Central District for attorneys of comparable skill, experience, and reputation.  (Order at 5.)

Since 2019, Mr. Galipo has continued to develop his impressive track record.  In just the last few years, he prevailed in at least eight civil rights jury trials, with verdicts totaling over $43.2 million, and has settled another ten cases for another $42.65 million.  (Dkt. 272 [Supplemental Declaration of Dale Galipo, hereinafter "Supp. Galipo Decl."] ¶¶ 3–4.)  He has also argued seven cases before the Ninth Circuit, including *Valenzuela*.  (*Id.* ¶¶ 8–9.)  In 2020, he was awarded Trial Lawyer of the Year by the CAALA and Consumer Attorneys of California's Consumer Attorney of the Year.  (*Id.* ¶¶ 5–6.)

The Court finds that a $1,200 hourly rate is reasonable for Mr. Galipo's work over the past three years.  Mr. Galipo has continued to demonstrate the value of his advocacy with over $85 million in recovery in civil rights cases in just a few years.  Although this

rate is high, it reflects Mr. Galipo's strong reputation within the legal community and his continued consistent record of success.  It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation in the Central District who graduated law school when Mr. Galipo did.  *See Donastorg v. City of Ontario*, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235."); *cf. McKibben*, 2019 WL 1109683, at *14 (approving in 2019 adjusted lodestar rates of $887 to $1230 per hour for attorneys practicing civil rights litigation with 26 to 49 years of experience); (Dkt. 275 [Declaration of Carol A. Sobel, hereinafter "Sobel Decl."] ¶¶ 28–39 [collecting evidence that Mr. Galipo's requested rate is consistent with the market rate]).  Indeed, other courts in this district found $1,100 to be a reasonable fee for Mr. Galipo as long as three years ago.  (Supp. Galipo Decl. ¶ 7 [listing two cases from 2020 and 2021 in which courts awarded Mr. Galipo $1,100 per hour]); *Donastorg*, 2021 WL 6103545, at *8 (citing the 2020 Real Rate Report and explaining that "Mr. Galipo's requested rate of $1,100 does not outpace what other litigation partners earn"); *see French v. City of Los Angeles*, 2022 WL 2189649, at *17 (C.D. Cal. May 10, 2022).  When it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field.

### 2.    Kelsi Brown Corkran

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021.  (Mot. at 22–23; Dkt. 271-1 [Declaration of Kelsi Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 16.)  Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005.  (Corkran Decl. ¶ 2.)  After law school, she clerked for Judge David S. Tatel on the D.C. Circuit.  (*Id.* ¶ 3.)  From 2006 to 2012, she was an

attorney with the Civil Appellate Staff at the Department of Justice in Washington, DC, where she was lead counsel for the federal government in over 30 federal appeals involving complex administrative and constitutional law issues. (*Id.* ¶ 4.) She then became an associate and then counsel at Bancroft PLLC, an appellate litigation boutique in Washington, DC, until she clerked for Justice Ruth Bader Ginsburg in 2013. (*Id.* ¶¶ 5–6.) From 2014 to 2021, she was a partner at Orrick, Herrington, & Sutcliffe, LLC, in Washington, DC, where she became the head of the Supreme Court practice in 2020. (*Id.* ¶ 7.) In 2014, she was named a 40 Under 40 Rising Star by the National Law Journal, and she was nationally ranked in appellate litigation by Chambers USA in 2019 and 2020. (*Id.* ¶ 8.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"), a public interest litigation boutique affiliated with Georgetown University Law Center, where she is also a Senior Lecturer in Law. (*Id.* ¶ 9.) In the over 15 years that she has practiced primarily before the Supreme Court and federal courts of appeals, she has argued two cases before the Supreme Court and over 30 cases in the courts of appeals across 12 of the 13 federal circuits. (*Id.* ¶ 10.)

