UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE OTIS D. WRIGHT, U.S. DISTRICT JUDGE


JERMAINE PETIT, et al.,        )
                              )
          PLAINTIFFS,         )     CASE NO.
                              )
             vs.              )     CV 23-00789-ODW
                              )
CITY OF LOS ANGELES,          )
et al.,                       )     VOLUME 2
                              )     PAGES 112 TO 349
          DEFENDANTS.         )
_____)


REPORTER'S TRANSCRIPT OF
JURY TRIAL DAY 2
WEDNESDAY, FEBRUARY 18, 2026
8:58 A.M.
LOS ANGELES, CALIFORNIA


_____

MIRANDA ALGORRI, CSR 12743, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

**EXHIBIT B, PAGE 1 OF 7**

Q       And you heard two shots; correct?

A       I did.

Q       And how much time do you think passed after you heard the two shots before you fired?

A       It was all shots were fired within one second of each other.  So every round was, like, from the first round to the last round within one and a half seconds.

Q       Did you yourself, as Mr. Petit was walking away or got into Bronson Street, ever see him in a shooting stance yourself?

A       There's multiple unconventional shooting stances, sir.

Q       Did you ever see him in any shooting stance yourself?

A       Yes, sir.

Q       Even though you couldn't observe the object at all.

Isn't that what you're saying?

A       Because I had mentioned earlier, the close contact position, which is a shooting stance where, with my -- with me being behind Mr. Petit, obviously I was unable to see the actual firearm.  But based off of his movement, the -- I know his right arm was not dangling down.  It had to be close to his stomach.  And the weapon was never dropped.  So essentially that is a shooting stance, sir.

**EXHIBIT  B,  PAGE 2 OF 7**

A    Yes, sir.

Q    And was this P.O.S.T. training?

A    Yes, sir.

Q    Peace Officer Standards and Training?

A    Yes, sir.

Q    And did it include training on various subjects but including the use of force and the use of deadly force?

A    Yes, sir.

Q    Before you encountered Mr. Petit on the date of this incident, based on the information you received from dispatch, did you suspect that he may -- the subject may have committed certain crimes?

A    Yes, sir.

Q    What crimes did you suspect, based on dispatch information, the subject you were looking for may have committed?

A    Assault with a deadly weapon and arson.

Q    Okay.  Are those arrestable offenses?

A    Yes, sir.

Q    And did you believe, sir, that before identifying this individual as the suspect, that you had reasonable suspicion to stop and detain him?

A    Yes, sir.

Q    And why was that?

A    Based on the crimes that were alleged and the

fact that he matched the description of those crimes that were alleged.

Q        Okay.  What commands do you recall specifically giving Mr. Petit, just you, nobody else, on the scene prior to the shooting?

A        I recall telling him to drop what's in his hands. I recall telling him to get against the wall and to come here.

Q        At any point in time, did Mr. Petit go against the wall?

A        No, sir.

Q        At any point in time, as he walked or proceeded along that sidewalk, did he drop any object that he had been holding onto?

A        No, sir.

Q        And did you hear commands of Officer Martinez directed at Mr. Petit at any time?

A        Yes.

Q        Again, what commands from Officer Martinez do you recall hearing?

A        Officer Martinez told him to get against the wall.  To come here, meaning to go back to his direction or come to his direction and to drop what was in his hands.

Q        At any time you were there on the scene prior to the shooting, did Mr. Petit comply with any of Officer Martinez's commands?

250

A        No, he didn't.

Q        If a subject has been given commands from a police officer in uniform lawfully performing his or her duties, is that a crime if the subject refuses to listen or comply with the commands?

A        Yes, sir, it is.

Q        What's the crime, sir?

A        Delaying and obstructing, 148.

Q        Okay.   Delaying, obstructing a peace officer?

A        Yes, sir.

Q        And that's in the normal course of his duties?

A        Yes, sir.

Q        You say 148.   Are we talking Penal Code 148?

A        Penal Code, yes, sir.

Q        Is that an arrestable offense?

A        Yes, sir, it is.

Q        In other words, had he stopped, had he dropped the items or put his hands up, could you have taken him into custody?

A        Not for that, no.

Q        Not for what?

A        No, he could not have been taken into custody if he would have complied for 148.

Q        Okay.   But if you gave multiple commands and he did not comply and continued to walk forward and ultimately

**EXHIBIT  B,  PAGE 5 OF 7**

A    Yes, sir.  The parked vehicle, yes.

Q    Yes.

That was in a driveway.  Do I have that right?

A    Correct, sir.  Yeah.

Q    I'm assuming there was a home associated with that driveway?

A    Further east, that's correct.

Q    Do you know -- did you yourself ever dispatch that shots were fired after you fired your shots?

A    I did not.  I don't believe I'm the one that put it out that shots were fired because Officer Nelson already had done that.

Q    Did you ever, yourself, request for medical attention for Mr. Petit?

A    I did.  I directed an officer to render CPR.

Q    Okay.  I'm wondering whether you ever asked for like a rescue ambulance, for example.

A    I didn't have to.  Another officer did.

Q    Now, I stopped your body-worn camera at this point.  But do you know how much longer it took before any paramedics or medical professionals got to Mr. Petit?

A    I think it was probably a couple minutes after the request was made.

Q    When was the request made, if you know?

A    The request would have been made after we safely

351

CERTIFICATE OF OFFICIAL REPORTER

I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS  19TH  DAY OF FEBRUARY, 2026.


_____
MIRANDA ALGORRI, CSR NO. 12743, CRR
FEDERAL OFFICIAL COURT REPORTER

**EXHIBIT  B,  PAGE 7 OF 7**