LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE McNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:   (213) 489-0552

Attorneys for Plaintiff, Ashlyn Petit

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLYN PETIT, as successor-in-interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, DARYL GLOVER, JR.; BRETT HAYHOE,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br><br>Assigned to:<br>Hon. District Judge Otis D. Wright, II<br>Hon. Magistrate Judge Pedro V. Castillo<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**<br><br>[*Filed concurrently with Declaration of Renee V. Masongsong and exhibits thereto*]<br><br>Date: May 18, 2026<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     ARGUMENT ....................................................................................2

        A.      The exclusion of Jermaine Petit's pre-shooting drug use does not warrant a new trial on damages. ..........................................2

                1.      Defendants made no pre-verdict offer of proof based on this theory of relevance.............................................2

                2.      Pre-shooting drug use was not relevant to damages....................7

                3.      The Court properly excluded the evidence under Rule 403.........8

                4.      Any alleged error was harmless.....................................9

        B.      The instructions and verdict form do not warrant a new trial on damages.....................................................................10

                1.      Defendants never objected to the damages instruction, they invited any error by requesting a similar instruction, and there was neither error nor prejudice. ................................11

                2.      The verdict form was not prejudicial error.............................14

III.    CONCLUSION ...............................................................................15

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE.......................................17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

# TABLES OF AUTHORITIES

<u>Cases</u>

*Acosta v. City of Costa Mesa*
    718 F.3d 800 (9th Cir. 2013)..................................................................8

*C.B. v. City of Sonora*
    769 F.3d 1005 (9th Cir. 2014)........................................................12, 13

*Carey v. Piphus*
    435 U.S. 247 (1978) ............................................................................14

*City of Springfield v. Kibbe*
    480 U.S. 257(1987) .............................................................................12

*Claiborne v. Blauser*
    934 F.3d 885 (9th Cir. 2019).........................................................2, 13

*Deland v. Old Republic Life Ins. Co.*
    758 F.2d 1331 (9th Cir. 1985)............................................................12

*Estate of Diaz v. City of Anaheim*
    840 F.3d 592 (9th Cir. 2016).......................................................7, 8, 9

*Gilbrook v. City of Westminster*
    177 F.3d 839 (9th Cir. 1999)..............................................................13

*Gilchrist v. Jim Slemons Imports, Inc.*
    803 F.2d 1488 (9th Cir. 1986)............................................................11

*Gregory v. Oliver*
    2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ........................................9

*Hoard v. Hartman*
    904 F.3d 780 (9th Cir. 2018)..............................................................14

*Image Tech. Servs. v. Eastman Kodak Co.*
    125 F.3d 1195 (9th Cir. 1997)............................................................14

*Jackson v. City of Gahanna*
    2011 WL 587283 (S.D. Ohio Feb. 9, 2011);.......................................9

*Johnson v. Hale*
    940 F.2d 1192 (9th Cir. 1991).............................................................14

*Josephs v. Pacific Bell*
    443 F.3d 1050 (9th Cir. 2006)............................................................13

*Kunz v. DeFelice*
    538 F.3d 667 (7th Cir. 2008)................................................................9

*Landes Const. Co., Inc. v. Royal Bank of Canada*
    833 F.2d 1365 (9th Cir. 1987)......................................................10, 15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

*Larez v. City of Los Angeles*
    946 F.2d 630 (9th Cir. 1991)................................................................8

*Merrick v. Paul Revere Life Ins. Co.*
    500 F.3d 1007 (9th Cir. 2007)............................................................15

*Miller v. City of Los Angeles*
    661 F.3d 1024 (9th Cir. 2011).............................................................9

*Palmer v. Hoffman*
    318 U.S. 109 (1943) ...........................................................................11

*United States v. Ameline*
    409 F.3d 1073 (9th Cir. 2005)............................................................14

*United States v. Boulware*
    558 F.3d 971 (9th Cir. 2009)................................................................2

