LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE McNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:   (213) 489-0552

Attorneys for Plaintiff, Ashlyn Petit

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLYN PETIT, as successor-in-interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, DARYL GLOVER, JR.; BRETT HAYHOE,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br><br>Assigned to:<br>Hon. District Judge Otis D. Wright, II<br>Hon. Magistrate Judge Pedro V. Castillo<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50(B))**<br><br>[*Filed concurrently with Declaration of Renee V. Masongsong and exhibits thereto*]<br><br>Date: May 18, 2026<br>Time: 1:30 p.m. |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD ..........................................................................................2

III.    ARGUMENT ......................................................................................................3

      A.    Hayhoe is not entitled to qualified immunity on the medical care claim. ..................................................................................................3

      B.    Substantial evidence supported the jury's verdict on Plaintiff's claim for intentional infliction of emotional distress. .............................7

    C.    The jury's verdict on Plaintiff's excessive force and battery claims was supported by substantial evidence that the officers' use of deadly force was excessive and objectively unreasonable. .......................................8

           1.    Video evidence supports the verdict. ...........................................10

           2.    Evidence indicated that Hayhoe's shots were excessive and his testimony lacked credibility. ...........................................11

           3.    Evidence suggested that Glover's shots were unreasonable. ..................................................................................12

           4.    There was no warning. ...................................................................14

      D.    Hayhoe is not entitled to qualified immunity on the Fourth-Amendment excessive-force claim. ....................................................14

           1.    Hayhoe's shooting was excessive. ...............................................14

           2.    Jermaine's right to be free from deadly force was clearly established under the circumstances. ..........................................15

           3.    Hayhoe's training discouraging shooting from a moving vehicle gave him further notice that the shooting was excessive. ..................................................................................17

IV.     CONCLUSION ...................................................................................................18

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ...................................................19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

# TABLE OF AUTHORITIES

<u>Cases</u>

*A.D. v. Cal. Highway Patrol,*
 712 F.3d 446 (9th Cir. 2013).................................................................3

*Bozeman v. Orum,*
 422 F.3d 1265 (11th Cir. 2005).............................................................5

*Bryan v. McPherson,*
 630 F.3d 805 (9th Cir. 2010).................................................................9

*Calonge v. City of San Jose,*
 104 F.4th 39 (9th Cir. 2024).................................................................2

*Cole v. Fair Oaks Fire Protection Dist.,*
 43 Cal.3d 148 (1987).............................................................................7

*Costa v. Desert Palace, Inc.,*
 299 F.3d 838 (9th Cir. 2002).................................................................2

*D'Braunstein v. Cal. Highway Patrol,*
 131 F.4th 764 (9th Cir. 2025)......................................................6, 7, 16

*Drummond v. City of Anaheim,*
 343 F.3d 1052 (9th Cir. 2004)........................................................17, 18

*Espinosa v. City & Cnty. of San Francisco,*
 598 F.3d 528 (9th Cir. 2010)..............................................................8, 9

*Est. of Booker v. Gomez,*
 745 F.3d 405 (10th Cir. 2014)...............................................................5

*Estate of Aguirre v. County of Riverside,*
 29 F.4th 624 (9th Cir. 2022).................................................................14

*Estate of Owensby v. City of Cincinnati,*
 414 F.3d 596 (6th Cir. 2005).................................................................5

*Glenn v. Washington Cnty.,*
 673 F.3d 864 (9th Cir. 2011).................................................................8

*Gonzalez v. City of Anaheim,*
 747 F.3d 789 (9th Cir. 2014)..............................................................9, 14

*Gordon v. Cnty. of Orange,*
 6 F.4th 961 (9th Cir. 2021)...................................................................15

*Graham v. Connor,*
 490 U.S. 386 (1989) ..............................................................................8

*Harris v. Roderick,*
 126 F.3d 1189 (9th Cir. 1997)...............................................................9

*Headwaters v. Cnty. of Humboldt,*
 240 F.3d 1185 (9th Cir. 2000)...............................................................9

*Hughes v. Pair,*
 46 Cal. 4th 1035 (2009)........................................................................7

*Johnson v. Paradise Valley Unified Sch. Dist.,*
 251 F.3d 1222 (9th Cir. 2001)...............................................................2

*Josephs v. Pac. Bell,*
 443 F.3d 1050 (9th Cir. 2006)...............................................................3

Judicial Council of California Civil Jury Instructions, No. 1305B ...........9

*Lemire v. Dep't of Corr. & Rehab.,*
 726 F.3d 1062 (9th Cir. 2013)...............................................................5

*Nehad v. Browder,*
 929 F.3d 1125 (9th Cir. 2019)..............................................................16

