# EXHIBIT 1

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| JERMAINE PETIT,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>            Defendants. | Case № 2:23-cv-00789-ODW (PVCx)<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT [83]** |

## I.      INTRODUCTION

Jermaine Petit was walking in a residential neighborhood when Defendants Sergeant Brett Hayhoe and Officer Daryl Glover, Jr. separately responded to 911 calls reporting someone in the area with Petit's description who may have a gun.  Petit attempted to avoid contact with the officers by walking away from them.  Hayhoe, while driving his patrol vehicle alongside Petit, shot Petit twice through the vehicle's open passenger window.  Glover, following Petit on foot, also shot Petit once immediately after Hayhoe fired.  Hayhoe and Glover now move for summary judgment on the grounds that their conduct was objectively reasonable and they are entitled to immunity. (Dkt. No. 83.)  For the reasons discussed below, the Court **DENIES** the motion.[1]

---

[1] Having carefully considered the papers filed in connection with the motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

As it must on a motion for summary judgment, the Court sets forth the material facts, many of which are disputed, and views all reasonable inferences to be drawn from them in the light most favorable the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).[2]

### A. The Initial Contact

At 19:22[3] on July 18, 2022, Los Angeles Police Department ("LAPD") received 911 calls and dispatched a report about a man described as a transient black male with dreadlocks, wearing a green long sleeve shirt and black pants. (DSUF 4.) The suspect was reportedly walking in a residential neighborhood, holding a stick, and lighting trash on fire. (DSUF 4.) Dispatch initially broadcast that the suspect had a handgun, but shortly thereafter advised that it was unknown whether the suspect had a handgun. (DSUF 4–5.) Hayhoe, Glover, and Officer Nelson Martinez were among the officers that responded and located the suspect, later identified as Petit. (DSUF 7.)

At 19:33:15, Petit was walking on the sidewalk when Martinez exited the passenger side of his patrol vehicle, with his gun drawn at the low-ready position, and commanded Petit to "come here." (DSUF 9; Decl. Renee V. Masongsong ("Masongsong Decl."), Ex. 3 ("Martinez BWC") 19:33:15–22, Dkt. No. 87-11.[4]) Petit continued walking, moving away from Martinez. (DSUF 9.) Martinez followed. (DSUF 9.) At 19:33:30, Glover pulled his patrol vehicle forward to try to block Petit's path. (DSUF 10; Glover BWC 19:33:30.) Glover exited the driver side of the vehicle

---

[2] The Court derives the factual background from Defendants' Statement of Uncontroverted Facts ("DSUF"), (DSUF, Dkt. No. 83-1), Petit's Statement of Genuine Disputes ("PSGD") and Additional Material Facts ("PAMF"), (PSGD & PAMF, Dkt. No. 87-1), and Defendants' Responses thereto, (Resp. PAMF, Dkt. No. 91), in addition to the parties' clearly and specifically cited evidence, *see* C.D. Cal. L.R. 56-1 to 56-4.

[3] For consistency with the time stamps on Defendants' body worn cameras ("BWC"), the Court represents time using the 24-hour clock. For instance, 19:22 is 7:22 p.m.

[4] Petit's counsel authenticates the BWC exhibits as Ex. 1: Glover BWC; Ex. 2: Hayhoe BWC; and Ex. 3: Martinez BWC. (*See* Masongsong Decl. ¶ 2, Dkt. No. 87-4.) As such, this is the exhibit identification the Court uses to refer to these exhibits, and not the exhibit identifiers in the Notice of Manual Filing. (Dkt. No. 87-11.)

with his gun drawn; he came around the front of the vehicle and ordered Petit against the wall. (DSUF 10–11.) Petit continued to walk away. (DSUF 12.)

Glover noticed a black object in Petit's hands. (DSUF 11.) When Glover asked Petit what was in his hands, Petit mumbled something and continued walking but he also turned his upper body and held up his hands showing them to Glover and Martinez. (DSUF 11–12; PSGD 12; PAMF 44, 46–47; Glover BWC 19:33:38.) Glover's BWC shows that Petit's hands were in front of him with what looks like a water bottle in his left hand and a black object in the right. (Glover BWC 19:33:38.) Martinez said to Glover "It's not a gun, bro." (PAMF 56; Martinez BWC 19:33:40.) Glover heard Martinez say the object was not a gun and Glover said "oh." (DSUF 15; PAMF 57–58; Glover BWC 19:33:40.)

