**HYDEE FELDSTEIN SOTO,** City Attorney (SBN 106866)
**DENISE C. MILLS** Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY**, Chief Assistant City Attorney (SBN 212289)
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785
Email: christian.bojorquez@lacity.org

*Attorneys for Defendant* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as Successor-In-Interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; OFFICER DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br>*Assigned to Hon. Otis D. Wright*<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION FOR NEW TRIAL ON DAMAGES**<br><br>Date: May 18, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5D |

**TO THE HONORABLE COURT, PLAINTIFF AND TO HER ATTORNEY OF RECORD:**

Defendants CITY OF LOS ANGELES, et al., submit the following Reply in support of their Motion for New Trial on Damages.

. . .

. . .

- 1 -

## I.    INTRODUCTION

Respectfully, this Court erred in excluding evidence of Jermaine Petit's historic drug use, which is relevant to the issue of damages. Although this Court properly included Petit's pre-death physical damages in the jury instructions and verdict form, the Court erred in also including mental, emotional, and loss-of-enjoyment-of-life damages because Plaintiff represented during trial that she was not seeking those damages, and she did not present any evidence that Petit suffered those damages.

If the jury needed to decide Petit's mental, emotional, and loss-of-enjoyment of life damages, then the Court should have allowed Defendants to present evidence of Petit's history of drug use. Conversely, since the Court did not allow Defendants to present evidence of Petit's historic drug use, the Court should not have allowed the jury to determine Petit's mental, emotional, and loss-of-enjoyment of life damages.

## II.    ARGUMENT

### A.    Defendants did not waive the argument that Petit's history of drug use is relevant to the damages.

Plaintiff mistakenly argues that Defendants forfeited their claim that Petit's history of drug use is relevant to damages. Plaintiff's Opposition to New Trial, p. 3. First, Defendants argued in their motion to trifurcate the trial that "certain aspects of Petit's drug usage and criminal history would be relevant only for purposes of damages, and indeed, Plaintiff is seeking to exclude such evidence from the case entirely." Bojorquez Decl., Exh. B [Defendants' Motion to Trifurcate, Dkt. #113 at p. 3 of the Points and Authorities.]

Second, this Court heard a lengthy argument on February 18, 2026, concerning Petit's history of drug use. During this discussion, Defendants argued that Petit's history of drug use is relevant to damages, and this Court reconsidered its prior ruling excluding Petit's drug use history. This discussion was **not** limited

- 1 -

to post-hospitalization drug use, notwithstanding Plaintiff's attempts to limit the issue in that manner. Indeed, at the hearing, Defendants referenced a Cedars-Sinai medical record from six months **before** the shooting incident. The medical record stated, "The patient has a long history of psychosis since his mid 20s in the context of active crystal meth use. He believes this is substance induced." Bojorquez Decl., Exh. C [Trial Transcript Vol. 2, p. 120:13-23.] The medical record continued, "Crystal methamphetamine is his drug of choice but [he] has been using drugs since he was 13 years old. After coming home from the military, he started using cocaine, then crack and then he found methamphetamine cheaper and felt better for the past. He has been in residential treatment 10 to 11 times, generally coming from jail. He will stay sober in treatment and then gets out and goes back to substance abuse." Masongsong Decl., Exh. 4 [Trial Transcript Vol. 2, pp. 120:22-121:3.]

Defendants explained to this Court that Petit's history of drug use is relevant to the issue of damages, because Plaintiff is "going to be asking the jury to award damages, if liability if found, based on about a 12-15 month period after he was discharged from Cedars before his remains were found, and attribute an increase in PTSD solely to the shooting, an increase in symptoms from his schizophrenia solely from the shooting … As a defense, we have to be able to demonstrate [that] those aren't accurate opinions." Masongsong Decl, Exh. 4 [Trial Transcript Vol. 2, p 121:4-14.]

