**HYDEE FELDSTEIN SOTO,** City Attorney (SBN 106866)
**DENISE C. MILLS** Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY,** Chief Assistant City Attorney (SBN 212289)
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785
Email: christian.bojorquez@lacity.org

*Attorneys for Defendant* CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYN PETIT, as Successor-In-Interest to JERMAINE PETIT, deceased,<br><br>              Plaintiff,<br><br>      v.<br><br>CITY OF LOS ANGELES, a municipal entity; OFFICER DARYL GLOVER, JR.; SERGEANT BRETT HAYHOE; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br>*Assigned to Hon. Otis D. Wright*<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date: May 18, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5D |

**TO THE HONORABLE COURT, PLAINTIFF AND TO HER ATTORNEY OF RECORD:**

Defendants CITY OF LOS ANGELES, et al., submit the following Reply in support of their Renewed Motion for Judgment as a Matter of Law.

. . .

- 1 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

## I.    INTRODUCTION

This Court should grant Defendants' Motion For Judgment As A Matter Of Law. Regarding Plaintiff's medical-delay claim, the four minute delay in calling an ambulance for Jermaine Petit was not unreasonable, and Sergeant Hayhoe is entitled to qualified immunity on this claim. Regarding Plaintiff's intentional infliction of emotional distress claim, Plaintiff presented no evidence at trial of Petit's emotional distress or any non-physical damages. As for Plaintiff's excessive force claim, Defendants' use of force was reasonable under the circumstances, given the radio calls of a man with a gun and Petit's refusal to drop the metal object in his hands while resisting the officers. Sergeant Hayhoe is also entitled to qualified immunity on the excessive force claim.

## II.    ARGUMENT

### A.    This Court should grant Defendants JMOL on the failure-to-render medical-assistance claim, or find Sergeant Hayhoe is entitled to qualified immunity.

Substantial evidence does not support Plaintiff's medical-delay claim, as it does not show that the officers unreasonably delayed medical care to Petit, or that the four-minute delay to call the ambulance caused Petit harm.

Here, as soon as the officers secured Mr. Petit and made sure he was no longer a danger to anyone, Sgt. Hayhoe directed an officer to render CPR to Mr. Petit and another officer requested a rescue ambulance. Bojorquez Decl., Exh. B [Trial Transcript Vol. 2, p. 322:13-18]; Bojorquez Decl. Exh. E [Trial Transcript Vol. 5, p. 784:9-15]. Although Plaintiff's police practices expert opined that waiting four minutes to call for an ambulance was unreasonable, he did not explain why it was unreasonable or present any evidence that the four minute delay harmed Petit or exacerbated his injuries from the shooting. Bojorquez Decl., Exh. C [Trial Transcript Vol. 3, pp. 544:11-21, 557:10-20.] In Plaintiff's Opposition brief, she tries to shoe-horn her expert witness' testimony on whether Defendants

- 1 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

should have believed that Petit had a gun into her medical-delay claim. See Oppo., p. 4. In the testimony Plaintiff cited, her police practices expert unsurprisingly opines that Defendants should not have thought that the car part in Petit's hand could be a gun. Masongsong Decl., Exh. 5 [Trial Transcript Vol. 3, pp. 506:21-509:8.] In that portion of testimony, however, neither Plaintiff's counsel nor Plaintiff's witness mentioned the medical delay at all, belying Plaintiff's contention that her witness said that a reasonable officer would not have waited four minutes since the object was not a gun. Oppo, p. 4.

Plaintiff's medical expert pathologist Dr. Omalu also did not offer any testimony that waiting four minutes to call an ambulance was either unreasonable or exacerbated Mr. Petit's injuries. Similar to Plaintiff's disingenuous claims about what her police practices expert said, Plaintiff cites to Dr. Omalu's testimony where he does not mention the delay in calling an ambulance. See Oppo., pp. 4-5.

Additionally, Sgt. Hayhoe is entitled to qualified immunity on the medical-delay claim. This Court may consider whether to grant an officer's motion for qualified immunity after trial. See *Tortu v. Las Vegas Metropolitan Police Department*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict"). An officer may be entitled to qualified immunity even after a jury finds that the officer violated a plaintiff's constitutional rights "if [the plaintiff's] Fourth Amendment rights were not clearly established at the time [the officer] committed the violation." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).

In her Opposition brief at pages 5-6, Plaintiff cites a number of cases in support of her argument that Sgt. Hayhoe is not entitled to qualified immunity in connection with the medical-delay claim. However, none of the cases are

- 2 -

sufficiently similar to the situation Sgt. Hayhoe faced to put him on notice that he violated Petit's clearly established constitutional rights.

