LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff, Ashlyn Petit

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLYN PETIT, as successor-in-interest to JERMAINE PETIT, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, DARYL GLOVER, JR.; BRETT HAYHOE,<br><br>Defendants. | Case No. 2:23-cv-00789-ODW (PVCx)<br><br>Assigned to:<br>Hon. District Judge Otis D. Wright, II<br>Hon. Magistrate Judge Pedro V. Castillo<br><br>**DECLARATION OF JOHN FATTAHI IN SUPPORT OF STATUTORY FEES** |

**DECLARATION OF JOHN FATTAHI**

I, John Fattahi, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California, the United States Court of Appeals for the Ninth Circuit, and each of the four United States District Courts in California. I make this Declaration in support of Plaintiff's entitlement to statutory fees. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

2. **Hours Reasonably Expended.** Since April 2026, I have reasonably expended **32.6** hours of billable time on this matter. Attached hereto as **Exhibit 1** is a table of my contemporaneous line-item billing entries through the present date. If necessary, I will submit a supplemental declaration for any further time expended on this matter after this filing.

3. In April 2026, Mr. Galipo requested my assistance with post-trial motions and anticipated appellate proceedings. I formulated Plaintiff's initial legal strategy regarding Defendants' post-trial motions challenging the entire verdict and judgment on multiple grounds. I then drafted significant portions of Plaintiff's opposition to Defendants' post-trial motions, including the sections on the exclusion of drug evidence, instructional error, and error in the verdict form. For the remaining sections, particularly the Rule 50(b) motion regarding qualified immunity, I provided input and made revisions. In addition, I participated in several conferences among co-counsel, which were invaluable and extremely productive. Each of these tasks was critical to Plaintiff's effective representation post-trial and on anticipated appeal, and each task was a direct response to a position taken by Defendants. I contemporaneously tracked my time in tenth-of-an-hour increments, and exercised billing judgment by excluding time spent on unproductive or administrative tasks. All of my time was reasonably incurred and could have been billed to a private client. I have already excluded at least five hours of time spent on this matter. If

necessary, I will incur additional time responding to any challenge to the instant fee request.

4. **Reasonable Hourly Rate.** A reasonable year 2026 rate for my professional services in this case is $1115 per billable hour. This represents a less than 7 percent annual increase since my fee award in *French* applying a 2024 rate of $975. Seven percent is less than the average increase in my rate from 2022 to 2024.

- In *French v. City of Los Angeles*, Judge Bernal, of the Eastern Division (Riverside) of the Central District of California, found that a reasonable year 2024 rate for my professional services in civil-rights litigation was $975 per billable hour. The *French* fee order, Dkt. 188, is attached hereto as **Exhibit 2**.
- In *Zelaya v. City of Los Angeles*, Judge Wright of the Central District of California found that a reasonable year 2023 rate for my professional services in opposing post-trial motions in civil-rights litigation of similar complexity was $920 per billable hour. The *Zelaya* fee order, Dkt. 164, is attached hereto as **Exhibit 3**.
- In *Valenzuela v. City of Anaheim*, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023), Judge Carney of the Central District of California, found that a reasonable year 2022 rate for my professional services in civil rights appellate litigation of similar complexity was $850 per billable hour, given my "continued strong reputation within the field." The *Valenzuela* fee order, Doc. No. 462, is attached hereto as **Exhibit 4**.

5. I have been practicing law since 2006, and have almost exclusively practiced federal civil-rights litigation since 2008. I graduated from UCLA School of Law in 2006, where I was Senior Editor of the UCLA Law Review and spent one semester as a judicial extern to Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit. After graduation, I took and passed the California Bar Exam, then served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California. From October 2007 until February

2009, I was employed as a partnership-track litigation associate at Quinn Emanuel Urquhart & Sullivan, LLP, in Los Angeles, California. While at Quinn Emanuel, I litigated a prisoner lawsuit as a member of the Central District of California's pro bono civil-rights panel, and as lead trial counsel I obtained a plaintiff's verdict on an Eighth Amendment theory. In February 2009, I joined the Law Offices of Dale K. Galipo, where I practiced plaintiff's civil-rights litigation. In July 2011, I started my own law firm that exclusively handles civil-rights litigation. I have continued to work closely with Mr. Galipo on several matters in which we have achieved great success.

6. I have had primary responsibility for several civil-rights appeals before the California Court of Appeal, Ninth Circuit, and U.S. Supreme Court, resulting in multiple published decisions that have clearly established several important principles including of constitutional law. At the district-court level, I have tried approximately fifteen federal civil rights jury trials, obtaining a favorable result approximately 80% of the time. I have also had primary responsibility for countless pleadings and motions, percipient, Rule 30(b)(6), and expert depositions, motions for summary judgment, pretrial documents, and post-trial motions. I have obtained excellent results for my clients, including but not limited to the following since 2023:

- 2026: Successfully defended $13.5 million jury verdict obtained by Mr. Galipo in fatal police prone-restraint case against post-trial motion for new trial, then briefed appeal, resulting in favorable settlement after oral argument. (*Zelaya (Cedillo) v. City of Los Angeles*, C.D. Cal., 9th Cir.)
- 2026: Successfully defended $6.5 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions under Rule 50(b) and for new trial. (*Llera (Gomez) v. Las Vegas Metro. Police Dep't*, D. Nev.)

- 2026: Successfully defended $17 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions under Rule 50(b) and for new trial. (*Garcia v. City of Tustin*, C.D. Cal.)
- 2026: On appeal to the Ninth Circuit, obtained complete, unanimous reversal of summary judgment and adverse jury verdict arising from failure to adequately screen pretrial detainee who was suffering a stroke, in addition to denial of qualified immunity that was raised as an alternative ground for affirmance of the verdict. Subsequently settled with remaining defendants, yielding $2.6 million in total. (*Porio v. Cnty. of Orange*, 9th Cir.)
- 2025: On appeal to the California Court of Appeal, obtained complete, unanimous reversal of summary judgment dismissing all claims arising from fatal police prone-restraint, resulting in a published opinion, 112 Cal. App. 5th 404 (2025), establishing that prone compression is deadly force and county sheriffs are not immune for their negligent training on the subject. (*A.B. (Birtcher) v. Cnty. of San Diego*, Cal. Ct. App.)
- 2025: On interlocutory appeal to the Tenth Circuit, obtained complete, unanimous affirmance of denial of summary judgment based on qualified immunity, resulting in a published opinion, 135 F.4th 1257 (2025), establishing that both the right to be free from an arrest without probable cause, and the use of excessive deadly force, were clearly established under the circumstances. (*Ibarra v. Lee*, 10th Cir.)
- 2023: On appeal to the Ninth Circuit, obtained complete, unanimous affirmance of $17 million jury verdict obtained by Mr. Galipo, after successfully opposing post-trial motions in the district court. (*French v. City of Los Angeles*, C.D. Cal., 9th Cir.)

- 2023: Obtained complete, unanimous reversal of summary judgment dismissing all claims arising from the use of deadly force, reviving § 1983 and state law claims in the district court. (*Ibarra v. Lee*, 10th Cir.)
- 2023: Opposed certiorari before the U.S. Supreme Court, after obtaining complete affirmance before the Ninth Circuit of $13.2 million jury verdict obtained by Mr. Galipo in fatal police chokehold case, including a published opinion, 6 F.4th 1098 (9th Cir. 2021), which established the entitlement to "loss of life" damages in § 1983 death cases, and an unpublished memorandum affirming the denial of post-trial motions including qualified immunity. (*Valenzuela v. City of Anaheim*, C.D. Cal., 9th Cir., U.S.)

