# EXHIBIT 3

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| JERMAINE PETIT,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES et al.,<br>Defendants. | Case № 2:23-cv-00789-ODW (PVCx)<br><br>**ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [207] AND MOTION FOR A NEW TRIAL [206]** |

## I. INTRODUCTION

Following a six-day trial, a jury returned a mixed verdict predominantly against Defendants City of Los Angeles, Sergeant Brett Hayhoe, and Officer Daryl Glover, Jr., and in favor of Plaintiff Ashlyn Petit, finding Hayhoe and Glover violated Jermaine Petit's civil rights when they shot him. The jury awarded Plaintiff $3,000,000 in total damages and the Court entered judgment consistent with the verdict. Defendants now renew their motion for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), (Mot. JMOL ("JMOL"), Dkt. No. 207), and move for a new trial or remittitur pursuant to Rule 59(a), (Mot. New Trial ("MNT"), Dkt. No. 206). For the reasons discussed below, the Court **DENIES** both motions.[1]

---

[1] Having carefully considered the papers filed in connection with the motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Case 2:23-cv-00789-ODW-PVC Document 224 Filed 01/12/26 Page 2 of 17 Page ID #:4092

## II. BACKGROUND

### A. Factual Background[2]

In the early evening of July 18, 2022, Hayhoe and Glover separately responded to 911 calls reporting a man in a residential neighborhood who may have a gun. Glover and his partner arrived first, ordered Jermaine Petit ("Petit") to stop walking and show his hands, and saw an object in Petit's right hand as Petit continued to walk away from them. Glover's partner verbally identified the object as "not a gun." Hayhoe arrived next and drove his patrol car alongside Petit for about ninety feet and nine seconds. Hayhoe did not see anything in Petit's hands as he paralleled Petit.

As Petit was about to cross the residential street, Hayhoe fired two shots from his moving patrol vehicle through the open passenger window, hitting Petit in the face. Glover, still following Petit on foot, fired one shot as Petit fell to the ground, hitting Petit in the back. Neither Hayhoe nor Glover gave Petit a verbal warning that they would shoot.

Following the shooting, Petit lay bleeding in the street. He had dropped the object, which lay in plain view and out of his reach. No one called for medical assistance for approximately four minutes. During that time, Hayhoe coordinated a tactical plan to approach and arrest Petit. After officers handcuffed Petit, an officer radioed for an ambulance. Paramedics responded and transported Petit to the hospital, where he remained until discharged in August 2022.

More than two years later, on August 4, 2024, Petit was found deceased in his home from unknown causes. (Notice Death ¶ 3, Dkt. No. 50.)

### B. Procedural History

Following Petit's death, Petit's daughter, Ashlyn Petit ("Plaintiff"), pursued this excessive force action against the City, Hayhoe, and Glover (Hayhoe and Glover collectively, "Officer Defendants"). (First Am. Compl., Dkt. No. 62.) Plaintiff asserted causes of action pursuant to 42 U.S.C. § 1983 for excessive force, municipal liability,

---

[2] The Court derives this factual background from testimony and video evidence presented at trial.

and denial of medical care; pursuant to California law for battery, negligence, violation of the Bane Act, and intentional infliction of emotional distress ("IIED"); and finally for violation of the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 24–143.) Prior to trial, Plaintiff dismissed the ADA and municipal liability claims. (Order Grant Stip. ADA, Dkt. No. 82; Order Grant Stip. Municipal, Dkt. No. 153.) Additionally, the Court denied Defendants' motion for summary judgment, including based on qualified immunity on the excessive force claim. (Order Den. Mot. Summ. J., Dkt. No. 106.)

