# EXHIBIT 4

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ASHLYN PETIT,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES et al.,<br>Defendants. | Case № 2:23-cv-00789-ODW (PVCx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [203]** |

## I. INTRODUCTION

Following a six-day trial, a jury found Sergeant Brett Hayhoe and Officer Daryl Glover liable for civil rights violations against Jermaine Petit ("Petit"), stemming from their use of lethal force. (Mot. Att'ys' Fees ("Motion" or "Mot.") 1, Dkt. No. 208; Opp'n Mot. Fees ("Opp'n") 1, Dkt. No. 218.) The jury awarded Plaintiff Ashlyn Petit, Jermaine Petit's successor-in-interest, $3,000,000 in damages, and the Court entered judgment consistent with this award. (Verdict, Dkt. No. 193; J., Dkt. No. 199.) Plaintiff now moves for attorneys' fees. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion.[1]

[1]Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The Court assumes the parties' familiarity with the case history and incorporates by reference the background from the Court's order denying Defendants' post-trial motions. (Order Den. Renewed Mot. JMOL & Mot. New Trial ("Order Post Trial Mots.") 2–3, Dkt No. 224.)

Plaintiff asserted causes of action against Defendants City of Los Angeles, Hayhoe, and Glover (Hayhoe and Glover collectively, "Officer Defendants"), (1) pursuant to 42 U.S.C. § 1983 for excessive force, municipal liability, and denial of medical care; (2) pursuant to California law for battery, negligence, violation of the Bane Act, and intentional infliction of emotional distress ("IIED"); and (3) for violation of the Americans with Disabilities Act ("ADA"). (First Am. Compl. ¶¶ 24–143, Dkt. No. 62.) Prior to trial, Plaintiff dismissed the ADA, municipal liability, and negligence claims. (Orders Grant Stips. Dismiss, Dkt. Nos. 82, 153.)

On February 25, 2026, following a six-day trial, the jury returned a verdict substantially in favor of Plaintiff. (Verdict.) The jury found Hayhoe liable on Plaintiff's causes of action for excessive force, denial of medical care, intentional infliction of emotional distress, and battery by a peace officer. (*Id.* at 1, 2, 3, 5.) The jury found Glover liable for battery by a peace officer. (*Id.* at 3.) Finally, the jury found neither Hayhoe nor Glover liable for violation of California's Bane Act. (*Id.* at 4.) The jury awarded Plaintiff $1,500,000 for Petit's physical pain and suffering, and $1,500,000 for Petit's mental and emotional pain and suffering. (*Id.* at 6.) The Court subsequently denied Defendants' post-trial motions for judgment as a matter of law and a new trial. (Order Post Trial Mots. 1, 11, 17.)

Plaintiff now moves for attorneys' fees pursuant to 42 U.S.C. § 1988, in the amount of $2,304,220. (Mot. 1.)

## III. LEGAL STANDARD

Section 1988 authorizes a district court "to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 429

(1983) (citing 42 U.S.C. § 1988). The purpose of § 1988 is to encourage "private enforcement of civil rights legislation [that] relies on the availability of fee awards." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citation modified).

To determine a reasonable attorney fee under § 1988, federal courts employ the "lodestar method." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Under the lodestar method, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" by the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust it based on a number of factors.[2] *Id.* "There is a strong presumption that [the lodestar figure] is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *see also Edmo*, 97 F.4th at 1168 (holding that lodestar figures should be adjusted only in "rare" and "exceptional" cases). The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

---

[2] These factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*

## IV. DISCUSSION

Plaintiff seeks the following fees:[3]

| Attorney & Staff | Lodestar Hours | Lodestar Rate | Lodestar Total[4] |
|---|---|---|---|
| Dale K. Galipo | 400.1 | $1,500 | $600,150 |
| Rodney S. Diggs | 1,392.00 | $1,250 | $1,740,000 |
| Renee V. Masongsong | 287.55 | $900 | $258,795 |
| Brandon R. Tanter | 404.00 | $650 | $262,600 |
| Alice D. Williams (Paralegal) | 432.75 | $450 | $194,737.50 |
| Darci Gilbert (L. Asst.) | 40.9 | $250 | $10,225 |
| Le Chaune Metoyer (L. Sec'y) | 112 | $150 | $16,800 |
| Alexandria Feather (L. Asst.) | 78 | $150 | $11,700 |
| **TOTAL** | **2,341.55** | | **$2,304,220** |

(Mot. 16.) Defendants argue Plaintiff's requested fees should be reduced because Plaintiff's hourly rates and hours expended are unreasonable, and because Plaintiff achieved only partial success. (Opp'n 2–3.)