The Court finds that $1,075 is a reasonable hourly rate for Ms. Corkran. This rate reflects Ms. Corkran's substantial experience in appellate law, her strong reputation within the field, the novelty and difficulty of the issues presented on appeal, and the skill required to litigate the appeal. It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation and who graduated law school eighteen years ago. *See Donastorg*, 2021 WL 6103545, at *8 ("According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235."); *cf. McKibben*, 2019 WL 1109683, at *14 (approving in 2019 hourly rates of $603 to $855 for attorneys practicing civil rights litigation with 9 to 15 years of experience and $738 to $1220 for those with 23 to 33 years of experience); (Sobel Decl. ¶¶ 40–44 [collecting evidence that Ms. Corkran's requested rate is consistent with the market rate]).

### 3.   Melanie Partow

Melanie Partow, who was primarily responsible for the day-to-day litigation of the case, for researching, drafting, and editing Plaintiffs' Ninth Circuit answering brief and response to the petition for rehearing and rehearing en banc, for collaborating with Supreme Court counsel on the brief in opposition to the petition for certiorari, and for researching and drafting this motion for fees, seeks an hourly rate of $850.  (Mot. at 23; Dkt. 273 [Supplemental Declaration of Melanie Partow, hereinafter "Supp. Partow Decl."] ¶ 20; Mot. at 21.)  Ms. Partow graduated from Southwestern Law School in 2004.  (Dkt. 234 [Declaration of Melanie T. Partow, hereinafter "Partow Decl."] ¶ 2.)  She received a master's degree in international human rights law from Oxford University in 2010.  (*Id.* ¶ 13.)  After law school, she clerked for the Chief Prosecutor of the International Criminal Court in the Hague.  (*Id.* ¶ 3.)  Ms. Partow was then admitted to the California Bar in 2006.  (*Id.* ¶ 4.)  From the beginning of her career, Ms. Partow has litigated civil rights cases, including police excessive force cases, at Schonbrun DeSimone Seplow Harris & Hoffman, LLP, and Helmer Friedman, LLP.  (*Id.*)  In 2009, she joined Mr. Galipo's law firm as an associate attorney.  (*Id.*)  Since then, she has litigated more than one hundred police misconduct excessive force cases with Mr. Galipo.  (*Id.*)  In the ten years before the Court's order awarding fees after trial, she had worked on numerous appeals and second-chaired twelve jury trials and one bench trial.  (*Id.* ¶¶ 7, 10.)  In 2015 and 2016, she was selected to the Super Lawyers Rising Stars Southern California list.  (*Id.* ¶ 15.)  She also teaches international human rights law and civil rights litigation at the law schools of the University of Southern California and University of California, Irvine.  (*Id.* ¶ 16; Supp. Partow Decl. ¶ 11.)

After trial, the Court found that $675 was a reasonable hourly rate for Ms. Partow, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with comparable experience, and reflected Ms.

Partow's substantial experience in police misconduct excessive force cases and her strong reputation within the field. (Order at 6.) Since then, Ms. Partow has opened a solo practice specializing in police excessive force appeals. (Supp. Partow Decl. ¶ 10.) In 2019, she joined the U.S. Department of Defense, Office of the Military Commissions, where she serves as a trial attorney for a capitally charged defendant before the Military Commissions in Guantanamo Bay, Cuba. (*Id.* ¶ 12.) In 2022, she passed the California State Bar examination to become a California Certified Legal Specialist in Civil Appellate Practice. (*Id.* ¶ 13.)

The Court finds that $850 is a reasonable hourly rate for Ms. Partow. This rate reflects Ms. Partow's increased experience over the last few years, her continued strong reputation within the field, the novelty and difficulty of the issues presented on appeal, and the skill required to litigate the appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school nineteen years ago. *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 45–49 [collecting evidence that Ms. Partow's requested rate is consistent with the market rate]).

### 4.    Joseph Mead

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850. (Mot. at 22–23; Dkt. 271-2 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.) After he graduated from the University of Michigan Law School, *magna cum laude*, in 2007, Mr. Mead clerked for judges in the Eastern District of Michigan and on the Sixth Circuit. (Mead Decl. ¶ 2.)