*United States v. Gonzalez-Aguilar*
    718 F.3d 1185 (9th Cir. 2013)............................................................14

*United States v. Gonzalez-Aparicio*
    663 F.3d 419 (9th Cir. 2011)..............................................................13

*United States v. Hankey*
    203 F.3d 1160 (9th Cir. 2000)..............................................................8

*United States v. Hofus*
    598 F.3d 1171 (9th Cir. 2010)............................................................13

*United States v. Irons*
    31 F.4th 702 (9th Cir. 2022)..............................................................12

*United States v. Lara-Hernandez*
    588 F.2d 272 (9th Cir. 1978)................................................................3

*United States v. Whittemore*
    776 F.3d 1074 (9th Cir. 2015)..............................................................9

*Voohries-Larson v. Cessna Aircraft Co.*
    241 F.3d 707 (9th Cir. 2001)..............................................................11

*Wiersta v. Heffernan*
    789 F.2d 968 (1st Cir. 1986) ................................................................9

*Wilson v. Union Pacific R. Co.*
    56 F.3d 1226 (10th Cir. 1995)..............................................................9

*Wisler v. City of Fresno*
    2008 WL 2954179 (E.D. Cal. 2008) ....................................................9

*Zhang v. Am. Gem Seafoods, Inc.*
    339 F.3d 1020 (9th Cir. 2003)............................................................15

-iii-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## Rules

Cal. R. 2.1050(a), (e). ...............................................................................................13

Civil Jury Instructions CACI 3905A ........................................................................13

Fed. R. Civ. P. 51.....................................................................................................11

Federal Rules of Evidence, Rule 103(a .......................................................................2

Rule 403 ...................................................................................................................3, 8

Rule 404 .......................................................................................................................3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

**OPPOSITION TO DEFENDANTS' JOINT MOTION FOR NEW TRIAL**

## I.      INTRODUCTION

On July 18, 2022, LAPD Sgt. Brett Hayhoe fired two shots at Jermaine Petit from his moving patrol vehicle, and Officer Daryl Glover fired what may have been a reactionary shot at Petit's back as Petit was going to the ground or already on the ground. The jury found that Hayhoe violated the Fourth Amendment by using excessive force against Jermaine and then delaying his medical care, and committed the tort of intentional infliction of emotional distress under California law. It also found that both Hayhoe and Glover committed the tort of battery. The City stipulated that it was vicariously liable for the individual defendants' conduct under state law. The jury awarded $1.5 million for Jermaine's physical injuries, disfigurement, and physical pre-death pain and suffering, and $1.5 million for his mental and emotional pre-death pain and suffering, distress, grief, humiliation, inconvenience, and loss of enjoyment of life.

Defendants' joint motion seeks a new trial on damages, or in the alternative, a $1.5 million remittitur, based on (A) the exclusion of Jermaine's pre-shooting drug use, and (B) the instructions and verdict form. Defendants forfeited, waived, or invited most of these alleged errors. Even so, each contention lacks merit. First, the Court acted within its discretion in granting Plaintiff's motion in limine to exclude pre-shooting drug use as irrelevant and unduly prejudicial, and the trial evidence never opened the door. Moreover, harmless error analysis applies. Although the excluded evidence likely would have appealed to jurors' biases and prejudices, it would not have reduced the damages award on any legitimate basis. Second, the Court's instructions and verdict form do not warrant a new trial on damages, because there was no error, let alone any prejudicial error warranting a new trial. Defendants' motion should be denied in full.

//

-1-

## II.    ARGUMENT

### A.    The exclusion of Jermaine Petit's pre-shooting drug use does not warrant a new trial on damages.

Defendants contend: "Evidence that Mr. Petit had issues with substance abuse for most of his life, beginning at the age of 13, would have affected the amount of damages awarded for [] 'quality of life' damages." Mot. at 3:3-7. According to Defendants, evidence of Jermaine's pre-shooting drug use would have showed that the shooting caused less decline in Petit's enjoyment of life.