-ii-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

*Pavao v. Pagay,*
    307 F.3d 915 (9th Cir. 2002) ................................................................................2

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................................................7

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ............................................................................................2

*Saucier v. Katz,*
    533 U.S. 194 (2001) ............................................................................................3

*Scott v. Harris,*
    550 U.S. 372 (2007) ..........................................................................................11

*Smith v. City of Hemet,*
    394 F.3d 689 (2005) ............................................................................................9

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ..............................................................................................14

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) ............................................................................6

*Vazquez v. Cnty. of Kern,*
    949 F.3d 1153 (9th Cir. 2020) ..........................................................................18

<u>Statutes</u>

California Penal Code § 835(a) ...................................................................................9

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

## I.    INTRODUCTION

Defendants' post-verdict motion made pursuant to Federal Rules of Civil Procedure, Rule 50(b), for judgment as a matter of law, should be denied in full. Under any objective standard of review, but particularly when viewing the facts and reasonable inferences in the light most favorable to Plaintiff as this Court must, the jury's verdict must stand. This Court has already correctly denied Defendants' Rule 50(a) motion, and the same result is mandated here. As discussed in detail below, substantial evidence was presented at trial supporting the jury's findings that: Sergeant Hayhoe's two shots fired at Jermaine Petit from his police vehicle violated Jermaine's right to be free from excessive and unreasonable force under federal and state law; Glover's shot fired at Jermaine's back was not necessary to defend human life and may have been a reactionary shot; Hayhoe delayed medical attention for Jermaine; and Hayhoe recklessly caused Jermaine emotional distress.

The overwhelming evidence at trial indicated that a reasonable police officer would not have believed the object Jermaine had at the time of the incident was a gun or that Jermaine posed an immediate threat of death or serious bodily injury necessitating the use of deadly force. When Officers Glover and Martinez first contacted Jermaine, Jermaine showed them the object, and Martinez said, "It's not a gun, bro." Martinez recognized that the object was not a gun, and as Plaintiff's police practices expert, Richard Bryce, testified, so would a reasonable police officer in this position. Jermaine was not committing any crime at that time, and he walked away. In violation of police training that discourages shooting from a moving vehicle, Hayhoe fired two shots at Jermaine out the passenger window, and then (possibly as a reaction) Glover fired one shot toward Jermaine's back as Jermaine was going to the ground or on the ground. Hayhoe now claims that Jermaine turned toward him with the object a split second before he fired, but the reasonable inference is that the jury found this self-serving testimony not credible. Neither officer gave Jermaine a warning that deadly force would be used prior to

-1-

shooting him. Despite Jermaine being unarmed and having been struck by gunfire in the back and the face, medical care was delayed as he lay bleeding on the ground.

Hayhoe is not entitled to qualified immunity because it was clearly established at the time of the shooting that shooting an unarmed person who is walking away and making no verbal threats or furtive movements would violate the Fourth Amendment. *See, e.g.*, *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024). Hayhoe was also on notice at the time of the shooting that firing shots from a moving vehicle is generally discouraged and violates his own department policy. Finally, contrary to Defendants' assertions, Plaintiff did not dismiss the City of Los Angeles as a defendant; rather, Plaintiff dismissed the *Monell* claim against the City, and the City is still a named defendant on a theory of vicarious liability on Plaintiff's state law claims.

## II.    LEGAL STANDARD

A party seeking judgment as a matter of law under Rule 50(b) has a "very high" standard to meet. This "high hurdle recognizes that credibility, inferences and factfinding are the province of the jury[.]" *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A court ruling on a Rule 50(b) motion may not substitute its own view of evidence for that of a jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is

-2-

contrary to the jury's verdict." *Id.* "Further, unlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury[.]" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013).

### III.    ARGUMENT

#### A. Hayhoe is not entitled to qualified immunity on the medical care claim.

The record must be viewed in the light most favorable to the nonmoving party, and there can be no qualified immunity where a defendant's "conduct violated a constitutional right" and "the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). With respect to the first prong of qualified immunity, the evidence presented at trial supports the jury's verdict that Hayhoe unreasonably delayed medical attention for Jermaine. The reasonable inference is that the jury found that it was unreasonable to wait four minutes before calling for medical attention after shooting an unarmed person. Hayhoe's argument on both prongs of qualified immunity is fundamentally flawed because he fails to view the record in the light most favorable to Plaintiff. In particular, his argument depends on the erroneous premise that he reasonably believed that Jermaine was armed.