Glover claims Petit pointed the object at him when he raised his hands, (DSUF 12), but Glover's BWC shows that Petit held the object out in front of his body with it pointed downward, (Glover BWC 19:33:37). Also, although Glover generally trusts the opinions of his partners, (PAMF 59), he claims he still believed the object could be a gun, (DSUF 15). Yet, after Petit showed the object to Glover and Martinez, neither officer yelled "gun," tried to take cover, called for backup, or created distance from Petit. (PAMF 49–50, 62, 64; Glover BWC 19:33:37–40.) Instead, they continued following Petit on foot. (Glover BWC 19:33:40–46.)

## B. The Shooting

At about 19:33:40, Hayhoe began driving his patrol vehicle alongside Petit. (DSUF 18; Hayhoe BWC 19:33:40.) Petit began walking more quickly. (DSUF 21.) Hayhoe drove with his left hand on the steering wheel and aimed his gun with his right hand at Petit through the open passenger window. (Hayhoe BWC 19:33:41–44.) Hayhoe claims he looked but could not see anything in Petit's hands, which he asserts were moving toward Petit's waistband. (DSUF 20, 22.) But the evidence supports that Petit's hands were out and visible. (Glover BWC 19:33:37–47; Martinez BWC 19:33:37–47; PSGD 20, 22.) Hayhoe claims he yelled at Petit to "drop it"; Petit

3

disputes that Hayhoe issued any commands. (DSUF 22; PSGD 23; PAMF 69.) Hayhoe claims Petit turned his body toward Hayhoe and pointed the object at him while assuming a "shooting stance"; Petit disputes that he turned, pointed the object, or assumed any stance. (DSUF 22–23; PSGD 23; PAMF 67–68.) The BWCs do not show Petit turning toward or pointing the object at Hayhoe. (PAMF 68; Glover BWC 19:33:47; Martinez BWC 19:33:47.)

At 19:33:48, from his still-moving vehicle, Hayhoe fired twice, hitting Petit. (DSUF 23–24; Hayhoe BWC 19:33:48–49; PAMF 71–72.) Hayhoe did not give Petit any verbal warnings that deadly force would be used prior to firing. (PAMF 91.)

Glover was not expecting gunshots. (PAMF 77.) He did not see Petit's hands go toward his waistband. (PAMF 79.) He did not see the object in Petit's hands when he heard the shots. (PAMF 76.) He did not see a muzzle flash coming from Petit. (PAMF 75.) Nevertheless, Glover formed the belief that Hayhoe and Petit had exchanged fire. (DSUF 25.) At 19:33:50, one second after hearing Hayhoe's shots, Glover fired once at Petit. (DSUF 25; PAMF 80; Glover BWC 19:33:50.) When Glover fired, Petit was on the ground or falling to the ground from Hayhoe's shots, with his back toward Glover. (PAMF 81–83, 86.) Glover did not give Petit any verbal warnings that deadly force would be used prior to firing. (PAMF 90.)

Martinez did not fire any shots. (PAMF 95.)

Glover agrees that shooting Petit once he was on the ground would be inappropriate. (PAMF 85.) Hayhoe's training provided that it is unsafe and inappropriate for an officer to draw his weapon while operating a moving vehicle or to discharge the weapon from inside a moving vehicle, unless the circumstances are exigent. (PAMF 117–18.) After the shooting, the object that had been in Petit's hand was on the ground in plain view, but Hayhoe said "I can't see the gun" and other officers responded they did not have a visual of the "gun." (PAMF 92–94; DSUF 26; Glover BWC 19:34:36–40.)