This Court did not consider the argument limited to Petit's post-hospitalization-discharge drug use, as it stated, "I'm really troubled by the fact that … I have been proceeding along this path with, I'll say, incomplete information that I think had I known about what was going on with him **six months before the shooting**, I may have looked at a lot of these things differently." Bojorquez Decl., Exh. C [Trial Transcript Vol. 2, p. 126:1-5, emphasis added.] When this Court stated, "I may have looked at a lot of these things differently," it was referring to its prior exclusion of evidence of Petit's historic drug use, as Petit's historic drug

- 2 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

use was the subject of the medical record from six months before the shooting -- and Petit's historic drug use was the main issue of the February 18, 2026, hearing.

Based on the medical record which summarized Petit's history of drug use beginning at the age of 13, and also because juror voir dire not broach the subject of drug use, this Court stated, "I know what I should do. I know I should declare a mistrial." Bojorquez Decl., Exh. C [Trial Transcript Vol. 2, p. 126:6-7.]

The February 18 argument preserved this issue for Defendants' Motion for New Trial on Damages. Federal Rules of Evidence, Rule 103, states:

(a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:

…

(2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless **the substance was apparent from the context**.

Here, the February 18 argument made it clear that the Cedars-Sinai medical report from six months before the shooting incident, and the statements therein concerning Petit's history of drug use, were the substance of the evidence at issue. Defendants also argued that the evidence of Petit's history of drug use pertained to the issue of damages. Thus, Defendants objected to this Court's evidentiary ruling during trial, and Defendants did not (as Plaintiff contends) present additional evidentiary theories for the first time after the jury verdict.

The quality-of-life argument is not novel or new, as Plaintiff claims. On February 18, Defendants explained that evidence of Petit's historic drug use is relevant to the issue of damages, which "is going to obviously initiate these issues regarding the drug abuse and drug history. And the drug history is naturally going to have to come in because it sets a basis or a foundation as to how do you evaluate him after the incident versus prior to the incident." *Id*. [Trial Transcript Vol. 2, p. 133:6-10.] How the jury would "evaluate him after the incident versus prior to the incident" is precisely the quality-of-life damages issue that is the subject of the present motion for new trial on damages. The jury verdict form refers to these

- 3 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

damages as "Mental and emotional pre-death pain and suffering, distress, grief, humiliation, inconvenience, and loss of enjoyment of life." Bojorquez Decl., Exh. A [Jury Verdict, Dkt. #193, p. 7.] That Defendants in their motion for new trial refer to these mental, emotional, and loss-of-enjoyment-of-life damages as "quality-of-life" damages does not make the argument "new" or "novel." The jury had to determine Petit's mental and emotional states, along with his enjoyment of life, and compare the quality of his life before the incident to the quality of his life after the incident.

Plaintiff incorrectly contends that the February 18 argument concerned only Petit's post-hospitalization drug use. Opposition to New Trial, p. 3. Plaintiff attempted to limit the issue in that manner when she argued that Petit's post-discharge drug use is not relevant to Plaintiff's excessive-force claim. Bojorquez Decl., Exh C [Trial Transcript Vol. 2, pp. 143:12 - 145:5.] Defendants, however, corrected Plaintiff, explaining that Petit's **historic** drug use is relevant to the issue of damages: "He's had mind-altering drugs, methamphetamine being drug of choice, since he was 13. How could you blame it all on us? … We're talking about damages. … Not liability. Not whether the officers used unreasonable or excessive force, but damages [.]" *Id*. [Trial Transcript Vol. 2, p. 145:8-13; 22-24.] Defendants further explained, "Mr. Galipo's … premise that the defense has no interest in documents prior to the underlying incident [ ] would be untrue. … The argument the defense is making is that his **history** is related to where he is post-shooting." *Id*. [Trial Transcript Vol. 2, p. 147:4-9, emphasis added.] Defendants explained, "I think counsel for plaintiff is completely trying to tie us and place to the Court a representation that's not what the defense is attempting to have this Court consider." *Id*. [Trial Transcript Vol. 2, p. 149:8-10, emphasis added.]

. . .

. . .

. . .