For example, in *Bozeman v. Orum*, 422 F.3d 1265 (11th Cir. 2005) (abrogated by *Kingsley v. Hendrickson*, 576 U.S. 389 on other grounds), prison officials carried the decedent who was unconscious and not breathing from his prison cell to another cell and delayed at least 14 minutes before any officer rendered any type of medical aid. During that 14 minute period no officer did CPR, check his pulse or breathing, summon medical aid, or anything else to help the decedent, so the Eleventh Circuit found that the officers were not entitled to qualified immunity. *Bozeman*, 422 F.3d at 1274. However, in so holding, the court noted that qualified immunity is often appropriate in delay-in-medical-care claims because "[t]he cases are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and to the constitutional adequacy of what was done to help and when. Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." *Id*.

*Lemire v. Dep't of Corr. & Rehab.*, 726 F.3d 1062 (9th Cir. 2013) is also distinguishable. In that case, the court denied qualified immunity to prison officers who found the decedent unconscious in his cell after all of the prison officers assigned to the building were away for over three hours to attend a staff meeting. *Lemire*, 726 F.3d at 1068. Once the officers arrived at the decedent's cell, the officers only tried to talk to him; they did not perform CPR, render any aid or any other life saving measures. Medical personnel arrived after five minutes but the medical personnel also did nothing for an additional 20 to 25 minutes (until EMTs arrived) but at that point, decedent had passed away. Additionally, evidence suggested that the prison officials changed the prison logs to make it look like less time had passed between the time they found the decedent to the time they rendered aid. *Id.* at 1072-1073. Finally, the Ninth Circuit found that triable issues

- 3 -

of fact existed as to whether the officers' delay in providing medical care caused the decedent's death or his condition to worsen. *Id.* at 1084-1085.

*Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) is also distinguishable. In that case, after the decedent went limp after officers placed him in a carotid restraint while handcuffed, instead of rendering any medical aid or calling for medical assistance or even checking to determine whether the decedent was conscious, they carried the decedent to a different location and put him face down. All told, four minutes and 48 seconds passed from the end of the use of force to the time when anyone attempted to render medical aid. *Estate of Booker,* 745 F.3d at 415. Plaintiffs' experts testified that the delay in attempting CPR, resuscitation or other lifesaving measures could have saved the decedent's life. *Id.* at 431.

*Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005) is similarly distinguishable. In that case, police officers tackled the decedent so he was in a prone position, hit him with batons, and after they handcuffed the decedent, an officer sprayed mace in his face and struck him in the back. *Estate of Owensby*, 414 F.3d at 599-600. When two other officers arrived as backup, the first officers asked the backup officers to place the decedent in their police car, where he remained with the doors locked. Additional officers who arrived noted that it looked like decedent could not breathe but none of the officers did anything to help the decedent. *Id.* at 600. Thirteen officers were on scene, including three with medical training, yet they did not provide medical care to the decedent. Six minutes after the officers placed the decedent in the patrol car, a supervisor arrived who determined that the decedent was not breathing and started CPR and requested medical assistance. The court found that the officers knew or should have known the decedent needed medical care and that they were not entitled to qualified immunity. "During the six minutes that [the decedent] was denied medical care after being taken into custody, the officers had time to do such things

- 4 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

as greet each other, prepare for the arrival of their superiors, pick up dropped items and straighten their uniforms; some officers even had time to observe and discuss the apparent severity of [the decedent]'s injuries. Under these circumstances, there is no question that the officers had time to fully consider the potential consequences of their conduct." *Id.* at 603.

*Estate of Cornejo v. City of Los Angeles*, 618 F.App'x. 917 (9th Cir. 2015) and *Regalado v. Riverside County*, 2021 WL 945249 (C.D.Cal. Jan. 15, 2021) also do not help Plaintiff's argument. *Estate of Cornejo* does not contain sufficient detail in the description of the facts to determine if it resembles the delay or the reasons therefore sufficient to put Hayhoe on notice that his conduct was unconstitutional in the case at bench. *Regalado* is not dispositive because it was decided on a motion to dismiss and the plaintiffs alleged that after officers beat the decedent unconscious, no one sought medical care for him for hours.