7. In 2024, I was selected as a finalist for the Consumer Attorney of the Year award by the Consumer Attorneys of California, due to my work in opposing post-trial motions and defending the appeal in *French v. City of Los Angeles*. I was selected to the Super Lawyers Southern California list in 2025, 2026, and 2027, for the civil-rights practice area, reflecting my strong reputation among my peers. Previously, I was selected to the Super Lawyers Rising Stars list for several years. I am also frequently asked to give presentations on civil rights litigation to law students, fellow attorneys, and judges, including at national conferences and symposia, and to serve as a moot court judge, including for noted Supreme Court advocates such as Dean Erwin Chemerinsky of UC Berkeley School of Law.

8. In addition to my firm's own case load, I am frequently asked to associate with co-counsel on pending or anticipated federal civil rights matters. In particular, Mr. Galipo and other prominent trial attorneys have sought my counsel and services to oppose post-trial motions and litigate appeals in numerous cases such as this involving the largest civil-rights verdicts. These high-stakes opportunities, which would certainly include the case at bar, typically present themselves on short notice, demand substantial attention precluding other

opportunities, attract exceptionally zealous and skilled advocacy from adverse parties, carry a high degree of risk, and come with no guarantee of any compensation. Substantial plaintiff's verdicts are not infrequently negated by a successful motion for judgment as a matter of law or new trial. Even if a plaintiff's verdict manages to survive post-trial motions, about half (48 percent) of verdicts of over $1 million in large counties were reversed or modified on appeal from 2001 to 2005, as opposed to 35 percent of those under $100,000. *See* U.S. Department of Justice Bureau of Justice Statistics, Special Report: Appeals from General Civil Trials in 46 Large Counties, 2001–205, at 6, *available at* https://www.bjs.gov/content/pub/pdf/agctlc05.pdf (June 2006). I believe that the reversal rate for large civil-rights verdicts is likely higher, particularly in light of the Supreme Court's recent "beyond debate" formulation of the "clearly established" prong of qualified immunity. Typically, as in this case, my only compensation is the potential statutory fee awarded for my work by the Court and paid if and when a defendant has exhausted all appellate options and the judgment is enforceable. My representation of Plaintiff in this case involves significant risk and extremely high stakes. Nearly all of the clients I have represented in civil-rights litigation have been indigent, many have been minors, and all have been unable to afford my services on a paid basis and therefore I routinely accept representations on a contingency basis and advance litigation costs. If statutory attorneys' fees in line with prevailing market rates for similarly complex work were not available in cases such as this, I would not be able to represent clients such as Plaintiff in pursuit of remedies for violations of fundamental constitutional rights. Based on my skill, experience and qualifications to practice federal civil rights litigation, my reputation, and the quality of my work product in this case and others, a reasonable 2026 rate for my professional services in this case is $1115 per billable hour.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this was executed on November 9, 2026, at Torrance, California.

*/s/ John Fattahi*

John Fattahi

# Exhibit "1"

11/4/2026

# LAW OFFICE OF JOHN FATTAHI

## Timesheet

| Date | Duration | Description |
|---|---|---|
| 04/07/2026 | 2.4 | Review post-trial motions, corresp with R Masongsong re same |
| 04/13/2026 | 0.2 | Corresp with R Masongsong re opposition strategy, division of labor |
| 04/13/2026 | 8.2 | Review trial and pretrial record, especially regarding exclusion of drug evidence, draft new trial opposition re same |
| 04/13/2026 | 0.5 | Corresp to R Masongsong re strategy on post-trial oppositions, including 50(b) and qualified immunity, legal research re same |
| 04/15/2026 | 0.7 | Review transcript of MIL hearing and pretrial conference |
| 04/15/2026 | 2.2 | Draft new trial opposition (exclusion of drug evidence), legal research re same |
| 04/16/2026 | 9.8 | Draft new trial opposition (exclusion of drug evidence), legal research re same |
| 04/17/2026 | 2.2 | Draft new trial opposition (instructional error), legal research re same |
| 04/17/2026 | 1.5 | Draft new trial opposition (verdict form), legal research re same |
| 04/17/2026 | 0.8 | Revise and edit new trial opposition |
| 04/19/2026 | 0.7 | Revise new trial opposition, legal research and confer with R Masongsong re same |
| 04/19/2026 | 2.4 | Revise Rule 50(b) opposition, legal research and confer with R Masongsong re same |
| 10/23/2026 | 0.3 | Review order denying post-trial motions |
| 11/04/2026 | 0.7 | Draft fee declaration |
| | **32.6** | **TOTAL** |

# Exhibit "2"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 20-0416 JGB (SPx)** | Date | February 21, 2024 |
| Title | ***Paola French, et al. v. City of Los Angeles, et al.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:** **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 185); and (2) VACATING the February 26, 2024 Hearing (IN CHAMBERS)**

Before the Court is a motion for attorneys' fees filed by plaintiffs Paola French and Russell French ("Plaintiffs"). ("Motion," Dkt. No. 185.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The hearing set for February 26, 2024 is **VACATED**.

## I. BACKGROUND

On February 28, 2020, Paola French and Russell French commenced this action against Defendants City of Los Angeles ("City") and Salvador Sanchez ("Sanchez") (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs alleged that Mr. Sanchez, who was an officer with the Los Angeles Police Department ("LAPD") at the time, used excessive force against them and their son Kenneth French ("Decedent," or "Kenneth") inside of a Costco warehouse store in Corona, California. (See id.) On April 1, 2020, Plaintiffs filed a first amended complaint as of right. ("FAC," Dkt. No. 10.) Following the Court's order dismissing Plaintiffs' federal causes of action (Dkt. No. 19), Plaintiffs filed a second amended complaint on July 20, 2020. ("SAC," Dkt. No. 21.) On January 8, 2021, the Court dismissed-in-part one of Plaintiffs' municipal liability claims, dismissed Plaintiffs' second municipal liability claim and negligent training, hiring, and retention claim, and granted Plaintiffs leave to amend. (Dkt. No. 45.) On January 18, 2021, Plaintiffs filed a third amended complaint, the operative complaint. ("TAC," Dkt. No. 46.)

The TAC asserted twelve causes of action: (1) unreasonable search and seizure, unlawful detention and arrest in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) unreasonable search and seizure, excessive force in violation of Section 1983; (3) unreasonable search and seizure, denial of medical care in violation of Section 1983; (4) interference with familial relationship in violation of the Fourteenth Amendment's Substantive Due Process Clause and Section 1983; (5) municipal liability, unconstitutional custom, practice, or policy in violation of Section 1983; (6) false arrest/false imprisonment; (7) battery, including wrongful death; (8) negligence, including wrongful death; (9) negligent infliction of emotional distress; (10) violation of the Bane Act, Cal. Civil Code § 52.1; (11) negligent training, hiring, and retention; and (12) loss of consortium. (See TAC.)

On October 4, 2021, the Court granted in part and denied in part the City's motion for summary judgment. ("MSJ Order," Dkt. No. 92.) The Court dismissed Plaintiffs' municipal liability claim (Count Five), but denied summary judgment on Plaintiffs' state law claims (Counts Six through Twelve). (Id. at 16.)