From February 17 to 24, 2026, Plaintiff tried Petit's claims to a jury. After the close of evidence, Defendants and Plaintiff each moved for judgment as a matter of law pursuant to Rule 50(a). The Court deferred ruling and submitted the case to the jury. On February 25, 2026, the jury returned a verdict substantially in favor of Plaintiff. (Verdict, Dkt. No. 193.) The jury found Hayhoe liable on Plaintiff's causes of action for excessive force, denial of medical care, intentional infliction of emotional distress, and battery by a peace officer. (*Id.* at 1, 2, 3, 5.) The jury found Glover liable for battery by a peace officer. (*Id.* at 3.) Finally, the jury found neither Hayhoe nor Glover liable for violation of California's Bane Act. (*Id.* at 4.) The jury awarded Plaintiff $1,500,000 for Petit's physical pain and suffering, and $1,500,000 for Petit's mental and emotional pain and suffering. (*Id.* at 6.) Thereafter, the Court denied both motions for judgment as a matter of law and entered judgment consistent with the verdict. (Order Den., Dkt. No. 197; J., Dkt. No. 199.)

Defendants now renew their motion for judgment as a matter of law pursuant to Rule 50(b) and move for a new trial on damages or remittitur pursuant to Rule 59(a). (JMOL 1–2; MNT 1–2.)

## III. MOTION FOR JUDGMENT AS A MATTER OF LAW—RULE 50(b)

To succeed on a renewed motion for judgment as a matter of law under Rule 50(b), the moving party must: (1) have raised the issues in its pre-verdict Rule 50(a) motion; and (2) demonstrate that there is "no legally sufficient basis for a reasonable jury" to have found in the non-moving party's favor. *Winarto v. Toshiba*

*Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1081 (9th Cir. 2009) (discussing the procedural requirement for a Rule 50(a) pre-verdict motion). The issues raised in the pre-verdict motion must be specific enough to notify the court and the opposing party of the underlying issue. *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990). Thus, where a party did not raise grounds in a pre-verdict Rule 50(a) motion, a court may not grant judgment as a matter of law on that basis. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

In ruling on a Rule 50(b) motion, judgment as a matter of law is appropriate "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) ("A court should render judgment as a matter of law when . . . there is no legally sufficient evidentiary basis for a reasonable jury to find for the prevailing party on that issue." (citation modified)). However, "[a] jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba*, 743 F.3d at 1242. "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009).

The standard under Rule 50(b) mirrors that of summary judgment in that, while the court must scrutinize the entire evidentiary record, it may not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150. The court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. Thus, "when two sets of inferences find support in the record, the inferences that support the jury's verdict of course win the day." *Winarto*, 274 F.3d at 1287.

Defendants seek judgment as a matter of law on each claim adjudged against them. They argue Officer Defendants are entitled to qualified immunity on the § 1983 claims and the trial evidence is inadequate to support the verdict on all claims. (JMOL 3–15.)

**A. Denial of Medical Care under § 1983**

Defendants contend the denial of medical care claim fails against Hayhoe because he is entitled to qualified immunity and because the evidence is insufficient to support it. (JMOL 3–5.) However, in their Rule 50(a) motion, Defendants did not assert qualified immunity as to the denial of medical care claim. (*See* Defs.' Mot. 50(a) JMOL 6–8 (arguing only insufficiency of evidence as to denial of medical care claim), 10–14 (arguing qualified immunity only as to excessive force claim), Dkt. No. 165.) As such, they may not raise qualified immunity on this claim here. *See E.E.O.C.*, 581 F.3d at 961 ("A party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." (citation modified)).

In contrast, Defendants raised insufficiency of evidence in their Rule 50(a) motion, so they may properly assert it again here. *Id.* Defendants argue the evidence demonstrates that Hayhoe did not violate Petit's constitutional rights by waiting four minutes to request paramedics and no evidence suggests the delay worsened Petit's injuries. (JMOL 3–5.)

To recover on a claim for failure to summon medical care, Plaintiff must prove the following elements: (1) Hayhoe "knew or should have known of Jermaine Petit's immediate need for medical care"; (2) Hayhoe "unreasonably delayed, interfered with, or obstructed the provision of medical care to Mr. Petit"; and (3) "the delay, interference, or obstruction was a cause of injury, damage, loss, or harm to Mr. Petit." (Jury Instr. 22, Dkt. No. 168.) Defendants concede that Plaintiff proved the first element, but contend no evidence supports the second and third. (JMOL 3.)