### A. Hourly Rate

Defendants contend Plaintiff's requested hourly rates are unreasonable as to attorneys Diggs ($1,250), Masongsong ($900), and Tanter ($650), as well as paralegal Williams ($450), and legal staff Gilbert ($250), Metoyer ($150), and Feather ($150). (Opp'n 5–7.) Defendants do not challenge the requested rate for attorney Galipo ($1,500). (*See generally* Opp'n.)

---

[3](*See* Decl. Dale K. Galipo ISO Mot. Fees ("DKG Decl.") ¶¶ 2, 29, 32, Dkt. No. 203-2; *Id.* Ex. 1 ("DKG Time Record") 1–4, Dkt. No. 203-3; Decl. Renee V. Masongsong ISO Mot. Fees ("RVM Decl.") ¶¶ 2, 4, 17, Dkt. No. 203-14; *id.* Ex. 1 ("RVM Time Record") 1–8, Dkt. No. 203-15; Decl. Darci Gilbert ISO Mot. Fees ("DG Decl.") ¶ 7, Dkt. No. 203-19; *id.* Ex. A ("DG Time Record") 1–6, Dkt. No. 203-19; Decl. Rodney S. Diggs ISO Mot. Fees ("RSD Decl.") ¶¶ 21–22, 28, 33, 41, Dkt. No. 205; *id.* Ex. A ("Diggs, Tanter, Williams, Metoyer, & Feather Time Records" or "IMW Time Record") 18–56, Dkt. No. 205.)

[4] The Court notes that, after even a cursory review of Plaintiff's proposed lodestar table reproduced here, the lodestar hours and lodestar totals do not add up to the totals listed at the bottom of the chart. Additionally, some counsel's submitted time sheet entries do not add up to the lodestar hours per biller listed in the chart. (Mot. 16; *see generally* IMW Time Record.) Accordingly, the Court tallies the time entries itself, as discussed below.

To determine whether hourly rates are reasonable under § 1988, fees "are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813–14 (9th Cir. 2005) (citation modified). "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407. When a plaintiff fails to meet its burden, the Court may rely on its "own knowledge of customary rates" and its "familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

*1. Renee V. Masongsong*

Plaintiff requests an hourly rate of $900 for Masongsong. (Mot. 10.) Masongsong has fifteen years' experience practicing law and specializes in civil rights litigation. (RVM Decl. ¶¶ 6–7.) She submits evidence of prior Central District of California orders awarding her $700 and $800 per hour in 2024 for work performed in 2022 and 2023. (RVM Decl. Exs. 3–4, Dkt. Nos. 203-17 to 203-18.) Plaintiff further submits the declaration of Carol Sobel, on whose expertise courts in the Ninth Circuit and Central District routinely rely to determine reasonable attorney rates. (Decl. Carol A. Sobel ISO Mot. ("Sobel Decl.") ¶ 14, Dkt. No. 204); *see, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 912–13, 917–18 (9th Cir. 2009). In her declaration, Sobel extensively addresses the going market rate for attorneys, relying on fee awards in other cases to justify the reasonableness of Masongsong's $900 hourly rate. (Sobel Decl. ¶¶ 37, 39, 43, 46–48.) Specifically, Sobel compares Masongsong with an attorney with one year less experience and cites a 2024 fee award in this district which found a rate of $915 per hour reasonable. (*Id.* at ¶¶ 37, 39.)

As Plaintiff provides sufficient evidence to support Masongsong's requested rate, the burden shifts to Defendants to present countervailing evidence. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). Defendants argue the Sobel declaration is "largely inapposite" because it cites cases from large firms and cases that do not involve excessive force. (Opp'n 7.) However, the Ninth Circuit has explained that reasonable rates for civil rights cases are not based solely on rates in comparable civil rights cases. Instead, the comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (citation modified). Thus, Sobel's declaration is relevant because its analysis is not limited to excessive force cases or similar-sized firms.

Plaintiff's evidence shows that Masongsong's requested rate aligns with those of attorneys with commensurate experience, skill, and reputation in Los Angeles for complex litigation. Thus, the Court finds Masongsong's requested rate of $900 per hour reasonable.