From 2010 through 2014, he worked for the U.S. Department of Justice, Civil Division, Federal Programs Branch, via the Honors Program.  (*Id.* ¶ 3.)  In 2014, he became a faculty member at Cleveland State University, where he held a joint appointment at the Cleveland-Marshall College of Law and the Maxine Goodman Levin College of Urban Affairs, and obtained tenure in 2020.  (*Id.* ¶¶ 4, 7.)  That same year, he also joined the ACLU of Ohio as a volunteer litigator and served as Associate General Counsel from 2017 to 2020.  (*Id.* ¶ 5.)  In 2021, he joined ICAP as Senior Counsel, where he has represented clients in constitutional litigation at the Supreme Court of the United States, state supreme courts, and federal appellate courts.  (*Id.* ¶ 9.)

The Court finds that $850 is a reasonable hourly rate for Mr. Mead.  This rate reflects Mr. Mead's substantial experience in appellate law and particular credentials, his strong reputation within the field, the novelty and difficulty of the issues presented, and the skill required to litigate the appeal.  It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school sixteen years ago.  *See Donastorg*, 2021 WL 6103545, at *9 (explaining that according to the 2020 Real Rate Report, litigation associates in Los Angeles make a median of $535 per hour, with rates of $740 in the upper quartile, and that partners make a median of $660 per hour, with those working in commercial litigation at large firms earning between $941 and $1,235 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 50–55 [collecting evidence that Mr. Mead's requested rate is consistent with the market rate]).

### 5.   Scott Hughes

Scott Hughes, who was primarily responsible for settlement efforts, legal research for and editing of the Ninth Circuit brief, and client communication, seeks an hourly rate of $780.  (Mot. at 22–23; Dkt. 274 [Supplemental Declaration of Scott D. Hughes,

hereinafter "Supp. Hughes Decl."] ¶ 18.)  Before law school, Mr. Hughes enlisted in the U.S. Marine Corps as a Marine Police Officer.  (Dkt. 233 [Declaration of Scott D. Hughes] ¶ 7.)  He received a master's degree in criminology from SUNY Albany in 2003 and graduated from law school at Western State University College of Law in 2007.  (*Id.* ¶ 8.)  Since 2010, he has managed his own law firm focusing on personal injury and criminal defense cases in state and federal court.  (*Id.* ¶ 10.)  Due to his police background, other attorneys began referring civil rights cases to him involving police misconduct resulting in serious injury or death.  (*Id.*)  He has tried over nineteen civil and criminal cases.  (Supp. Hughes Decl. ¶ 11.)  Several times in recent years, he has been named a Super Lawyer Rising Star.  (*Id.* ¶ 14.)  He has also been named Top 40 Under 40 by the National Trial Lawyers.  (*Id.*)  In recent years, he has personally handled six civil rights cases that resulted in six- and seven-figure settlements and verdicts.  (*Id.* ¶ 11.)

After trial, the Court found that $625 was a reasonable hourly rate for Mr. Hughes, explaining that it corresponded to the prevailing rate for civil rights attorneys with similar experience and accounted for his unique police expertise and his accolades.  (Order at 6–7.)  The Court finds that $780 is a reasonable hourly rate for Mr. Hughes' work on appeal.  This rate reflects Mr. Hughes' particular experience and accolades, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is consistent with the prevailing rate of other attorneys who practice civil rights litigation and who graduated law school sixteen years ago.  *See Donastorg*, 2021 WL 6103545, at *9 (explaining that according to the 2020 Real Rate Report, litigation associates in Los Angeles make a median of $535 per hour, with rates of $740 in the upper quartile, and that partners make a median of $660 per hour, with those working in commercial litigation at large firms earning between $941 and $1,235 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶ 57 ["The rate of $780 an hour for an attorney with 16 years' experience is well within the range of reasonable rates in the Los Angeles legal market."]).

### 6.    Elizabeth Cruikshank

Elizabeth Cruikshank, who assisted with drafting the brief in opposition to Defendants' petition for certiorari, seeks an hourly rate of $733.  (Mot. at 22–23; Dkt. 271-3 [Declaration of Elizabeth Cruikshank, hereinafter "Cruikshank Decl."] ¶ 9.)  She graduated from Columbia Law School in 2015, where she was awarded the Ruth Bader Ginsburg Prize for receiving highest academic honors all three years of law school.  (Cruikshank Decl. ¶ 2.)  She was an associate in the litigation department at Cravath, Swaine & Moore LLP for one year and then had clerkships on the Ninth Circuit and Southern District of New York.  (*Id.* ¶¶ 3–4.)  From 2018 to 2021, she was a part of the Supreme Court and Appellate practice group at Orrick, Herrington & Sutcliffe LLP.  (*Id.* ¶¶ 5–6.)  In 2021, she joined ICAP as Senior Counsel.