The alleged error was not preserved by a pre-verdict offer of proof grounded in the argument now pressed in Defendants' post-verdict motion. Nonetheless, the Court properly excluded the irrelevant and unduly prejudicial evidence of Jermaine's pre-shooting drug use, and any alleged error was harmless.

#### 1.    Defendants made no pre-verdict offer of proof based on this theory of relevance.

Under Federal Rules of Evidence, Rule 103(a), a party may claim error in a ruling that excludes evidence only if "a party informs the court of its substance by an offer of proof, unless the substance was apparent from the contest." Fed. R. Evid. 103(a). "Errors not objected to at trial are generally subject to . . . forfeiture." *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019).

"The offer of proof required by Rule 103(a)(2) is meant to give the trial judge contemporaneous knowledge about the proposed evidence, so that the judge can make a proper ruling on the evidence at the time it is offered." *United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009) (quotation omitted). "The presentation of additional evidentiary theories for the first time after the jury has returned its verdict does not comport with the salutary purpose of the timeliness requirement— to allow the trial judge to make an informed ruling based on the issues as framed by the parties before the evidence is either introduced or excluded from the pertinent

-2-

stage of the trial." *United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978).

Defendants repeatedly forfeited their novel "quality-of-life comparison" theory of relevance, first in response to Plaintiff's motion in limine, then throughout trial. Plaintiff's Motion in Limine No. 3 sought to exclude Jermaine's drug and alcohol use as irrelevant, unduly prejudicial under Rule 403, impermissible character evidence under Rule 404, and inadmissible hearsay. Defendants' opposition never argued that pre-shooting drug use tended to prove that the shooting was less harmful to Jermaine's "quality of life." Dkt. 139. Defendants made other relevance arguments, since abandoned because they anticipated theories that Plaintiff never pursued at trial.

At the February 10 motion hearing, the Court indicated that pre-shooting drug use should be excluded. Masongsong Decl., Ex. 2 (PTC Transcript) at 20–21. Defendants acknowledged and declined to challenge that ruling: "I understand that the . . . prior drug use, alcohol use, you will be excluding." Masongsong Decl., Ex. 2 (PTC Transcript) at 21. Instead, Defendants argued only that *post-hospitalization* illicit drug use should be admitted, based on deposition testimony by Plaintiff's medical experts that ultimately was not elicited at trial. *Id.* at 21-41.[1] The Court reserved the issue of post-hospitalization drug use until trial, *id.* at 38-41, then issued a Minute Order granting Plaintiff's motion as to pre-shooting drug use and

---

[1] While advocating to admit post-hospitalization drug use, Defendants repeatedly referenced medical records indicating that Petit had "struggled with substances significantly since 2010," mainly crystal meth. Masongsong Decl., Ex. 2 (PTC Transcript) at 23, 28, 35. Yet Defendants did not argue that pre-shooting drug use should be admitted.

-3-

denying it without prejudice as to drug use at the time of the shooting,[2] Dkt. 154 at 1.

Just before opening statements, Defendants requested a ruling on the admissibility of post-hospitalization drug use, while emphasizing that they were "not trying to revisit the prior history of drug use." Masongsong Decl., Ex. 4 (RT Vol. 2) at 117–21. Defendants wanted to offer evidence that Jermaine's post-hospitalization psychosis was drug-induced, to rebut an anticipated opinion by Plaintiff's expert Dr. Omalu that the shooting exacerbated pre-existing PTSD and schizophrenia. Masongsong Decl., Ex. 4 (RT Vol. 2) at 127. Defendants emphasized repeatedly that they "only" sought a ruling on "post-discharge drug use." Masongsong Decl., Ex. 4 (RT Vol. 2) at 126, 128. Plaintiff agreed to limit Dr. Omalu's testimony to avoid opening the door. Masongsong Decl., Ex. 4 (RT Vol. 2) at 128–30.