The jury was properly instructed on the three elements of Plaintiff's Fourth-Amendment medical-delay claim. Defendants concede that the first element was established—Hayhoe knew that Jermaine was in need of immediate medical attention—once Hayhoe and Glover shot Jermaine in the face and back, and saw that he was bleeding profusely.

The second element—that Hayhoe unreasonably delayed the provision of medical care to Jermaine—was supported by evidence at trial supporting reasonable inferences that Hayhoe knew or should have known that Jermaine was unarmed, yet he did nothing to summon needed medical care for approximately four minutes. Masongsong Decl., Ex. 4 (RT Vol. 2) at 322:19-324:8. Indeed, Hayhoe did not even

-3-

call for medical attention himself. Masongsong Decl., Ex. 7 (RT Vol. 5) at 783:8–13. After the shooting, when the object was clearly visible on the ground next to Jermaine, Hayhoe asked, "Where is the gun? Does anyone see a gun?" (or words to that effect), supporting an inference that Hayhoe never thought the object looked like a gun. Masongsong Decl., Ex. 5 (RT Vol. 3) at 555:9–556:2. Jermaine was handcuffed after the shooting, even though officers took the object into custody and confirmed it was not a weapon. As this Court stated in denying summary judgment on this claim:

> Defendants argue this delay is reasonable because Martinez called for medical care "as soon as the officers determined that Petit no longer posed a potential risk of imminent harm." (Mot. 14.) However, as explained above, viewing the evidence in Petit's favor, a reasonable jury could conclude that Petit *never* posed a risk of harm, before, during, or after the shooting. In that case, a reasonable jury could find Defendants' four-minute delay while Petit lay unarmed and bleeding unreasonable.

Masongsong Decl., Ex. 1 (MSJ Order, Dkt. 106) at 15:1–6.

The jury in this case reasonably made the finding that the Court hypothesized at summary judgment. Plaintiff's police-practices expert, Richard Bryce, testified that a reasonable officer in Hayhoe's position would have immediately called for medical attention rather than waiting four minutes. Masongsong Decl., Ex. 5 (RT Vol 3) at 557:10-20. Contrary to Defendants' argument, Bryce's reasoning was that a reasonable officer would not have believed the object was a gun, Jermaine was not a threat, and the scene was secure. Masongsong Decl., Ex. 5 (RT Vol 3) at 506:24–507:9.

The third element of this claim—that the delay caused injury to Jermaine—was supported by the testimony of Plaintiff's medical expert, Dr. Bennet Omalu. Dr. Omalu testified that when a person suffers the kind of massive blood loss suffered by Jermaine, the risk of brain damage is time dependent. Masongsong Decl., Ex. 6 (RT Vol. 4) at 698:22–699:10. Specifically, Dr. Omalu testified: "Every minute you waste there's a risk of suffering brain damage that increases by 10 percent. Every

-4-

second or minute you provide resuscitation, you increase the risk of saving the brain by 200 to 300 percent." Masongsong Decl., Ex. 6 (RT Vol. 4) at 618:5–17.

The delay of approximately four minutes supported the jury's finding of objective unreasonableness. As the Court's summary-judgment ruling found, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005). For example, "[a] delay in care for known unconsciousness brought on by asphyxiation is especially time-sensitive and must ordinarily be measured not in hours, but in a few minutes." *Id.* (cited with approval in *Lemire v. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013)).

In *Lemire*, officers were informed of a "man down," went to the cell to find an unconscious inmate on the floor, then called a medical code alarm. 726 F.3d at 1082. When a medical worker arrived, the officers were standing near the decedent but not providing aid. *Id.* This Court held that subjective deliberate indifference would be established if the CPR-trained corrections officers waited five minutes for the medical worker instead of providing CPR themselves despite an obvious need. *Id.* at 1083; *see Est. of Booker v. Gomez*, 745 F.3d 405, 432 (10th Cir. 2014) (three-minute delay in seeking medical assistance for unconscious detainee could establish deliberate indifference); *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005) (six-minute delay in checking on distressed arrestee could show deliberate indifference).

Under the second prong of qualified immunity, it was clearly established that peace officers have a duty to not delay medical care when they have just caused the person to suffer life-threatening injuries. As this Court held at summary judgment:

> Post-arrest claims for denial of medical care during and immediately following arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (analyzing post-arrest medical care under objective

-5-

reasonableness standard). Although the Ninth Circuit has not proscribed the precise contours of objectively reasonable post-arrest care, at minimum, police officers must "seek necessary medical attention" by "promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Est. of Cornejo v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015). Whether an officer behaved reasonably and sufficiently promptly in rendering or summoning medical care for a detainee depends partly "on the length of the delay and the seriousness of the need for medical care." *Regalado v. Riverside County*, No. 5:20-cv-1578-JGB (KKx), 2021 WL 945249, at *4 (C.D. Cal. Jan. 15, 2021).