Case 2:23-cv-00789-ODW-PVC    Document 106    Filed 01/13/26    Page 5 of 18    Page ID #:1196

## C.    The Arrest

Immediately after the shooting, Petit lay face down on the ground, bleeding. (PAMF 81; Glover BWC 19:33:51–19:34:40.)  As Glover and Martinez approached him, Petit's left arm moved.  (DSUF 26; Glover BWC 19:34:04.)  They ordered Petit to stop moving and "stop reaching for it."  (DSUF 26.)  Hayhoe directed the officers to take cover.  (DSUF 26; Glover BWC 19:34:39.)  At Hayhoe's direction, the officers began developing a tactical plan to approach Petit and take him into custody. (DSUF 28; Hayhoe BWC 19:34:16–19:36:30.)  While the officers were coordinating, someone yelled for Petit to put his hands up.  (Glover BWC 19:35:00.)  Glover's BWC next shows Petit on his back, elbows on the ground, hands shaking and lifted. (Glover BWC 19:35:20.)  Three minutes after the shooting, officers approached Petit with a ballistics shield, moved the object away, and handcuffed him.  (DSUF 29; Glover BWC 19:36:30–56.)

Hayhoe and Glover assert that they still perceived the object to be a gun even after they saw it on the ground when they approached Petit and only learned that it was not a gun during subsequent investigation.  (DSUF 27.)  Petit disputes that reasonable officers in Glover's and Hayhoe's positions would have perceived the object to be a gun at any time.  (PSGD 27.)

After Petit was handcuffed, at 19:37:27, Glover directed another officer to get a trauma kit.  (DSUF 29; Glover BWC 19:37:27.)  At 19:38:10, Martinez radioed for an ambulance.  (DSUF 30.)  Paramedics responded and transported Petit to the hospital. (DSUF 30.)  Petit survived the shooting.  (Notice Death ¶ 3, Dkt. No. 50 (noting Petit's death on August 4, 2024).)

## D.    This Litigation

On February 2, 2023, Petit filed this excessive force action, through a guardian ad litem due to his mental illness.  (Compl., Dkt. No. 1.)  On August 4, 2024, Petit was found deceased in his home.  (Notice Death ¶ 3.)  The manner of death was undetermined due to the skeletonized condition of his remains.  (*Id.*)  His daughter,

Ashlyn Petit, subsequently substituted into the case as his successor in interest to pursue Petit's claims.  (Order Grant Subst., Dkt. No. 61.)

Thus, Ms. Petit pursues Petit's claims against the City of Los Angeles, Hayhoe, and Glover, under 42 U.S.C. § 1983 for (1) violation of civil rights based on excessive force; (2) violation of civil rights based on municipal liability for unconstitutional policy, custom, or practice; and (3) denial of medical care.  She pursues Petit's claims under California law for (4) assault and battery; (5) negligence; (6) violation of the Bane Act; and (7) intentional infliction of emotional distress ("IIED").[5]  (First Am. Compl. ("FAC") ¶¶ 24–130, Dkt. No. 62.)  Glover and Hayhoe ("Defendants") move for summary judgment or summary adjudication on the causes of action against them. (Mot. Summ. J. ("Mot." or "Motion") 6–19, Dkt. No. 83.)[6]

## III.    EVIDENTIARY MATTERS

Petit objects to certain of Defendants' evidence.  (Pl.'s Evid. Objs., Dkt. No. 87-2.)  The Court sustains Petit's relevance objections to the 911 calls and the subsequent criminal charges filed against Petit.  The Court overrules the remainder of Petit's evidentiary objections.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119, 1122 (E.D. Cal. 2006) (irrelevant and otherwise unnecessary); *Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (hearsay).

Defendants appear to raise objections in their Response to Petit's PAMF.  (*See generally* Resp. PAMF.)  However, Defendants do not set forth any evidentiary objections in a "separate memorandum" as required by the Court's rules.  (Scheduling and Case Management Order 9, Dkt. No. 73.)  As such, the Court does not consider any purported evidentiary objections that Defendants may have attempted to raise in their

---

[5] The parties dismissed Petit's eighth claim for violation of the Americans with Disabilities Act. (Order Grant Stip., Dkt. No. 82.)

[6] Defendants' reply brief, at 5,456 words, exceeds the Court's word count limitation, which is 3,300. *See* Hon. Otis D. Wright, II Standing Order § VII.A.3., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii.  Thus, the Court does not consider the brief beyond page 10, line 19, where the word count exceeds the limit.