- 4 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

**B.     Plaintiff represented that she would only seek damages for <u>physical</u> pain and suffering -- not mental, emotional, and loss-of-enjoyment-of-life damages.**

At the February 18, 2026, hearing, Plaintiff represented that "we're only claiming physical pain and suffering." Bojorquez Decl., Exh. C [Trial Transcript Vol. 2, p. 125:6-7.] Possibly due to Plaintiff's representation, this Court did not change its ruling excluding Petit's drug use, and decided to "wait and see what happens." Bojorquez Decl., Exh C [Trial Transcript Vol. 2, p. 149:12-20.] Ultimately, at trial no one introduced evidence or referenced Petit's drug use -- and, contrary to Plaintiff's representation that she would only claim that Petit suffered physical damages, Plaintiff asked the jury to award mental, emotional, and loss-of-enjoyment-of-life damages.

In arguing that Petit's history of drug use was not relevant to damages, Plaintiff only cites to Petit's **physical** damages. Opposition to New Trial, p. 7. Plaintiff presented no evidence of Petit's mental, emotional, or loss-of-enjoyment-of-life damages, and she does not point to any evidence supporting such damages. Plaintiff also disingenuously contends that "at trial, Defendants consistently argued that [Petit] had the exact same problems with drugs before and after the shooting." Opposition to New Trial, p. 7. Defendants did not introduce evidence of Petit's history of drug use because the Court excluded this evidence.

**C.     Plaintiff's Rule 403 argument does not apply here because Defendants only request a new trial on the issue of damages.**

Defendants move only for a new trial on damages, not liability. Plaintiff argues that evidence of Petit's history of drug use would be substantially more prejudicial than probative. Opposition to New Trial, pp. 8-9. However, **all** of the cases Plaintiff cited in her Opposition brief concern the effect of proffered evidence on liability (in civil cases) or guilt (in criminal cases), and **not damages**, except for two cases: *Wisler v. City of Fresno*, 2008 WL 2954179 (E.D. Cal. 2008), and *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016). In

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

*Wisler*, an employment case, the court considered whether it should admit evidence of plaintiff's marijuana use for the issue of damages, as it could be relevant in evaluating the potential for future employment. The court stated: "However, very little has been communicated to the Court regarding Wisler's particular drug use. There is no significant discussion about how often Wisler used marijuana, entered rehab or suffered relapses." *Wisler* at *5. Thus, the court did not allow the marijuana evidence. *Wisler* differs significantly from the present case, where Mr. Petit's medical records documented his history of drug use in detail. The impetus for the February 18 hearing was the Cedars-Sinai report from six months prior to the shooting incident summarizing Petit's history of drug use.

Plaintiff's reliance on *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016), demonstrates why this Court **should grant** Defendants' motion for new trial on damages. In *Estate of Diaz*, a police-officer shooting case like the present case, the district court allowed toxicology evidence of the decedent because it was relevant to damages; and the district court also found that the toxicology evidence was not relevant to liability. *Id.* at 600. The defendants' toxicology expert witness, however, made comments regarding liability when testifying about the decedent's drug use. *Id*. The Ninth Circuit reversed the jury's finding for the defendants, as the defendants "overstepped the judge's rulings" such that the jury heard "inflammatory evidence" on damages that possibly affected the jury's finding for the defendants on liability. *Id*. at 606. Compounding the error was the district court's earlier denial of the plaintiff's motion to bifurcate the trial. The Ninth Circuit found that the district abused its discretion in denying bifurcation, stating, "district courts should bifurcate to avoid situations like the one before us." *Id*. at 603.

In the case at hand, a new trial on damages would "avoid situations like the one before [the Ninth Circuit]" in *Estate of Diaz*, where the decedent's toxicology report was allowed for damages but also possibly influenced the jury's decision on liability.