Finally, *D'Braunstein v. California Highway Patrol*, 131 F.4th 764 (9th Cir. 2025) cannot serve as a basis to find Hayhoe is not entitled to qualified immunity for two reasons. First, the Ninth Circuit issued the *D'Braunstein* decision in 2025, three years after the incident in the present case. See, e.g., *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1218 ("was the right 'clearly established' at the time of the alleged misconduct?" in 1984 when the plaintiff was arrested). Second, the facts are easily distinguishable. In *D'Braunstein*, a CHP officer responded to the scene of a traffic accident where she observed a totaled vehicle and the vehicle's occupant, the plaintiff, disoriented and in physical distress. The plaintiff had a stroke which caused the traffic accident. The officer erroneously believed the plaintiff was under the influence of drugs or alcohol even though the field sobriety tests she performed yielded negative results, and arrested him 45 minutes after she arrived on scene. The officer did not seek medical attention for the plaintiff until almost two hours later, only when a nurse at the jail refused to admit the plaintiff until he received medical treatment. The plaintiff did not begin receiving medical

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

treatment until three and a half hours after the officer first encountered the plaintiff. *D'Braunstein*, 131 F.4th at 766-767. The plaintiff presented evidence that the delay in seeking medical care exacerbated his stroke symptoms such that he is completely incapacitated. *Id.* at 767. The court found triable issues of fact existed regarding the delay in medical care claim because although the officer knew the plaintiff had a serious condition, she "did nothing to secure medical aid for [the plaintiff] for several hours, even though she testified that her CHP training taught her to contact emergency medical personnel if there has been a serious traffic collision." *Id.* at 770. The Court also denied qualified immunity to the officer because her mistake of fact regarding whether he was under the influence of drugs or suffering a serious medical emergency was not objectively reasonable and, even if the plaintiff was under the influence of drugs, it was clearly established that he needed medical attention and the officer did nothing for hours to ensure that he received it. *Id.* at 773-774.

None of these cases is even remotely similar to the officers' actions in the case at bench. Putting aside the question of whether the force was excessive, after the force ended, all of the officers on scene, including Hayhoe, knew Petit needed medical attention and put a plan in motion to get him the medical attention he needed, including administering CPR before the ambulance arrived. Bojorquez Decl., Exh. B [Trial Transcript Vol. 2, p. 322:13-18]; Bojorquez Decl. Exh. E [Trial Transcript Vol. 5, p. 784:9-15].

**B. Plaintiff did not present any evidence of Petit's emotional distress, so this Court should grant Defendants JMOL on the intentional infliction of emotional distress claim.**

Plaintiff's Opposition brief demonstrates why the Court should grant Defendants JMOL on Plaintiff's claim for intentional infliction of emotional distress. A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the

- 6 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (internal quotation omitted).

Here, Plaintiff did not present evidence of the second and third elements. The evidence Plaintiff cites in her Opposition brief pertains only to Petit's physical pain and physical injuries. Oppo., pp. 7-8. For example, when Plaintiff testified about her father's pain and injuries, it was in response to her counsel's direct-examination questions about "the physical differences that you noticed in your father"; the "injuries to your father's face"; and whether "it seem[ed] as though your father was in physical pain." Masongsong Decl., Exh. 5 [Trial Transcript Vol. 3, pp. 570-71.] Plaintiff did not offer any testimony or evidence regarding Petit's emotional distress. Similarly, Dr. Omalu did not offer any evidence or testimony regarding Petit's emotional distress. Oppo., pp. 7-8.

Since Plaintiff did not introduce any evidence regarding Petit's emotional distress, this Court should grant Defendant's motion for JMOL on this claim. See *Hughes*, 46 Cal.4th at 1051 ("Plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of [defendant's actions] do not comprise emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.") (quoting *Potter v. Firestone Rubber & Tire Co*., 6 Cal.4th at 1004 (1993)).

Indeed, it makes sense that Plaintiff would limit her evidence at trial to Petit's physical damages, because at the February 18, 2026, evidentiary hearing on Petit's history of drug use, Plaintiff represented to this Court that "we're only claiming **physical** pain and suffering." Bojorquez Decl. in Support of New Trial, Exh. C [Trial Transcript Vol. 2, p. 125:6-7, emphasis added.] Contrary to this

- 7 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

representation, and notwithstanding the lack of evidence for non-physical damages, after the trial concluded Plaintiff sought damages for Petit's emotional distress through the IIED claim, as well as mental, emotional, and loss-of-enjoyment-of-life damages. See Bojorquez Decl. in Support of New Trial, Exh. A [Jury Verdict, Dkt. #193, pp. 6-7.]

**C.      The officers' use of force was reasonable, and Sgt. Hayhoe is also entitled to qualified immunity on Plaintiff's excessive force claim.**

Under the circumstances of this case, the officer shooting was objectively reasonable. First, the officers were responding to radio calls of assault with a deadly weapon and arson, and that the suspect was armed with a semiautomatic handgun. Bojorquez Decl., Exh. B [Trial Transcript Vol. 2, p. 248:9-17]; Bojorquez Decl., Exh. C [Trial Transcript Day 3, Vol. 3, pp. 379:19-380:9]; Dkt. #166 [LAPD radio dispatch for July 18, 2022]. Also, Petit refused the officers' commands to drop the object in his hand and to stop. Bojorquez Decl., Exh. B [Trial Transcript Vol. 2, pp. 249:3-250:16]; Bojorquez Decl., Exh. C [Trial Transcript Vol. 3, p. 539:2-17].