On October 19, 2021, a jury trial began on Plaintiffs' federal and state law claims. (Dkt. No. 106.) On October 26, 2021, following the parties' presentation of the evidence, Plaintiffs voluntarily dismissed their Section 1983 claims for unlawful detention and arrest (Count One), denial of medical care (Count Three), and interference with familial relationship (Count Four), as well as their state law claims for false arrest/false imprisonment (Count Six) and negligent training, hiring, and retention claim (Count Eleven). (Dkt. No. 129, 10-26-21 RT 550:4-20.) Plaintiffs' remaining six claims were as follows: (1) excessive force under Section 1983 (Count Two), (2) battery (Count Seven), (3) negligence (Count Eight), (4) negligent infliction of emotional distress ("NIED") (Count Nine), (5) violation of the Bane Act (Count Ten), and (6) loss of consortium (Count Twelve). (10-26-21 RT 550:21-551:13.)

The Court also heard arguments on the parties' respective motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) ("Rule 50a") on October 26, 2021. The Court granted in part and denied in part Plaintiffs' motion and denied the City's motion, ruling that (1) Mr. Sanchez's use of force was unreasonable and, therefore, excessive, and (2) Mr. Sanchez's excessive force caused Plaintiffs' and Kenneth's injuries as a matter of law. (Id. 562:7-25.) The Court determined that, as a result, the corresponding elements for Plaintiffs' battery, negligence, NIED, and Bane Act claims were also satisfied as a matter of law. (Id. 562:12-16.) However, the Court found that disputed factual issues required the jury to determine whether Mr. Sanchez acted under color of state law and in the course and scope of his employment. (Id. 563:1-3.)

On October 27, 2021, the jury returned a verdict for Plaintiffs. ("Special Verdict," Dkt. No. 114.) The jury answered, "Yes," to all questions: whether Mr. Sanchez acted under color of state law during the incident, whether Mr. Sanchez acted within the course and scope of his employment with the City as a peace officer during the incident, whether he negligently inflicted severe emotional distress on Plaintiffs, and whether Plaintiffs suffered loss of consortium as a

result of Mr. Sanchez's use of unreasonable force against them. (Id. at 3–4.) The jury awarded $17,002,000.00 in total damages: (1) $4,000,000.00 for Kenneth's pre-death pain and suffering and loss of life damages; (2) $4,771,000.00 in compensatory damages for Paola French; (3) $400,000.00 in loss of consortium damages for Paola French; (4) $5,431,000.00 in compensatory damages for Russell French; (5) $400,000.00 in loss of consortium damages for Russell French; and (6) $2,000,000.00 for Plaintiffs' past and future wrongful death damages. (Id. at 5–7.) On November 29, 2021, the Court entered judgment consistent with the Special Verdict. (Dkt. No. 133.)

On December 27, 2021, the City timely filed a motion for judgment as a matter of law. (See Dkt. No. 138.) On January 24, 2022, Plaintiffs filed a motion for attorneys' fees.[1] (See Dkt. No. 145.) On May 10, 2022, the Court denied the City's motion for a judgment as a matter of law and granted in part Plaintiffs motion for attorneys' fees. ("Fees Order," Dkt. No. 165.) The Court awarded Plaintiffs' counsel $1,922,931.00 in attorneys' fees. (Id.)

On June 7, 2022, the City filed a notice of appeal to the Ninth Circuit Court of Appeals. ("Fees Order Appeal," Dkt. No. 168.) On October 16, 2023, the Ninth Circuit affirmed this Court's Fees Order (Dkt. Nos. 178-180) and granted appellees' motion to transfer consideration of attorneys' fees on appeal to this Court (Dkt. No. 181).

On January 18, 2024, Plaintiffs filed this Motion. (Motion.) In support, Plaintiffs filed the following:

- Declaration of Carol A. Sobel with attached exhibits ("Sobel Decl.," Dkt. No. 185-1);
- Declaration of Dale K. Galipo with attached exhibits ("Galipo Decl.," Dkt. No. 185-21);
- Declaration of John Fattahi with attached exhibits ("Fattahi Decl.," Dkt. No. 185-25);
- Declaration of Eric Valenzuela ("Valenzuela Decl.," Dkt. No. 185-30); and
- Declaration of Renee V. Masongsong with attached exhibit ("Masongsong Decl.," Dkt. No. 185-31).

On February 5, 2024, the City opposed the Motion. ("Opposition," Dkt. No. 186.) On February 6, 2024, Plaintiffs replied. ("Reply," Dkt. No. 187.) In support, Plaintiffs filed the declaration of John Fattahi ("Fattahi Reply Decl.," Dkt. No. 187-1.)

## II. DISCUSSION

Plaintiffs move for attorneys' fees as the prevailing party on appeal. (See Motion.) The Court considers whether the requested fees are reasonable.

[1] Plaintiffs initially filed the attorneys' fees motion as a motion for application to tax costs, but filed a notice of errata to clarify that it is a motion for attorneys' fees. (Dkt. No. 149.)

**A. Legal Standard**

In general, courts apply the "American Rule," where "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Under 42 U.S.C. § 1988 ("Section 1988"), a court may, in its discretion, award reasonable attorneys' fees in a suit seeking to vindicate rights under 42 U.S.C. § 1983. Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1187 (9th Cir. 2012); 42 U.S.C. § 1988(b). Plaintiffs who prevail on a Bane Act claim are also entitled to attorneys' fees. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing Cal. Civ. Code § 52.1(h)).

The customary method of determining the reasonableness of attorneys' fees under either 42 U.S.C. § 1988 or the Bane Act is the lodestar method. Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (Section 1988); Chaudhry, 751 F.3d 1096 (Bane Act). Under this method, a court multiplies "the time spent" with the "reasonable hourly compensation of each attorney involved in the presentation of the case." Hensley, 461 U.S. at 433. This lodestar figure is "presumptively reasonable." Id. "The district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

Id. Because "California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation," the Ninth Circuit allows a "a plaintiff [who] succeeds on both federal and state claims" to seek "the state-law multiplier." Chaudhry, 751 F.3d at 1112 (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001), and Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478–79 (9th Cir. 1995)). The fee applicant holds the "burden of showing that the claimed rate and number of hours are reasonable." Blum v. Stenson, 465 U.S. 886, 897 (1984).

//
//
//
//
//
//
//

## B. Lodestar Analysis

Plaintiffs' counsel requests $596,655.00 in attorneys' fees for 395.5 hours worked. (See Reply at 3.) The requested fee amount includes time associated with drafting the Reply and represents the lodestar figure multiplied by a 1.5 enhancement, as detailed below:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 71 | $1,400.00 | $99,400.00 |
| John Fattahi | Attorney | 212.4 | $975.00 | $207,090.00 |
| Eric Valenzuela | Attorney | 44 | $800.00 | $35,200.00 |
| Renee Masongsong | Attorney | 70.1 | $800.00 | $56,080.00 |
| **SUBTOTAL** | | **395.5** | | **$397,770.00** |
| 1.5 Multiplier | | | | $198,885.00 |
| **TOTAL** | | | | **$596,655.00** |

(Reply at 3.)

The City argues that the requested fee award is unreasonable because of block-billing. (Opposition at 5.)