To begin, Defendants argue that Hayhoe's four-minute delay was objectively reasonable because officers believed Petit was armed and they needed to secure the scene before calling for medical assistance. (JMOL 4.) However, the jury heard evidence from which they could conclude that it was not reasonable for officers to perceive the object as a gun or Petit as posing a threat. They heard testimony from Glover's partner, who saw the object briefly and said "It's not a gun, bro." (Trial Tr. 208:3–4.) The jury also heard testimony from Plaintiff's police practices expert Richard Bryce, who testified that a reasonable officer in Hayhoe's position would not have thought the object was a gun. (Trial Tr. 506–07.) Thus, the jury could reasonably infer that Petit did not pose a threat and thus Hayhoe's rationale for the four-minute delay, that Petit "was not safe to approach," was unreasonable. (Trial Tr. 324:6–8.)

Additionally, the jury heard testimony that a reasonable officer in Hayhoe's position would have called for paramedics immediately, not after the scene was secured, so that medical assistance could be on scene to render treatment as soon as any threat was cleared. (Trial Tr. 557.) Almost immediately upon pulling the trigger, Hayhoe knew that he had shot and severely injured Petit, and that Petit required urgent medical attention. (Trial Tr. 321, 323; Exs. 1, 5 ("Body Worn Videos" or "BWV").) Yet, rather than call for paramedics while he coordinated the "tactical situation," so that paramedics could be on their way while officers secured the scene, (Trial Tr. 323), Hayhoe delayed that call for medical assistance for four minutes, (Trial Tr. 322–24). By postponing the call, Hayhoe extended the delay because the paramedics required additional time to reach the scene once summoned. (Trial Tr. 322.) Thus, the jury could reasonably infer that Hayhoe's failure to summon medical assistance as soon as he became aware it was needed unreasonably delayed necessary medical care.

Next, Defendants argue that Plaintiff did not present any evidence that the delay in receiving medical care exacerbated Petit's injuries. (JMOL 3–4.) Defendants overlook the video evidence and the testimony of Plaintiff's expert Dr. Bennet Omalu. The video evidence clearly shows Petit bleeding profusely in the street. (BWV.)

Dr. Omalu testified that Petit lost significant amounts of blood and required multiple transfusions. (Trial Tr. 698–99.) The jury was entitled to infer from this evidence that, had Petit received medical attention sooner, he may have lost less blood and thus required fewer transfusions. Dr. Omalu also testified that significant blood loss poses a risk of brain damage from lack of oxygen to the brain, and "every minute wasted" increases that risk. (Trial Tr. 618.) From this, the jury could reasonably infer that delay increased Petit's blood loss and risk of brain damage.

In sum, Plaintiff presented substantial evidence from which the jury could reasonably conclude that Hayhoe "unreasonably delayed, interfered with, or obstructed" the provision of medical care to Petit, and that this delay or obstruction exacerbated Petit's injuries. Therefore, the jury could reasonably conclude that Hayhoe violated Petit's constitutional right to medical assistance.

**B. Excessive Force under § 1983**

Defendants ask the Court to revisit its previous ruling and find that qualified immunity insulates Officer Defendants on the excessive force claim. (JMOL 7–15; Order Den. Mot. Summ. J. 8–14 (denying qualified immunity on excessive force claim).) They argue the evidence shows that Officer Defendants' use of force was objectively reasonable and their conduct did not violate a clearly established right. (JMOL 7–15.)

*1. Constitutional Violation*

First, Defendants argue that the evidence demonstrates Officer Defendants' force was reasonable as a matter of law. (*Id.* at 11–13.) "An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Courts assess reasonableness using the *Graham* factors, considering (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* These factors are not exclusive and are considered under "the totality of the circumstances" to determine "whether the severity of force applied was balanced by the need for such force." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). For purposes of a renewed judgment as a matter of law, where a "jury has found (with reasonable support in the evidence) a constitutional violation by a police officer, courts must view the jury's verdict as sufficient to deny [the police officer] qualified immunity on the first prong of the analysis." *Estate of Aguirre v. County of Riverside*, 131 F.4th 702, 707 (9th Cir. 2025) (citation modified).