2. *Rodney S. Diggs & Brandon R. Tanter*

Turning to Diggs, Plaintiff requests an hourly rate of $1,250 for him. (Mot. 10.) Diggs has seventeen years of experience and is the president, managing partner, and a named partner at Ivie McNeill Wyatt Purcell & Diggs ("IMW"). (RSD Decl. ¶ 1.) Diggs has obtained several multimillion-dollar verdicts and has received numerous professional honors. (*Id.* ¶¶ 8, 10.) Plaintiff provides evidence regarding the market rate for an attorney at Diggs's level in Los Angeles. (Sobel Decl. Ex. 13 ("Real Rate Report") 20, Dkt. No. 204-13); *see also LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 626 (9th Cir. 2026) (finding the district court abused its discretion when it refused to base its lodestar calculation on the Real Rate Report rate). According to the Real Rate Report, the median hourly rate for a litigation partner in Los Angeles is $875, with the third quartile at $1,334. (Real Rate Report 20.) Diggs was awarded approximately the median rate six years ago. (*See* RSD Decl. ¶ 13.)

Contrary to Defendants' contention that Diggs' supports his requested rate with only his own declaration, (Opp'n 5), Sobel's declaration and exhibits provide additional support, (Real Rate Report 20). Accounting for a reasonable increase in rates over time, together with his continued demonstration of experience and skill, the Court finds Diggs's requested rate of $1,250 per hour reasonable.

The Court finds similarly as to Tanter. Plaintiff requests an hourly rate of $650 for him. (Mot. 10.) Tanter has three years of experience and concentrates on civil rights and employment litigation. (RSD Decl. ¶ 25.) The median rate for an attorney with three to seven years of experience in the Los Angeles market is $796. (*See* Real Rate Report 68.) Defendants' assertion that Diggs's declaration provides Tanter's sole support fails for the same reason as above; Sobel's declaration and supporting evidence also lends its weight to the reasonableness of Tanter's rate. Thus, the Court finds Tanter's requested rate of $650 per hour reasonable.

*3. Williams, Gilbert, Metoyer, & Feather*

Turning to the attorneys' support staff, Plaintiff seeks $450 per hour for Williams. (Mot 16.) Williams has eight years of experience as a paralegal. (Reply ISO Mot. ("Reply") 6, Dkt. No. 219; *see also* RSD Decl. ¶¶ 29–33.) However, Plaintiff offers no legal authority for the conclusory statement that courts in the Central District "routinely approve paralegal rates in the $300 to $400 per hour range." (Reply 6.) Instead, Plaintiff relies on *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1204 (C.D. Cal. 2022), in which the court approved a $285 rate for a law clerk. (Reply 6.) Thus, Plaintiff's own support appears to warrant a lower rate than the $450 requested. Defendants, for their part, similarly fail to provide any legal basis for finding Williams's hourly rate unreasonable or for supporting their own proposal of $250 per hour. Accordingly, the Court relies on its own knowledge. *Ingram*, 647 F.3d at 928; *see also Energizer Brands, LLC v. Lumintop Tech. Co.*, No. 2:19-cv-04360-AB (ASx), 2020 WL 1279456, at *3 (C.D. Cal. Feb. 3, 2020) (holding that a rate of $276.25 for paralegal with over twenty-eight years of litigation experience was

reasonable in a 2020 case). In *Rahman*, the law clerk had seven years of experience, comparable to Williams's eight. Relying on the rate from *Rahman* ($285) and adjusting for inflation in Los Angeles-based legal services (5% annually), (Sobel Decl. ¶ 28), the Court concludes that a rate of $350 per hour is reasonable for Williams.

Lastly, regarding Gilbert, Metoyer, and Feather, neither party provides reasoned findings on market rates for legal assistants. Therefore, the Court relies on its own knowledge. *Ingram*, 647 F.3d at 928. As to Gilbert, the Court finds *French v. City of Los Angeles* persuasive. No. 5:20-cv-00416-JGB (SPx), 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022) (finding $200 per hour was a reasonable rate for a legal assistant with fifteen years of experience in Los Angeles in 2022). Thus, for Gilbert, a legal assistant with twenty-three years of experience, (Gilbert Decl. ¶ 2), $250 per hour is a reasonable rate. Likewise, the Court will not adjust Metoyer's and Feather's rates, as they are well within reason for legal assistants who have invested substantial time in this case. *See French*, 2022 WL 2189649, at *19; (RSD Decl. ¶¶ 34–41). Thus, the Court finds the rate of $250 per hour reasonable for Gilbert, and $150 per hour reasonable for Metoyer and Feather.

In sum, the Court adjusts Williams's rate to $350 and finds all other requested rates reasonable.