The Court finds that $733 is a reasonable hourly rate for Ms. Cruikshank.  This rate reflects Ms. Cruikshank's substantial experience and performance in appellate law, the skill required to succeed on appeal, and the novelty and difficulty of the issues presented on appeal, and is consistent with the prevailing rate of other attorneys with her credentials who graduated law school eight years ago.  *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Cruikshank's requested rate is consistent with the market rate]).

### B.    Billed Hours

The Court now determines whether the billed hours are reasonable.  A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation.  *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to

Case 2:23-cv-00789-ODW-PVC   Document 203-8   Filed 04/06/26   Page 14 of 16   Page
Case 8:17-cv-00491-CJC-KES   Document 287 Filed 02/21/23   Page 13 of 15   Page ID
#:7716

exclude . . . hours that are excessive, redundant, or otherwise unnecessary.").  "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked."  *Gates*, 987 F.2d at 1397–98.

In support of the motion for fees, each attorney has submitted time records detailing the work each performed on the case.  Mr. Galipo, Ms. Partow, and Mr. Hughes were primarily responsible for tasks related to the Ninth Circuit appeal and billed 291 hours to those tasks.  Ms. Corkran, Mr. Mead, and Ms. Cruikshank were primarily responsible for tasks related to the Supreme Court petition and billed 77.3 hours to those tasks.  The Court has carefully reviewed these attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that Plaintiffs' fee request should be denied because it is "an attempt to be paid twice for submitting essentially the same work product" in *Valenzuela*. (Dkt. 276 [Opposition, hereinafter "Opp."] at 5.)  They point to numerous examples of *Valenzuela* briefing looking similar or identical to briefing in this case.  (*See id.* at 8–11.) But there is no indication that the fact that *Valenzuela* and this case were very similar is not reflected in the hours billed.  Indeed, Ms. Corkran explains that the number of hours billed in this case is significantly lower than the number of hours billed in similar cases because of counsel's ability to draw on work from *Valenzuela*.  (Corkran Decl. ¶ 15; *see* Mot. at 22; Reply at 8.)  And Plaintiffs retained the ICAP team because of their expertise and familiarity with the issues in *Valenzuela*.  (Reply at 1, 8.)  Just because this case was similar to *Valenzuela* does not mean it did not have to be litigated and that substantial time was not required to draft and edit the multiple briefs submitted.  Moreover, the opening brief before the Ninth Circuit in this case was filed before the opening brief in *Valenzuela*, meaning that at least for that brief, counsel did not have substantial *Valenzuela* work product to draw on.  (*See id.* at 3.)  The Court has reviewed counsel's

billing records and finds that the amount of time spent appears reasonable even given this case's similarity to *Valenzuela*.

Plaintiffs' counsel also request compensation for their work related to their motion for attorneys' fees.  Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable.  *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).  Plaintiffs' counsel included time spent preparing the motion in their original time records.  In preparing the reply, Ms. Partow billed an additional 33.4 hours.  (*See* Dkt. 278-1.)  The Court will include this additional billed time in its lodestar calculation.

### C.    Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 61.9 | $74,280 |
| Kelsi Brown Corkran | $1,075 | 44.9 | $48,267.50 |
| Melanie Partow | $850 | 226.5[2] | $192,525 |
| Joseph Mead | $850 | 16.2 | $13,770 |
| Scott Hughes | $780 | 36 | $28,080 |
| Elizabeth Cruikshank | $733 | 16.2 | $11,874.60 |
| **Total** | | | **$368,797.10** |

//

//

---

[2]  This number is calculated based on 193.1 (total billed hours) plus 33.4 (hours spent preparing reply).

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorney fees is **GRANTED**. Plaintiffs are awarded $368,797.10 in attorney fees.

DATED:     February 21, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

CC: FISCAL