The Court and the parties discussed a possible mistrial because there was no voir dire about drugs.[3] The City's counsel Mr. Bojorquez argued, contrary to Defendants' earlier arguments, that if Plaintiff opened the door to post-hospitalization drug use by placing his post-hospitalization "problems" at issue (ostensibly a reference to Dr. Omalu's omitted "exacerbation" opinion), then it also would be appropriate to also admit pre-shooting drug use, "in January, for example, of 2022." Masongsong Decl., Ex. 4 (RT Vol. 2) at 133. Mr. Rothans, counsel for the officers, argued that Jermaine's "addiction problem" should be explored because it affected his post-shooting pain management, quality of life, and mental state. Masongsong Decl., Ex. 4 (RT Vol. 2) at RT 136. The Court suggested that it was

---

[2] Drug use at the time of the shooting was not admitted because Defendants had offered it to support their comparative-fault defense, which became moot when Plaintiff dismissed negligence. Masongsong Decl., Ex. 3 (RT Vol. 1) at 9.

[3] The parties confirmed that "[n]o one wants a mistrial." Masongsong Decl., Ex. 4 (RT Vol. 2) at 134.

-4-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

unlikely that Dr. Omalu could testify about the pain levels experienced by Jermaine, and decided to allow the evidence to develop and rule on objections at the appropriate time. Masongsong Decl., Ex. 4 (RT Vol. 2) at 137. Meanwhile, the Court theorized that its prior ruling on "historical" drug use may or may not be correct, and it "may have been his method for coping with some of the psychological issues." Masongsong Decl., Ex. 4 (RT Vol. 2) at 137.

Plaintiff sought to clarify that "the only thing [Defendants are] asking for is his drug use post-discharge from the hospital." Masongsong Decl., Ex. 4 (RT Vol. 2) at 142. In response, Mr. Rothans reemphasized that the reason for the drug evidence was to show that Jermaine's post-hospitalization psychosis was drug-induced, to rebut Dr. Omalu's opinion that the shooting exacerbated his mental issues. Masongsong Decl., Ex. 4 (RT Vol. 2) at 145-46. The City's counsel Mr. Bojorquez then argued that "[Jermaine's] history is related to where is he post-shooting." Masongsong Decl., Ex. 4 (RT Vol. 2) at 147. Mr. Bojorquez continued that if the Court sued an attorney over a shoulder injury from "bump[ing] one of us in court," then "medical records that show you had some injury to that shoulder predating our incident" would be relevant. *Id*. The Court adopted the "wait-and-see" approach. Masongsong Decl., Ex. 4 (RT Vol. 2) at 149.

Before Dr. Omalu testified, Plaintiff reiterated that the examination would proceed "in a very narrow fashion not to open the door to these issues about what's in [Jermaine's] medical records." Masongsong Decl., Ex. 5 (RT Vol. 3) at 588. Defendants responded: "*We can stay away from the drugs*. . . . But if [Dr. Omalu] starts talking about physical pain and suffering post [hospital], that's where we've got a right to, I believe, cross-examine him on -- by the way, records he was never provided." Masongsong Decl., Ex. 5 (RT Vol. 3) at 589–90 (emphasis added).

Plaintiff did not elicit any opinions from Dr. Omalu that Defendants had argued would open the door to drug use. Masongsong Decl., Ex. 6 (RT Vol. 4) at

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

600–18. Plaintiff painstakingly limited Dr. Omalu's examination to the trajectories of the bullets through Jermaine's body, and acute-care treatments provided by the hospital. *Id.* Dr. Omalu did not testify on direct that Jermaine suffered permanent injury, pain, or exacerbation of any psychiatric condition. *Id.*