Masongsong Decl., Ex. 1 (MSJ Order, Dkt. 106) at 14:8-19.

The Court must decline Hayhoe's invitation to second-guess the jury's implicit finding that he neither reasonably mistook the object for a gun nor reasonably misjudged the nature of the threat. "[I]f the law is otherwise clearly established, an officer is not entitled to qualified immunity for a mistake of fact or judgment that is itself unreasonable." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 772 (9th Cir. 2025). "Not all errors in perception or judgment . . . are reasonable." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). "[T]o assess whether [Hayhoe] is entitled to qualified immunity under the second prong of the analysis, we assume [he] correctly perceived all of the relevant facts and ask whether an officer could have reasonably believed at the time that [his] actions were lawful under the circumstances." *D'Braunstein*, 131 F.4th at 772 (citation omitted). "That is, we presume the officer correctly perceived all the relevant facts of which [he] could have reasonably been aware (we do not presume clairvoyance) and ask if any reasonable officer in those circumstances would understand that what [he] was doing (or not doing) was unlawful." *Id.* at 772–73.

"Qualified immunity balances two important interests—*the need to hold public officials accountable* when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their

-6-

duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (emphasis added). Here, viewing the record in Plaintiff's favor, there is ample evidence that Hayhoe exercised his power and duties over Jermaine's health and safety "irresponsibly." *Cf. D'Braunstein*, 131 F.4th at 771–72 (holding that in 2018 "[a]ny reasonable officer would appreciate this well-established obligation" to "not act with objective deliberate indifference" to an injured arrestee's serious medical need").

### B. Substantial evidence supported the jury's verdict on Plaintiff's claim for intentional infliction of emotional distress.

Viewing the evidence in Plaintiff's favor, the jury reasonably found that Hayhoe's acts of shooting of Jermaine without warning when he was unarmed and did not pose any threat, then failing to summon needed medical attention for four minutes, was extreme and outrageous and thus exceeds the bounds "tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009); *See also Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n. 7 (1987) (behavior may be considered outrageous if a defendant abuses a position of power). There is no reasonable dispute that Hayhoe "intended to inflict injury or engaged in with the realization that injury will result" when he fired two shots at Jermaine. *Hughes*, 46 Cal. 4th at 1051. The evidence at trial supports the jury's findings that Hayhoe's shots caused Jermaine "emotional distress of such substantial . . . or enduring quality that no reasonable person in civilized society should be expected to endure it," and that Hayhoe's conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050–51. As discussed in detail below, Hayhoe fired two shots at Jermaine after he apparently only saw an object in his hand for a split-second, with no confirmation that the object was a weapon and no threats or furtive movements by Jermaine.

Defendants' argument that Plaintiff did not prove that Jermaine suffered severe emotional distress is unpersuasive. Dr. Omalu testified that Hayhoe's shot entered Jermaine's jaw, "extensively fractured the mandible, causing the most

extensive types of fractures you would encounter called comminuted fractures," lacerated his blood vessels, causing him to bleed massively and swallow his own blood. Masongsong Decl., Ex. 6 (RT Vol. 4) at 606:3–25, 607:3–9. Plaintiff Ashlyn Petit's testimony also supports the jury's verdict. Ashlyn testified that when she visited her father after the shooting, he looked like he was suffering and was in pain, he had a shattered jawbone as well as metal pieces in his mouth that restricted him from being able to open his mouth fully and communicate. Masongsong Decl., Ex. 5 (RT Vol. 3) at 570:1–21, 571:4-15. Omalu confirmed that the injuries Jermaine sustained were of the type that produce lasting consequences. Masongsong Decl., Ex. 6 (RT Vol. 4) at 628:3–6.

### C. The jury's verdict on Plaintiff's excessive force and battery claims was supported by substantial evidence that the officers' use of deadly force was excessive and objectively unreasonable.

Substantial evidence supported the jury's finding that Hayhoe violated Jermaine's right to be free from excessive force under the Fourth Amendment. "Fourth Amendment claims of excessive or deadly force are analyzed under an objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). When evaluating an excessive force claim, the inquiry is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Law enforcement deputies may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his escape will result in serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Governmental interests to balance against the type of force used include the following factors identified in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the deputies' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape."