Response.  Further, as Defendants do not actually "dispute" any of Petit's PAMF, the Court considers those facts undisputed to the extent the evidence supports them.

Finally, the Court denies Defendants' request for judicial notice of the criminal charges filed against Petit resulting from this incident, as they are not relevant and do not affect the outcome of the Motion.  *See Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1003 n.1 (C.D. Cal. 2000) (declining to take judicial notice of exhibits that "do not affect the outcome of" the motion).

**IV.     LEGAL STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party."  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted).  Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party.  *Scott,*

7

550 U.S. at 378 (citation modified).  Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence.  C.D. Cal. L.R. 56-4.  The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced.  *Id.*

## V.   DISCUSSION

Defendants move for summary judgment on Petit's first and third through seventh causes of action and his request for punitive damages.  (Mot. 6–19.)

**A.   Excessive Force, 42 U.S.C. § 1983—Count 1**

Defendants contend they are entitled to summary judgment on Petit's first cause of action for excessive force because their actions were objectively reasonable and they are entitled to qualified immunity.  (*Id.* at 6–13.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation modified).  Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.* at 232 (citation

Case 2:23-cv-00789-ODW-PVC    Document 106    Filed 01/13/26    Page 9 of 18    Page ID #:1200

modified).  "Defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right."  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

> ### 1.    *Constitutional Violation*

"An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances."  *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

To determine whether force was "reasonable" under the Fourth Amendment, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (citation modified).  First, courts "assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted."  *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003).  Second, courts consider "the importance of the government interests at stake by evaluating" the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Id*. (quoting *Graham*, 490 U.S. at 396).  These factors are considered under "the totality of the circumstances" to determine "whether the severity of force applied was balanced by the need for such force."  *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).  This is "a highly fact-intensive task."  *Id.*  "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury."  *Id.* at 1123 (citation modified).

Case 2:23-cv-00789-ODW-PVC    Document 216-1    Filed 04/20/26    Page 11 of 19    Page
ID #:3776
Case 2:23-cv-00789-ODW-PVC    Document 106    Filed 01/13/26    Page 10 of 18    Page
ID #:1201

Here, drawing all reasonable inferences in Petit's favor, a reasonable jury could conclude that Defendants' use of deadly force was unreasonable and excessive because the jury could find Petit did not pose an immediate threat to the officers or others. When Hayhoe fired, Petit's hands were in view and Petit did not turn toward Hayhoe or point the object at him. (Glover BWC 19:33:44–47; Martinez BWC 19:33:44–47; PSGD 23; PAMF 67–68; Decl. Richard Bryce ISO Opp'n ("Bryce Decl.") ¶ 4, Dkt. No. 87-3.) When Glover fired, he had seen the object and heard his partner confirm it was "not a gun"; Glover could not see Petit's hands or the object; and Petit's back was to Glover as Petit fell to the ground from Hayhoe's shots. (PSGD 12, 15; PAMF 44, 47, 56–59, 76, 81–83, 86; Glover BWC 19:33:37–40, 19:33:47–50.) Further, the reports to which Defendants were responding—man with a stick, lighting trash on fire, possibly with a gun—is not a serious crime, and Defendants had no reason to believe Petit was violent from the 911 calls or the thirty-two total seconds of engagement before Defendants shot him. (DSUF 4–6; *see* Martinez BWC 19:33:15–47); *Calonge v. City of San Jose*, 104 F.4th 39, 47 (9th Cir. 2024) (noting that possession of a gun in public is "not a serious crime that could justify a high degree of force"). Thus, even assuming Defendants' mistaken belief that the object was a gun was reasonable, a jury could still find that Defendants' use of deadly force was excessive. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (affirming denial of summary judgment where suspect had a gun but did not point it at the officers or threaten them).

While Hayhoe claims Petit assumed a shooting stance and pointed the object at him, (DSUF 22–23), in the deadly force context, courts "cannot simply accept what may be a self-serving account by the police officer because the person most likely to rebut the officers' version of events—the one killed—can't testify." *Calonge*, 104 F.4th at 44 (citation modified). Rather, courts "must carefully examine the evidence in the record to determine whether the officers' testimony is internally consistent and consistent with other known facts." *Id.* Petit submits evidence supporting that he did not have a gun, turn toward Hayhoe, point the object, or take a "shooting stance."