- 6 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

The present case is also comparable to *Estate of Diaz* in that the exclusion of evidence of Petit's history of drug use is related to this Court's denial of Defendants' motion to trifurcate the trial. Bojorquez Decl., Exh. B [Defendants' Motion to Trifurcate, Dkt. #113.] In that motion, Defendants explained that evidence of Petit's history of drug use "would be relevant only for the purposes of damages." *Id*. [Defendants' Motion to Trifurcate, Dkt. #113, at p. 6 (p. 3 of the Memorandum of Points and Authorities).] This Court, however, denied the motion to trifurcate, so Petit's history of drug use became relevant to damages in this trial, particularly with respect to the mental, emotional, and loss-of-enjoyment-of-life damages.

> **D.      The exclusion of evidence of Plaintiff's history of drug use was not harmless error, because the verdict form asked the jury to determine mental, emotional, and loss-of-enjoyment-of-life damages.**

Since this Court excluded evidence of Petit's history of drug use (even on the issue of damages), it was not harmless error because the verdict form asked the jury to determine damages for such mental and emotional suffering and loss-of-enjoyment-of-life, even though Plaintiff presented no evidence that Petit experienced those damages. Plaintiff testified that Petit "looked like he was suffering," in response to a question a question about "the **physical** differences that you noticed in your father when you saw him." Masongsong Decl., Exh. 5 [Trial Transcript Vol. 3, pp. 569:24-570:4, emphasis added.] Similarly, Plaintiff's testimony that Petit had difficulty walking was in response to the question, "From your perception, Mr. Petit, did it seem as though your father was in **physical** pain?" *Id*. [Trial Transcript Vol. 3, pp. 571:12-18, emphasis added.]

Defendants are not contesting Petit's physical damages. But Plaintiff did not present any evidence that Petit experienced any mental or emotional suffering or any loss of enjoyment of life. Since this Court did not allow Defendants to present evidence of Petit's drug use history, the jury verdict form should not have asked

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

the jury for such non-physical damages. Such damages also contravened Plaintiff's representation that "we're only claiming physical pain and suffering." Bojorquez Decl., Exh. C [Trial Transcript Vol. 2, p. 125:6-7.]

### E.       Regarding the jury instructions and verdict form, Plaintiff's "invited error" argument fails.

Plaintiff's "invited error" argument (Opposition to New Trial, pp. 11-12) fails for two reasons. First, it relies on the Disputed Proposed Jury Instructions filed on January 16, 2026 -- a month before trial began. Dkt 135. Defendants argued at the close of trial that the final jury instructions should not include mental, emotional, and loss-of-enjoyment-of-life damages based on what actually happened at trial, which they could not know before trial began. At trial, Plaintiff presented no evidence of Petit's mental, emotional, state or loss-of-enjoyment-of-life. A party's pre-trial proposed jury instructions do not preclude a subsequent post-trial argument concerning the final jury instructions based on what happened during trial. Plaintiff's cited cases, *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1493 (9th Cir. 1986); *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1337 (9th Cir. 1985); and *City of Springfield v. Kibbe*, 480 U.S. 257, 258 (1987), do not compel a contrary result as they all concern proposed final jury instructions submitted after trial.

Second, Defendants' proposed jury instruction that Plaintiff references is irrelevant as it dealt with Plaintiff **Ashlyn Petit's wrongful death damages**, because at that time (January 16, 2026), Plaintiff had not dismissed that claim. Dkt 32, p. 85. Later, after Plaintiff dismissed her wrongful death claim, only Jermaine Petit's pre-death damages remained -- not damages to Plaintiff Ashlyn Petit. The final jury instructions on damages correctly concerned Jermaine Petit's pre-death damages (as opposed to Ashlyn Petit's damages), but incorrectly included Jermaine Petit's mental, emotional, and loss-of-enjoyment of life damages.