Second, the officers reasonably feared for their own safety and the safety of others, given the information from the radio calls and Petit appearing to take a shooting stance while positioning his arms and hands as if he was arming himself. See Bojorquez Decl., Exh. C [Trial Transcript Vol. 3, p. 389:1-25]; Bojorquez Decl., Exh. B [Trial Transcript Vol. 2 223: 8-25].

Third, Petit was actively resisting arrest or trying to evade arrest by flight. Given Petit's potentially lethal behavior, the officers' belief that Mr. Petit was armed and had just committed an assault with a deadly weapon and arson, and Petit's refusal to comply with the officers' commands, the officers' use of force was objectively reasonable.

Sgt. Hayhoe is also entitled to qualified immunity on the excessive force claim. Plaintiff does not meet her burden of demonstrating that, on July 18, 2022,

- 8 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

the law was clearly established that the use of force on Mr. Petit was improper under the circumstances the officers faced. Plaintiff argues that Sgt. Hayhoe is not entitled to qualified immunity in part because he made "an unreasonable mistake of fact" about whether Petit had a gun. Oppo, p. 15. However, the evidence shows that Hayhoe's belief was not unreasonable. As explained above, the evidence offered at trial established that the officers reasonably believed that Mr. Petit was armed and intended to shoot the officers, and the officers were responding to a radio call of an assault with a deadly weapon.

At least two of the cases Plaintiff relies on to argue Hayhoe is not entitled to qualified immunity are distinguishable because the officers conceded the suspect did not have a weapon, did not see the suspect's hands, or otherwise believe the suspect was armed in the first place. Oppo, p. 15. See, e.g., *Nehad v. Brower*, 929 F.3d 1125 (9th Cir. 2019) (immediately after shooting suspect, officer said he did not see a weapon and changed his story five days later after consulting with an attorney and viewing surveillance video to say the suspect had a knife); *A.K.H. v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016) (911 caller said the suspect did not have weapons and the officer who responded did not say he thought the suspect was armed).

Plaintiff also argues that because LAPD policy discourages shooting from a moving vehicle, Hayhoe is not entitled to qualified immunity. Oppo., p. 17. Training materials, however, are "not dispositive to determining whether reasonable officers would have been on notice that their conduct was unreasonable." *Vazquez v. County of Kern*, 949 F.3d 1153, 1164-1165 (9th Cir. 2020). Whether an officer violated a departmental policy does not determine whether a constitutional violation occurred or whether an officer loses his entitlement to qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *Whren v. United States*, 517 U.S. 806, 815-816 (1996) (search and seizure

- 9 -

protections of the Fourth Amendment do not depend on whether an officer followed the law enforcement agency's policies); *Case v. Kitsap County Sheriff's Department*, 249 F.3d 921, 929 (9th Cir. 2001) ("[O]ur focus is on whether a reasonable officer would have known that the deputies' conduct violated [plaintiff's] federal statutory or constitutional rights rather than merely a state law or policy provision."). Here, since Sgt. Hayhoe believed Petit had a gun, did not obey commands to drop it, and took a shooting stance, Hayhoe is entitled to qualified immunity, notwithstanding his general training.

## III.    CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant their Renewed Motion for Judgment as a Matter of Law in its entirety, and enter judgment for Defendants.

Respectfully submitted,

Dated: May 4, 2026      HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Asst. City Attorney

By:   /s/ *Christian Bojorquez*
CHRISTIAN BOJORQUEZ
*Attorneys for Defendant*, CITY OF LOS ANGELES

Dated: May 4, 2026      CARPENTER, ROTHANS & DUMONT LLP

By:   /S/ Aria Beizai
Steven J. Rothans
Aria Beizai
*Attorneys for Defendants*, SERGEANT BRETT HAYHOE and OFFICER DARYL GLOVER, JR.

- 10 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants CITY OF LOS ANGELES, certifies that this brief contains 3160 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 4, 2026        HYDEE FELDSTEIN SOTO, City Attorney
                           DENISE C. MILLS, Chief Deputy City Attorney
                           KATHLEEN A. KENEALY, Chief Asst. City Attorney

                           By:   /s/ *Christian Bojorquez*
                               CHRISTIAN BOJORQUEZ, Deputy City Attorney
                               *Attorneys for Defendant*, CITY OF LOS ANGELES

- 11 -

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR JMOL