### 1. Previously Approved Rates

On May 10, 2022, the Court granted in part Plaintiffs' post-trial motion for attorneys' fees and awarded the following:

| Attorney / Biller | | Revised Hours | Hourly Rate | Revised Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 547.3 | $1,100.00 | $602,030.00 |
| John Fattahi | Attorney | 37.4 | $785.00 | $29,359.00 |
| Renee v. Masongsong | Attorney | 461.5 | $600.00 | $276,900.00 |
| Eric Valenzuela | Attorney | 457.8 | $700.00 | $320,460.00 |
| Alejandro Monguia | Legal Assistant | 10.9 | $200.00 | $2,180.00 |
| Karen Slyapich | Legal Assistant | 171.7 | $200.00 | $34,340.00 |
| Santiago Laurel | Legal Assistant | 32.05 | $200.00 | $6,410.00 |
| Marielle Sider | Legal Intern | 68.5 | $150.00 | $10,275.00 |
| **SUBTOTAL** | | 1,787.15 | | **$1,281,954.00** |
| 1.5 Multiplier | | | | $640,977 |
| **TOTAL** | | | | **$1,922,931.00** |

(Fees Order at 29.)

//
//
//

Case 5:20-cv-00719-JGB-SP Document 182 Filed 01/09/24 Page 6 of 7 Page ID #:4066

### 2. Hourly Rate

Reasonable fees under Section 1988 are calculated according to the prevailing market rates in the relevant legal community. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). Because "the relevant community is the forum in which the district court sits," Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010), the prevailing rates in the Central District of California control here. Plaintiffs request rates that are slightly higher than the Court awarded in 2022—a $300 increase per hour for Mr. Galipo; a $190 increase per hour for Mr. Fattahi; a $100 increase per hour for Mr. Valenzuela; a $200 increase per hour for Ms. Masongsong. (Motion at 10.) The City does not contest Plaintiffs' requested rates. (See Opposition.) Plaintiffs argue that these rates are reasonable based on two years of inflation and rate increases, along with the fact that this request pertains to appellate proceedings. (Id.) The Court agrees and concludes that Plaintiffs' requested rates are reasonable.

### 3. Hours Billed

Plaintiffs' counsel requests attorneys' fees for a total of 395.5 hours worked on the appeal in this case. (Reply at 3.) The City argues that these hours should be reduced because they include impermissible block billing. (Opposition at 4-6.)

The City argues that Mr. Galipo has impermissibly block-billed time. (Opposition at 4-6.) In general, courts look unfavorably on block billing in timesheets because it "does not allow the Court to scrutinize the amount of time spent performing each task." Rahman v. FCA US LLC, -- F. Supp. 3d --, 2022 WL 1013433, at *4 (C.D. Cal. Mar. 29, 2022) (internal citations omitted). A court may "reduc[e] or eliminat[e] certain claimed hours" based on such billing practices, but it may not "deny[] all fees." Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014). However, a court need not reduce hours for block-billing if it can determine the reasonableness of the hours spent on each task. See Donastorg v. City of Ontario, 2021 WL 6103545, at 13–14 (C.D. Cal Sept. 2, 2021).

The City challenges Mr. Galipo's time entries for "oral argument preparation" as overbroad. (Opposition at 5.) The Court finds that Mr. Galipo's entries are reasonable and do not constitute block-billing. See Donastorg, 2021 WL 6103545, at *14 (finding reasonable Mr. Galipo's 224.8 hours billed for "trial and trial preparation" over 17 days). Thus, the Court will not reduce Mr. Galipo's hours on this basis.

### 4. Multiplier

Plaintiffs' counsel's lodestar is $397,770.00. Plaintiffs' counsel seeks a 1.5 multiplier of the lodestar to bring their total requested fee amount to $596,655.00. (Reply at 3.) The City does not contest Plaintiffs' 1.5 multiplier. (See Opposition.) The Court previously analyzed and approved a 1.5 multiplier in this case. (Fees Order at 29.) Accordingly, the Court applies a 1.5 multiplier to the lodestar calculation of $397,770.00 for a total award of $596,655.00.

In sum, the Court **GRANTS** the Motion as follows:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 71 | $1,400.00 | $99,400.00 |
| John Fattahi | Attorney | 212.4 | $975.00 | $207,090.00 |
| Eric Valenzuela | Attorney | 44 | $800.00 | $35,200.00 |
| Renee Masongsong | Attorney | 70.1 | $800.00 | $56,080.00 |
| **SUBTOTAL** | | **395.5** | | **$397,770.00** |
| 1.5 Multiplier | | | | $198,885.00 |
| **TOTAL** | | | | **$596,655.00** |

## III. CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Motion and **AWARDS** Plaintiffs' counsel $596,655.00 in attorneys' fees. The February 26, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**

# Exhibit “3”

**O**

# United States District Court
# Central District of California

NICOLE JUAREZ ZELAYA,

Plaintiff,

v.

CITY OF LOS ANGELES et al.,

Defendants.

Case № 2:20-cv-08382-ODW (MAAx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [137]**

## I. INTRODUCTION AND BACKGROUND

On October 13, 2023, the jury in this matter returned a verdict in favor of Plaintiff Nicole Juarez Zelaya and against Defendants Dustin Richmond, Joseph Hunt, and the City of Los Angeles, on Zelaya's claims arising under 42 U.S.C. § 1983. (Verdict 1–3, ECF No. 121.) The jury awarded Zelaya $13.5 million in damages. (*Id.* at 4.) Zelaya now requests her attorneys' fees pursuant to 42 U.S.C. § 1988, in the amount of $766,097. (Mot. Fees ("Motion" or "Mot."), ECF No. 137.) The parties are familiar with the facts, which may be found in the Court's Order Denying Defendants' Motion for a New Trial. (*See* Order Den. Defs.' Mot. New Trial 2–3, ECF No. 160.) For the reasons below, the Court **GRANTS IN PART** Zelaya's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. LEGAL STANDARD

In general, courts apply the "American Rule," under which "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). However, 42 U.S.C. § 1988 is just such a statute. Section 1988 authorizes a district court "to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Id.*; 42 U.S.C. § 1988(b). The purpose of § 1988 is to encourage "private enforcement of civil rights legislation [that] relies on the availability of fee awards." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted).

To determine a reasonable attorney fee award under § 1988, federal courts employ "the lodestar method." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Under the lodestar method, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust the figure based on a variety of factors.[2] *Moreno*, 534 F.3d at 1111. "[T]here is a strong presumption that [the lodestar figure] is a reasonable fee," *United Steelworkers of Am. v. Phelps Dodge Corp.*,

---

[2] These factors include

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

896 F.2d 403, 407 (9th Cir. 1990), and it should therefore be adjusted only in "rare" and "exceptional" cases, *Edmo*, 97 F.4th at 1168. The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley,* 461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the hours worked and rates claimed").

## III. DISCUSSION

Zelaya's counsel moves for attorneys' fees as the prevailing party. They request $766,097 in attorneys' fees for 835.45 hours worked. (*See* Mot. 17; Reply ISO Mot. ("Reply") 9, ECF No. 155.) The requested fee amount includes time associated with drafting the Motion and Reply, as well as opposing Defendants' unsuccessful motion for a new trial,[3] as follows:

| **Attorney/Biller** | | **Hourly Rate** | **Total Hours** | **Lodestar** |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | $1,300 | 362 | $470,600 |
| Miguel Flores | Attorney | $700 | 26.9 | $18,830 |
| John Fattahi | Attorney | $920 | 7.6 | $6,992 |
| Michael Carrillo | Attorney | $700 | 131.6 | $92,120 |
| Renee V. Masongsong | Attorney | $700 | 226.6 | $158,620 |
| Benjamin Levine | Attorney | $400 | 6.5 | $2,600 |
| Santiago Laurel | Legal Assistant | $220 | 74.25 | $16,335 |
| **TOTAL** | | | **835.45** | $766,097 |

(*See* Mot. 17; Reply 9.)