Here, the jury found that Officer Defendants violated Petit's right to be free from excessive force. (Verdict 1–2.) This verdict is sufficient to deny Officer Defendants "qualified immunity on the first prong of the analysis" so long as the jury had "reasonable support in the evidence." *Estate of Aguirre*, 131 F.4th at 707. And the jury did indeed have reasonable support in the evidence: Petit was unarmed, posed no imminent harm to the police officers, was committing no crime, and was walking away from the confrontation. (*See, e.g.*, Trial Tr. 193, 197, 210, 286, 293, 298.) Despite these facts, Officer Defendants shot him three times, causing him significant injuries. (Trial Tr. 238, 312–15.)

Thus, the jury had reasonable support in the evidence to find that Officer Defendants' use of force was excessive and violated Petit's constitutional rights.[3]

[3] Although Defendants include "Assault/Battery" in a heading, (JMOL 11), they do not develop any argument specific to that claim, (*see generally* JMOL). To the extent Defendants mean to assert that Plaintiff's assault/battery claim fails because Officer Defendants' conduct was objectively reasonable, this argument fails for the same reason it fails on the excessive force claim: the jury had reasonable support in the evidence to find Officer Defendants' use of force objectively unreasonable.

*2. Clearly Established*

Next, Defendants argue no clearly established law put them on notice that their conduct was unlawful. (JMOL 7–11.) "Assessing qualified immunity after a jury verdict turns on the second, 'clearly established' prong, which requires deference to the jury's view of the facts." *Estate of Aguirre*, 131 F.4th at 707. A right is "clearly established" when the law relating to that right "was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Court previously denied Officer Defendants qualified immunity on the excessive force claim, finding "[d]ecisions well before this shooting put it beyond debate that use of deadly force in these circumstances, where the suspect does not directly threaten the officer or others and just continues walking away," is unconstitutional. (Order Den. Mot. Summ. J. 12–13 (collecting cases).) Defendants offer nothing new, and the Court's analysis has not changed. Viewing the evidence in the light most favorable to Plaintiff, "every reasonable official would understand" that the circumstances did not justify deadly force and that shooting Petit was unlawful. *Wesby*, 583 U.S. at 63.

In sum, the evidence supports the jury's finding that Officer Defendants' use of deadly force was excessive and violated Petit's constitutional rights. Additionally, the Court again finds as a matter of law that this right was clearly established at the time of the shooting. Therefore, Officer Defendants are not entitled to qualified immunity on the excessive force claim.

**C. Intentional Infliction of Emotional Distress**

Finally, Defendants contend the IIED claim fails because the evidence is insufficient to support it. (JMOL 5–7.) To prove IIED, Plaintiff must show: "(1) extreme and outrageous conduct by [Defendants] with the intention of causing, or

reckless disregard of the probability of causing, emotional distress; (2) [Petit's] suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [Defendant's] outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); (*see* Jury Instr. 26).

Defendants first contend the evidence establishes that their conduct was objectively reasonable, and not extreme or outrageous. (JMOL 6.) "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. at 1050–51 (citation modified); (*see* Jury Instr. 27). The jury had sufficient evidence to conclude that Officer Defendants' conduct was extreme and outrageous. Viewing the evidence in Plaintiff's favor, the jury could reasonably conclude that: no reasonable officer in Officer Defendants' positions would believe Petit was armed, (Trial Tr. 506–07); Hayhoe shot Petit twice from inside a moving patrol vehicle, (Trial Tr. 312–15); and Glover shot Petit once in the back as Petit fell to the ground from Hayhoe's shots, (Trial Tr. 218–20). It is outrageous to shoot an unarmed person from inside a moving vehicle. It is outrageous to shoot an unarmed person in the back. These actions are not tolerated in a civilized community. Thus, the jury reasonably found that Officer Defendants' conduct was extreme and outrageous.