**B. Hours Expended**

Defendants next argue that many of Plaintiff's counsel's time entries are erroneous, duplicative, or excessive. (Opp'n 7–8.) Defendants do not challenge the reasonableness of hours attributed to Plaintiff's legal support staff. (*Compare* Opp'n 14, *with* Mot. 16.)

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397. Once that burden is met, the party opposing the fee award must "come up with specific reasons for reducing the fee request that the

district court finds persuasive." *Moreno*, 534 F.3d at 1116. If the opposing party cannot, the court "should normally grant the award in full, or with no more than a haircut." *Id.*

Courts should generally "defer to the winning lawyer's professional judgment as to how much time" they were "required to spend on the case; after all, [they] won, and might not have, had [they] been more of a slacker." *Moreno*, 534 F.3d at 1112. Attorneys are "not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees" because "[t]he payoff is too uncertain." *Id.* For instance, "the participation of more than one attorney" in an important case or at a hearing does not automatically "constitute an unnecessary duplication of effort." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986). Nevertheless, "[a] district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) (stating the goal is "not to achieve auditing perfection" and that courts "may take into account their overall sense of a suit").

Plaintiff submits timekeeping records for each of her attorneys and their support staff. Upon review of those records, it is clear that much of the work Defendants label as duplicative is in fact not duplicative. (*See* Decl. Aria J. Bezai ISO Opp'n ("Bezai Decl.") ¶ 4, Ex. A[5] ("Galipo's Challenged Entries" or "GCE") 26–30, Dkt. No. 218.) Specifically, Defendants provide no authority supporting their assertions that an attorney's time entries are duplicative merely because an attorney performed the same task over multiple sittings. (GCE 27–29; *see generally* Opp'n.)

Additionally, Defendants argue that Diggs may not bill for attending trial if another attorney examined the witness, (*see* Bezai Decl. ¶ 5, Ex. B ("Diggs' Challenged Entries" or "DCE") 32–42, Dkt. No. 218), and that Galipo may not bill for preparing a deposition he did not attend, (GCE 27). First, multiple attorneys

---

[5] For exhibits to Bezai's declaration, the Court cites the pagination at the CM/ECF docket header.

preparing for and attending trial is reasonable in "a case as important as this one." *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004) (explaining that an attorney's attendance may be necessary to assist the arguing attorney during proceedings or to observe arguments to inform subsequent litigation strategy); *see also Best W. Int'l, Inc. v. Patel*, No. CV 04-2307-PHX-JAT, 2008 WL 544820, at *4 (D. Ariz. Feb. 26, 2008) ("The [c]ourt finds nothing unreasonable about more than one attorney preparing for, and participating in, [d]efendants' trial."). Defendants likewise had multiple attorneys at trial, so the Court is puzzled by Defendants' challenge to Plaintiff's identical practice.

Second, Defendants argue that Galipo erroneously billed for time spent assisting in preparing for Dr. Amy Magnusson's deposition because he did not attend. (GCE 28.) Again, it is reasonable for additional attorneys to contribute to such preparation. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 971 (N.D. Cal. 2014) (holding multiple attorneys preparing for the same deposition is not unreasonable because "it is often the case that one person cannot have a complete command of all relevant facts or areas on which a witness may testify"). And Galipo did not bill for attending the deposition because, as Defendants note, he did not attend. (Opp'n 8.) Instead, an attorney with lower billing rates took the deposition, thereby reducing the deposition billing expense. (RVM Time Records 4); *see Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) ("The trade-off for the higher billing rate that greater experience and specialized knowledge justifies is that more senior attorneys are expected to delegate routine tasks to others with lower billing rates.").

The Ninth Circuit has rejected the notion that multiple attorneys working together to prepare a case necessarily constitutes duplicative billing. *Democratic Party of Wash. State*, 388 F.3d at 1286. Rather, it reflects the thoroughness and diligence of Plaintiff's counsel, which facilitated a prevailing verdict. The Court has

reviewed Defendants' challenges to Plaintiff's hours and does not find the hours Plaintiff's counsel expended to be erroneous, duplicative, or excessive.

However, the Court does find that Diggs, Tanter, and Williams each seek compensation for hours that their billing records do not adequately substantiate. Specifically, Diggs claims an additional 507.75 hours for, generally, "telephone conferences, internal meetings, email correspondence," and the like, (IMW Time Record 36), while Tanter and Williams each claim an additional 150 hours for similarly vague activities, (*id.* at 41, 49). Although these activities could be compensable, Plaintiff provides no corresponding time entries or sufficient detail to establish the reasonableness of the additional bulk hours. As such, the Court excludes them.