Defendants conceded that because Dr. Omalu did not give "any of the psychological, psychiatric type of testimony," Defendants would not call Dr. Cohen in rebuttal. Masongsong Decl., Ex. 6 (RT Vol. 4) at 649–50. Defendants argued that Dr. Omalu opened the door to their other two rebuttal experts by testifying that Jermaine's injuries and pain were permanent.[4] Masongsong Decl., Ex. 6 (RT Vol. 4) at 651. Plaintiff requested that Defendants make an offer of proof. Defendants proclaimed that "*we're not getting into drugs. We're not getting into the psychiatric issues.*" *Id*. (emphasis added). Defendants' proffer was that the experts would testify only on pain issues. *Id*. The Court correctly noted that Plaintiff's counsel had "carefully circumscribed the parameters of [Dr. Omalu]'s testimony," and ruled tentatively that the door was not opened even to the proffered pain issue. Masongsong Decl., Ex. 6 (RT Vol. 4) at 654. But ultimately, the Court allowed Defendants to call both of their experts to rebut Dr. Omalu's trial testimony, and there was not a single objection or intervention to limit their testimony.

In sum, Defendants never made an offer of proof regarding pre-shooting drug use that would have allowed the Court to rule on the "quality-of-life comparison" theory of relevance presented in their motion for new trial. At best, the exclusion would be reviewable for plain error, the elements of which Defendants' motion does not argue. Even if Defendants had preserved their argument, the exclusion was not prejudicial error.

---

[4] Dr. Omalu only testified about permanent pain in response to Defendants' cross-examination questions, to which Plaintiff repeatedly objected as beyond the scope. Masongsong Decl., Ex. 6 (RT Vol. 4) at 622–28.

**2.      Pre-shooting drug use was not relevant to damages.**

The Ninth Circuit has cautioned district courts to "closely review" evidence of "drug use" for relevance, and "assure that such evidence is admitted only to the degree that the testimony is connected up with" the specific damages claim at issue. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016).

Due to Jermaine's intervening death, Plaintiff's damages evidence and theories were necessarily limited in scope. Plaintiff gave testimony comparing Jermaine's appearance and demeanor before and after the shooting. When she visited him shortly after hospitalization, in August 2022, Jermaine was skinnier and weaker, and appeared to be sad and suffering. Masongsong Decl., Ex. 5 (RT Vol. 3) at 569–70. He had a shattered jawbone and metal pieces in his mouth that restricted him from opening his mouth and communicating fully. Masongsong Decl., Ex. 5 (RT Vol. 3) at 570. He had difficulty walking, sitting, and standing, and often had to lay down. Masongsong Decl., Ex. 5 (RT Vol. 3) at 571. He looked like he was in physical pain. *Id*. During later phone conversations, she still had trouble understanding his speech. Masongsong Decl., Ex. 5 (RT Vol. 3) at 572. As mentioned, Dr. Omalu testified that the gunshot wounds caused permanent and severe injuries that would have caused lasting pain.

Pre-shooting methamphetamine use had no tendency to make it less likely that the shooting caused Jermaine to experience these harms. It is not an "alternative explanation" for these harms. Further, Defendants have not explained how pre-shooting drug use would help the jury compare Jermaine's quality of life before and after the shooting. To the contrary, at trial, Defendants consistently argued that Jermaine had the exact same problems with drugs before and after the shooting. Plaintiff also presented no evidence of post-shooting delusions, and did not claim them as a compensable harm, which might have made pre-shooting delusions relevant—but not the fact that that the delusions were drug-induced. And Plaintiff,

-7-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

of course, presented no evidence or argument that the shooting affected Jermaine's drug use. Indeed, Plaintiff entirely avoided the issues of drug use and mental illness, including any specific argument that post-hospitalization drug use was a compensable harm, which might have made pre-shooting drug use relevant under the only legitimate theory of relevance ever asserted by Defendants.

In the absence of a direct logical connection between Jermaine's pre-shooting drug use and Plaintiff's actual damages evidence, it was irrelevant. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) ("It is hard to see how most of this testimony [including methamphetamine use] was relevant even to [wrongful death] damages, absent testimony" that it "undermined the emotional impact of [the plaintiff's] son's death."); *id.* at 604 (finding "the evidence of [the decedent]'s drug use . . . has marginal, if any, probative value as to damages").