-8-

*Espinosa*, 598 F.3d at 537. Other significant factors to consider are the availability of alternative methods to effectuate an arrest or overcome resistance and whether the officer gave a warning that deadly force would be used. *Headwaters v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014); *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc). Under the facts of this case, the most important *Graham* factor is whether Jermaine posed an immediate or imminent threat of death or serious bodily injury to the officers or any other person at the time of the shooting. *Bryan v. McPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

With respect to Plaintiff's battery claim, the evidence at trial supports the jury's finding that both Hayhoe's and Glover's shots were objectively unreasonable and "not necessary to defend human life." *See* Judicial Council of California Civil Jury Instructions ("CACI"), No. 1305B (Battery by Peace Officer, Deadly Force). "A threat of death or serious bodily injury is "imminent" when … a reasonable officer … would believe [the] person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury." *Id*.; Cal. Penal Code § 835(a); Masongsong Decl., Ex. 4 (RT Vol. 2) at 230:24-231:17, 317:14-318:8; Masongsong Decl., Ex. 7 (RT Vol. 5) at 798. Further, "[a]n imminent harm is not merely a fear of future harm." Cal. Penal Code § 835(a); CACI 1305B; Masongsong Decl., Ex. 4 (RT Vol. 2) at 232:7-9; Masongsong Decl., Ex. 7 (RT Vol. 5 at 798). As Bryce testified at trial, subjective fear is insufficient to justify the use of deadly force. Masongsong Decl., Ex. 4 (RT Vol. 3) at 520:15-22.

In ruling on Defendants' instant motion, this Court must view the facts in the light most favorable to Plaintiff and defer to the jury's findings that Hayhoe's shots were excessive and unreasonable under federal and state law, and that Glover's shot constituted a battery under California law. The evidence overwhelmingly supports the jury's verdict, as follows:

-9-

As the jury saw in the videos, it was light outside when this incident occurred, and the officers had an opportunity to view the object Jermaine had in his hand, which turned out to be a car part, not a gun. Masongsong Decl., Ex. 4 (RT Vol. 2) at 199:22-193:1; Masongsong Decl., Ex. 7 (RT Vol. 5) at 781:1-22. The jury heard testimony that police officers are trained to distinguish firearms from other objects in a person's hand and testimony from Plaintiff's police practices expert, Richard Bryce, that a reasonable officer would *not* have believed the object Jermaine had looked like a gun, just like Officer Martinez realized it was not a gun and verbalized to Glover. Masongsong Decl., Ex. 5 (RT Vol. 3) at 506:24-507:9. The jury also heard Bryce's testimony that even where a suspect does have a gun, officers are trained that a gun in the hand is insufficient to justify using deadly force. Masongsong Decl., Ex. 5 (RT Vol. 3) at 510:20-24.

Prior to the shooting, the officers had no information that Jermaine had injured anyone or fired any shots, and no information that Jermaine was under the influence or had a criminal history. Masongsong Decl., Ex. 4 (RT Vol. 2) at 190:11-24, 193:18-194:5, 284:1-12. When the officers contacted Jermaine, he was walking down the sidewalk and not committing any crime. Masongsong Decl., Ex. 4 (RT Vol. 2) at 197:4-5, 286:4-10. Jermaine did not verbally threaten the officers at any point. Masongsong Decl., Ex. 4 (RT Vol. 2) at 306:4-6. When the officers responded, there was no confirmation that Jermaine had committed an ADW, and Jermaine would obviously need a deadly weapon (which he did not have) to commit an ADW. Masongsong Decl., Ex. 5 (RT Vol. 3) at 461:2-462:21, 503:17-23. In Hayhoe's experience, a reporting party might state that the subject has a gun in order to hasten police response. Masongsong Decl., Ex. 5 (RT Vol. 3) at 422:18-423:3.

### 1. Video evidence supports the verdict.

Defendants' version of the events is not supported by the body-worn camera videos capturing the incident, and the jury likely found credibility issues with the officers' testimonies that contradict the videos. The videos do not show Jermaine

-10-

simulating a gun or brandishing the object at the officers. Masongsong Decl., Ex. 5 (RT Vol. 3) at 421:4-9, 519:1-14. The Court cannot credit "visible fiction" when one version of events (here, Defendants) is "blatantly contradicted by the record"; it must instead "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## 2. Evidence indicated that Hayhoe's shots were excessive and his testimony lacked credibility.