(Glover BWC 19:33:45–50; Martinez BWC 19:33:45–50; PSGD 22–23; PAMF 67–68; Bryce Decl. ¶¶ 5, 7.)  Additionally, Petit offers evidence showing that Hayhoe was driving his vehicle while aiming and firing at Petit through the open passenger window, which is against his police training.  (Hayhoe BWC 19:33:41–49; Masongsong Decl. Ex. 5 ("Hayhoe Dep.") 70:16–22, Dkt. No. 87-6; PAMF 117–18; Bryce Decl. ¶ 4.)  A reasonable jury considering this evidence could doubt Hayhoe's credibility or perception of the event.  *See Longoria v. Pinal County*, 873 F.3d 699, 706–09 (9th Cir. 2017) (affirming denial of summary judgment where plaintiff's evidence conflicted with officer's assertion that the suspect assumed a "shooter's stance").

Petit also submits evidence supporting that Glover shot him after he was already down or falling down from Hayhoe's shots.  (PAMF 81–86; Glover BWC 19:33:50; Martinez BWC 19:33:50.)  A reasonable jury could find that, if Glover did fire at Petit's back after Petit was already on the ground or falling to the ground, then Petit "was no longer an immediate threat" and Glover "should have held his fire unless and until [Petit] showed signs of danger."  *See Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

In sum, viewing the facts and evidence in the light most favorable to Petit, a reasonable jury could find that Defendants' use of deadly force was not objectively reasonable and thus violated Petit's constitutional rights.  Defendants are not entitled to summary judgment on this basis.

### 2.   Clearly Established

Defendants nevertheless contend they are entitled summary judgment on grounds of qualified immunity because there was no clearly established law that would have put them on notice that their conduct was unlawful.  (Mot. 10.)

For the purposes of qualified immunity, a right is clearly established if "a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006).  The inquiry in excessive force cases

is whether "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and [whether] any mistake to the contrary would have been unreasonable." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (alteration in original).  Disputed facts material to the "clearly established" question must be viewed for the non-moving party. *Longoria*, 873 F.3d at 709.

The Supreme Court has cautioned against defining "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Rather, a clearly established constitutional right "must be 'particularized' to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017).  Courts often look to whether there is a "case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017).  Preceding cases do not have to have "materially similar factual circumstances or even facts closely analogous" to the current case, but should make it "sufficiently clear such that any reasonable official" would have understood they were violating the Fourth Amendment. *Reese v. County of Sacramento*, 888 F.3d 1030, 1038–39 (9th Cir. 2018) (citation modified).

Viewing the evidence and resolving inferences in Petit's favor, a reasonable jury could find the following facts: Defendants had no reason to believe Petit was violent; Petit did not have a gun; Petit showed the object to Glover and Martinez; Martinez recognized and stated the object was not a gun; Glover heard Martinez say the object was not a gun; Glover saw the object and should have recognized it was not a gun; Petit continued walking away from the officers; Petit did not turn toward Hayhoe, point the object at Hayhoe, or assume a "shooting stance"; Hayhoe drew his gun and shot Petit twice while driving his patrol vehicle, which was against his police training; and Glover shot Petit once, aiming at his back, after Petit was already shot and either on the ground or falling to the ground.

Decisions well before this shooting put it beyond debate that use of deadly force in these circumstances, where the suspect does not directly threaten the officer or others

and just continues walking away, is unreasonable. *See, e.g.*, *Calonge*, 104 F.4th at 46 (holding deadly force was not justified in the absence of "a furtive movement, harrowing gesture, or serious verbal threat," nor by the suspect's continued walking away); *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1010–13 (9th Cir. 2016) (holding deadly force was not justified where officer "escalated to deadly force very quickly," and shot unarmed suspect from inside patrol vehicle, when suspect had no gun, was walking away, and did not pose any immediate threat).