- 8 -

**F.    Defendants preserved their objections to the jury instructions and verdict form.**

Defendants timely objected to the inclusion of mental, emotional, and loss-of-enjoyment-of-life damages in the jury instructions and the verdict form. On February 24, 2026, before the Court instructed the jury, the Court heard arguments regarding whether it should allow the jury to consider mental, emotional, and loss-of-enjoyment-of-life damages, especially considering this Court's exclusion of evidence of Petit's history of drug abuse. Defendants argued:

> "I think the concern that we have is obviously when it talks about the mental and emotional pre-death pain and suffering, those were some of the issues that we had medical doctors, like Dr. Cohen and other doctors who would have addressed those issues, but because of the circumstances and limitation on mental health issues and drug issues, we stayed away from that information. … So … we would object to the entirety of the emotional issue [and] we would ask that mental and emotional be struck."

Bojorquez Decl., Exh. D [Trial Transcript Vol. 5, pp. 827:24 - 828:17.]

Defendants also explained, "I don't believe there's any evidence of loss of enjoyment of life at all that came in. And I do believe that … stems to some of those medical records that we limited ourselves to highlight. But, you know, there was no evidence of any loss of enjoyment of life." *Id*. [Trial Transcript Vol. 5, p. 828:20-24.] See *Freeman v. Astrue*, 2009 WL 399664 at *4 (N.D. Cal. 2009) (plaintiff not entitled to jury instruction on issue for which plaintiff did not present any evidence).

While Defendants addressed the verdict form, the arguments equally applied to the corresponding jury instructions on damages, which stated that the jury should consider "the mental and emotional pre-death pain and suffering" and the "loss of enjoyment of life Jermaine Petit experienced." Bojorquez Decl., Exh. D [Trial Transcript Vol. 5, p. 850:11-16.] Defendants objected to the verdict form

- 9 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

before this Court instructed the jury, satisfying Federal Rules of Civil Procedure, Rule 51(b), which states: "The court (1) must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments; (2) must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered; and (3) may instruct the jury at any time before the jury is discharged." Fed. R. Civ. P. 51(b).

Moreover, even if Defendants did not timely object to the jury instructions (they did), Federal Rules of Civil Procedure, Rule 51(d)(2) allows Defendants to challenge an erroneous jury instruction when it constitutes "plain error." See *Bearchild v. Cobban*, 947 F.3d 1130, 1139 (9th Cir. 2020). Under the plain error standard, sufficient prejudice exists to warrant reversal where "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed." *Id.*; see also *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018).

Plaintiff claims that, under the plain error standard, a court's error affecting a party's substantial rights requires "the probability of a different result," citing to *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005), a criminal case involving sentencing guidelines. Even if this were the proper standard, Defendants meet it. Without the erroneous jury instructions and verdict form that asked the jury to determine Petit's mental, emotional, and loss-of-enjoyment of life damages, the jury would not have awarded those damages. Thus, Defendants meet the "probability of a different result" standard under *Ameline*, and the "impossible to determine that the jury would have reached the same result" standard under *Bearchild* and *Hoard*.

/ / /

- 10 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

## III.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court order a new trial on damages, or, issue a remittitur vacating the $1.5 million damage award for mental, emotional, and loss-of-enjoyment-of-life.


Respectfully submitted,

Dated: May 4, 2026      HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Asst. City Attorney


By:  /s/ *Christian Bojorquez*
CHRISTIAN BOJORQUEZ
*Attorneys for Defendant*, CITY OF LOS ANGELES

Dated: May 4, 2026      CARPENTER, ROTHANS & DUMONT LLP


By:  /S/ Aria Beizai
Steven J. Rothans
Aria Beizai
*Attorneys for Defendants*, SERGEANT BRETT HAYHOE and OFFICER DARYL GLOVER, JR.

- 11 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants CITY OF LOS ANGELES, certifies that this brief contains 3304 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 4, 2026          HYDEE FELDSTEIN SOTO, City Attorney
                             DENISE C. MILLS, Chief Deputy City Attorney
                             KATHLEEN A. KENEALY, Chief Asst. City Attorney

                             By:   /s/ *Christian Bojorquez*
                                CHRISTIAN BOJORQUEZ, Deputy City Attorney
                                *Attorneys for Defendant*, CITY OF LOS ANGELES

- 12 -