[3] Defendants object to Zelaya's fees on post-trial matters as premature because, at the time Zelaya filed this fee motion, the Court had not yet ruled on Defendants' motion for a new trial. (Opp'n 10–11, ECF No. 154.) The Court has since denied Defendants' motion. (Order Den. Defs.' Mot. New Trial.) Accordingly, Zelaya prevailed and is entitled to recover her attorneys' fees on the post-trial motion practice. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (holding that time spent on fee petition is compensable); *Lambert v. Ackerley*, 180 F.3d 997, 1012–13 (9th Cir. 1999) (affirming award of attorneys' fees for post-trial matters).

The City argues that Zelaya's requested fee award is unreasonable and challenges both the hourly rates and number of hours as excessive. (*See* Opp'n 3.)

**A. Reasonable Hourly Rate**

To determine whether hourly rates are reasonable under § 1988, fees "are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (citation omitted) (cleaned up). "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407. Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

In support of her Motion, Zelaya submits a declaration from her counsel of record, Dale K. Galipo, detailing his experience and that of the other attorneys and support staff representing Zelaya. (*See* Decl. Dale K. Galipo ISO Mot. ("Galipo Decl."), ECF No. 137-1.) Zelaya also submits declarations from each attorney and support staff seeking fees for their work on Zelaya's behalf in this action, as well as the declaration of Carol A. Sobel, on whose expertise courts in the Ninth Circuit and Central District of California routinely rely for determining reasonable attorney rates. *See, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 912–13, 917–18 (9th Cir. 2009); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 (C.D. Cal. 2012). Defendants contend that Zelaya's counsel fails to support their rates with sufficient evidence. (Opp'n 5–8.) The Court finds that Zelaya's counsel's evidence is sufficient and supports the requested rates, as discussed further below. *See United Steelworkers*, 896 F.2d at 407; *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony

that, in fact, it took the time claimed . . . is evidence of considerable weight on the issue of the time required . . . ." (internal quotation marks omitted)).

*1. Dale K. Galipo*

Zelaya's counsel requests an hourly rate of $1,300 for Mr. Galipo. (Mot. 11.) Mr. Galipo bases his rate on his thirty-four years of civil rights practice experience, his track record of success, and his numerous recognitions for his work in civil rights. (*See* Galipo Decl. ¶¶ 3–26; Decl. Renee V. Masongsong ISO Mot. ("Masongsong Decl.") ¶ 9, ECF No. 137-2 ("Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country, [and] has gone to trial and won more cases against the police for excessive force than any attorney in the country.").)

Moreover, courts in this district have recently found Mr. Galipo's requested hourly rate appropriate given his demonstrated expertise and track record for success. *See, e.g.*, *Valenzuela v. City of Anaheim*, No. 8:17-cv-00278-CJC (DFMx), 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (finding in 2023 that $1,200 was "a reasonable hourly rate for Mr. Galipo" based on his strong reputation, his consistent record of success in civil rights cases, and his awarded reasonable rate of $1,100 as early as 2020); *Donastorg v. City of Ontario*, No. 5:18-cv-00992-JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) (finding in 2021 "Mr. Galipo's requested rate of $1,100 per hour" was reasonable because "Mr. Galipo is without question at the top of his field"). Changes in market rates, the rise of inflation, and Mr. Galipo's increased experience justify the increase of Mr. Galipo's rate to $1,300. *See Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. 5:07-cv-01512-ABC (OPx), 2012 WL 843623, at *7 (C.D. Cal. Feb. 16, 2012) ("It is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time . . . .").

The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate is appropriate given his "experience, skill, and reputation." *Dang*, 422 F.3d at 813.

2. *Renee V. Masongsong*

Zelaya's counsel requests an hourly rate of $700 for Ms. Masongsong. (Mot. 13.) Ms. Masongsong is a senior civil rights attorney at Mr. Galipo's firm with twelve years of legal experience. (Masongsong Decl. ¶¶ 6, 8–9.) She has worked almost exclusively on civil rights litigation for more than ten years. (*Id.* ¶ 8.) In this case, she was the assigned senior associate and handled the "case's day-to-day management." (*Id.* ¶ 15.) In 2022, a sister court in this district found "Ms. Masongsong's requested rate of $600 per hour" for her civil rights work in 2020 and 2021 reasonable. *French v. City of Los Angeles*, No. 5:20-cv-00416-JGB (SPx), 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022). Moreover, the defendant in that case, City of Los Angeles—the same Defendant in this case—did not contest that rate. *Id.* ("The City does not contest this rate."). As with Mr. Galipo, Ms. Masongsong's rate increase is justified. *See Charlebois*, 993 F. Supp. 2d at 1122 ("[C]ourts routinely recognize that fee rates increase over time based on a variety of factors.").

Ms. Masongsong's requested rate is well within the range of reasonable rates in the community for attorneys of comparable skill and experience. Accordingly, the Court finds Ms. Masongsong's requested rate reasonable.

3. *Michael Carrillo & Miguel Flores*

Zelaya's counsel requests an hourly rate of $700 for Mr. Carrillo and Mr. Flores. (Mot. 14–15.) Mr. Carrillo has over fourteen years of legal experience and is the managing partner of the Carrillo Law Firm, LLP. (Decl. Michael Carrillo ISO Mot. ¶¶ 5–6, 13, ECF No. 137-5.) His firm has been recognized for its work and advocacy in civil rights matters. (*Id.* ¶ 14.) Mr. Carillo was the attorney primarily responsible for the work on this case done by his firm, and he has been involved in depositions, client communication, coordinating experts, law and motion practice, trial preparation, assisting with the trial, and the handling of post-trial issues. (*Id.* ¶ 19.) Similarly, Mr. Flores has been a licensed attorney for eighteen years and is a senior attorney at

Carrillo Law Firm, where he has worked extensively on cases involving civil rights. (Decl. Miguel Flores ISO Mot. ¶¶ 5, 8, ECF No. 137-6.)

Mr. Carillo and Mr. Flores's requested rate, which is the same as Ms. Masongsong's, is well within the range of reasonable rates in the community for attorneys of comparable skill and experience. *See Dugan v. County of Los Angeles,* No. 2:11-cv-08145-CAS (SHx), 2014 WL 12577377, at *3 (C.D. Cal. Mar. 3, 2014) (finding in 2014 that $650 was a reasonable rate for an attorney without much civil rights experience because "he was an experienced trial lawyer and was familiar with Fourth Amendment doctrine").

Accordingly, the Court finds Mr. Carillo and Mr. Flores's requested rate of $700 reasonable.

*4. John Fattahi*

Zelaya's counsel requests an hourly rate of $920 for the work Mr. Fattahi has performed post-trial. (Mot. 15.) Zelaya's counsel associated Mr. Fattahi "as co-counsel to represent Plaintiff in connection with post-trial motions and any appeals." (*Id.*) Mr. Fattahi bases his rate on his seventeen years of legal experience, with fifteen years dedicated exclusively to civil rights litigation. (Decl. John Fattahi ISO Mot. ¶ 4, ECF No. 137-7.) In *Valenzuela,* the court found $850 per hour was a reasonable hourly rate for Mr. Fattahi in 2023, given "his continued strong reputation within the field." 2023 WL 2249178, at *4. The court reasoned that an increase to his previously awarded hourly rates of $725 and $775 was justified because "Mr. Fattahi [had] gained substantial additional experience." *Id.* Since the court's ruling in 2023, Mr. Fattahi has raised his rate $70, to $920. (Mot. 15.) The Court finds that this increase is justified and not excessive, given his increased experience and expertise. *See Charlebois*, 993 F. Supp. 2d at 1122; *Parker*, 2012 WL 843623, at *7.