Defendants next contend that Plaintiff offered no evidence that Petit suffered severe emotional distress. (JMOL 6–7.) "Severe emotional distress" is distress so substantial "that no reasonable person in a civilized society should be expected to bear it." (Jury Instr. 28.) "Distress" is "customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff" through an individual's conduct and others' observations. *Carey v. Piphus*, 435 U.S. 247, 263–64, n.20 (1978). Here, the jury viewed video and images showing Petit being shot in the face and the back. (BWV; Ex. 4 ("BWV Stills").) They saw him on the ground, bleeding profusely and moaning. (BWV; BWV Stills.) They heard testimony that one of the bullets "extensively fractured" Petit's mandible, "causing the most extensive types of

fractures" that can be suffered. (Trial Tr. 606–07.) They heard that doctors put metal hardware in Petit's mouth and left one of the bullets in his body. (Trial Tr. 570–71, 606–07.) And they heard from Plaintiff her observations that Petit appeared to be in pain and to have difficulty communicating because of his injuries. (Trial Tr. 570–71.) Although all of this is direct evidence of Petit's physical suffering, it is also evidence from which the jury could reasonably infer that Petit suffered severe emotional distress as a result of the shooting.

Thus, Plaintiff presented substantial evidence from which the jury could reasonably reach a verdict in favor of Plaintiff on the IIED claim.

### D. Conclusion—Renewed JMOL—Rule 50(b)

Having considered the entire record and construed reasonable inferences in favor of the verdict and judgment, and without making credibility determinations or weighing the evidence, the Court finds substantial evidence exists to support the jury's findings in the verdict, as discussed above. Further, the Court concludes Officer Defendants are not entitled to qualified immunity on the excessive force claim. Accordingly, the Court **DENIES** Defendants' renewed Rule 50(b) motion for judgment as a matter of law.

## IV. MOTION FOR A NEW TRIAL—RULE 59(a)

Defendants also move pursuant to Rule 59(a) for a new trial on damages or alternatively remittitur of the $1.5 million award for emotional damages. (MNT 1–2.)

Rule 59(a) governs motions for a new trial. *Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 946 (C.D. Cal. 2015). Under Rule 59(a), a court may grant a new trial "on all or part of the issues, 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Id.* (quoting Fed. R. Civ. P. 59(a)). This includes a verdict that is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001). To establish a miscarriage of justice on the basis of

legal error, the error must have substantially prejudiced a party. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

Unlike a Rule 50(b) motion, a motion for a new trial is not limited by a pre-verdict Rule 50(a) motion. *Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1359 (Fed. Cir. 2014). Additionally, "[t]he district court can weigh the evidence and assess the credibility of the witnesses," and need not "view the trial evidence in the light most favorable to the verdict." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). Still, "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage*, 251 F.3d at 819. Indeed, it is the court's duty "to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence." *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010). Ultimately, "[t]he grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy*, 914 F.2d at 186 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

Defendants argue a new trial on damages is warranted based on two errors. (MNT 2–9.) First, they argue the Court erred by excluding evidence of Petit's historical, pre-shooting drug use. (*Id.* at 2–5.) Second, they argue the Court erred by including non-physical damages in the jury instructions and verdict form. (*Id.* at 5–9.)

**A. Evidentiary Ruling—Historical Drug Use**

Defendants first argue the Court erred by granting in part Plaintiff's third motion in limine ("MIL") and excluding evidence of Petit's pre-shooting drug use. (MNT 2–5.) They contend this error resulted in an excessive damages award warranting a new trial on damages. (*Id.* at 5.)

An erroneous evidentiary ruling may provide grounds for a new trial where the party preserved the objection and "the ruling substantially prejudiced a party." *Ruvalcaba*, 64 F.3d at 1328; Fed. R. Evid. 103(a)(2); Fed. R. Civ. P. 61. "The district court is accorded broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Ruvalcaba*,

64 F.3d at 1328. Where a party fails to preserve an evidentiary objection, the "error is forfeited and is reviewable only for plain error." *Barnard v. Theobald*, 532 F. App'x 716, 718 (9th Cir. 2013).