Accordingly, the Court reduces Diggs's, Tanter's, and Williams's requested hours to the amounts supported by their itemized billing records, which are 811.25, 254, and 269.75 hours, respectively. Other than those reductions, however, the Court finds Plaintiff's counsel's hours expended reasonable and substantiated.

**C. Complexity**

Defendants also argue the Court should reduce the fee award because the case was not particularly complex, difficult, or undesirable. (Opp'n 8–10.)

Section 1988 reflects Congress's intent to protect civil rights by compensating prevailing plaintiffs' attorneys for all reasonably expended hours, recognizing that vindicated civil rights have non-monetary benefits to society. *See Quesada v. Thomason*, 850 F.2d 537, 541–43 (9th Cir. 1988) (warning that fee reductions in contingent-fee agreement cases would discourage civil-rights litigation and create "undesirable" billing incentives, contrary to § 1988's goals). "[T]he lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award." *United States ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 703, 709 (9th Cir. 2026) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 561 (2010) (Thomas, J., concurring).

The lodestar is presumptively reasonable and appropriately reflects the case's complexity. *See Blum*, 465 U.S. at 898 ("The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel."). Accordingly, the Court declines to reduce the lodestar based on Defendants' assertions that the case was simple. *See Quesada*, 850 F.2d at 539 ("The simplicity of the issues may not be used to decrease a fee award below the amount calculated by the court as a reasonable lodestar fee.").

**D. Partial Success**

Finally, Defendants argue that Plaintiff's fees should be apportioned based on her partial success, as she asserted eight claims in the First Amended Complaint, tried only five of them to a jury, and ultimately prevailed on four of the five. (Opp'n 10–14.)

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. To determine fees in cases of partial success, such as here, courts consider (1) whether the unsuccessful claims were related to the successful claims, and (2) whether the plaintiff achieved a level of success that justifies the hours reasonably expended. *Dang*, 422 F.3d at 812–13).

*1. Relatedness of Claims*

Claims are unrelated if "the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually." *Id.* at 813. The question is disjunctive: "related claims involve a common core of facts or are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Thus, when determining whether claims are related, "the focus is on whether the [unsuccessful and successful] claims arose out of a common course of conduct." *Id.* at 1169. If not, the hours for unsuccessful claims are excludable. *Id.* If the unsuccessful and successful claims are related, or "it is impossible to isolate the truly unrelated claims from those related claims," then the court evaluates the level of success. *Id.* A plaintiff need not receive "all the relief

requested" to show "excellent results warranting the fully compensatory fee." *Dang*, 422 F.3d at 813 (citing *Hensley*, 461 U.S. at 435 n.11). Thus, a prevailing plaintiff may recover fees for unsuccessful litigation efforts that contributed to the ultimate success of related claims. *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

Here, all the claims arose from the "common course of conduct," namely, Officer Defendants' shooting of Petit. *Webb*, 330 F.3d at 1169. Thus, contrary to Defendants' argument, Plaintiff's claims are sufficiently related under *Hensley*'s test. *See also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (finding all claims related because they arose out of a single arrest).

*2. Significance of Overall Relief*

Defendants contend that, if the Court finds the claims related, it should nevertheless reduce Plaintiff's fee award because she achieved only partial success with no meaningful public benefit. (Opp'n 13–14.)

Plaintiff prevailed against both Officer Defendants, and the jury found against Hayhoe on four claims and against Glover on one claim. (*Id.*) Plaintiff asserted eight claims in the First Amended Complaint but abandoned three—municipal liability, ADA, and negligence—before trial. (*Id.* at 12–13.) However, the abandoned claims each related to the underlying incident and were based on a common core of facts. Thus, the time spent on claims for which Plaintiff did not prevail cannot reasonably be separated from the time spent on claims on which Plaintiff prevailed. *See City of Riverside v. Rivera*, 477 U.S. 561, 569–73 (1986) (holding that the district court did not abuse its discretion in awarding attorneys' fees for all time reasonably spent litigating the case, although respondents prevailed on only some claims against only some defendants). For instance, although Plaintiff prevailed on just one claim against Glover, Plaintiff needed to conduct Glover's deposition to prevail on her claims against Hayhoe because Glover was a key witness to the shooting. Further, Plaintiff did not conduct discovery or file motions related to the dismissed municipal liability

and ADA claims, and Plaintiff seeks no fees for those claims. (Reply 10.) Thus, to the extent Plaintiff seeks fees for work on unsuccessful claims, that work was necessary to her victory on the successful claims. Therefore, the Court does not reduce the fee award based on apportionment. *McCown*, 565 F.3d at 1103 ("[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis.").