### 3. The Court properly excluded the evidence under Rule 403.

Even if pre-shooting drug use had any marginal probative value, it would be substantially outweighed by dire Rule 403 concerns. Rule 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is unfairly prejudicial if it creates an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *see Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses). The Court has "wide discretion" to exclude evidence under Rule 403. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 827 (9th Cir. 2013).

Evidence of illicit drug use, particularly methamphetamine, is "unduly prejudicial." *Estate of Diaz*, 840 F.3d at 603. Such evidence is likely to unfairly

-8-

inflame a jury's passions and prejudices against a civil-rights plaintiff, and mislead the jury into finding that force was reasonable, or reducing damages, on an improper basis. *See Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Kunz v. DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011); *Wisler v. City of Fresno*, 2008 WL 2954179, at *5 (E.D. Cal. 2008); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995). It also would have consumed an inordinate amount of time and attention, and likely led to a mini-trial on collateral issues. *See Estate of Diaz*, 840 F.3d at 603 (noting "Defendants proceeded to . . . stretch" a ruling admitting drug evidence for a limited damages purpose, leading to reversible error). As the Ninth Circuit has noted, the uniquely prejudicial impact of drug evidence often cannot be mitigated by a limiting instruction. *Id.* (quoting *Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011)).

### 4.    Any alleged error was harmless.

To warrant a new trial, the exclusion of evidence must also have more likely than not affected the verdict. *United States v. Whittemore*, 776 F.3d 1074, 1077–78 (9th Cir. 2015). Defendants do not distinctly argue how the exclusion prejudiced them or affected the verdict. As explained, there was no logical connection between Plaintiff's damages evidence and pre-shooting drug use. Defendants contended that Jermaine's drug problems were the same before and after. The damages verdict could only have been more favorable to Defendants if the jury had considered drug evidence for an improper purpose.

Plaintiff's counsel did not present a misleading portrait of Jermaine's quality of life before or after the shooting. The jury likely assumed that Jermaine already had serious problems with drugs, mental health, or both. Plaintiff's counsel conceded that Jermaine had "struggled" before the shooting. Masongsong Decl., Ex.

-9-

4 (RT Vol. 2) at 152. During the incident, Jermaine was mumbling and disoriented, his clothes were not clean, and he looked disheveled. *Id*. Defense counsel told the jury that Petit had various health issues before the shooting and had been living on the streets. Masongsong Decl., Ex. 4 (RT Vol. 2) at 162. Defense counsel stated that the officers did not know if Petit's condition and failure to comply was due to being under the influence or mental illness. Masongsong Decl., Ex. 4 (RT Vol. 2) at 166.

Plaintiff's closing argument sought only garden-variety, pain-and-suffering damages based on the evidence at trial, including Ashlyn's testimony about her observations of Jermaine and Dr. Omalu's testimony about the general characteristics of these kinds of gunshot injuries. Masongsong Decl., Ex. 7 (RT Vol. 5) at 879–80. Defendants conceded that "there's no doubt, there's no question that the injuries were significant to Mr. Petit. No question about it." Masongsong Decl., Ex. 7 (RT Vol. 5) at 900, 904. At the same time, Defendants were able to argue that Plaintiff's damages evidence was limited, thousands of pages of medical records did not show ongoing pain after hospitalization, Plaintiff had no evidence about Jermaine's medical care at the VA or activities of daily living, and nobody could say when he died or what he was doing in the several months before his remains were found. Masongsong Decl., Ex. 7 (RT Vol. 5) at 900–03. Indeed, Defendants' motion quotes their counsel's argument to the Court that "there was no evidence of any loss of enjoyment of life." Mot. at 8:21-25 (quoting RT at 828:20–24). Ultimately, the jury's damages award was more than $2 million closer to Defendants' proposed amount than it was to the low end of Plaintiff's proposed range. *Contrast* RT 880 *with* RT 904; *see Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987) (alleged evidentiary error was harmless because jury awarded "much less" than measure of damages presented by plaintiff).