Hayhoe paralleled Jermaine in his vehicle for nine seconds and 90 feet with his gun pointed out the window, and he testified at trial that he did not see anything in Jermaine's hands during those nine seconds. Masongsong Decl., Ex. 4 (RT Vol. 2) at 293:16-20, 294:3-299:10, 306:10-13; Masongsong Decl., Ex. 5 (RT Vol. 3) at 412:1-13, 515:23-516:9. Hayhoe testified that once he saw an object, after he had been paralleling Jermaine for nine seconds, he only saw a few inches of it for a split second before he fired. Masongsong Decl., Ex. 4 (RT Vol. 2) at 308:15-21, 309:10-15; Masongsong Decl., Ex. 5 (RT Vol. 3) at 412:14-17. Given that the videos clearly show Jermaine with a water bottle in his left hand and the car part in his right hand, the jury may have disregarded Hayhoe's testimony that he didn't see anything in Jermaine's hand until the last second. Along these lines, Hayhoe testified that he gave the command "drop it" multiple times, before the time where he claims he didn't see anything in Jermaine's hands, but curiously, he did not say "drop it" after he saw the object. Masongsong Decl., Ex. 4 (RT Vol. 2) at 299:16-300:5, 305:11-13.

Outside the presence of the jury, the presiding trial judge stated that he was "really restraining [himself] because [he] sat [there] and listened to several hours of perjury and [] didn't say a word." Masongsong Decl., Ex. 5 (RT Vol. 3) at 586:6-9. For example, Hayhoe testified at trial that Jermaine turned toward him before Hayhoe fired, but then the jury heard that contrary to his trial testimony, Hayhoe admitted at deposition that Jermaine did not turn his upper body toward him prior to firing his shots. Masongsong Decl., Ex. 4 (RT Vol. 2) at 315:15-317:13. During the

-11-

trial, Hayhoe performed a self-serving demonstration where he faced the jury with the object in his right hand, but the jury also heard that at the time of his deposition, Hayhoe did not recall in what hand Jermaine held the object and did not know whether it was black or brown. Masongsong Decl., Ex. 5 (RT Vol. 3) at 413:12-415:23, 419:17. In contradiction to Hayhoe's trial testimony, Glover told the jury that he never saw Jermaine point his arm out at Hayhoe and didn't see the object in Jermaine's hand when Jermaine crossed the street. Masongsong Decl., Ex. 4 (RT Vol. 2) at 224:1-225:2. Additionally, none of the videos, which were admitted into evidence, show Jermaine pointing the object at Hayhoe or turning toward him. Masongsong Decl., Ex. 5 (RT Vol. 3) at 421:4-9, 519:1-14.

The jury also heard evidence that Hayhoe employed poor police tactics and violated police training with respect to shooting from vehicles. Hayhoe fired his shots out of the passenger side window while his vehicle was moving, which was a violation of department policy. Masongsong Decl., Ex. 5 (RT Vol. 3) at 516:3-6. According to both police practices experts, if Hayhoe thought Jermaine could be armed (which he testified to based on the call for service) or had seen an object in his hands (which the jury may have concluded based on the evidence contradicting his testimony and raising credibility issues), he should not have exposed himself by paralleling Jermaine for 90 feet with his window open. Masongsong Decl., Ex. 5 (RT Vol. 3) at 516:3-517:7, 518:16-25; Masongsong Decl., Ex. 7 (RT Vol. 5) at 801:15-802:10.

### 3. Evidence suggested that Glover's shots were unreasonable.

The evidence also supports the jury's findings that Glover's shots were not necessary to defend human life, and that Jermaine did not have the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury.

Jermaine complied with the officers' commands by displaying the objects in his hands, which included a car part and a large water bottle. Masongsong Decl., Ex. 5 (RT Vol. 3) at 505:2-18; Masongsong Decl., Ex. 7 (RT Vol. 5 at 779:8-20, 781:1-

-12-

22. After Glover and Martinez observed the object, Martinez did not believe it was a gun, including because it had a silver tip and a flat side, and he said to Glover, "It's not a gun, bro." Masongsong Decl., Ex. 4 (RT Vol. 2) at 208:3-16, 249:14-16; Masongsong Decl., Ex. 5 (RT Vol. 3) at 438:18-439:12. Glover heard him say that, and police officers are trained to rely on the statements of their partner officers. Masongsong Decl., Ex. 4 (RT Vol. 2) at 208:3-16. After Martinez said, "It's not a gun," Jermaine walked away. Masongsong Decl., Ex. 4 (RT Vol. 2) at 210:12-19. After seeing the object in Jermaine's hand, Glover did not take cover, create distance, yell out "gun!", tell Martinez he thought he saw a gun, or alert dispatch or Hayhoe that he saw a gun, which is part of police training. Masongsong Decl., Ex. 4 (RT Vol. 2) at 273:22-274:4, 288:10-15; Masongsong Decl., Ex. 5 (RT Vol. 3) at 507:10-509:8.