Even assuming that Hayhoe reasonably believed that Petit had a gun, it was clearly established before this shooting that possession of a gun does not justify deadly force absent some action indicating immediate threat. *Calonge*, 104 F.4th at 48 ("We have held over and over that a suspect's possession of a gun does not itself justify deadly force."); *George*, 736 F.3d at 838 (affirming denial of summary judgment where a suspect had a gun but did not point it at the officers or threaten them); *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017) (noting that *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) gave defendant notice that officers could not reasonably believe the use of deadly force was lawful when a suspect "did not point the gun at the officers" and "was not facing them when they shot him").

"[S]ummary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits." *Lopez*, 871 F.3d at 1021; *Est. of Strickland v. Nevada County*, 69 F.4th 614, 622 (9th Cir. 2023) (recognizing that a material dispute about whether a suspect posed an immediate threat precludes qualified immunity at summary judgment). As such, Defendants are not entitled to qualified immunity here because there is a material dispute of fact as to whether they violated Petit's clearly established constitutional right. *See Longoria*, 873 F.3d at 711 (finding defendants not entitled to summary judgment because genuine disputes of fact precluded qualified immunity).

As Petit raises genuine disputes of fact concerning the reasonableness of Defendants' conduct and sets forth clearly establish case law, the Court **DENIES** Defendants' Motion as to Petit's first cause of action for excessive force.

## B.      Denial of Medical Care, 42 U.S.C. § 1983—Count 3

Defendants argue they are entitled to summary judgment on Petit's third cause of action for denial of medical care because officers "immediately" summoned medical care for Petit.  (Mot. 13–15.)[7]

Post-arrest claims for denial of medical care during and immediately following arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (analyzing post-arrest medical care under objective reasonableness standard).  Although the Ninth Circuit has not proscribed the precise contours of objectively reasonable post-arrest care, at minimum, police officers must "seek necessary medical attention" by "promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Est. of Cornejo v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015).  Whether an officer behaved reasonably and sufficiently promptly in rendering or summoning medical care for a detainee depends partly "on the length of the delay and the seriousness of the need for medical care." *Regalado v. Riverside County*, No. 5:20-cv-1578-JGB (KKx), 2021 WL 945249, at *4 (C.D. Cal. Jan. 15, 2021).

Defendants contend they summoned medical care for Petit "immediately" after the shooting.  (Mot. 13; DSUF 30.)  The evidence shows that slightly more than four minutes elapsed between the time Hayhoe shot Petit—19:33:48—and the time Martinez called for an ambulance—19:38:10.  (Glover BWC 19:33:48 (Hayhoe's shots); Decl. Daryl Glover, Jr. ISO Mot. Ex. A ("Dispatch Report") 19:38:10 (call for ambulance),

---

[7] Defendants do not argue they are entitled to qualified immunity on Petit's third cause of action for denial of medical care, despite listing qualified immunity in their Notice of Motion.  (*See generally* Mot.; Notice Mot. ¶ 2.b., Dkt. No. 83.)  Thus, the Court declines to address the undeveloped argument, "which is not supported by citations to the record, argument, or any legal authority." *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014).

Dkt. No. 83-3.)  ==Defendants argue this delay is reasonable because Martinez called for medical care "as soon as the officers determined that Petit no longer posed a potential risk of imminent harm." (Mot. 14.)== However, as explained above, viewing the evidence in Petit's favor, a reasonable jury could conclude that Petit *never* posed a risk of harm, before, during, or after the shooting.  In that case, a reasonable jury could find Defendants' four-minute delay while Petit lay unarmed and bleeding unreasonable.

To justify the delay, Defendants rely on *Krause v. County of Mohave*, 846 F. App'x 569, 571 (9th Cir. 2021), (Mot. 14), but in that case, the officers called for medical assistance "within one minute of" shooting the suspect.  Defendants also cite *Waid v. Lyon County*, No. 3:20-cv-00435-LRH-WGC, 2022 WL 464304, at *6 (D. Nev. 2022), (Mot. 13), but similarly there, although the officers stood by for six minutes while decedent was bleeding, the court's finding that defendants satisfied their constitutional duty was premised on an officer having radioed for medical assistance "immediately" after the shooting.  Defendants made no such immediate call for medical care in this case.