Accordingly, the Court finds Mr. Fattahi's requested rate of $920 reasonable.

5. *Benjamin Levine*

Zelaya's counsel requests an hourly rate of $400 for Mr. Levine. (Mot. 16.) Mr. Levine is a second-year associate and civil rights attorney at the Law Offices of Dale K. Galipo. (Decl. Benjamin Levine ISO Mot. ¶ 8, ECF No. 137-3.) Prior to joining Mr. Galipo's firm, Mr. Levine earned his J.D. from the UCLA School of Law, where he graduated in the top 5% of his class. (*Id.* ¶ 5.) He served as a judicial law clerk for the Honorable William B. Shubb, in the United States District Court for the Eastern District of California. (*Id.* ¶ 7.) Regarding Mr. Levine's rate, Ms. Sobel opines that a $400 hourly rate is "slightly below the mid-range for attorneys of comparable skill and experience in the Central District." (Decl. Carol A. Sobel ISO Mot. ¶ 52, ECF No. 138.) Defendants do not contest Mr. Levine's rate. (*See* Opp'n 8.) Indeed, Defendants' expert actually proposes a higher hourly rate as reasonable for Mr. Levine, $450. (*See* Decl. Gerald G. Knapton ISO Opp'n ¶ 26, ECF No. 154-1.) The Court agrees with Ms. Sobel's and Mr. Knapton's assessments, and finds an hourly rate of **$450** reasonable for Mr. Levine.

6. *Santiago Laurel*

Zelaya's counsel requests an hourly rate of $220 for Mr. Laurel. (*See* Mot. 17; Galipo Decl. ¶ 31.) Mr. Laurel is a litigation/legal assistant for Mr. Galipo, Ms. Masongsong, and Mr. Levine. (Decl. Santiago G. Laurel ("Laurel Decl.") ¶¶ 1–3, ECF No. 137-4.) He has worked in the legal field for approximately sixteen years and is experienced with both state and federal court. (*Id.* ¶ 2.) Mr. Galipo attests to the contributions Mr. Laurel made in this case. (Galipo Decl. ¶ 31.) Although Mr. Santiago is a legal assistant and not a paralegal, sister courts in this district have found his experience in the legal field supports his rate. *See French*, 2022 WL 2189649, at *19 (finding, in 2022, Mr. Laurel's hourly rate of $200 to be reasonable). Defendants do not contest this rate. (*See generally* Opp'n; Knapton Decl. ¶ 26.) Thus, the Court finds Mr. Laurel's that requested hourly rate of $220 is reasonable.

**B. Number of Hours Reasonably Expended**

"A district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts . . . should not[] become green-eyeshade accountants."). Thus, the court "may take into account [its] overall sense of a suit." *Id.* The court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112 (noting that civil rights lawyers on contingency fee cases are "not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees [because t]he payoff is too uncertain"). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 439.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397. Once the applicant meets her burden, the party opposing the fee award must "come up with specific reasons for reducing the fee request that the district court finds persuasive." *Moreno*, 534 F.3d at 1116. If the opposing party cannot do so, the court "should normally grant the award in full, or with no more than a haircut." *Id.*

Zelaya's counsel requests attorneys' fees for a total of 835.45 hours worked on this case. (Mot. 17; Reply 9.) Zelaya's counsel submits contemporaneously maintained timekeeping records from each attorney and support staff requesting fees. (*See, e.g.*, Masongsong Decl. ¶ 4, Ex. 1, ECF No. 137-2.) Counsel exercised billing judgment in the time submitted by eliminating or not recording wholly duplicative, unnecessary, or administrative time. (Mot. 7; *see* Galipo Decl. ¶ 2; Masongsong Decl. ¶ 4.) The Court finds Zelaya's counsel submits sufficient evidence to support the appropriate hours expended in the litigation. Accordingly, the burden shifts to Defendants to offer specific

persuasive reasons for reducing the fee award. *See Moreno*, 534 F.3d at 1116. Defendants argue that Zelaya's counsel's hours should be reduced because they include unbillable purely clerical work and unnecessary duplicative time. (Opp'n 9–10.)

*1. Clerical*

Defendants contest certain of Zelaya's counsel's time entries as "purely clerical work." (Opp'n 9.) Purely clerical or secretarial tasks are not compensable. *See Nadarajah*, 569 F.3d at 921 ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). However, it is appropriate to distinguish between non-legal, "purely clerical" work, which is not compensable, and substantive legal work, which may be. *Id.*; *Donastorg*, 2021 WL 6103545, at *11. For instance, courts consider tasks like copying, scanning, calendaring, filing, and document organization to be clerical in nature and thus non-compensable, because they are subsumed within firm overhead. *See Nadarajah*, 569 F.3d at 921; *French*, 2022 WL 2189649, at *20. In contrast, tasks like drafting discovery correspondence, preparing deposition notices, and reviewing and organizing case files are not necessarily purely clerical tasks and may be compensable. *See French*, 2022 WL 2189649, at *20.

Defendants first argue the Court should disregard Mr. Santiago's time entirely because he is "clerical personnel." (Opp'n 9.) The Court disagrees that "clerical personnel" are categorically incapable is performing substantively valuable work. The Court has reviewed Mr. Laurel's time entries and finds that while some entries reflect tasks considered purely clerical in nature, other entries reflect compensable time. (*See* Laurel Decl. Ex. 1, ECF No. 137-4.) For instance, reviewing body worn camera footage, participating in depositions, and preparing relevant case information for onboarding experts are all entries reflecting non-clerical tasks. Accordingly, the Court reduces Mr. Laurel's compensable hours from 74.25 to **38.0**, eliminating the time for purely clerical work.

Defendants next argue the Court should reduce Ms. Masongsong's entries by 1.3 hours because her time scheduling and coordinating depositions should be considered purely "administrative." (Opp'n 9; Decl. Diane Martinez ISO Opp'n ¶ 7, ECF No. 154-2.) However, depositions were essential to proving Zelaya's claims and theory of the case at trial and it was reasonable for Ms. Masongsong to directly coordinate the depositions. No changes to Ms. Masongsong's hours are warranted.

*2. Duplicative*

Defendants contest certain hours spent by Zelaya's counsel as duplicative. (Opp'n 10.) "It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." *Moreno*, 534 F.3d at 1113; *Blackwell*, 724 F. Supp. 2d at 1081 ("[I]t must appear that the time claimed is obviously and convincingly excessive under the circumstances."). The Court has reviewed the time entries identified by Defendants and finds that Zelaya's counsel sufficiently establishes that these hours were not unnecessarily duplicative. (*See* Reply 7–9.)