A plaintiff's history of drug or alcohol abuse can be probative of damages. *See, e.g.*, *Luna v. County of Los Angeles*, No. 2:07-cv-04715-SJO (JCx), 2008 WL 11410093, at *5 (C.D. Cal. Sept. 25, 2008) (citing out-of-circuit cases) ("By claiming damages on account of emotional distress, a plaintiff makes evidence of 'other probable causes' of such distress relevant to the litigation."). However, such evidence is also highly prejudicial. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1017 (9th Cir. 1995). Thus, courts must be cautious to admit drug evidence "only to the degree that the testimony is connected up with" the claimed damages. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016).

Defendants did not sufficiently connect the probative value of Petit's pre-shooting drug use to Plaintiff's post-shooting damages so as to overcome the high degree of prejudice inherent in the evidence. In their opposition to Plaintiff's third MIL, Defendants indicated only generally that "evidence of Mr. Petit's prior history of methamphetamine usage is highly relevant" to "the damages which Plaintiff seeks to recover." (Defs. Opp'n PMIL3 at 1–2, Dkt. No. 139.)[4] But they did not develop the assertion in the MIL opposition, at the MIL hearing, or in any of the numerous conferences with the Court outside of the presence of the jury during trial. (*See generally id.*; *see, e.g.*, Trial Tr. 117–49.) Indeed, despite a lengthy colloquy about the potential relevance of pre-shooting drug evidence, (Trial Tr. 117–49), defense counsel for the City was the sole voice supporting its admission, and he responded on topic only twice, (Trial Tr. 133 ("[T]he drug history is naturally going to have to come in because it sets a basis or a foundation as to how do you evaluate him after the incident versus

[4] Defendants also argued that Petit's pre-shooting drug use would be relevant to a claim that Petit died due to his gunshot injuries, a claim which Plaintiff did not assert. (Defs. Opp'n PMIL3 at 1–2.)

prior to the incident."), 147 ("[T]he argument the defense is making is that his history is related to where is he post-shooting.").)

Neither comment adequately "connected up" the pre-shooting drug use evidence to Plaintiff's post-shooting damages for Petit's pain and suffering. Nor did Defendants identify any evidence they would introduce to establish Petit's quality of life pre-shooting, beyond the mere fact of his prior drug use. Without more, "[i]t is hard to see how [pre-shooting drug use evidence] was relevant even to damages." *Estate of Diaz*, 840 F.3d at 601. Consequently, the Court determined to "wait and see" how the evidence developed. (Trial Tr. 149.) As Plaintiff carefully circumscribed the scope of her case in chief by not opening the door to Petit's pre-shooting life, any minimal relevance the pre-shooting drug use evidence may have had was further reduced. As such, evidence of pre-shooting drug use was substantially more prejudicial than probative and was properly excluded.

Defendants now contend this ruling was error. However, they did not adequately preserve the objection as to historical drug use evidence because they failed to inform the Court of "its substance by an offer of proof." Fed. R. Evid. 103(a)(2). Therefore, any "error is forfeited and is reviewable only for plain error," *Barnard*, 532 F. App'x at 718, which Defendants fail to establish. Even assuming City defense counsel's two comments were sufficient to preserve the objection, the Court did not err in excluding evidence of pre-shooting drug use and Defendants have not shown they were "substantially prejudiced." *Ruvalcaba*, 64 F.3d at 1328.

**B. Jury Instructions & Verdict Form—Non-physical Damages**

Defendants also argue the Court erred by including non-physical damages in the jury instructions and verdict form, resulting in an excessive damages award that warrants a new trial on damages or remittitur. (MNT 5–9.)

Rule 51 controls post-trial objections to jury instructions and the form of the verdict. Fed. R. Civ. P. 51(c); *Ayuyu v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir. 2002). "A party who objects to an instruction or the failure to give an instruction must do so

on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). To be timely, a party must object (1) "on the record and out of the jury's hearing before the instructions and arguments are delivered," or (2) if "a party was not informed of an instruction or action on a request before" the provided opportunity, then "promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2), (b)(2). Objections that a party fails to raise "until after the jury has rendered its verdict and was discharged" are "waived." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001).