Lastly, Defendants argue that the result does not confer a meaningful public benefit because Plaintiff obtained no change in policy. (Opp'n 13.) The Supreme Court expressly rejects this argument and recognizes that damages awards in civil rights actions serve the public interest by deterring future constitutional violations, particularly in cases involving individual police misconduct. *Rivera*, 477 U.S. at 574–75. Indeed, courts have found that litigation resulting in a substantial civil rights verdict and fee award can provide a public benefit by deterring future police misconduct. *Herrington v. Sonoma County*, 655 F. Supp. 1111, 1114 (N.D. Cal. 1987). Thus, Plaintiff's failure to expressly seek a policy change does not negate the meaningful public benefit achieved by deterring future constitutional violations.

In sum, the Court finds that Plaintiff's unsuccessful claims were related to her successful claims, and she achieved a degree of success that justifies awarding fees based on the hours reasonably expended.

**E. Lodestar and Total Fee Award**

For the reasons discussed above, the Court finds that Plaintiff has established reasonable attorneys' fees at the rates and hours approved by the Court, as reflected in the lodestar calculation below.

Multiplying the approved hours by the approved rates results in the following:

| Attorney & Staff | Lodestar Hours | Lodestar Rate | Lodestar Total[6] |
|---|---|---|---|
| Dale K. Galipo | 400.1 | $1,500 | $600,150.00 |
| Rodney S. Diggs | 811.25 | $1,250 | $1,014,062.50 |
| Renee V. Masongsong | 287.55 | $900 | $258,795.00 |
| Brandon R. Tanter | 254.00 | $650 | $165,100.00 |
| Alice D. Williams (Paralegal) | 269.75 | $350 | $94,412.50 |
| Darci Gilbert (L. Asst.) | 40.90 | $250 | $10,225.00 |
| Le Chaune Metoyer (L. Sec'y) | 97.50 | $150 | $14,625.00 |
| Alexandria Feather (L. Asst.) | 62 | $150 | $9,300.00 |
| **TOTAL** | **2,223.05** | | **$2,166,670.00** |

Additionally, Plaintiff's counsel is entitled to fees-on-fees, subject to the lodestar reasonableness standard, for the substantial briefing and supporting documents required for this complex motion. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."), *overruled on other grounds*, *Berry v. Air Force Cent. Welfare Fund*, 115 F.4th 948 (9th Cir. 2024); (Mot. 15). The above totals reflect Plaintiff's fees up to and including the Motion. However, Plaintiff is also entitled to recover her fees expended in preparing the reply to the fee motion and opposing the post-trial motions. *Clark*, 803 F.2d at 992; *Lambert v. Ackerley*, 180 F.3d 997, 1002, 1012–13 (9th Cir. 1999) (affirming award of supplemental attorneys' fees for successfully opposing post-trial motions for judgment as a matter of law and a new trial). Therefore, the Court directs Plaintiff to submit a supplemental fee request within seven (7) days, supported by affidavit and containing hours expended on those additional tasks, with fees calculated using the reasonable rates

[6] As some of Plaintiff's counsel's total time entries do not add up to the total hours requested, (*see* Mot. 16; IMW Time Record), the Court independently totaled and confirmed each biller's time entries. This final lodestar chart reflects the hours the Court finds to be substantiated by those time records and reasonably expended as discussed in Section IV.B—Hours Expended.

identified herein. Defendants will have seven (7) days to respond to Plaintiff's filing. Plaintiff's failure to submit a timely and adequate affidavit will be construed as a waiver of additional fees for the fee reply and post-trial motions. Defendants' failure to timely respond to Plaintiff's affidavit will be construed as a non-opposition to the additional fees requested.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Attorneys' Fees. (Dkt. No. 203.) Specifically, the Court **GRANTS** Plaintiff's Motion and awards **$2,166,670** in attorneys' fees, to be paid within **forty-five (45) days** from the date of this Order.

The Court **ORDERS** Plaintiff to file, no later than **seven (7) days** from the entry of this Order, a supplemental fee request identifying the hours reasonably expended on the reply to the fee motion and the oppositions to Defendants' post-trial motions, including supporting billing records. Defendants will have **seven (7) days** to respond.

**IT IS SO ORDERED.**

November 2, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**