> **B.** **The instructions and verdict form do not warrant a new trial on damages.**

-10-

**1.    Defendants never objected to the damages instruction, they invited any error by requesting a similar instruction, and there was neither error nor prejudice.**

Defendants did not timely object to the Court's proposed instruction on damages on any ground, let alone the ground advanced in their motion—that no award of non-physical or emotional damages was supported by the evidence. Defendants also requested an instruction that included these types of damages. In any event, the Court's instruction does not warrant a new trial.

To preserve instructional error, a party "must" object "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1), (d)(1). An objection is timely if made "at the opportunity provided under Rule 51(b)(2)"—the charging conference. Fed. R. Civ. P. 51(c)(2)(A). In fairness to the trial court and the parties, objections to instructions "'must be sufficiently specific to bring into focus the precise nature of the alleged error.'" *Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713 (9th Cir. 2001) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943)).

The Court held a lengthy charging conference on the proposed instructions on the morning of day five, February 24. The Court gave the parties several opportunities to lodge any objections to the proposed instructions. Masongsong Decl., Ex. 7 (RT Vol. 5) at 721–34. Defendants made no objection to the damages instruction at the Rule 51(b)(2) charging conference. *Id.* Accordingly, they did not timely object to preserve the issue under Rule 51(c)(2)(A).

Moreover, under the invited error doctrine, "[a] party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction." *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1492 (9th Cir. 1986). Defendants' Instruction 32 included the following items:

-11-

      2.      The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

      3.      The mental, physical, emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

Dkt. 135 at 85.

Defendants invited any error because "[t]he instruction that [Defendants] offered permitted the jury to determine the very question that [Defendants] now argue[] should not have been submitted to the jury." *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1337 (9th Cir. 1985); *see City of Springfield v. Kibbe*, 480 U.S. 257, 258 (1987) (refusing to review instruction because defendant "did not object to the jury instruction . . . and indeed proposed its own instruction to the same effect").

Defendants' argument about the verdict form, Masongsong Decl., Ex. 7 (RT Vol. 5) at 828, which occurred hours after the charging conference, and immediately before the Court instructed the jury, did not timely preserve any issue regarding the instruction.

Assuming that Defendants' challenge to the damages instruction would be reviewable for "plain error," they have not satisfied their burden of demonstrating any of its four requisite elements, foreclosing that discretionary intervention.

"[T]he plain error standard of review in the civil context is similar to, but stricter than, the plain error standard of review applied in criminal cases." *C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (en banc). The burden of establishing entitlement to relief for plain error is on the party claiming it. *United States v. Irons*, 31 F.4th 702, 711 (9th Cir. 2022). Defendants must demonstrate "(1) there was an error; (2) the error was obvious; and (3) the error affected substantial rights." *C.B.*, 769 F.3d at 1018. The Court *may* exercise its discretion to intervene

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

only if (4) "review is needed to prevent a miscarriage of justice, meaning that the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1019. "[P]lain errors should encompass only those errors that reach the pinnacle of fault envisioned by the standard set forth above." *Id.* at 1018 (cleaned up).

"Plain error 'is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection.'" *Claiborne*, 928 F.3d at 807 (quoting *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011)). "[A]n error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *Gonzalez-Aparicio*, 663 F.3d at 428.

Defendants cite no authority to support their instructional challenge. They do not argue that the instruction was a misstatement of law. Their argument goes to the instruction's formulation and is reviewed for abuse of discretion. *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999). A new trial is unwarranted "if the instructions fairly and adequately cover the issues." *Josephs v. Pacific Bell*, 443 F.3d 1050, 1065 (9th Cir. 2006). The question is "whether the instruction actually given was misleading or inadequate to guide the jury's decision." *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).