The officers did not shoot Jermaine when he showed them the object, and the officers and experts agree that it would not have been appropriate to shoot him at that time, or for walking away and disobeying verbal commands. Masongsong Decl., Ex. 4 (RT Vol. 2) at 211:17-212:2; Masongsong Decl., Ex. 5 (RT Vol. 3) at 443:6-15, 513:15-514:1; Masongsong Decl., Ex. 7 (RT Vol. 5) at 796:22-797:4, 800:11-15. Glover never identified the object as a gun with certainty, and he described the object as "funky," not looking like an ordinary firearm, silver, and appearing welded together. Masongsong Decl., Ex. 4 (RT Vol. 2) at 227:3-16, 233:8-10, 266:16-18. Glover agrees that he should be 100 percent certain the suspect has a firearm before using deadly force. Masongsong Decl., Ex. 4 (RT Vol. 2) at 221:23-222:14. The jury likely found that if the object resembled a gun and if Jermaine pointed the object at Glover, he would have shot him during the initial contact. Tellingly, Martinez never fired any shots. Masongsong Decl., Ex. 5 (RT Vol. 3) at 431:17-21.

Before Glover fired, he heard two shots, formed the impression that Jermaine had been shot, and saw Jermaine go down. Masongsong Decl., Ex. 4 (RT Vol. 2) at

-13-

234:14-25. As seen in the videos and still shots shown to the jury, Glover fired one shot toward Jermaine's back as Jermaine was going to the ground or on the ground. Masongsong Decl., Ex. 4 (RT Vol. 2) at 218:8-220:10, 235:1-9. The jury likely found Glover's testimony that he perceived Jermaine firing at Hayhoe dubious, and found that a reasonable officer would have recognized that both shots were coming from the patrol vehicle. Masongsong Decl., Ex. 4 (RT Vol. 2) at 226:6-10. Bryce testified at trial that Glover's shot was potentially reactionary or contagious fire, which is something Glover had been trained to avoid, in other words, not to shoot just because he hears other shots. Masongsong Decl., Ex. 4 (RT Vol. 2) at 232:10-15; Masongsong Decl., Ex. 5 (RT Vol. 3) at 519:15-520:9.

### 4.  There was no warning.

"Before using deadly force," officers "must, 'where feasible,' issue a warning." *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) ("A rational jury may find . . . a warning was practicable and the failure to give one might weigh against reasonableness"); Masongsong Decl., Ex. 4 (RT Vol. 2) at 231:24-232:1; Masongsong Decl., Ex. 5 (RT Vol. 3) at 431:3-8; Masongsong Decl., Ex. 7 (RT Vol. 5) at 800:16-18. Neither Hayhoe nor Glover warned Jermaine they would shoot unless he complied. Masongsong Decl., Ex. 4 (RT Vol. 2) at 221-7-12, 305:14-16.

### D. Hayhoe is not entitled to qualified immunity on the Fourth-Amendment excessive-force claim.

### 1.  Hayhoe's shooting was excessive.

As explained above, the first prong of qualified immunity is satisfied here, where the evidence substantially supports the jury's verdict that Hayhoe's shooting violated Jermaine's constitutional right to be free from excessive force.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

**2.  Jermaine's right to be free from deadly force was clearly established under the circumstances.**

The second prong of qualified immunity is satisfied because, at the time of the shooting, it was clearly established that shooting an unarmed person who was walking away and making no verbal threats or furtive movements would violate the Fourth Amendment. As the Ninth Circuit recently explained, while a prior case directly on point is not necessary, "[t]he right should be defined in a way that is neither too general nor too particularized." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (*Gordon* II). Indeed, "casting an allegedly violated right too particularly, would be to allow the instant defendants, and future defendants, to define away all potential claims." *Id.* (citation modified).

Hayhoe's qualified-immunity arguments regarding excessive force suffer from the same fatal flaw as his medical-delay arguments—his motion refuses to concede the facts in the light most favorable to Plaintiff. Instead, he improperly resolves genuine factual disputes in his own favor. As mentioned above in the context of the medical-delay claim, the Court must presume that Hayhoe correctly perceived all of the relevant facts, including whether the object was a gun, because an unreasonable mistake of fact does not entitle an officer to qualified immunity. *D'Braunstein*, 131 F.4th at 772–73; *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (officer claimed to mistake pen for a knife). Moreover, judgment as a matter of law in "§ 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt," like Hayhoe's was here. *Nehad*, 929 F.3d at 1133.

Under the proper factual record, as this Court held on summary judgment:

> Decisions well before this shooting put it beyond debate that use of deadly force in these circumstances, where the suspect does not directly threaten the officer or others and just continues walking away, is unreasonable. *See, e.g.*, *Calonge*, 104 F.4th at 46 (holding deadly force was not justified in the absence of "a furtive movement, harrowing gesture, or serious verbal threat," nor by the suspect's continued walking away); *A.K.H. v. City of Tustin*, 837 F.3d 1005,

-15-

1010–13 (9th Cir. 2016) (holding deadly force was not justified where officer "escalated to deadly force very quickly," and shot unarmed suspect from inside patrol vehicle, when suspect had no gun, was walking away, and did not pose any immediate threat).

Even assuming that Hayhoe reasonably believed that Petit had a gun, it was clearly established before this shooting that possession of a gun does not justify deadly force absent some action indicating immediate threat. *Calonge*, 104 F.4th at 48 ("We have held over and over that a suspect's possession of a gun does not itself justify deadly force.") *George*, 736 F.3d at 838 (affirming denial of summary judgment where a suspect had a gun but did not point it at the officers or threaten them); *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017) (noting that *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) gave defendant notice that officers could not reasonably believe the use of deadly force was lawful when a suspect "did not point the gun at the officers" and "was not facing them when they shot him").

Masongsong Decl., Ex. 1 (MSJ Order, Dkt. 106) at 12:27-13:17; *see also Nehad*, 929 F.3d at 1141 (officer "cannot credibly argue" that right was not clearly established where he "responded to a misdemeanor call, pulled his car into a well-lit alley with his high beam headlights shining into Nehad's face, never identified himself as a police officer, gave no commands or warnings, and then shot Nehad within a matter of seconds, even though Nehad was unarmed, had not said anything, was not threatening anyone, and posed little to no danger to Browder or anyone else").

The evidence presented at trial supported the following facts that the Court indicated, at summary judgment, that a jury could reasonably find:

Defendants had no reason to believe Petit was violent; Petit did not have a gun; Petit showed the object to Glover and Martinez; Martinez recognized and stated the object was not a gun; Glover heard Martinez say the object was not a gun; Glover saw the object and should have recognized it was not a gun; Petit continued walking away from the officers; Petit did not turn toward Hayhoe, point the object at Hayhoe, or assume a "shooting stance"; Hayhoe drew his

-16-

gun and shot Petit twice while driving his patrol vehicle, which was against his police training; and Glover shot Petit once, aiming at his back, after Petit was already shot and either on the ground or falling to the ground.

Masongsong Decl., Ex. 1 (MSJ Order, Dkt. 106) at 12:17-26.

### 3. Hayhoe's training discouraging shooting from a moving vehicle gave him further notice that the shooting was excessive.

This Court should also reiterate its denial of Hayhoe's request for qualified immunity because it is well established that a violation of officer training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2004) ("[T]raining materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable."). An officer who makes a conscious decision to violate basic training guidelines, designed to safeguard the subject, should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed his or her decision to be lawful. *Id*.; *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164-66 (9th Cir. 2020) (policies and training show that constitutional rights of detainees were clearly established).

Hayhoe testified extensively that he was trained that deadly force can only be used when there is an imminent threat of death or serious bodily injury, and that the subject must have the ability, opportunity, and apparent intent to cause death or serious bodily injury for deadly force to be justified. Masongsong Decl., Ex. 4 (RT Vol. 2) at 317:14-318:8. Hayhoe and the police-practices experts also testified that police officers, including Hayhoe, are trained that shots fired from a moving vehicle are highly discouraged and a violation of Hayhoe's own department policy on shooting from moving vehicles. Masongsong Decl., Ex. 4 (RT Vol. 2) at 313:4–8; Masongsong Decl., Ex. 5 (RT Vol. 3) at 556:24–557:5; Masongsong Decl., Ex. 7

-17-

(RT Vol. 5) at 801:7-14. Viewing the facts in the light most favorable to Plaintiff, Hayhoe violated his police training when he fired two shots at Jermaine from a moving vehicle, when Jermaine posed no immediate threat of death or serious bodily injury to Hayhoe or any other person at the time of the shots, and where he did not have the ability (he was unarmed), opportunity, or apparent intent (he was walking away) to cause death or serious bodily injury. This violation of training weighs in favor of denying qualified immunity.

## IV.   CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Renewed Motion for Judgment as a Matter of Law in its entirety.

DATED:  April 20, 2026                    LAW OFFICES OF DALE K. GALIPO


By_____*/s/ Renee V. Masgongsong*_____
      Dale K. Galipo
      Renee V. Masongsong
      Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Jermaine Petit, certifies that this brief contains 6,093 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

Dated: April 20, 2026                    LAW OFFICES OF DALE K. GALIPO

                              By: _____*/s/ Renee V. Masongsong*_____
                                   Dale K. Galipo
                                   Renee V. Masongsong
                                   Attorneys for Plaintiff

-19-