As Petit raises genuine disputes of fact as to the reasonableness of Defendants' delay in summoning medical assistance, the Court **DENIES** Defendants' Motion as to the third cause of action for denial of medical care.

**C.    Assault/Battery and Negligence—Counts 4 & 5**

To prove assault under California law, a plaintiff must show (1) defendant threatened or acted with intent to cause harmful or offensive contact; (2) plaintiff reasonably believed defendant was about to carry out the threat or touch her in a harmful or offensive manner; (3) "plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm."  *So v. Shin*, 212 Cal. App. 4th 652, 668–69 (2013).  To prove battery under California law, a plaintiff must show "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a

Case 2:23-cv-00789-ODW-PVC    Document 216-1    Filed 04/20/26    Page 17 of 19    Page
ID #:3782
Case 2:23-cv-00789-ODW-PVC    Document 106    Filed 01/13/26    Page 16 of 18    Page
ID #:1207

reasonable person in plaintiff's position would have been offended by the touching." *Id.* at 669. To prove negligence under California law, "a plaintiff must show that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988). "[P]eace officers have a duty to act reasonably when using deadly force." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013).

Defendants argue Petit's causes of action for assault/battery and negligence fail because Defendants' conduct was objectively reasonable. (Mot. 15–16.) However, a reasonable jury could find that Defendants acted unreasonably. Defendants also argue they are entitled to statutory immunity pursuant to California Government Code section 820.2. (*Id.* at 17–18.) "But it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007). Accordingly, the Court **DENIES** Defendants' Motion as to Petit's fourth and fifth causes of action for assault/battery and negligence.

**D.    Bane Act Violation—Count 6**

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation, or coercion." *Reese*, 888 F.3d at 1040 (citation modified). Bane Act claims require a plaintiff to "demonstrate both that a constitutional violation occurred (either accompanied by threat, intimidation, or coercion, or with one of those as an inherent aspect of the violation) and that the defendant had the specific intent to violate the plaintiff's constitutional right(s)." *A.B. v. City of Santa Ana*, No. 8:18-cv-01553-DOC (ADSx), 2020 WL 1937879, at *5 (C.D. Cal. Jan. 7, 2020) (citing *Reese*, 888 F.3d at 1043); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045.

Defendants argue this cause of action fails because they did not act with a specific intent to violate Petit's rights.  (Mot. 18–19.)  However, a reasonable jury viewing the evidence in Petit's favor could find that Defendants recklessly disregarded Petit's constitutional right to be free from excessive force, which is sufficient under the Bane Act.  *See Reese*, 888 F.3d at 1045.  Accordingly, the Court **DENIES** Defendants' Motion as to Petit's sixth cause of action for violation of the Bane Act.

**E.    IIED—Count 7**

To prove IIED, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).  "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.* at 1050–51 (citation modified).

Defendants argue Petit's seventh cause of action for IIED fails because their use of force was objectively reasonable and thus not extreme or outrageous.  (Mot. 16–17.) Viewing the evidence in Petit's favor, a reasonable jury could find that Defendants' shooting of Petit without warning when he was unarmed and did not pose any threat was extreme and outrageous and thus exceeds the bounds "tolerated in a civilized community."  *Hughes*, 46 Cal. 4th at 1051.  Further, Defendants are not entitled to immunity under California Government Code section 820.2 on this claim, for the same reason as stated above.  Accordingly, the Court **DENIES** Defendants' Motion as to Petit's seventh cause of action for IIED.

**F.    Punitive Damages**

Punitive damages are permitted in an action "under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*,

461 U.S. 30, 56 (1983). "[O]ppressive conduct is [also] a proper predicate for punitive damages under § 1983." *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005).

As above, a reasonable jury viewing the evidence in Petit's favor could find that, in shooting him without warning when he was unarmed and posed no immediate threat, Defendants acted oppressively, or with reckless or callous indifference to his constitutional right to be free from excessive force. Accordingly, the Court **DENIES** Defendants' Motion as to Petit's request for punitive damages.

**VI.    CONCLUSION**

For the reasons discussed above, the Court **DENIES** Defendants' Motion for Summary Judgment. (Dkt. No. 83.)

**IT IS SO ORDERED.**

January 13, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

18