**C. Lodestar**

Based on the Court's modifications to hourly rates and hours expended identified above, Zelaya's counsel's modified lodestar is **$758,447**, as follows.

| Attorney/Biller | | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | $1,300 | 362 | $470,600 |
| Miguel Flores | Attorney | $700 | 26.9 | $18,830 |
| John Fattahi | Attorney | $920 | 7.6 | $6,992 |
| Michael Carrillo | Attorney | $700 | 131.6 | $92,120 |
| Renee V. Masongsong | Attorney | $700 | 226.6 | $158,620 |
| Benjamin Levine | Attorney | **$450** | 6.5 | $2,925 |
| Santiago Laurel | Legal Assistant | $220 | **38.0** | $8,360 |
| **TOTAL** | | | **799.20** | **$758,447** |

Complex civil rights litigation, such as this case, is often lengthy and demanding. *Hensley*, 461 U.S. at 436. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. Indeed, "in some cases of exceptional success an enhanced award may be justified." *Id.* Zelaya's counsel in this case achieved excellent results after years of challenging litigation, and they are entitled to a fully compensatory fee. *Id.* Moreover, in light of the exceptional results achieved, the complex issues, and the lengthy litigation history, the Court finds the above lodestar lean. However, although the Court finds an enhanced award would be justified, Zelaya's counsel does not seek a fee multiplier, (*see generally* Mot.), and Defendants have not had the opportunity to oppose one. Accordingly, the Court does not consider an upward adjustment to the lodestar.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees and **AWARDS** Plaintiff's counsel **$758,447**. (ECF No. 137.)

**IT IS SO ORDERED.**

June 25, 2024

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

# Exhibit "4"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **FERMIN VINCENT VALENZUELA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF ANAHEIM, *et al*.,**<br><br>**Defendants.** | **Case No.: SACV 17-00278-CJC (DFMx), consolidated with SACV 17-02094-CJC (DFMx)** |
| **VINCENT VALENZUELA and XIMENA VALENZUELA by and through their guardian PATRICIA GONZALEZ,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY OF ANAHEIM, *et al*.,**<br><br>**Defendants.** | **ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR ATTORNEY FEES [Dkt. 459]** |

## I. INTRODUCTION & BACKGROUND

On July 2, 2016, members of the Anaheim Police Department applied a neck restraint on Fermin Vincent Valenzuela Junior ("Mr. Valenzuela") called the "carotid hold." Mr. Valenzuela died. Plaintiffs Fermin Vincent Valenzuela Senior (Mr. Valenzuela's father), Vincent Valenzuela (Mr. Valenzuela's son), and Ximena Valenzuela (Mr. Valenzuela's daughter) brought this civil rights action against Defendants City of Anaheim (the "City"), Officers Daniel Wolfe, Officer Woojin Jun, and Sergeant Daniel Gonzalez. In November 2019, they presented evidence to a jury supporting their claims for excessive force, deprivation of substantive due process, municipal liability (on both unlawful policy and failure to train theories), wrongful death (on both negligence and battery theories), and violation of the Bane Act, Cal. Civ. Code § 52.1(b).

After five days of trial, the jury returned a verdict in favor of Mr. Valenzuela's children, finding, among other things, that Officers Jun and Wolfe used excessive force when they attempted to use the carotid hold, that Sergeant Gonzalez was liable as the supervising officer, and that the City's policy permitting the carotid hold in nondeadly force situations was unlawful. (Dkt. 358.) The trial proceeded to a second phase on damages. After two additional days of trial, the jury returned with a second verdict, awarding Mr. Valenzuela's children a total of $13.2 million in damages—$3.6 million in loss of life damages, $6 million in pre-death pain and suffering, and $1.8 million to each child for past and future loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance. (Dkt. 372.) The Court denied Defendants' motions for judgment as a matter of law and for new trial and granted in substantial part Plaintiffs' motion for attorney fees, awarding $1,082,930 in fees incurred through trial. (Dkt. 435.)

Case 2:17-cv-00278-CJC-DFM Document 462 Filed 02/23/23 Page 3 of 12 Page ID #:14191

Defendants appealed to the Ninth Circuit, arguing that (1) the officers were entitled to qualified immunity, (2) the City was entitled to judgment as a matter of law because the policy was not unconstitutional, (3) Defendants were entitled to judgment on the Bane Act claim because it was inconsistent with the jury's finding on the Fourteenth Amendment claim, and (4) loss of life damages are not recoverable under 42 U.S.C. Section 1983. *See Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101 (9th Cir. 2021); (Mot. at 17–18). In a published opinion and an unpublished memorandum decision, both of which drew a dissent from Judge Kenneth K. Lee, the Ninth Circuit affirmed this Court's ruling that Section 1983 permitted recovery of loss of life damages and that California state law to the contrary was inconsistent with Section 1983's goals. *Valenzuela*, 6 F.4th 1098, at 1101–02; *Valenzuela v. City of Anaheim*, 2021 WL 3362847 (9th Cir. Aug. 3, 2021). The Ninth Circuit denied Defendants' petition for panel rehearing and rehearing en banc, but eleven judges dissented on the issue of availability of loss of life damages. *Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1094 (9th Cir. 2022). Defendants appealed to the United States Supreme Court, and the Supreme Court denied certiorari. *City of Anaheim v. Valenzuela*, 143 S. Ct. 523 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court. (Dkt. 459 [hereinafter "Mot."].) Plaintiffs request a lodestar amount of $696,025 in attorney fees. Dkt. 461 [Reply] at 18.) In opposition, Defendants argue that (1) all of Plaintiffs' attorneys' hourly rates are excessive, and (2) some of those attorneys' hours are excessive and duplicative. (Dkt. 460 [Opposition, hereinafter "Opp."].) For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.[1] The Court awards Plaintiffs $659,125 in attorney fees.

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 6, 2023 at 1:30 p.m. is hereby vacated and off calendar.

## II. ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear. Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

Case 2:17-cv-00789-ODW-PJW Document 487 Filed 01/13/23 Page 5 of 12 Page ID #:10483

figure be adjusted on the basis of other considerations."). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law. *Morales*, 96 F.3d at 364 & n.9.

**A. Hourly Rates**

The Court first determines Plaintiffs' counsel's reasonable hourly rates. "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008). Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

**1. Dale Galipo**

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs and delivered oral argument before the Ninth Circuit panel, requests an hourly rate of $1,200. (Mot. at 7.) Mr. Galipo graduated from UCLA law school in 1984. (Dkt. 459-2 [Declaration of Dale K. Galipo] ¶ 3.) Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades. (*See id.* ¶ 4.) After trial in this case, the Court found that $1,000 was a reasonable hourly rate for Mr.

Galipo, citing its recent award in *Craig et.al. v. County of Orange et.al.*, Case No. SACV 17-00491-CJC (KESx), Dkt. 245.

Now, the Court has recently awarded fees for Mr. Galipo's appellate efforts in *Craig*. *See id*., Dkt. 280 (hereinafter "*Craig* Order"). The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020. (*Id.* at 4–6.) The Court finds that $1,200 is a reasonable hourly rate for Mr. Galipo in this case as well.

**2. Kelsi Brown Corkran**

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021. (Mot. at 9–11; Dkt. 459-3 [Declaration of Kelsi Brown Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 15.) Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005. (Corkran Decl. ¶ 2.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"). (*Id.* ¶ 9.) The Court recently awarded an hourly rate of $1,075 for Ms. Corkran's work in *Craig*, (*Craig* Order at 6–7), and finds that rate to be reasonable in this case as well.

//

//

//

### 3. John Fattahi

John Fattahi, who "had primary responsibility for formulating strategy for, and drafting, Plaintiffs' answering brief and subsequent response to Defendants' petition for rehearing en banc before the Ninth Circuit," requests an hourly rate of $850. (Mot. at 11–14; Dkt. 459-4 [Declaration of John Fattahi, hereinafter "Fattahi Decl."] ¶ 3.) Mr. Fattahi graduated from UCLA School of Law in 2006. (Fattahi Decl. ¶ 4.) He served for one year as a law clerk to then-Chief U.S. District Judge Virginia A. Phillips in the Central District of California, was a litigation associate for two years at Quinn Emanuel Urquhart & Sullivan, LLP, and then worked for about two and a half years in Mr. Galipo's office before opening his own solo practice in 2011. (*Id.* ¶ 6.)

After trial, the Court found that $500 was a reasonable hourly rate for Mr. Fattahi, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with similar experience, and reflected the lesser novelty and difficulty of the issues during the post-trial stage when Mr. Fattahi participated. (Order at 6.) The Court also considered a then-recent court award to Mr. Fattahi of a $550 hourly rate for second-chairing a police excessive force trial, and fee settlements resulting in $540 and $550 hourly rates. (*Id.*)

Since the Court's last fee award, Mr. Fattahi has gained substantial additional experience. He has successfully defended millions of dollars in judgments obtained by Mr. Galipo on post-trial motions and appeal, and courts have awarded Mr. Fattahi $725 and $775 hourly rates in excessive force cases. (Fattahi Decl. ¶¶ 4, 7.) In addition, whereas the Court's previous $500 rate for Mr. Fattahi was based in part on its determination that "[t]he more novel and difficult legal issues and the impressiveness of the results obtained by the Plaintiffs happened before and during trial, not after trial when

Mr. Fattahi participated," (Dkt. 435 at 38), this appeal involved multiple novel and difficult legal issues, justifying a higher hourly rate. *See Moreno*, 534 F.3d at 114.

The Court finds that $850 is a reasonable hourly rate for Mr. Fattahi's work on appeal. This rate reflects Mr. Fattahi's substantial and increased experience over the last few years, his continued strong reputation within the field, and the skill required to succeed on appeal and the novelty and difficulty of the issues presented on appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school seventeen years ago. *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Dkt. 459-1 [Declaration of Carol Sobel, hereinafter "Sobel Decl."] ¶¶ 44–50 [collecting evidence that Mr. Fattahi's requested rate is consistent with the market rate]).

**4. Joseph Mead**

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850. (Mot. at 14–15; Dkt. 459-5 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.) Mr. Mead graduated from the University of Michigan Law School *magna cum laude* in 2007. (Mead Decl. ¶ 2.) In 2021, he joined ICAP as Senior Counsel. (*Id.* ¶ 8.) The Court awarded an hourly rate of $850 for Mr. Mead's work in *Craig*, (*Craig* Order at 9–10), and finds that that rate is reasonable in this case as well.

//

//

### 5. Shelby Calambokidis

Shelby Calambokidis, who helped draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $650. (Mot. at 16–17; Dkt. 459-6 [Declaration of Shelby Calambokidis, hereinafter "Calambokidis Decl." ¶ 5.) After graduating *summa cum laude* from The University of Alabama School of Law in 2017, Ms. Calambokidis clerked for judges on the United States District Court for the District of Columbia and the Fourth Circuit and served as a law fellow at the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO). (Calambokidis Decl. ¶¶ 2–3.) In 2021, she joined ICAP as Counsel, where she has worked on multiple civil rights cases in federal district and appellate courts. (*Id.* ¶ 4.)

The Court finds that $650 is a reasonable hourly rate for Ms. Calambokidis. This rate reflects her experience in appellate law, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is also consistent with the prevailing rate of other attorneys who graduated law school six years ago. *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Calambokidis's requested rate is consistent with the market rate]).

## B. Billed Hours

The Court now determines whether the billed hours are reasonable. A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary."). "[T]he fee

applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397–98.

In support of Plaintiffs' motion for fees, each attorney has submitted time records detailing the work they performed on the case. Mr. Galipo and Mr. Fattahi were primarily responsible for tasks related to the Ninth Circuit appeal and billed 391.8 hours to those tasks. Ms. Corkran, Mr. Mead, and Ms. Calambokidis were primarily responsible for tasks related to the Supreme Court petition and billed 281.3 hours to those tasks. The Court has carefully reviewed these five attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that no work performed by the ICAP attorneys—Ms. Corkran, Mr. Mead, and Ms. Calambokidis—should be compensated because "[i]t was not necessary to bring on three more lawyers to oppose the petition" for certiorari as Plaintiffs already had enough lawyers. (Opp. at 13.) The Court is unpersuaded. Supreme Court litigation is specialized and complex, and it was not unreasonable for Plaintiffs to bring on a team of specialists to handle the petition. This is especially so given that eleven Ninth Circuit judges dissented from the denial of rehearing en banc on the loss of life damages issue, and that the Supreme Court had previously granted review of the primary question presented by Defendants' petition, but ultimately dismissed it as improvidently granted due to a jurisdictional defect. (*See* Corkran Decl. ¶ 14 [citing *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997)].)

Defendants also argue that some of the ICAP attorneys' time duplicates work performed at the Ninth Circuit level or was excessive. (Opp. at 13–14.) They submit annotations on Ms. Corkran's, Mr. Mead's, and Ms. Calambokidis's time records to this effect. (Dkt. 460-1.) However, the Court has reviewed these attorneys' time records and

finds the billed hours reasonable under the circumstances of this case. This was an extremely complex appeal presenting numerous issues, some of which had never been decided before. Thorough research was required both before the Ninth Circuit and the Supreme Court. *See Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time."). It was not unreasonable to spend substantial time researching, drafting, and revising the several briefs involved, or to have multiple people involved in that process. *Cf. id.* ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

The Court will make one deduction to the fees Plaintiffs request, however. Plaintiffs seek fees for work performed by Garo Mardirossian and Lawrence Marks. (*See* Mot. at 22 [Lodestar Calculation Table].) However, a review of both attorneys' billing records reveals that nearly all of Mr. Mardirossian's 19.2 hours billed and Mr. Marks' 44.4 hours billed was for "receipt and review" of the various documents on appeal. (*See* Dkt. 459-7, Ex. 1; Dkt. 459-8, Ex. 1.) Neither Plaintiffs' brief nor Mr. Mardirossian or Mr. Marks' declarations explains why their receipt and review of these documents was necessary or even helpful to Plaintiffs' success on appeal. Accordingly, the Court will not award fees for their work.

Finally, Plaintiffs' counsel request compensation for their work related to their motion for attorneys' fees. Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable. *See Clark v. City of L.A.*, 803 F.2d 987, 992 (9th Cir. 1986). Plaintiffs' counsel included time spent preparing the motion in their original time

records. In preparing the reply, Mr. Fattahi billed an additional 27.9 hours. (*See* Dkt. 461-1 [Supplemental Declaration of John Fattahi].) The Court will include this additional billed time in its lodestar calculation.

### C. Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 99.7 | $119,640 |
| Kelsi Brown Corkran | $1,075 | 144 | $154,800 |
| John Fattahi | $850 | 320[2] | $272,000 |
| Joseph Mead | $850 | 97.2 | $86,620 |
| Shelby Calambokidis | $650 | 40.1 | $26,065 |
| **Total** | | | **$659,125** |

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is **GRANTED IN SUBSTANTIAL PART**. Based on the Court's lodestar calculation, Plaintiffs are awarded $659,125 in attorneys' fees.

DATED: February 23, 2023

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

**CC: FISCAL**

[2] This number is calculated based on 193.1 (total billed hours) + 27.9 (hours spent preparing reply).