*1. Jury Instructions*

Defendants argue the Court erred by including non-physical damages in the jury instructions because, first, Plaintiff did not introduce evidence of Petit's non-physical damages and, second, Defendants were not permitted to introduce evidence of his pre-shooting drug use. (MNT 5–6.) However, Defendants waived any objection to this jury instruction by failing to timely raise it. *Yeti*, 259 F.3d at 1109. Near the close of evidence, the Court conferred with the parties and provided an opportunity for them to review and object to the jury instructions on the record. (Trial Tr. 721–34.) Although Defendants objected to unrelated portions of the jury instructions during the conference, they did not challenge the inclusion of the instruction on non-physical damages. (*See generally id.*) Nor did they raise the objection at a later time, before "the instructions and arguments [we]re delivered." Fed. R. Civ. Proc. 51(b)(2), (c)(2)(A); (*see generally* Trial Tr. 825–29 (objecting to non-physical damages question on verdict form, but not to jury instruction). Thus, this objection is waived, or subject to plain error review at the court's discretion. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1018 (9th Cir. 2014) (en banc) ("[T]he decision whether to correct a plain error under [Rule] 51(d)(2) is discretionary.").

The Court is not inclined to exercise its discretion here. Even if it were, Defendants fail to show the challenged instruction constituted any sort of error, let alone plain error. In the Ninth Circuit, courts apply the plain error standard of review in civil

as well as criminal actions, considering whether (1) there was an error; (2) the error was obvious; (3) the error affected substantial rights," and (4) the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1018–19. As "the stakes are lower in the civil context" the application of the plain error standard is more stringent, recognizing "only those errors that reach the pinnacle of fault" under the standard, and considering also "the costs of correcting an error." *Id.*; *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018) ("Rare is the case where the district court's errors are so grave as to seriously impair the fairness, integrity, or public reputation of judicial proceedings." (citation modified)).

As discussed above, Plaintiff introduced evidence from which the jury could reasonably find Petit suffered non-physical harm, *see supra* Section III.B.C, and Defendants argued against Plaintiff's damages evidence to the jury using this instruction and obtained a damages verdict far less than Plaintiff had proposed. As such, Defendants fail to show that the challenged instruction constituted any sort of error, let alone error that reaches "the pinnacle of fault." *C.B.*, 769 F.3d at 1018; *see Landes Const. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1373 (9th Cir. 1987) (finding possible error harmless where party successfully argued for reduced damages).

*2. Verdict Form*

Defendants also argue the Court erred by including non-physical damages in the verdict form, raising the same arguments as above. (MNT 5–6.) As Defendants did preserve this objection, (Trial Tr. 827–28), the Court reviews under the harmless error standard, *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 761 F. App'x 714, 717 (9th Cir. 2019). Under this standard, "unless justice requires otherwise, no error . . . by the court or a party is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61 (citation modified). "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." *Id.*

Defendants challenge to the verdict form fails for the same reason as its challenge to the damages instruction: Plaintiffs introduced evidence sufficient to warrant inclusion of non-physical damages and Defendants successfully argued against such damages. Accordingly, Defendants fail to show that inclusion of non-physical damages in the verdict form affected its substantial rights.

**C. Conclusion—Motion for a New Trial—Rule 59(a)**

In sum, Defendants fail to establish that a new trial is warranted based on either the exclusion of pre-shooting drug use evidence or the inclusion of non-physical damages in the jury instructions and verdict form. Thus, having reviewed the entire record, weighed the evidence, and assessed witness credibility pursuant to Rule 59(a), the Court **DENIES** Defendants' motion for a new trial. For the same reasons, the Court finds no grounds for Defendants' alternative request for remittitur, which is also **DENIED**.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motions for Judgment as a Matter of Law and a New Trial. (Dkt. Nos. 206, 207.)

**IT IS SO ORDERED.**

October 22, 2026



**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**