The challenged instruction was not misleading or inadequate. Its elements were verbatim from the Judicial Council of California,[5] Civil Jury Instructions CACI 3905A. *See* CACI 3905A. Defendants were free to argue that Plaintiff could not satisfy the burden of proving particular elements of damages. But the trial evidence provided substantial support for both physical and emotional harm.

---

[5] The Judicial Council, led by the Chief Justice of the California Supreme Court, is the policymaking body of the California courts. Cal. Const., art. VI, § 6. Its CACI instructions are not infallible, but they are the "official instructions for use" in California courts, and their use is "strongly encouraged." Cal. R. 2.1050(a), (e).

-13-

Specifically, Plaintiff testified that after the shooting Jermaine appeared to be sad, suffering, and in pain, and he had difficulty with speech and movement. Masongsong Decl., Ex. 5 (RT Vol. 3) at 569–71. The Supreme Court has noted that emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others. *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978); *see Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991) (humiliation and emotional-distress damages may be based on testimony or inferred from the circumstances, and no medical evidence or mental or physical symptoms stemming therefrom need be submitted).

Defendants fail to demonstrate that the Court's instruction affected Defendants' substantial rights—"that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005). A "mere possibility is insufficient." *United States v. Gonzalez-Aguilar*, 718 F.3d 1185, 1189 (9th Cir. 2013). To the contrary, any alleged error was harmless. Defendants were able to use the Court's actual instruction to argue their damages theories to the jury, as explained above. *See Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218–20 (9th Cir. 1997). The jury's award was closer to Defendants' proposed amount by a seven-figure increment.

"Rare is the case where the district court's errors are so grave as to seriously impair the fairness, integrity, or public reputation of judicial proceedings." *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018) (cleaned up). "This last prong of the plain error analysis is undoubtedly the hardest to meet . . . ." *Id.* Defendants do not even bother arguing it. There was no instructional error, let alone plain error warranting a new trial on damages.

**2.      The verdict form was not prejudicial error.**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

Defendants did request to strike "mental and emotional" and "loss of enjoyment of life" damages from the verdict form, as not supported by the evidence, but the inclusion of those damages elements in the verdict form does not warrant a new trial. Defendants cite no authority in support of their verdict-form argument. Their motion vaguely refers to out-of-circuit cases involving legally untenable claims. Notably, Defendants do not challenge the $1.5 million verdict as excessive under the applicable legal standard. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) ("We may reverse a jury's finding of the amount of damages if the amount is grossly excessive or monstrous.").

As mentioned above, there was sufficient evidence at trial, including Plaintiff's testimony, to support the submission of the challenged damages for the jury's consideration. "Proof of damages is governed by a less strict standard than proof of liability." *Landes Const.*, 833 F.2d at 1373. This Circuit requires the Court to construe a damages award in favor of the prevailing party unless the losing party can "make a strong showing" of prejudice. *Id.* Even assuming error, it was harmless because Defendants were able to argue against Plaintiff's damages claims and obtain a verdict closer to their own request than Plaintiff's.

## III.    CONCLUSION

For the foregoing reasons, neither a new trial on damages, nor a remittitur,[6] is warranted.

---

[6] A remittitur is only appropriate when a damages award is excessive, not for alleged evidentiary or instructional errors. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1018 (9th Cir. 2007).

-15-

DATED:  April 20, 2026                    LAW OFFICES OF DALE K. GALIPO


By _____ */s/ Renee V. Masgongsong* _____
                      Dale K. Galipo
                      Renee V. Masongsong
                      Attorneys for Plaintiff

-16-

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,536 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

Dated: April 20, 2026

LAW OFFICES OF DALE K. GALIPO

By:     */s/ Renee V. Masongsong*
        Dale K. Galipo
        Renee V. Masongsong
        Attorneys for Plaintiff

-17-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL